UNITED STATES DISTRICT COURT
For the Northern District of Illinois −
Eastern Division

| | |
|---|---|
| Jacqueline Stevens | |
| Plaintiff | |
| vs. | Civil Case No.: 22-cv-05072<br>Judge: Honorable M. Kennelly |
| United States Department of Health and Human Services et al. | |

## MOTION FOR PRELIMINARY AND/OR PERMANENT INJUNCTION

Pursuant to Federal Rule of Civil Procedure 65(b) Plaintiff Jacqueline Stevens seeks a preliminary and/or permanent injunction enjoining Defendants Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE"), U.S. Citizenship and Immigration Services ("USCIS"), and Department of Justice ("DOJ") Executive Office of Immigration Review ("EOIR"), their employees, and agents from:

• withholding the documents and records requested in Plaintiff's expedited FOIA **2022-ICFO-27065, [EOIR] 2022-52897,** and the 18 August 2022 request submitted to USCIS which the agency has not even acknowledged and for which no tracking number has been provided.

• implementing, enforcing, or otherwise carrying out their current policy of disregarding expedited requests and arbitrarily refusing to discharge their mandatory duties under FOIA, towards Plaintiff;

• with respect to Plaintiff, engaging in any action that results in the non-processing or non-adjudication of her FOIA expedited requests, which, but for Defendants' arbitrary and capricious action and practices, would be eligible for expedited processing and/or prompt determination.

The Complaint was served on all Defendants and notice and copy of this Motion was served on the United States Attorney's Office, Chicago Office via email at usailn.ecfausa@usdoj.gov and by USPS as no entry of appearance has been made yet.

1

For the reasons described and set forth more fully in the Complaint (ECF #1), the Memorandum of Points and Authorities, and exhibits thereto, Plaintiff respectfully requests that this Court issue an injunction and/or a section 28 U.S.C. §1651(a) order awarding the requested relief.

## NO BOND SHOULD BE REQUIRED

Rule 65 grants district courts discretion to require an appropriate bond before a preliminary injunction may issue. Fed.R.Civ.P. 65(c). "Courts routinely impose either no bond or a minimal bond in public interest cases where requiring security would effectively deny access to judicial review." *California ex rel. Van De Kamp v. Tahoe Regional Planning Agency*, 766 F.2d 1319, 1325 (9th Cir. 1985), amended on other grounds, 775 F.2d 998 (9th Cir. 1985); *Crowley v. Local No. 82*, 679 F.2d 978, 1000 (1st Cir. 1982) (stating that "in noncommercial cases, the court should consider the possible loss to the enjoined party together with the hardship that a bond requirement would impose on the applicant," and secondly, "in order not to restrict a federal right unduly, the impact that a bond requirement would have on the enforcement of the right should also be considered."). The underlying purpose of Rule 65(c) is to provide a mechanism for reimbursing an enjoined party for the harm it could suffer due to an improvidently issued injunction or restraining order. Accordingly, the bond amount should reflect the costs that a Defendant might suffer because of the injunction. "The district court is afforded wide discretion in setting the amount of the bond, and the bond amount may be zero if there is no evidence the party will suffer damages from the injunction." *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878, 882 (9th Cir. 2003). Further, a strong likelihood of success on the merits may favor "a minimal bond or no bond at all." *California v. Tahoe Regional Planning Agency*, 766 F.2d 1319, 1326 (9th Cir. 1985); *Hassay v. Mayor of Ocean City*, 955 F. Supp. 2d 505, 527 (D. Md. 2013) (requiring the posting of only nominal bond in the amount of $1.00 because defendant city's potential economic injury would be "minimal or non-existent"). No bond is appropriate here because Defendants are the federal government, the potential injury to Plaintiff is more than "remote," and there is no threat that the Plaintiff will be unjustly enriched: Plaintiff is simply asking the Court order that Defendants *process* her pending expedited FOIA requests in accordance with the law.

Plaintiff respectfully requests this Court to either waive or set a nominal security requirement because the injunction is in the public interest. Requiring Plaintiff to post a bond would frustrate the purpose of FOIA and the purpose of injunctive relief —i.e., to supply the public with timely disclosure of records that assure the transparency of agency action, especially where a United States citizen may be at risk of being deported because of lack of access to records exclusively in Defendants' possession.

