UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JACQUELINE STEVENS,               )
                                  )
                    Plaintiff,    )
                                  )        No. 22 C 5072
            v.                    )
                                  )        Judge Kennelly
UNITED STATES DEPARTMENT OF       )
HEALTH AND HUMAN SERVICES, *et al.*,  )
                                  )
                    Defendants.   )

## ICE'S RESPONSE TO PLAINTIFF'S SUPPLEMENTAL BRIEF

### Introduction

In response to plaintiff Jacqueline Stevens's FOIA request, ICE has searched for responsive records and has begun producing them. Stevens's motion for a preliminary injunction should therefore be denied as moot. And the court should not order ICE to process more than 500 pages of potentially responsive records per month, because doing so would penalize other FOIA requestors who requested records before Stevens did.

### Background

Stevens filed this lawsuit in September 2022, alleging that ICE and other federal agencies violated FOIA by improperly withholding records in response to 13 of her FOIA requests. Dkt. 1. With respect to three FOIA requests that she submitted in August 2022 for records relating to a person named Pascal Charpentier, Stevens also moved for a preliminary injunction against ICE and two other agencies. Dkt. 3; *see also* Dkt. 15 (Answer) ¶¶ 47, 71, 97.

The court denied Stevens's preliminary injunction motion with respect to the other two agencies and took the motion under advisement with respect to ICE. Dkt. 24. The court explained during the December 15, 2022 hearing on the injunction motion that it wished to have more

information regarding ICE's planned production and directed ICE to file a status report on the issue.

In response, ICE filed a status report and submitted a declaration from Fernando Pineiro, ICE's FOIA director. Dkt. 27. Citing the declaration, ICE explained that it has located about 13,640 records that are potentially responsive to Stevens's FOIA request to ICE, that ICE issued its first production of 515 pages in December, and that ICE plans to process 500 pages per month going forward. *Id.* ¶ 3.

ICE also explained that it cannot practicably process records any faster, because doing so would hinder its ability to process records for other FOIA requestors. Dkt. 27 ¶¶ 10-11. As ICE explained, it is currently processing 3,107 FOIA requests, with a backlog of 2,304 requests due to a dramatic increase in FOIA requests in recent years. *Id.* ¶ 4. Many of the requests contain 50-to-60 sub-parts and request searches of numerous program offices, resulting in thousands of pages that must be reviewed and processed. *Id.* ¶ 5. To address the heavy workload, ICE has adopted the court-sanctioned practice of addressing FOIA requests on a "first-in, first out" basis. *Id.* ¶ 6. ICE explained that this ensures fairness to all FOIA requestors by not prioritizing any one request over any other, and that the principle of fairness would be jeopardized if one requestor were permitted to "jump the line." *Id.*

In response, Stevens has filed a supplemental brief in opposition to ICE's proposed processing of 500 pages per month. Dkt. 30.

## Argument

Nothing in Stevens's supplemental filing should cause the court to hesitate before denying her motion for a preliminary injunction. First, as ICE has explained, preliminary injunctive relief is an extraordinary remedy, and it is particularly inappropriate in a FOIA case where the plaintiff

seeks to *change* the status quo rather than *preserve* it. Dkt. 30 at 3-6. Second, a court must deny a preliminary injunction unless the plaintiff shows (a) a likelihood of success on the merits, (b) the absence of an adequate remedy at law, and (c) irreparable harm if preliminary relief is denied, and Stevens has shown none of these. *Id.* at 6-10. And third, even if Stevens had made such a showing, the Seventh Circuit's "sliding scale" approach to considering the relevant factors still would counsel in favor of denying the motion. *Id.* at 10; *see also EPIC v. DOJ*, 15 F.Supp.3d 32, 39 (D.D.C. 2014); *White v. FBI*, 851 F. App'x 624, 626 (7th Cir. 2021) (affirming denial of preliminary injunction motion seeking faster production because "the district court reasonably concluded that the FBI was not improperly withholding documents by following its statutorily permissible policy").

