IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JACQUELINE STEVENS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 22 C 5072 |
| | ) | |
| UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, et al., | ) ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Jacqueline Stevens, a professor at Northwestern University, has filed suit against the Department of Health and Human Services (HHS), the Department of Homeland Security (DHS), Customs and Border Protection (CBP), Immigration and Customs Enforcement (ICE), the United States Citizenship and Immigration Services (USCIS), and the Department of Justice (DOJ) and the Executive Office for Immigration Review (EOIR), which is part of DOJ. Stevens seeks a court order compelling the defendants to provide certain documents under the Freedom of Information Act (FOIA).

USCIS has moved to dismiss the complaint for failure to state a claim or alternatively for summary judgment. Stevens has moved for entry of a preliminary injunction against ICE, USCIS, and EOIR. On December 15, 2022, the Court denied Stevens's motion with respect to USCIS and EOIR but took the motion under advisement with respect to ICE. For the reasons below, the Court grants USCIS's summary judgment motion and grants in part Stevens's motion for a preliminary injunction against ICE.

**Background**

The following facts are undisputed unless otherwise noted. Stevens is a political science professor who "research[es], investigate[s], and publish[es] on the subject of deportation of U.S. Citizens." Compl. ¶ 9. Since 2008, she has co-edited a book and published several articles "detailing the U.S. government's unlawful detention and deportation of U.S. citizens." *Id.* ¶ 7. Her research has been featured in several publications and "widely covered in the media." *Id.* ¶ 9. In 2012, she founded the Deportation Research Clinic at Northwestern University "for the purpose of studying government misconduct in deportation proceedings." *Id.* On August 14, 2022, a reporter from a public radio station contacted Stevens to request her assistance in obtaining records on Pascal Charpentier. Charpentier believes that he is a U.S. citizen, but he has been issued a deportation order.

**A.    Stevens's FOIA requests**

Stevens made three FOIA requests to USCIS, ICE, and EOIR regarding Charpentier that are relevant to the pending motions.[1] On August 15, 2022, Stevens submitted via e-mail an expedited FOIA request to USCIS seeking various records regarding Charpentier, including "all correspondence and other information submitted by Mr. Charpentier to USCIS and all outputs about him produced by 'E-Verify' databases." *Id.* ¶ 71. On August 18, 2022, Stevens requested from ICE via the DHS portal "[a]ll system records and other items maintained, produced, or distributed by ICE, including

---

[1] On June 22, 2021, Stevens also submitted a FOIA request to USCIS for records relating to Miguel Silvestre. Although Stevens alleged in her complaint that USCIS failed to produce responsive records, she "located the production" during litigation and has "withdraw[n]" this allegation. Pl.'s Resp. Mem. at 3 n.1.

ICE trial attorneys and HQ, pertaining to Pascal Charpentier." *Id.* ¶ 47. She attached a document to her request titled "Grounds for Expedited Request," which explained the "compelling need" for her request to be expedited. *Id.* ¶ 48. On August 18, 2022, Stevens also submitted an expedited FOIA request to EOIR, requesting "[a]ll system records and other items maintained, produced, or distributed by EOIR pertaining to Pascal Charpentier." *Id.* ¶ 97.

In her attachment requesting expedited processing, Stevens explained that "Charpentier was issued a removal order based on inaccurate information produced by the U.S. government to an immigration judge" and that, "[a]s director of the Deportation Research Clinic," she "will be sharing all responsive records with Mr. Charpentier" so that he can "prove his U.S. citizenship." *Id.* ¶ 48. Stevens stated that "the failure to obtain [the] requested records on an expedited basis" would "pose an imminent threat to the life or physical safety" of Charpentier because of his deportation. *Id.* She also explained that "there is enormous public interest in the U.S. government unlawfully detaining and deporting U.S. citizens" and that "a major news organization has indicated they will be reporting on [her] findings about the deportation order for Mr. Charpentier." *Id.* Stevens submitted her requests to USCIS and EOIR on an expedited basis for these same reasons.

In her complaint, Stevens alleges that as of the date of filing, she had not received a response from ICE, USCIS, or EOIR regarding her expedited FOIA requests.