                              Respectfully Submitted by

                          _____s/ Nicolette Glazer Esq._____
                             Nicolette Glazer Esq.
                             LAW OFFICES OF LARRY R GLAZER
                             1875 Century Park East #700
                             Century City, CA 90067
                             T: 310-407-5353
                             F: 310-407-5354
                             nicolette@glazerandglazer.com
                             ONE OF PLAINTIFF'S ATTORNEYS

## MEMORANDUM OF POINTS AND AUTHORITIES

I. INTRODUCTION

  This case is about unlawful agency action impeding a professional researcher's access to agency records that shed light on egregious violations of the rights of individuals who are United States citizens at birth or have derived United States citizenship despite their birth abroad but who are nevertheless treated as "aliens" and detained and deported without due process and a meaningful opportunity to establish their United States citizenship claims for lack of access to documents and records exclusively within the custody and control of the federal government. Through the Freedom of Information Act ("FOIA"), Congress sought "to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *Friends of Animals v. Bernhardt*, 15 F. 4th 1254, 1260 (10th Cir. 2021) (citing *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978)). The very purpose of FOIA is to "allow citizens to learn what their government is doing and how it is being done." *Nuclear Watch New Mexico v. U.S. Dep't of Energy, Nat'l Nuclear Sec. Admin.,* 2007 WL 9729204 at *2 (D.N.M. Sept. 19, 2007). Yet Defendants implement FOIA by arbitrarily and capriciously disregarding Plaintiff's requests seeking expedited review and routinely refuse to comply with the time frames established by Congress for processing requests for records. Unless this Court exercises its statutory and/or inherent authority to rein in this administrative overreach, the Defendants will continue to disregard FOIA as enacted and in the process delay and/or avoid oversight and accountability. *Electronic Priv. Info. v. Department of Justice*, 416 F. Supp. 2d 30 (D.D.C. 2006) (EPIC).

II.  **RELEVANT FACTS**

  Plaintiff is a professor of political science and the founding faculty director of the Deportation Research Clinic at Northwestern University, in Cook County, Illinois. (Dkt 1, ¶5-6; Stevens Decl, ¶1). Since 2008, Plaintiff has researched extensively and published on the subject of improper deportations of U.S. citizens, working to identify systemic protocols and misconduct underlying the deportation of U.S. citizens, including articles in the *The Nation* magazine (2008-10) and a co-edited

4

book, *Citizenship in Question: Evidentiary Birthright and Statelessness* (Duke University Press, 2017). (*Id.*, ¶10)

In 2011, Plaintiff published a scholarly article in the *Virginia Journal of Social Policy & the Law* detailing the U.S. government's unlawful detention and deportation of U.S. citizens. (*Id.* ¶7) The article estimated that between 2003 and 2010, "more than 20,000 U.S. Citizens were detained or deported," and identified as the cause, "laws and regulations mandating detention and deportation of hundreds of thousands of incarcerated people without attorneys."[1] The article was featured in several publications and drew attention to the practice.[2] Since 2011, Stevens has continued to research, investigate, and publish on the subject of deportation of U.S. Citizens. In 2012, she founded the Deportation Research Clinic for the purpose of studying government misconduct in deportation proceedings.[3] (Stevens Decl. ¶1) Many of the cases she studied have resulted in lawsuits on behalf of the detained U.S. citizens and have been widely covered in the media and scholarly articles,[4] and even used during trials. (Stevens Decl. ¶10).

---

1 Jacqueline Stevens, "U.S Government Unlawfully Detaining and Deporting U.S. Citizens as Aliens," *Virginia Journal of Social Policy & the Law*, Spring, 2011, *available at* http://jacquelines-tevens.org/StevensVSP18.32011.pdf.
2 New York Times, "Immigration Crackdown Snares Americans" December, 2011, *available at* http://www.nytimes.com/2011/12/14/us/measures-to-capture-illegal-aliens-nabciti-zens.html?pagewanted=all; *Christian Science Monitor*, "Deported teen returns to U.S. How many Americans are mistakenly banned" January, 2012, *available at* http://www.csmoni-tor.com/USA/2012/0107/Deported-teen-returns-to-US.-How-manyAmericans-are-mistakenly-banished.
3 Jacqueline Stevens, "Forensic Intelligence and the Deportation Research Clinic: Toward a New Paradigm," Perspectives on Politics, September, 2015, *available at* https://www.cambridge.org/core/journals/perspectives-on-politics/article/forensic-intelligenceand-the-deportation-research-clinic-toward-a-newparadigm/0ABA0DEA34330E5F755A628FAB0C5CCB.
4 See, e.g., William Finnegan, "The Deportation Machine," New Yorker, April 29, 2013, https://www.newyorker.com/magazine/2013/04/29/the-deportation-machine; Mary Sanchez, "How Broken is Our System? We Deport Citizens," June 9, 2015, https://www.chicagotribune.com/columns/sns-201506091930—tms--msanchezctnms-a20150609-20150609-column.html; NPR, "You Say You're An American, But What If You Had to Prove it or be Deported?" December, 2016 *available at* http://www.npr.org/sections/thetwoway/2016/12/22/504031635/you-say-you-re-an-american-but-what-if-you-had-to-prove-it-or-bedeported; *States Without Nations* blog post, *available at* http://stateswithoutnations.blogspot.com/2016/02/how-many-us-attorneys-and-assistant.html; *NPR*

Professor Stevens' 2018 essay in Citizenship in Question "The Citizen who is an Alien" received an award for "Best Chapter" by the American Political Science Association section on Migration and Citizenship.[5] A global consortium of librarians on behalf of the non-profit organization *Knowledge Unlatched* purchased from Duke University Press the right to publish the book on its website in a no-cost portable document format.[6] In 2021, Stevens was one of two academic researchers consulted by the Government Accountability Office for its report, "Immigration Enforcement: Actions Needed to Better Track Cases Involving U.S. Citizenship Investigations."[7]

As Plaintiff is one of the preeminent authorities on the subject, journalists and U.S. citizens targeted by DHS and DOJ regularly contact Plaintiff with pleas for help in obtaining records and information. (Stevens Decl. ¶4-5).