Stevens suggests that, even if the court were to deny her motion for a preliminary injunction, the court should use its "equitable powers" to order ICE to process documents on a faster timeline. Dkt. 30 at 5-6. But ICE's proposal to process 500 pages per month is reasonable, because processing more than that would be impracticable due to the effect it would have on other pending FOIA requests. Dkt. 27 ¶¶ 3-11. ICE does what federal agencies ordinarily do in response to FOIA requests: it processes them on a first-in, first-out basis. *Daily Caller v. State*, 152 F.Supp.3d 1, 8 (D.D.C. 2015) (citing *Open Am. v. Watergate Special Prosecution Force*, 547 F.2d 605, 616 (D.C. Cir. 1976)). And although a request may be expedited, *see* 5 U.S.C. § 552(a)(6)(E), allowing a request to move to the front of the processing queue, an expedited request must still stand in line behind other requests that have *previously* been granted expedited processing. *Daily Caller*, 152 F.Supp.3d at 15 ("the plaintiff's effort to accelerate review of its requests necessarily will displace in processing priority those of third parties who submitted equally urgent requests before the plaintiff"); *Open Am.*, 547 F.2d at 616 (holding that first-in/first-out approach is

3

consistent with agency's responsibilities under FOIA); *Baker v. CFPB*, 2018 WL 5723146, *5 (D.D.C. Nov. 1, 2018) (ordering immediate processing of records "would harm the approximately 100 other requesters" who requested documents before plaintiff and "would erode the proper functioning of the FOIA system").

Stevens says ICE's proposed processing rate is "arbitrary and capricious," on the ground that ICE stated in a different case that it would release 1,800 pages per month. Dkt. 30 at 8. Stevens offers no information about the nature of that other case, the nature of the records at issue in that case, whether reviewing those records might be more or less complex than reviewing the records in this case, or any other information that the court could use to compare the two situations.

Stevens also complains that she may have to wait "years" for records under ICE's proposed schedule. Dkt. 30 at 8. But the length of the production schedule is the result of the breadth of Stevens's own FOIA request. Although her supplemental filing describes her request as being for a "single A-File," what she actually requested was much broader. She requested "all system records pertaining to Mr. Charpentier and all ICE correspondence with other government agencies, individuals, or attorneys pertaining to Mr. Charpentier," in addition to grievance records from county-level jails with which ICE may have contracted, commissary account data, "notes, memorandums, text messages, and other information *in any medium* related to the search and arrest of Mr. Charpentier," in addition to other records. Dkt. 15 (Answer) ¶ 47. (Similarly, Stevens now claims that she did not request "sensitive information." Dkt. 30 at 9. But she requested a plethora of information that could be sensitive: "all system records," as she repeatedly requested (*see again* Dkt. 15 ¶ 47), could include any number of privileged documents, as just one possible example.)

Stevens also says that the court should disregard *White v. DOJ*, 16 F.4th 539 (7th Cir. 2021), on the ground that the circumstances in that case are not identical to the circumstances in

this case. Dkt. 30 at 9-10. But the *White* court explicitly blessed a 500-pages-per-month schedule, noting that such a schedule "promotes efficiency and fairness by ensuring that the biggest requests do not crowd out smaller ones." *Id.* at 544. It is hard to imagine how the court could much more firmly have planted its feet on the side of ICE's position in this case. And other courts have reached similar conclusions. *Daily Caller*, 152 F.Supp.3d 15 (D.D.C. 2015); *Open Am.*, 547 F.2d at 616; *Baker*, 2018 WL 5723146 at *5. Indeed, courts have consistently held that disruption to agencies' normal processing schedules harms the public interest and is inconsistent with FOIA's purpose. *Nation Magazine v. Dep't of State*, 805 F.Supp. 68, 74 (D.D.C. 1992) (ordering plaintiff's FOIA request to be prioritized over other pending requests "would severely jeopardize the public's interest in an orderly, fair, and efficient administration" of FOIA); *EPIC v. DOJ*, 15 F.Supp.3d 32, 47 (D.D.C. 2014) (allowing plaintiff to "jump to the head of the line" would "upset the agency's processes and be detrimental to the other expedited requesters, some of whom may have even more pressing needs"); *Protect Democracy Project v. DOD*, 263 F.Supp.3d 293, 303 (D.D.C. 2017) (requiring faster production "might actually disrupt FOIA's expedited processing regime rather than implement it").