B.  **Procedural history**

Stevens moved for a preliminary injunction, asking the Court to order USCIS, EOIR, and ICE to "produce all non-exempt records responsive to [her] FOIA requests

3

within 30 days, or by a date that the Court deems appropriate." Pl.'s Opening Mem. at 10.  In response to Stevens's motion, each agency contended that the motion was moot.  USCIS asserted that it had denied Stevens's FOIA request on August 29, 2022 due to an improper privacy waiver for Charpentier.  EOIR asserted that it granted Stevens's FOIA request on October 6, 2022 and released the responsive records on October 11 and October 19.  ICE stated that it was "currently processing Stevens's request" and would propose a production schedule shortly.  Defs.' Resp. Mem. at 9.

On December 15, 2022, the Court denied Stevens's preliminary injunction motion with respect to USCIS and EOIR.  Because both agencies had already fully responded to her request, there was no longer a live issue for the Court to consider.  The Court took the motion under advisement with respect to ICE and requested more information on ICE's proposed production schedule.

On December 29, 2022, ICE provided a status report in which it stated that it had located 13,640 records that were "potentially responsive to Stevens's FOIA request." Def.'s Status Rep. ¶ 3 (dkt. no. 27).  ICE issued an initial production of 515 pages of records on December 14, 2022 and planned to process 500 pages per month.  At this pace, ICE expected to finish production by April 2025.  ICE explained that it is "currently processing 3,107 FOA requests, with a backlog of 2,304 requests" and that "[t]he number of FOIA requests that ICE receives each year has increased dramatically since fiscal year 2019." *Id.* ¶ 4.  ICE stated that "500 pages per month per case" is its "normal processing rate" for "productions in active FOIA lawsuits."  *Id.* ¶ 7.  Stevens objected to ICE's proposed production schedule, and the parties filed supplemental briefs addressing this issue.

4

Discussion

A.     USCIS's motion for summary judgment

USCIS has moved to dismiss Stevens's claims against it for failure to state a claim, or in the alternative, for summary judgment because she failed to exhaust administrative remedies. Stevens's FOIA request to USCIS, which USCIS relies upon to make its exhaustion argument, is not attached to her complaint.[2] "Because exhaustion is a (non-jurisdictional) affirmative defense, in a typical case it would be inappropriate on a motion to dismiss to consider materials outside the complaint . . . ." *Gray v. United States*, 723 F.3d 795, 799 n.1 (7th Cir. 2013). On a Rule 12(b)(6) motion, if "matters outside the pleadings are presented to and not excluded by the court," then the motion "must be treated as one for summary judgment under Rule 56." *See* Fed. R. Civ. P. 12(d). Rule 12(d) requires that all parties "be given reasonable opportunity to present all materials made pertinent to such a motion by Rule 56." *Id.*

The Court concludes that Stevens had a reasonable opportunity to present all pertinent materials. "Adequate notice is provided when the moving party frames its motion in the alternative as one for summary judgment," as USCIS did in this case. *Tri-Gen Inc. v. Int'l Union of Operating Eng'rs, Loc. 150*, 433 F.3d 1024, 1029 (7th Cir.

---

[2] Although Stevens's FOIA request may potentially be considered under the incorporation-by-reference doctrine, "courts should usually refrain from granting Rule 12(b)(6) motions on affirmative defenses" in any event. *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 & n.1 (7th Cir. 2012) ("Though district courts have granted Rule 12(b)(6) motions on the basis of affirmative defenses and this court has affirmed those dismissals, we have repeatedly cautioned that the proper heading for such motions is Rule 12(c), since an affirmative defense is external to the complaint."). "Therefore, rather than decide whether the [request] may be incorporated-by-reference in [USCIS]'s motion to dismiss, [the Court] elect[s] to treat [USCIS]'s motion as a motion for summary judgment." *Id.* at 692.

2006). Stevens did not object to conversion in her response to USCIS's motion and instead responded to both motions together. *See Miller v. Herman*, 600 F.3d 726, 733 (7th Cir. 2010) (holding that there was "no problem construing the motion [to dismiss] as one for summary judgment" where the plaintiff "responded to the motions" framed in the alternative "collectively and universally"). Moreover, Stevens submitted a Local Rule 56.1 statement of facts in response to USCIS's statement of facts. *See Thompson v. Cope*, 900 F.3d 414, 425–26 (7th Cir. 2018) (holding that Rule 12(d)'s requirement was satisfied where "the defendants submitted evidence to support their motion" and "the plaintiffs responded and submitted evidence in return"). Because all parties had a reasonable opportunity to present all the pertinent materials, the Court converts USCIS's motion to dismiss to a motion for summary judgment.