On or about August 9, 2022, a reporter from a public radio station (WNYC) contacted Plaintiff to request assistance with his reporting on the case of Mr. Pascal Charpentier that had resulted in a removal order after "ICE refused [his] attorney's repeated requests for documents under the control of the Department of Homeland Security" (Decl. of Pascal Charpentier ("Charpentier Decl."), ¶6; Stevens Decl. ¶4). Plaintiff indicated she would seek to obtain Mr. Charpentier's federal records for her review. (Stevens Decl., ¶5)

The reporter stated he was reaching out to Stevens because he was "fascinated by [her] work and research into this area of immigration law." (Stevens Decl. ¶4). On August 11, 2022, Plaintiff confirmed via email receipt of Mr. Charpentier's signed privacy waiver. (Stevens Decl. ¶6). Mr. Charpentier shared with Plaintiff a link to a biographical timeline consistent with him having

---

"In Rush to Deport, Expelling U.S. citizens" http://www.npr.org/2011/10/24/141500145/in-the-rush-to-deport-expelling-u-s-citizens;
5 American Political Science Association. Organized Section Awards, 2018. https://www.apsanet.org/STAFF/Membership-Workspace/Organized-Sections/Organized-Section-Awards/Organized-Section-Awards/Section-43#chapter.
6  Documentation of book's availability, open access, and funding source are available via the Open Access web page https://library.oapen.org/handle/20.500.12657/31762.
7  GAO-21-487,  July 20, 2021, p. 47,  https://www.gao.gov/products/gao-21-487.

automatically derived U.S. citizenship by operation of law. (Stevens Decl. ¶6; Charpentier Decl. ¶¶1-3)

Since Plaintiff's primary research tool on the subject of deportation of United States citizens has been obtaining, reviewing, and analyzing U.S. government records, Plaintiff made three initial FOIA requests to the agencies most likely to maintain the documents she needed to analyze Mr. Charpentier's claim to derivative U.S. citizenship: ICE, USCIS, and EOIR. (Stevens Decl.¶¶ 8-9). Considering the magnitude of the underlying harms to Mr. Charpentier, a likely U.S. citizen, and the increasing public interest in his case, Plaintiffs submitted the three requests on an expedited basis. (Exhibits A-C to Stevens Decl.; Charpentier Decl. ¶¶ 9-10).

*First*, on August 15, 2022, Stevens submitted a FOIA request to USCIS with a subject matter stated as "EXPEDITED REQUEST E-Verify and other USCIS records for Pascal Charpentier." The request stated:

> The records I am seeking include but are not limited to: all correspondence and other information submitted by Mr. Charpentier to USCIS and all outputs about him produced by "E-Verify" databases; all records relied on by E-Verify for claiming Mr. Charpentier's place of birth was "Haiti"; emails, notes, drafts, memorandums, and data entries and outputs of digital information referencing Mr. Charpentier and stored on any computer, server, or digital device to which USCIS officials have access, and all information used for creating or responding to his two separate "alien" numbers. I am also of course interested in all records associated with any immigration and citizenship petitions and requests by Mr. Charpentier or on his behalf by his parent(s). The time frame of this request is [PII - REDACTED] through whenever a search is conducted for responsive records.

Plaintiff stated the request was "expedited" and provided an attachment titled "Grounds for Expedited Request." It states: "According to 5 USC 552a6(E), a request should be expedited based on a "compelling need," the criteria for which are that:

> (I) that a failure to obtain requested records on an expedited basis under this paragraph could reasonably be expected to pose an imminent threat to the life or physical safety of an individual; or (II) with respect to a request made by a person primarily engaged in disseminating information, urgency to inform the public concerning actual or alleged