Stevens complains that ICE did not respond to her request within 20 days, Dkt. 30 at 4, but an agency's failure to respond to a FOIA request within 20 days does not entitle a requestor to a production schedule of her choosing. *Protect Democracy Project*, 263 F.Supp.3d at 302 ("[t]he automatic 'penalty' of failing to meet FOIA's twenty-day timeline is not the imposition of *another* explicit timeline") (emphasis in original). Agencies are not required to make all records available within 20 days, but rather to make them "promptly available." 5 U.S.C. § 552(a)(3)(A). When an agency does not respond within 20 days, the requestor is simply deemed to have exhausted administrative remedies for the purpose of seeking judicial review. *CREW v. FEC*, 711 F.3d 180,

189 (D.C. Cir. 2013) ("If the agency does not adhere to FOIA's explicit timelines, the 'penalty' is that the agency cannot rely on the administrative exhaustion requirement to keep cases from getting into court"). Exhaustion allows the requestor to file suit to have a court "supervise the agency's ongoing progress, ensuring that the agency continues to exercise due diligence in processing the request." *Protect Democracy Project*, 263 F.Supp.3d at 302 (quoting *CREW*, 711 F.3d at 189). That is Stevens's statutory remedy, and she has exercised it by filing this lawsuit. ICE is now producing records responsive to her FOIA request, and the court has the authority to supervise that production.

Although the court may supervise an agency's production, FOIA does not entitle a requestor to receive records by a deadline of her choosing. Rather, FOIA "requires only that an agency make the records promptly available" in the ordinary case and "as soon as *practicable*" when expedited processing has been granted. *Daily Caller*, 152 F.Supp.3d at 10 (quotation omitted, emphasis added). As explained, a faster production schedule here is not practicable. Dkt. 27 ¶¶ 3-11. Nor is it practicable for the court to explore the relative urgency of ICE's other FOIA cases to decide in what order the cases should proceed. First in, first out is the most practicable approach. The court's decision in whether to order a production schedule should be guided by the actual constraints on ICE's ability to process pages—including ICE's limited resources and other FOIA requestors' waiting in line ahead of Stevens—and not by Stevens's desire to receive records ahead of schedule.

Finally, in addition to the fact that a faster production schedule is impractical, is not required by FOIA, and would be unfair to other requestors, there is another reason not to impose a faster production schedule. Ordering ICE to produce records more quickly would jeopardize the public's interest in ensuring that documents whose disclosure would cause harm are carefully

6

redacted consistent with FOIA's exemptions. The FOIA exemptions listed in 5 U.S.C. § 552(b) embody a judgment by Congress that the public interest would be served by withholding certain records from public disclosure for important reasons (for example, to protect individuals' Privacy Act rights). Indeed, Congress specifically recognized that additional time may be required to ensure the public's interest in preventing public disclosure of exempted documents. H.R. Rep. No. 104-795, 1996 U.S.C.C.A.N. at 3466 ("In underscoring the requirement that agencies respond to requests, the Committee does not intend to weaken the interests protected by the FOIA exemptions. Agencies processing some requests may need additional time to adequately review requested material to protect these exemption interests."). Ordering ICE to produce documents not "as soon as practicable" (as directed by 5 U.S.C. § 552(a)(6)(E)(iii)), but rather on an artificial, accelerated timetable, threatens to risk the disclosure of statutorily exempted material. *Daily Caller*, 152 F.Supp.3d at 14 (requiring agency to produce records on an "abbreviated deadline" creates "significant risk of inadvertent disclosure of records properly subject to exemption under FOIA"); *Protect Democracy Project*, 263 F.Supp.3d at 302 (imposing arbitrary deadline "would run the risk of overburdening agencies" and "could even lead to the mistaken release of protected information"); *Baker*, 2018 WL 5723146 at *5 (ordering production on requestor's timeline risks that "in its haste" agency "will inadvertently release records which fall under a FOIA exemption and Congress has decided should not be released").

7

**Conclusion**

For the above reasons, the court should deny Stevens's motion for a preliminary injunction against ICE and should decline to order ICE to process records at a faster rate.

Respectfully submitted,

JOHN R. LAUSCH, Jr.
United States Attorney

By: Alex Hartzler
    ALEX HARTZLER
    Assistant United States Attorney
    219 South Dearborn Street
    Chicago, Illinois 60604
    (312) 886-1390
    alex.hartzler@usdoj.gov