Summary judgment is appropriate if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Martinsville Corral, Inc. v. Soc'y Ins.*, 910 F.3d 996, 998 (7th Cir. 2018). The Court views the evidence and draws all reasonable inferences in the nonmoving party's favor. *Cervantes v. Ardagh Grp.*, 914 F.3d 560, 564 (7th Cir. 2019). If the nonmoving party fails to establish the existence of an element essential to its case on which it would bear the burden of proof at trial, summary judgment must be granted to the moving party. *Id.*

USCIS contends that it responded to Stevens's FOIA request regarding Charpentier on August 29, 2022, denying her request and notifying her of her right to file an administrative appeal within 90 days. Because Stevens did not appeal the denial, USCIS argues that she failed to exhaust administrative remedies. USCIS further contends that her request was not proper under FOIA regulations in any event and

6

therefore did not obligate USCIS to search for or produce any records in the first place. The Court addresses each contention in turn.

"Exhaustion of administrative remedies is a prerequisite to filing a FOIA suit . . . ." *Hoeller v. SSA*, 670 F. App'x 413, 414 (7th Cir. 2016).[3] If a plaintiff fails to "allege that he exhausted his remedies under FOIA," then "he states no claim upon which relief can be granted." *Scherer v. Balkema*, 840 F.2d 437, 443 (7th Cir. 1988); *see also Almy v. U.S. Dep't of Just.*, No. 96-1207, 1997 WL 267884, at *3 (7th Cir. 1997) ("[Plaintiff]'s failure to exhaust his administrative remedies bars judicial review of these claims."). If an agency fails to respond to the plaintiff's FOIA request within the statutory time limits, however, the plaintiff is deemed to have constructively exhausted her administrative remedies. *See* 5 U.S.C. § 552(a)(6)(C)(i) ("Any person making a request to any agency for records . . . shall be deemed to have exhausted his administrative remedies with respect to such request if the agency fails to comply with the applicable time limit provisions of this paragraph."). "[T]his option lasts only up to the point that an agency actually responds." *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 61 (D.C. Cir. 1990). "[I]f the agency responds to a FOIA request before the requester files suit, the ten-day constructive exhaustion provision in 5 U.S.C. § 552(a)(6)(C) no longer applies; actual exhaustion of administrative remedies is required." *Id.*

Stevens submits that she received USCIS's denial "only after the lawsuit was filed . . . as part of [its] evidentiary submission," noting that the address on the denial letter omitted her name and contained an incomplete address. Pl.'s Resp. Mem. at 7.

---

[3] Stevens contends that administrative exhaustion is not jurisdictional and is an affirmative defense. USCIS does not dispute either point. Neither of these points has any consequence to USCIS's motion for summary judgment.

7

This is sufficient to create a genuine factual dispute regarding whether Stevens received USCIS's denial letter.  Viewing the evidence in her favor, Stevens would be entitled to constructive exhaustion if she submitted a proper FOIA request.  *See Kleinert v. Bureau of Land Mgmt.*, No. CV 14-1506 (JDB), 2015 WL 12964655, at *1 (D.D.C. Apr. 17, 2015) ("As the cases make clear, if a plaintiff did not *receive* a response to his FOIA request within the statutory period, then by operation of statute, he constructively exhausted his administrative requirements.") (alterations accepted) (internal quotation marks omitted); *Jones v. U.S. Dep't of Just.*, 576 F. Supp. 2d 64, 67 (D.D.C. 2008) (holding that there was a genuine dispute of material fact where the plaintiff's "verified complaint and his subsequent declaration . . . each state[d] that [he] did not receive a response to his FOIA request").