7

>Federal Government activity. Mr. Charpentier was issued a removal order based on inaccurate information produced by the U.S. government to an immigration judge. As director of the Deportation Research Clinic, I will be sharing all responsive records with Mr. Charpentier. He needs the records requested in order to prove his U.S. citizenship. Unless these are produced immediately, Mr. Charpentier is in danger of being rendered stateless and removed by force to a foreign country where he has has (sic) never visited and has no ties. Thus, the failure of USCIS to produce the requested records on an expedited basis could 'reasonably be expected to pose an imminent threat to the life or physical safety of an individual.' In addition, there is enormous public interest in the U.S. government unlawfully detaining and deporting U.S. citizens. My own research on the patterns and practices of the U.S. government deporting U.S. citizens has been widely covered in the media, including the New Yorker magazine, the New York Times, and NPR, thus satisying (ii) above.
>Further, a major news organization has indicated they will be reporting on my findings about the deportation order for Mr. Charpentier.
>For documentation of the media interest in the U.S. government's unlawful detention and deportation of U.S. citizens, please see media coverage here: https://deportation-research.buffett.northwestern.edu/news/index.html, including these articles: Greg Allen, "ICE Detained the Wrong Person," NPR, December 18 and Steve Coll, "When ICE Tries to Deport Americans, Who Defends Them?" New Yorker, March 21.
>I also co-edited a volume, Citizenship in Question: Evidentiary Birthright and Statelessness,
>https://library.oapen.org/handle/20.500.12657/31762; the book won
>Please note that government's detention and deportation of US citizens is of great interest to the public, as evidenced in extensive national media coverage of my research on this. Please see:
>http://www.npr.org/sections/thetwo-way/2016/12/22/504031635/you-say-you-re-an-american-but-what-if-you-had-to-prove-it-or-be-deported My research on this topic has been reported in The New Yorker, The New York Times, NPR and numerous other national and local media outlets.

*Second*, on August 18, 2022, Plaintiff submitted a request to ICE for the following:
>All system records and other items maintained, produced, or distributed by ICE, including ICE trial attorneys and HQ, pertaining to Pascal Charpentier. His date of birth is [PII - REDACTED]. His country of birth is Germany. His "alien" number was 029001711 and in 2016 he was given this number: 02*******. I am interested in all system records pertaining to Mr. Charpentier and all ICE correspondence with other government agencies, individuals, or attorneys pertaining to Mr. Charpentier as well.
>>Please include as well:

> 1) All records of all grievances filed by Mr. Charpentier orally or in writing and under the control of ICE or its components, including county jails or private prisons with which ICE has contracted.
> 2) Commissary account data, including but not limited to information tracking funds reimbursed to Mr. Charpentier on release from custody.
> 3) All correspondence, notes, and other records pertaining to assertions or findings of U.S. citizenship, including but not limited to entries into PLAnet.
> 4) All ICE Fugitive Operation notes, memorandums, text messages, and other information in any medium related to the search and arrest of Mr. Charpentier. This includes but is not limited to database search protocols on which agents relied for information leading to the arrest.
> I am seeking all instructions in any form on which ICE employees relied in their search for the information that led to the arrest of Mr. Charpentier.
> 5) Screenshots of all tabs for interfaces to databases searched for information responsive to this request.
> Please note that I am attaching a third party waiver and certificate of identity signed by Mr. Charpentier and authorizing the release of all responsive documents to me under the FOIA/PA.

In her request Plaintiff indicated that the request was "expedited" and provided an attachment titled "Grounds for Expedited Request" which stated:

> According to 5 USC 552a6(E), a request should be expedited based on a "compelling need," the criteria for which are that:
> (I) that a failure to obtain requested records on an expedited basis under this paragraph could reasonably be expected to pose an imminent threat to the life or physical safety of an individual; or (II) with respect to a request made by a person primarily engaged in disseminating information, urgency to inform the public concerning actual or alleged Federal Government activity. Mr. Charpentier was issued a removal order based on inaccurate information produced by the U.S. government to an immigration judge. As director of the Deportation Research Clinic, I will be sharing all responsive records with Mr. Charpentier. He needs the records requested in order to prove his U.S. citizenship. Unless these are produced immediately, Mr. Charpentier is in danger of being rendered stateless and removed by force to a foreign country where he has has (sic) never visited and has no ties. Thus, the failure of USCIS to produce the requested records on an expedited basis could 'reasonably be expected to pose an imminent threat to the life or physical safety of an individual.' In addition, there is enormous public interest in the U.S. government unlawfully detaining and deporting U.S. citizens. My own research on the patterns and practices of the U.S. government deporting U.S. citizens has been widely covered in the media, including the New Yorker magazine, the New York Times, and NPR, thus satisfying (ii) (sic) above. Further, a major news organization has indicated they will be reporting on my findings about the deportation order for Mr. Charpentier.

*Third*, on August 18, 2022, Stevens submitted a separate FOIA expedited request and justification thereof to EOIR for the records relating to Pascal Charpentier seeking:

> All system records and other items maintained, produced, or distributed by EOIR pertaining to Pascal Charpentier, including but not limited to the Record of Proceedings, including all audio recordings. His date of birth is [PII - REDACTED]. His country of birth is [REDACTED], but ICE has stated in error it is Haiti. His "alien" number was 029001711, and in 2016 he was given this number: 020578103.
> This request includes but is not limited to all memoranda, notes, reports, email messages, and all other system records or communications associated with or pertaining to Mr. Charpentier generated or received by EOIR.
> Please include ALL calendar and case note records maintained by any EOIR digital systems.
> Mr. Charpentier has signed a waiver, including a certificate of identity, allowing me to receive these records. Please find a copy of this waiver attached. It includes his proof of identity.