Stevens cannot have constructively exhausted her administrative remedies, however, if she did not submit a proper FOIA request in the first place.  FOIA provides that agencies must promptly provide records in response to any request "which (i) reasonably describes such records and (ii) is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed."  5 U.S.C. § 552(a)(3)(A).  "An agency's obligations commence upon receipt of a *valid* request; failure to file a perfected request therefore constitutes failure to exhaust administrative remedies."  *Goldstein v. IRS*, 279 F. Supp. 3d 170, 176 (D.D.C. 2017) (internal quotation marks omitted); *see also Taylor v. U.S. Treasury Dep't*, 127 F.3d 470, 474 (5th Cir. 1997) (holding in the similar Privacy Act context that a "failure to present a request that comported with applicable Privacy Act regulations constitute[s] a failure to exhaust administrative remedies because, as a technical matter, the [agency] never

denied a properly framed request for access to records"). "[A] decision to the contrary would create a substantial loophole to the requirement that a FOIA or Privacy Act requester perfect his or her submission before bringing a challenge." *Sai v. Transp. Sec. Admin.*, No. CV 14-403 (RDM), 2015 WL 13889866, at *4 (D.D.C. Aug. 19, 2015).

USCIS contends that Stevens's request failed to comply with FOIA regulations in three ways: 1) the privacy waiver contained only Charpentier's electronic signature, 2) the verification-of-identity form omitted Charpentier's current address, and 3) Stevens's request was overly broad. Because the Court agrees with USCIS that Stevens's request was deficient for omitting Charpentier's current address, the Court need not reach the other two reasons.

Stevens's FOIA request failed to include Charpentier's current address. Under a provision of DHS's FOIA regulations, "if a third party requests records about a subject individual, the third party requester must provide verification of the subject individual's identity in the manner provided in paragraph (e) of this section." 6 CFR § 5.21(g). Paragraph (e), in turn, requires the individual's "full name, *current address*, date and place of birth, and country of citizenship or residency." 6 CFR § 5.21(e) (emphasis added). Because Stevens's FOIA request failed to comply with the applicable FOIA regulations, Stevens failed to exhaust administrative remedies. *See Sai*, 2015 WL 13889866, at *4 ("Only a valid request . . . can trigger an agency's FOIA obligations, and here, the TSA determined that Plaintiff failed to satisfy the verification requirement and, accordingly, never submitted a valid request.") (citation omitted) (internal quotation marks omitted).

Stevens contends that USCIS cannot rely on "*post hoc* rationalizations" because

9

"judicial review of agency action is limited to the grounds that the agency invoked when it took the action." Pl.'s Resp. Mem. at 8 (quoting *Michigan v. EPA*, 576 U.S. 743, 758 (2015)). But *Michigan* invoked the *Chenery* doctrine in reviewing an agency's interpretation of a statute it administered. *Michigan*, 576 U.S. at 758. Courts have declined to apply the *Chenery* doctrine in the FOIA context because courts review an agency's decision to withhold documents in response to a FOIA request *de novo* under 5 U.S.C. § 552(a)(4)(B). *See Young v. CIA*, 972 F.2d 536, 538–39 (4th Cir. 1992) (holding that "an agency does not waive FOIA exemptions by not raising them during the administrative process" because "FOIA provides for *de novo* judicial review," "agencies do not litigate FOIA requests and therefore do not create a record suitable for review[,]" and "plaintiffs may bring suit even before the agency determines whether to grant a request if the agency has not acted within ten days of the request"); *Louis v. U.S. Dep't of Lab.*, 419 F.3d 970, 978 (9th Cir. 2005) (holding in the similar context of the Privacy Act that "judicial review is not limited to the justification for withholding of documents originally relied upon by the agency"); *Greenpeace, Inc. v. Dep't of Homeland Sec.*, 311 F. Supp. 3d 110, 125 (D.D.C. 2018) ("[A]n agency is free to advance new justifications for withholding documents under FOIA once it comes to court."). And, in any event, the Court notes that USCIS's denial letter states that "[i]n order to obtain these records your request must demonstrate . . . [w]ritten authorization from the individual(s) permitting disclosure of the records to you, which consists of a written statement from the records' subject(s) stating his/her full name, *current address*, and date and place of birth." Def.'s LR 56.1 SOF, Attach. E at 1 (emphasis added).