None of the three agencies have acknowledged or decided the respective requests to expedite production of responsive documents. In fact, since 18 August 2022 Defendants have not communicated at all with Plaintiff regarding her FOIA requests nor has any Defendant produced any responsive records to Plaintiff. Plaintiff now respectfully moves for a preliminary injunction and requests that the Court order that Defendants produce all non-exempt records responsive to Plaintiff's FOIA requests within 30 days, or by a date that the Court deems appropriate.

IV. LEGAL STANDRAD UNDER RULE 65.

Both Temporary Restraining Orders and Preliminary Injunctions are governed by Rule 65. *Courthouse News Serv. v. Brown*, 908 F.3d 1063, 1067 (7th Cir. 2018). 28 U.S.C. §1651(a), in turn, provides that "all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." "To obtain a preliminary injunction, a plaintiff must show that: (1) without this relief, it will suffer 'irreparable harm'; (2) 'traditional legal remedies would be inadequate'; and (3) it has some likelihood of prevailing on the merits of its claims." *Speech First, Inc. v. Killeen*, 968 F.3d 628, 637 (7th Cir. 2020). If a plaintiff makes this showing, the court must engage in a balancing analysis: weigh the harm the denial of the preliminary injunction would cause the plaintiff against the harm to the

defendant if the court were to grant it. *Courthouse News Serv.*, 908 F.3d at 1068. This balancing process involves a "sliding scale" approach: the more likely the plaintiff is to win on the merits, the less the balance of harms needs to weigh in his favor, and vice versa. *Ty, Inc. v. Jones Grp., Inc.*, 237 F.3d 891, 895 (7th Cir. 2001). In *Mays v. Dart* the 7th Circuit clarified that that a movant must demonstrate that "its claim has some likelihood of success on the merits" and "[w]hat amounts to 'some' depends on the facts of the case at hand because of [its] sliding scale approach." *Mays v. Dart*, 974 F.3d 810, 822 (7th Cir. 2020). Under this approach, "the more likely the plaintiff is to win on the merits, the less the balance of harms needs to weigh in his favor, and vice versa." *Id*.

V. **WITHOUT A PRELIMINARY INJUNCTION PLAINTIFF WILL SUFFER AN IRREPARABLE INJURY THAT OUTWEIGHED THE MARGINAL BURDEN, IF ANY, TO DEFENDANTS.**

Without access to the requested records, Plaintiff would not be able to complete her research and a newsworthy issue in the public interest and domain would not receive the timely coverage that it needs. Responsive records would likely shed light on DHS's continuing failure to maintain accurate records (Charpentier Decl., ¶5), and to assure that United States citizens are not unlawfully detained and deported. As a member of the news media and an expert on the topic, Plaintiff has the capacity to disseminate the records obtained through the FOIA requests to a large audience and educate the public on an issue of national importance. Responsive records, if obtained by Plaintiff expeditiously, are likely to immediately influence public discourse on ICE's and EOIR's activities towards United States citizens and potential denial of constitutional rights. *Am. Immigration Council*, 470 F. Supp. 3d at 37 (recognizing likelihood of success on merits where plaintiff established urgent need for information likely to impact public discourse on ICE's handling of ongoing public health crisis); *Leadership Conference on Civil Rights v. Gonzales*, 404 F. Supp. 2d 246, 260 (D.D.C. 2005) (ordering expedited processing and production of records by a date certain given the issue of voter suppression and intimidation "is paramount and expedition of these documents could advance the current debate over the Voting Rights Act"); cf. *Al-Fayed v. CIA*, 254 F.3d 300, 310 (D.C. Cir. 2001) ("Although these topics may continue to be newsworthy, none of the

events at issue is the subject of a currently unfolding story."). Plaintiff's effectiveness in influencing public opinion and policymakers' actions during this critical time period is contingent on her access to records showing reliable, accurate, and detailed information on immigration agencies' response to claims of derivative citizenship. Also underscoring the urgency of Plaintiff's request is the loss of substantial due process rights that will occur as a result of Defendants' actions. The requested information will aid Mr. Charpentier in ensuring that his appeal and request for reopening of the underlying removal proceedings based on newly discovered material evidence is processed. Plaintiff's requests, thus, involve an urgency to inform the public about an actual or alleged federal government activity and will assure real-time public oversight and accountability. 5 U.S.C. § 552(a)(6)(E)(i); 6 C.F.R. § 5.5(e)(1)(ii). These factors, whether considered separately or together, are more than sufficient to meet the standards set out in 5 U.S.C. § 552(a)(6)(E)(i) and 6 C.F.R. § 5.5(e)(1).