Stevens also contends that administrative exhaustion is not mandatory, citing

10

*McCarthy v. Madigan*, 503 U.S. 140, 146 (1992), for the proposition that the Court "may exercise its discretion and excuse" her failure to exhaust administrative remedies. Pl.'s Resp. Mem. at 5. In *McCarthy*, the Supreme Court held that a federal prisoner need not exhaust his administrative remedies before initiating a *Bivens* suit because Congress had not required it. *See McCarthy*, 503 U.S. at 147–152. Here, however, FOIA requires administrative exhaustion. *See* 5 U.S.C. § 552(a)(6)(A); 6 C.F.R. § 5.8(e); *Almy*, 1997 WL 267884, at *3 ("The FOIA requires exhaustion of administrative remedies before the filing of a lawsuit."). Stevens does not cite any case excusing the failure to exhaust administrative remedies in the FOIA context.

Lastly, Stevens contends that "non-citizens in removal proceedings have a statutory right to access their A-files." Pl.'s Resp. Mem. at 8 (citing *Dent v. Holder*, 627 F.3d 365 (9th Cir. 2010)). But Stevens does not explain what bearing this proposition has on USCIS's motion. The fact that Charpentier may have a right to his own A-file in removal proceedings does not necessarily entitle Stevens to obtain the file without submitting a proper FOIA request verifying Charpentier's identity.

In sum, the Court grants USCIS's motion for summary judgment because Stevens failed to exhaust administrative remedies.

**B.      Stevens's preliminary injunction motion regarding ICE**

Stevens seeks a preliminary injunction requiring ICE to produce documents responsive to her FOIA request for Charpentier within 30 days. "As a threshold matter, a party seeking a preliminary injunction must demonstrate (1) some likelihood of succeeding on the merits, and (2) that it has no adequate remedy at law and will suffer irreparable harm if preliminary relief is denied." *Int'l Ass'n of Fire Fighters, Loc. 365 v.*

*City of E. Chicago*, 56 F.4th 437, 446 (7th Cir. 2022) (internal quotation marks omitted). "If the movant makes this showing, the district court must then consider two additional factors: the irreparable harm the non-moving party will suffer if preliminary relief is granted, balancing that harm against the irreparable harm to the moving party if relief is denied[,] and the public interest, meaning the consequences of granting or denying the injunction to non-parties." *Id.* (internal quotation marks omitted).

ICE first contends that Stevens's motion should be denied as moot. If "the government produces all the documents a plaintiff requests, her claim for relief under the FOIA becomes moot." *Walsh v. U.S. Dep't of Veterans Affs.*, 400 F.3d 535, 536 (7th Cir. 2005) (quoting *Anderson v. U.S. Dep't of Health & Hum. Servs.*, 3 F.3d 1383, 1384 (10th Cir.1993)). "[B]ut an action is not moot simply because an agency has decided that its partial disclosures are enough." *Furrow v. Fed. Bureau of Prisons*, 420 F. App'x 607, 610 (7th Cir. 2011). In this case, ICE has not produced all of the documents Stevens requested. Rather, ICE has proposed a drawn-out schedule for producing the documents, and Stevens's preliminary injunction motion seeks a court order requiring a faster production schedule than ICE has proposed. The speed of ICE's document production is a live issue, and Stevens's motion is accordingly not moot.

1. **Irreparable harm and inadequacy of legal remedies**

"The finding of irreparable harm to the plaintiff if the injunction is denied is a threshold requirement for granting a preliminary injunction." *Foodcomm Int'l v. Barry*, 328 F.3d 300, 304 (7th Cir. 2003). "Harm is irreparable if legal remedies are inadequate to cure it." *Life Spine, Inc. v. Aegis Spine, Inc.*, 8 F.4th 531, 545 (7th Cir. 2021).

Stevens contends that she submitted a proper expedited FOIA request. Under 5 U.S.C. § 552(a)(6)(E)(i), agencies must allow for expedited processing in cases of "compelling need." "[C]ompelling need" means "that a failure to obtain requested records on an expedited basis . . . could reasonably be expected to pose an imminent threat to the life or physical safety of an individual" or "with respect to a request made by a person primarily engaged in disseminating information, urgency to inform the public concerning actual or alleged Federal Government activity." 5 U.S.C. § 552(a)(6)(E)(v). Stevens argues that both standards are met in this case. She asserts that the requested documents will "help mitigate the imminent threats to life and safety to an individual with a putative claim to derivative citizenship who is an imminent risk of being deported to a country in which he would be left homeless, destitute, and at substantial risk of violence." Pl.'s Opening Mem. at 15. She also explains that her research has been "widely covered in the media, including the New Yorker magazine, the New York Times, and NPR," and "a major news organization has indicated they will be reporting on [her] findings about the deportation order for Mr. Charpentier." Compl. ¶ 48.