  The value of the information Plaintiff endeavors to disseminate to safeguard the rights of individuals claiming United States citizenship and to ensure government transparency is undeniably dependent on its prompt production. *See Nuclear Watch New Mexico*, 2007 WL 9729204 at *3 ("Information is often useful only if it is timely.") (citation omitted); *Payne Enters., Inc.*, 837 F.2d at 494 (recognizing that "stale information is of little value"); *Ctr. for Pub. Integrity*, 411 F. Supp. 3d at 12. Delayed release of records in this instance will lessen the value of the information because it prevents Plaintiff from pursuing her research and publications, while at the same time impeding the public and policymakers from receiving information necessary to assure accountability in government operations. *Id*. This constitutes a clear, irreparable injury to Plaintiff. *Am. Immigration Council*, 470 F. Supp. 3d at 38 ("[A] plaintiff may suffer irreparable harm if denied access to information that is highly relevant to an ongoing public debate."); *Am. Oversight*, 414 F. Supp. 3d at 186; see also Sai v. TSA, 54 F. Supp. 3d 5, 10 (D.D.C. 2014) ("To be sure, a movant's general interest in timely processing of FOIA requests may be sufficient to establish irreparable harm if the information sought is 'time sensitive.'") (citation omitted); *EPIC*, 416 F. Supp. 2d at 40 (the "loss" of the "value" of timely information "constitutes a cognizable harm") (citation omitted); *Protect*

*Democracy Project, Inc.*, 263 F. Supp. 3d at 301 (finding harm in delayed information regarding legality of airstrikes in Syria because "[m]ilitary strikes cannot be undone"); *Transgender Law Ctr. v. Immigration & Customs Enf.*, 33 F.4th 1186, 1192 (9th Cir. 2022) (government's "stonewalling" of FOIA requests regarding asylum-seekers "tragic death in federal custody" in New Mexico obstructed advocates' efforts "to ensure an informed citizenry, promote official transparency, and provide a check against government impunity"). This case exemplifies the harm that can result to a professional requester when the release of relevant, consequential information is delayed.

On the other side, the marginal increase in the cost of administering agencies' FOIA programs in accordance with the law rather than according to Defendants' arbitrary preferences is minuscule. There could be no harm in requiring Defendants to follow and apply the law as Congress intended. Furthermore, any cost associated with Defendants' requesting their agents to make a determination on the pending and overdue requests to expedite and to promptly produce responsive records is marginal and pale in comparison to the burdens faced by Plaintiff without an injunction. *See Animal Legal Def. Fund v. U.S. Dep't of Agric.,* 933 F.3d 1088, 1095 (9th Cir. 2019) ("While FOIA as a whole favors broad disclosure, the expedited processing provision serves the narrower purpose of prioritizing certain requests over others."); *Brennan Ctr. for Justice v. Dep't of Commerce*, 498 F. Supp. 3d 87, 100–101, 103 (D.D.C. 2020) (noting that agency may move plaintiff's requests "to the front of the expedited processing line" to comply with court-ordered production schedule, and that "hardship on other FOIA requesters is not a bar to relief") (cleaned up); *Washington Post*, 459 F. Supp. at 76 ("[P]ursuant to the statutory provision mandating expedited treatment, the public's interest in expedited processing of the plaintiff's request outweighs any general interest that it has in first-in-first-out processing of FOIA requests.")

VI. PLAINTIFF HAS NO ADEQUATE LEGAL REMEDY

Because Plaintiff needs access to the records now, absent an injunction, the newsworthy topic would fade before final judgment. Thus, even if Plaintiff succeeds in obtaining the records within the two to three years it takes Defendants to produce responsive records during litigation, she will be unable to obtain redress for the unreasonable and unlawful delay. No sufficient legal remedy is, thus,

13

available. *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989) ("Official information that sheds light on an agency's performance of its statutory duties falls squarely within [FOIA's] purpose.").

### VII. PLAINTIFF IS LIKELY TO SUCCEED ON THE MERITS OF HER CLAIMS

**1. Defendants have violated a clear statutory command.**

By enacting FOIA, Congress intended to "allow citizens to learn what their government is doing and how it is being done." *Nuclear Watch New Mexico v. U.S. Dep't of Energy, Nat'l Nuclear Sec. Admin.*, 2007 WL 9729204 at *2 (D.N.M. Sept. 19, 2007). The FOIA statute requires that an agency make a determination on a FOIA request within twenty business days, unless the agency invokes an additional ten-day extension for requests involving "unusual circumstances." 5 U.S.C. §§ 552(a)(6)(A)(i), 552(a)(4)(A)(viii)(II)(aa). Recognizing that some circumstances would require public information to be made available more quickly, Congress specifically promulgated an expedited process within the statutory scheme by requiring agencies to process the request "as soon as practicable." *Id.* § 552(a)(6)(E)(iii). "[A]n agency that violates the twenty-day deadline applicable to standard FOIA requests presumptively also fails to process an expedited request `as soon as practicable.'" *See EPIC*, 416 F. Supp. 2d at 39. "The presumption of agency delay raised by failing to respond to an expedited request within twenty days" is, however, "rebuttable if the agency presents credible evidence that disclosure within such time period is truly not practicable." *See id.*; *see also* 5 U.S.C. § 552(a)(6)(C)(i) (authorizing courts to grant agency additional time to complete review of records responsive to FOIA request "[i]f the Government can show exceptional circumstances exist and that the agency is exercising due diligence in responding to the request"). "[V]ague assertions, unsupported by credible evidence, are insufficient to demonstrate that further delay is . . . necessitated." *EPIC*, 416 F. Supp. 2d at 39. Specifically, "the district court . . . has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." (5 U.S.C. § 552(a)(4)(B)). In such a case, the district court "determine[s] the matter de novo, . . . and the burden is on the agency to sustain its action." *Id.*