Rather than contest that this standard is met, ICE argues that "[d]enying the motion for preliminary injunction will not change [ICE's proposed] timeline" for producing documents and that "the court can continue to supervise ICE's production of records just as the court does in any FOIA case." Defs.' Resp. Mem. at 10. But ICE itself notes that it is applying its "normal processing rate" for FOIA cases in litigation, rather than an expedited processing rate. Def.'s Status Rep. ¶ 7 (dkt. no. 27). "To afford the plaintiff less than expedited judicial review would all but guarantee that the plaintiff would not receive expedited agency review of its FOIA request." *Washington Post v. Dep't of*

13

*Homeland Sec.*, 459 F. Supp. 2d 61, 66 (D.D.C. 2006) ("[I]t seems the exceptional case where a plaintiff can litigate his case via an ordinary time-table for federal litigation and, if victorious, still attain 'expedited review' of his FOIA request."); *see also Elec. Priv. Info. Ctr. v. Dep't of Just.*, 416 F. Supp. 2d 30, 41 (D.D.C. 2006) ("Unless the requests are processed without delay, EPIC's right to expedition will be lost."). To put it another way, adopting ICE's approach would write the requirement for expedited processing out of the statute.

Stevens has sufficiently shown irreparable harm for the same reasons she asserts a "compelling need" for the documents. Stevens explains that she needs the requested documents urgently to help Charpentier in his "appeal and request for reopening [his] underlying removal proceedings." Pl.'s Opening Mem. at 12. Moreover, "[a]s a member of the news media and an expert on the topic," she needs the documents to timely inform the public "on DHS's continuing failure to maintain accurate records . . . and to assure that United States citizens are not unlawfully detained and deported." *Id.* at 11. This is sufficient to demonstrate that a failure to receive the documents on an expedited basis will cause Stevens irreparable harm. *See Am. Immigr. Council v. U.S. Dep't of Homeland Sec.*, 470 F. Supp. 3d 32, 38 (D.D.C. 2020) ("Plaintiff seeks the requested information to inform the public about ICE's response to the COVID-19 pandemic and the impact of that response on the thousands of immigrant detainees who are presently in ICE custody. A delay in the release of the requested information would cause irreparable harm."); *Am. Oversight v. U.S. Dep't of State*, 414 F. Supp. 3d 182, 186 (D.D.C. 2019) ("When time is necessarily of the essence, the harm in agency delay is more likely to be irreparable.") (internal quotation marks

omitted); *Sai v. Transp. Sec. Admin.*, 54 F. Supp. 3d 5, 10 (D.D.C. 2014) ("To be sure, a movant's general interest in timely processing of FOIA requests may be sufficient to establish irreparable harm if the information sought is time-sensitive.") (internal quotation marks omitted).

In response, ICE only argues that "Stevens lacks standing to assert irreparable harm to Charpentier in his removal proceedings . . . because he is not a party in this case and [is] not represented by Stevens." Defs.' Resp. Mem. at 10. ICE does not provide any legal citation supporting this proposition. The Court does not interpret this to be a challenge to Stevens's Article III standing, as Stevens unquestionably has standing to bring her FOIA claims. *See Zivotofsky ex rel. Ari Z. v. Sec'y of State*, 444 F.3d 614, 617 (D.C. Cir. 2006) ("Anyone whose request for specific information has been denied has standing to bring an action; the requester's circumstances—why he wants the information, what he plans to do with it, what harm he suffered from the failure to disclose—are irrelevant to his standing."). To the extent this argument is meant to challenge Stevens's prudential standing to assert Charpentier's legal rights and interests, the Court considers it forfeited because ICE has made no effort to explain the point, let alone develop it. *See RK Co. v. See*, 622 F.3d 846, 851 (7th Cir. 2010) ("Prudential standing issues are subject to waiver . . . ."); *Rock Hemp Corp. v. Dunn*, 51 F.4th 693, 704 (7th Cir. 2022) ("Seventh Circuit precedent is clear that perfunctory and undeveloped arguments, as well as arguments that are unsupported by pertinent authority, are waived.") (internal quotation marks omitted). And, in any event, a delay would also cause irreparable harm to the public interest in Stevens's own research on this time-sensitive issue.