14

Both DOJ and DHS FOIA regulations, in turn, set forth four separate bases for expedited processing, any one of which is sufficient. (6 C.F.R. § 5.5(e)(1); 28 C.F.R. §16.5(d)(4)). As described in Plaintiff's FOIA requests and supporting documentation, Plaintiff seeks records on an urgent basis because responsive records will help mitigate the imminent threats to life and safety to an individual with a putative claim to derivative citizenship who is an imminent risk of being deported to a country in which he would be left homeless, destitute, and at substantial risk of violence. Charpentier Decl., ¶¶10-11, 5 U.S.C. § 552(a)(6)(E)(i); 6 C.F.R. § 5.5(e)(1)(i); *see also EPIC*, 416 F. Supp. 2d at 43 (ordering records to inform ongoing national debate about government's warrantless surveillance program produced within one month); *Aguilera*, 941 F. Supp. at 153 (ordering exculpatory FBI records in criminal proceedings produced within approximately one month); *Cleaver*, 427 F. Supp. at 82 (ordering FBI records on covert activities produced within approximately twenty days).

An agency's failure to comply with the statutory timeframe to make a determination (here within ten days) means a requester has constructively exhausted its administrative remedies and can directly seek review in a federal district court. 5 U.S.C. §§ 552(a)(6)(C)(i), 552(a)(4)(B); *Citizens for Responsibility & Ethics in Washington v. FEC*, 711 F.3d 180, 182 (D.C. Cir. 2013).

After suit is filed, an agency may obtain a stay of proceedings from the court in order to gain more time to complete its processing. Such stays, however, may only be granted if the agency can show that "exceptional circumstances exist and that the agency is exercising due diligence in responding to the request." *Id.* § 552(a)(6)(C)(i) — (iii); *Open America v. Watergate Special Prosecution Force,* 547 F.2d 605, 610-16 (D.C. Cir. 1976). Here Defendants will not be able to meet this heavy burden.

Because Defendants have failed to either grant or deny Plaintiff's requests for expedited processing within the ten-day statutory deadline, and further have failed to make a determination on all Plaintiff's FOIA requests under the non-expedited timeframe of twenty working days, Plaintiff has constructively exhausted all non-futile administrative remedies and therefore invokes the Court's power to order the production of all records responsive to her requests "as soon as practicable" in

15

light of the exigent nature of said requests. 5 U.S.C. § 552(a)(6)(E)(iii); 6 C.F.R. §§ 5.5(e)(4), 5.6(c). *Judicial Watch, Inc. v. U.S. Dep't of Homeland Sec.*, 895 F.3d 770, 775–76 (D.C. Cir. 2018) ("Congress underscored the importance it attached to prompt responses by allowing judicial recourse, bypassing administrative exhaustion, if an agency fails to meet statutory timetables for disclosure or to justify its delay in making nonexempt records available upon request.").

Injunctive relief ordering Defendants to produce responsive records within thirty days is both reasonable and warranted given the urgent nature of Plaintiff's requests. *Ctr. for Pub. Integrity v. U.S. Dep't of Defense*, 411 F. Supp. 3d 5, 12 (D.D.C. 2019) (granting injunction because the "value of the information would be lessened or lost absent expedited processing"); *Landmark Legal Found. v. EPA*, 910 F. Supp. 2d 270, 275 (D.D.C. 2012) ("[C]ourts have equitable powers to order agencies to act within a particular time frame[.]"); *Clemente v. FBI*, 71 F. Supp. 3d 262, 269 (D.D.C. 2014) (a court "may use its equitable powers to require the agency to process documents according to a court-imposed timeline"). Courts routinely give weight to the time-sensitive nature of requested records when ordering agencies to produce them within designated deadlines. *Am. Immigration Council,* 470 F. Supp. 3d at 39 (ordering records on ICE's response to COVID-19 pandemic produced within two months).