The Court concludes that Stevens has sufficiently shown that she would suffer irreparable harm from a delay in ICE's production of documents responsive to her FOIA request. "Because it is not practicable to calculate damages to remedy this kind of harm," Stevens has also shown that she lacks an adequate legal remedy. *Foodcomm*, 328 F.3d at 304.

### 2. Likelihood of success on the merits

Stevens contends that she is likely to succeed on the merits because ICE failed to either grant or deny her request for expedited processing within the ten-day statutory deadline and therefore the Court must ensure that ICE provides the requested documents "as soon as practicable." 5 U.S.C. § 552(a)(6)(E)(iii). ICE agrees, and as stated above, it does not contest that Stevens submitted a proper expedited request. Stevens "readily acknowledges" that missing the determination deadline "does not require actual *production* of the records," but rather provides the Court authority to supervise ICE's progress responding to the request. Pl.'s Suppl. Mem. at 5; *see Payne Enters., Inc. v. United States*, 837 F.2d 486, 494 (D.C. Cir. 1988) ("The FOIA imposes no limits on courts' equitable powers in enforcing its terms."). Therefore, the central dispute is whether ICE's proposed schedule produces the documents "as soon as practicable." 5 U.S.C. § 552(a)(6)(E)(iii). In this regard, "courts have reject[ed] the notion that the decision of practicability is to be determined solely by the agency. Instead, courts have the authority, and perhaps the obligation, to scrutinize closely agency delay." *New York Times Co. v. Dep't of Def.*, No. 19-CV-9821 (VSB), 2022 WL 1547989, at *1 (S.D.N.Y. Apr. 21, 2022) (citation omitted) (internal quotation marks omitted).

16

ICE cites *White v. United States Department of Justice*, 16 F.4th 539 (7th Cir. 2021), *cert. dismissed sub nom. White v. Department of Justice*, 143 S. Ct. 438 (2022), for the proposition that the Seventh Circuit "explicitly blessed" its proposed "500-pages-per-month schedule." Def.'s Suppl. Mem. at 5. But in *White*, the Seventh Circuit analyzed a *non*-expedited FOIA request and held that a 500-pages-per-month schedule was releasing the records "promptly" under the provision relating to non-expedited requests. *White*, 16 F.4th at 544 (quoting 5 U.S.C. § 552(a)(3)(A)). The Seventh Circuit observed that a 500-pages-per-month schedule "promotes efficiency and fairness by ensuring that the biggest requests do not crowd out smaller ones *unless extraordinary circumstances warrant expedited production*." *Id.* (emphasis added). In affirming the denial of a preliminary injunction seeking immediate release of the documents, the Seventh Circuit explained that the FBI's 500-pages-per-month policy "did not warrant an injunction" because it did "not prohibit all requests for immediate release of large amounts of documents" given that FOIA "allow[s] for expedited production." *White v. FBI*, 851 F. App'x 624, 628 (7th Cir. 2021).

Unlike in *White*, ICE does not dispute that Stevens has requested and met the standard for expedited production. This supports the proposition that a faster production schedule than the 500-pages-per-month policy approved in *White* is necessary in this case. Indeed, courts have ordered faster processing rates for expedited FOIA requests. *See LA Times Commc'ns LLC v. U.S. Dep't of Homeland Sec., et al.*, No. 220CV10911FLAMRWX, 2022 WL 18932816, at *1 (C.D. Cal. Mar. 7, 2022) (denying the defendants' motion to reconsider the court's ordered processing rate of 3,000 pages per month for an expedited FOIA request); *Open Soc'y Just. Initiative v.*

*CIA*, 399 F. Supp. 3d 161, 168 (S.D.N.Y. 2019) (holding that "a 5,000-page-per-month review pace" was "'practicable' within the meaning of FOIA"); *Boundaoui v. FBI*, No. 17 C 4782, 2020 WL 5658704, at *7 (N.D. Ill. Sept. 23, 2020) (ordering the defendants to process the plaintiff's expedited FOIA request "at a rate of 1,000 pages per month").

Thus, Stevens is likely to prevail on the merits of her claim that "as soon as practicable" under 5 U.S.C. § 552(a)(6)(E)(iii) requires a processing rate faster than 500 pages per month in this case.