Ordering production by a date certain is essential in effectuating Plaintiff's right to expedited processing under the statute. *EPIC*, 416 F. Supp. 2d at 37. Each Defendant has violated its statutory duty to make a decision on expedited processing in a timely manner. 5 U.S.C. § 552(a)(6)(E). Plaintiff's requests implicate a matter of the utmost urgency and will concretely impact the life and safety of a putative United States citizen who has no access to records to document his derivative citizenship claim. See *EPA v. Mink*, 410 U.S. 73, 80 (1973), superseded by statute, Freedom of Immigration Act, Pub. L. No. 93-502, 88 Stat. 1561 (1974) (FOIA "seeks to permit access to official information long shielded unnecessarily from public view and attempts to create a judicially enforceable public right to secure such information from possibly unwilling official hands"); *Seavey v. Dep't of Justice*, 266 F. Supp. 3d 241, 248 (D.D.C. 2017) (ordering production at an accelerated rate because information sought exposed "serious gaps in the public's understanding of the role of the

FBI and the U.S. government"); *Nuclear Watch New Mexico*, 2007 WL 9729204 at *3 ("Delays under the 'request-and-wait' system can be useful to the government to dissuade requests or to postpone unwelcome disclosures when journalists or others seek records on a suspected or emerging scandal.") (cleaned up).

An injunction is also warranted to give teeth to the FOIA provisions regarding expedited processing. *EPIC*, 416 F. Supp. 2d at 39 ("The legislative history of the amendments makes clear that … [Congress's] intent was to 'give the [expedited] request priority for processing more quickly than otherwise would occur.'") (citation omitted); *Nuclear Watch New Mexico*, 2007 WL 9729204 at *3 ("A bona fide request for production of documents under FOIA must be honored in a timely fashion or the purpose of the Act is vitiated."). Setting a Court-imposed deadline to produce records implicating a matter of public urgency—ICE's and EOIR deporting United States citizens without affording them access to DHS records to establish their derivative claims to citizenship—is therefore necessary in this case to effectuate Plaintiff's statutory right to expedited processing. *Edmonds v. FBI*, 417 F.3d 1319, 1323 (D.C. Cir. 2005) ("[E]xpedited processing of a FOIA request is a statutory right, not just a matter of court procedure."); *EPIC*, 416 F. Supp. 2d at 40–41; *Washington Post v. Dep't of Homeland Sec.*, 459 F. Supp. 2d. 61, 75 (D.D.C. 2006) (noting that in the absence of a preliminary injunction, "plaintiff would lose out on its statutory right to expedited processing and on the time-sensitive public interests which underlay the request"). Because the timeframe mandated by FOIA has now passed and there is no good or reasonable justification for Defendants' inaction Plaintiff is likely to succeed on the merits of its request for expedited processing.

2. **Defendants' action is arbitrary and capricious.**

Defendants' actions as challenged in the Complaint are also "arbitrary" and "capricious," 5 U.S.C. §706(2)(A), because Defendants have not justified their refusal to comply with the timeframes mandated by FOIA. The agency "must examine the relevant data and articulate a satisfactory explanation for its action." *Casa de Maryland v. DHS*, 924 F.3d 684, 703 (4th Cir. 2019). Where the agency has failed to provide a reasoned explanation, or where the record belies the agency's conclusion, [the court] must undo its action." *Cigar Ass'n of Am. v. FDA*, 436 F. Supp. 3d 70, 84

17

(D.D.C. 2020). "Not only must an agency's decreed result be within the scope of its lawful authority, but the process by which it reaches that result must be logical and rational." *Allentown Mack Sales & Serv., Inc. v. NLRB,* 522 U.S. 359, 374 (1998). An agency must also "reasonably reflect upon the information contained in the record and grapple with contrary evidence," *Fred Meyer Stores, Inc. v. NLRB*, 865 F.3d 630, 638 (D.C. Cir. 2017), and, if the new policy departs from the agency's previous established position, an agency must explain its change of hearth, *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515–16 (2009). Here, Defendants have failed to and cannot provide the requisite justification for their refusal to process expedited FOIA requests as mandated by FOIA. Indeed, it has "said almost nothing" on the subject, 1366 S. Ct. at 2127, with no public statements and guidance with little substantive content.

Date: 9/26/2022

                                        Respectfully Submitted by

                                        _____s/ Nicolette Glazer Esq._____
                                            Nicolette Glazer Esq.
                                            LAW OFFICES OF LARRY R GLAZER
                                            1999 Avenue of the Stars #1100
                                            Century City, CA 90067
                                            T: 310-407-5353
                                            F: 310-407-5354
                                            nicolette@glazerandglazer.com
                                            ATTORNEY FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

This pleading was served on the United States Attorneys Office, Chicago district by email usailn.ecfausa@usdoj.gov and by USPS as follows:

>USAGE
>219 S Dearborn St, 5th Floor
>Chicago, IL 60604

>\_\_\_\_\_s/ Nicolette Glazer Esq._____
>Nicolette Glazer Esq.
>LAW OFFICES OF LARRY R GLAZER
>1999 Avenue of the Stars #1100
>Century City, CA 90067
>T: 310-407-5353
>F: 310-407-5354
>nicolette@glazerandglazer.com
>ATTORNEY FOR PLAINTIFFS