### 3. Balance of hardships and the public interest

Because Stevens has met the threshold requirements for a preliminary injunction, the Court proceeds to consider the public interest and balance the harm Stevens would suffer if the injunction is denied against the harm ICE would suffer if the injunction is granted. These "factors merge" when "the government is the party sought to be enjoined." *MediNatura, Inc. v. FDA*, 998 F.3d 931, 945 (D.C. Cir. 2021) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)).

The public interest "is best assessed through the statutory provisions passed by the public's elected representatives"—namely, "the public's interest in expedited processing" of Stevens's request "pursuant to the statutory provision mandating expedited treatment." *Washington Post*, 459 F. Supp. 2d at 76; *see also Jacksonville Port Auth. v. Adams*, 556 F.2d 52, 59 (D.C.Cir.1977) ("[T]here is an overriding public interest . . . in the general importance of an agency's faithful adherence to its statutory mandate.").

ICE contends that a processing rate faster than 500 pages per month will harm the public interest because it will divert resources from other pending FOIA requests or

18

risk inadvertent disclosure of exempted documents. "It is the duty of the court to uphold FOIA by striking a proper balance between plaintiffs' right to receive information on government activity in a timely manner and government concerns, including agency capabilities and the heightened clearance process for issues of national security." *Open Soc'y Just. Initiative*, 399 F. Supp. 3d at 166 (internal quotation marks omitted). Although ICE argues that it has received a "dramatic increase in FOIA requests in recent years" and thus "cannot practicably process records any faster," Def.'s Suppl. Mem. at 2, ICE does not respond to Stevens's contention that ICE could have met its FOIA obligations by submitting appropriate budget requests. And it is hard to swallow the proposition that an agency may, by its decisions on how to allocate resources, effectively make FOIA's expedited processing provision a dead letter. ICE accordingly fails to persuade the Court that granting a preliminary injunction in this case will harm the public interest. *See Open Soc'y Just. Initiative*, 399 F. Supp. 3d at 168–69 ("DOD's decision to thus far deny itself the technologic capacity to speed its review cannot dictate the Court's assessment of the review pace that is 'practicable' under FOIA."). Similarly unpersuasive is ICE's vague assertion that any processing rate faster than 500 pages per month risks disclosure of exempted documents. *See Elec. Priv. Info. Ctr.*, 416 F. Supp. 2d at 42 ("Vague suggestions that inadvertent release of exempted documents *might* occur are insufficient to outweigh the very tangible benefits that FOIA seeks to further—government openness and accountability.").

      Having determined that a preliminary injunction is in the public interest, the Court next balances the hardships. As explained above, Stevens will face irreparable harm in the absence of an injunction, which outweighs the harm ICE will face if required to

process more than 500 pages per month. That said, Stevens's original request for all 13,640 records to be released in 30 days appears impracticable even if one discounts ICE's resource constraints. In her supplemental brief, Stevens does not provide an exact processing rate to counter ICE's proposed 500 pages per month, and instead just requests "a significantly faster rate." Pl.'s Suppl. Mem. at 10. The Court concludes that a 1,500-page-per-month processing rate, "which still contemplates a protracted period of review and production" of roughly nine months to produce all the records currently identified by ICE, "appropriately balances agency constraints" and "FOIA's aims to provide timely information on government activities to the public," given that Stevens's request met the statutory requirements for expedited processing. *Open Soc'y Just. Initiative*, 399 F. Supp. 3d at 167–68 (noting that "[i]mportant to the Court's assessments at all times has been the anticipated duration of the State Department's review," which was initially just over twelve months); *LA Times Commc'ns*, 2022 WL 18932816, at *1 (reaffirming a review duration of seven months).

## Conclusion

For the reasons stated above, the Court grants Defendant USCIS's summary judgment motion [12] and grants in part plaintiff's motion for a preliminary injunction [3]. ICE is ordered to process 1,500 pages of documents responsive to Stevens's FOIA request per month until production is complete. The parties are directed to confer and provide the Court within two business days a draft preliminary injunction order for entry (in Word format, to the undersigned judge's proposed order e-mail address).

_____
MATTHEW F. KENNELLY
United States District Judge

Date: March 30, 2023