UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JACQUELINE STEVENS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 22 C 5072 |
| v. | ) | |
| | ) | Judge Kennelly |
| UNITED STATES DEPARTMENT OF | ) | |
| HEALTH AND HUMAN SERVICES, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**CBP'S L.R. 56.1 STATEMENT OF**
**MATERIAL FACTS IN SUPPORT OF SUMMARY JUDGMENT**

Defendant United States Customs and Border Protection, by Morris Pasqual, Acting United States Attorney for the Northern District of Illinois, submits the following statement of material facts as to which there is no genuine issue pursuant to Local Rule 56.1 of the United States District Court for the Northern District of Illinois.

**Jurisdiction and Venue**

1. This is an action brought under the Freedom of Information Act (FOIA), and the court has subject matter jurisdiction under 5 U.S.C. § 552 and 28 U.S.C. § 1331. Answer ¶ 3.

2. Venue is proper in this district because plaintiff Jacqueline Stevens resides in this district. Answer ¶ 4.

**Parties**

3. Plaintiff Jacqueline Stevens is a professor at Northwestern University. Dkt. 15 (Answer) ¶ 5.

4. Defendant Customs and Border Protection, or CBP, is a component of the federal government from whom Stevens has sought information via FOIA. Answer ¶¶ 17, 25.

**CBP's FOIA Division**

5.     CBP's FOIA division determines which CBP systems, databases, and offices are likely to contain records responsive to a particular FOIA request.  Ex. A (Howard Decl.) ¶ 7.

6.     The FOIA division assesses where responsive records are likely to be located based on the nature of the requested records, the FOIA division's familiarity with the types and locations of the requested records, and discussions with knowledgeable CBP personnel.  Ex. A (Howard Decl.) ¶ 7.

7.     To find responsive records, the FOIA division searches CBP's systems and databases and requests any identified CBP offices to gather any potentially responsive records. Ex. A (Howard Decl.) ¶ 7.

8.     The FOIA division reviews all potentially responsive records for responsiveness and redacts as appropriate.  Ex. A (Howard Decl.) ¶ 7.

**First May 2022 Hoang Request**

9.     On May 18, 2022, Stevens submitted a FOIA request to CBP seeking "all system records and other items maintained, produced or distributed by CBP pertaining to Toan Hoang. His 'alien number' is [redacted].  He was born in Vietnam on [redacted].  Information responsive to this request includes but is not limited to: (1) all memoranda, notes, reports, email messages, and all other system records or communications associated with or pertaining to Mr. Hoang generated or received by CBP and; (2) screen shots of all databases likely to have responsive records.  The time frame of this request is March 29, 1977 to the present."  Ex. A (Howard Decl.) ¶ 9.

10.     Stevens provided a signed authorization form with the request.  Ex. A (Howard Decl.) ¶ 10.

11.     On June 6, 2022, CBP acknowledged receipt of the request and assigned the request tracking number CBP-2022-080126.  Ex. A (Howard Decl.) ¶ 11.

12.     CBP's FOIA staff evaluated the request and determined that its E3/Enforce system and its TECS platform were the only CBP systems reasonably likely to contain responsive information.  Ex. A (Howard Decl.) ¶ 12.

13.     The E3 portal is used to collect and transmit law-enforcement-activity-related data to ICE's Enforcement Integrated Database and DHS's Automated Biometric Identification System.  Ex. A (Howard Decl.) ¶ 13.  CBP uses E3 to collect and transmit biographic, encounter, and biometric data for identification and verification of individuals encountered at the border and checkpoints in pursuit of CBP's law enforcement and immigration mission.  *Id*.  If a person crosses between official ports of entry and is encountered by the U.S. Border Patrol, E3 will likely have a record of it.  *Id*.

14.     CBP FOIA staff queried the E3/Enforce system for responsive records using Hoang's name, date of birth, and A-file number and did not locate any responsive records.  Ex. A (Howard Decl.) ¶ 14.

15.     TECS is an information-sharing platform that allows users to access different databases including records regarding temporary and permanent enforcement, inspection, and operational records relevant to CBP's anti-terrorism and law enforcement mission.  Ex. A (Howard Decl.) ¶ 15.  TECs is the principal system used by officers at the border to assist with screening and determining travelers' admissibility, and it is reasonably likely to contain records of travelers who are encountered at the United States' ports of entry.  *Id*.  If CBP processes a person for admissibility at a port of entry, TECS will likely have a record of it.  *Id*.

16.     CBP FOIA staff queried the TECS platform for responsive records using Hoang's name, date of birth, and A-file number and did not locate any responsive records.  Ex. A (Howard Decl.) ¶ 16.

17.     On October 26, 2022, CBP sent Stevens a final response letter informing her that it had found no responsive records.  Ex. A (Howard Decl.) ¶ 17.  The letter notified Stevens of her right to appeal and also informed her that records of apprehensions made by Border Patrol before 2000 might be available in the A-file maintained by USCIS.  *Id.*

18.     CBP's search was reasonably calculated to uncover all potentially responsive records, and CBP searched all the systems and databases likely to contain responsive records.  Ex. A (Howard Decl.) ¶¶ 22, 34.

**Second May 2022 Hoang Request**

19.     Stevens sent CBP a second request on May 18, 2022, seeking: "All system records and other items maintained, produced or distribute by CBP pertaining to Toan Hoang.  His 'alien number' is [redacted].  He was born in Vietnam on [redacted].  Information responsive to this request includes but is not limited to: (1) all memoranda, notes, reports, email messages, and all other system records or communications associated with or pertaining to Mr. Hoang generated or received by CBP and; (2) screen shots of all databases likely to have responsive records.  The time frame of this request is March 29, 1977 to the present."  Ex. A (Howard Decl.) ¶ 18.

20.     Stevens did not provide a signed third-party authorization form with the second Hoang request.  Ex. A (Howard Decl.) ¶ 20.

21.     On May 18, 2022, the same day CBP received the request, CBP acknowledged the request and assigned it tracking number CBP-2022-080265.  Ex. A (Howard Decl.) ¶ 19.

22.     On May 20, 2022, CBP sent Stevens a letter informing her that it was closing the request as insufficient because it did not include an authorization from Hoang and that, if she wished to receive records on Hoang, she should resubmit her request with a signed authorization form.  Ex. A (Howard Decl.) ¶ 21.

### December 2019 Underwood Request

23.     On December 2, 2019, CBP's FOIA office received a memo from DHS headquarters transferring to CBP a FOIA request and requesting that CBP respond directly to the requestor.  Ex. A (Howard Decl.) ¶ 23.

24.     The request in question had been submitted by Stevens, seeking records from January 1, 2017 to the present:

> 1) all communications and related materials created, received, or maintained by the Department of Homeland Security to which Rep. Lauren Underwood (D-IL) or any member of her staff [*sic*].  This includes but is not limited to all email, text messages, notes, reports, memorandums, proposed bill texts, and bill evaluations.  In a floor speech of 9/26/2019 Rep. Underwood stated she received information from the 'Department of Homeland Security' indicating a request for an integrated Electronic Health Records System she referenced as 'EHR.'  She refers to this in her remarks on HR 3525 as a 'direct ask from medical officers at the Department of Homeland Security.'

> 2) DHS communications and related materials created by or received from other components of DHS or the Department of Health and Human Services Office of Refugee Resettlement about the use of Electronic Health Records systems already in place as well as the establishment of an EHR for the use by offices of CBP.

> 3) Information on meetings and communications with private individuals, including but not limited to lobbyists or company officials related to past, current, or potential "enterprise" or other information technologies for collecting, coordinating, or maintaining health records data for those encountered or detained by DHS or any component of DHS.  Technical reports, email, text messages, or other communications with the private sector tied to past, current, or potential contracts tied to EHR systems.

Ex. A (Howard Decl.) ¶ 24.

25.     On December 12, 2019, CBP acknowledged receipt of the transferred request and assigned it tracking number CBP-2020-019380.  Ex. A (Howard Decl.) ¶ 25.

26.     With respect to part (1) of the request—which asked for records of communications with Representative Underwood or her staff—CBP's FOIA staff determined that the office reasonably likely to have responsive records, should any exist, was CBP's Office of Congressional Affairs, because CBP's policy is that official communication with members of Congress should be routed through that office.  Ex. A (Howard Decl.) ¶ 26.

27.     Because Representative Underwood did not begin serving in Congress until January 3, 2019, the Office of Congressional Affairs used that date as the beginning of the search rather than the requested date of January 1, 2017.  Ex. A (Howard Decl.) ¶ 29.

28.     The Office of Congressional Affairs' directors searched their email inboxes for communication with Representative Underwood or her staff about electronic health records systems, using the following search terms: "Underwood," "Lauren Underwood," "EHR," "Health Record," and "Electronic health record."  Ex. A (Howard Decl.) ¶ 29.

29.     The search yielded no responsive records.  Ex. A (Howard Decl.) ¶ 29.

30.     With respect to part (2) of the request, CBP's FOIA staff determined that the request did not seek CBP records.  Ex. A (Howard Decl.) ¶ 26.

31.     With respect to part (3) of the request—which asked for records regarding meetings and communications with private individuals related to technology for collecting or maintaining "health records data" of people encountered or detained by DHS—CBP's FOIA staff determined that the office reasonably likely to have responsive records, should any exist, was CBP's

6

procurement office, because any work with an outside person or company to develop the data described in the FOIA request would have to go through that office. Ex. A (Howard Decl.) ¶ 26.

32.    The procurement office identified the employee who serves as the point of contact for electronic medical records, and the employee confirmed, per her clear recollection, that she has never had any verbal or written correspondence with private individuals about collecting, coordinating, or maintaining health record data for people encountered by DHS or any DHS component such as CBP. Ex. A (Howard Decl.) ¶ 28.

33.    CBP issued its first response on July 14, 2023, informing Stevens that it had found no responsive records. Ex. A (Howard Decl.) ¶ 30.

34.    Subsequently, the Office of Congressional Affairs informed CBP's FOIA office that its "OCATaskings" email box, which had not been previously searched, was a location that was reasonably likely to contain responsive records. Ex. A (Howard Decl.) ¶ 31.

35.    The Office of Congressional Affairs' staff searched the "OCATaskings" inbox for communications with Representative Underwood or her staff about electronic health records systems, using the search terms "Underwood," "Lauren Underwood," "EHR," "Health Record," and "Electronic health record." Ex. A (Howard Decl.) ¶ 31.

36.    The search yielded 23 pages, which were sent to CBP's FOIA office. Ex. A (Howard Decl.) ¶ 31.

37.    CBP's FOIA office determined that 3 of the 23 pages were not responsive to Stevens's FOIA request. Ex. A (Howard Decl.) ¶ 32.

38.    CBP's FOIA office applied redactions to 7 of the responsive pages under FOIA Exemptions 6 and 7(C) and withheld in full the remaining 13 pages under FOIA Exemptions 5, 6, and 7(C). Ex. A (Howard Decl.) ¶ 32.

39.    CBP issued its final response to Stevens on October 31, 2023, producing seven pages of records with redactions mentioned above.  Ex. A (Howard Decl.) ¶ 33.

40.    The search was reasonably calculated to uncover all potentially responsive records, and all of CBP's component offices likely to contain responsive records were searched.  Ex. A (Howard Decl.) ¶ 34.

### CBP's Withholdings

41.    As mentioned, CBP withheld information—by redacting information on the 7 pages it produced and by withholding 13 pages in full—under FOIA Exemptions 5, 6, and 7(C). Ex. A (Howard Decl.) ¶ 32.

42.    CBP has prepared a *Vaughn* index setting forth the bases for its withholdings.  Ex. A (Howard Decl.) ¶ 35; *see also* CBP's *Vaughn* index (Exhibit 1 to the Howard Decl.).

43.    CBP invoked Exemption 5's deliberative process privilege to protect its decision-making process, applying the exemption to documents in draft form that had not been finalized and that therefore reflected initial opinions and recommendations before agency decisions were made.  Ex. A (Howard Decl.) ¶ 37.

44.    CBP also applied Exemption 5's attorney-client privilege to documents containing attorney advice about pending litigation and other legal matters.  Ex. A (Howard Decl.) ¶ 37.

45.    Specifically, CBP withheld in its entirety a document titled "FY 2022 Budget Hearing Prep," which is a draft of a briefing memo whose purpose was to prepare the Secretary of Homeland Security for a budget hearing.  *Vaughn* index entry number 4.  The draft contains edits and recommendations that were proposed during the deliberative process.  *Id*.

46.    CBP also withheld in its entirety a document titled "House Appropriations Subcommittee on Homeland Security Hearing on the Fiscal Year 2023 Budget Request for the

Department of Homeland Security," which is a draft of a briefing memo whose purpose was to prepare the Secretary of Homeland Security for a House Subcommittee hearing. *Vaughn* index entry number 5. The draft contains edits and recommendations that were proposed during the deliberative process. *Id*.

47. Finally, CBP withheld in its entirety a draft document titled "Meeting with Rep. Lauren Underwood (IL-14), December 17, 2021," which is a draft of a briefing memo whose purpose was to prepare the Secretary of Homeland Security for a meeting with Representative Underwood. *Vaughn* index entry number 6. The draft contained edits and comments with guidance from CBP attorneys. *Id*.

48. CBP invoked Exemption 6 to withhold CBP employees' and third-party individuals' identifying information. Ex. A (Howard Decl.) ¶ 39.

49. In withholding the names of such people, CBP did not redact their job titles. Ex. A (Howard Decl.) ¶ 39.

50. There is no public interest in the information CBP redacted under Exemption 6, because the information does not shed light on how CBP is performing its operations. Ex. A (Howard Decl.) ¶ 39.

51. Moreover, a strong privacy interest counsels against disclosing the information. Ex. A (Howard Decl.) ¶ 39.

52. CBP accordingly determined that disclosing the information would constitute an unwarranted invasion of privacy that is not outweighed by any public interest in the withheld material. Ex. A (Howard Decl.) ¶ 39.

53. CBP invoked Exemption 7(C) to protect records compiled for law enforcement purposes, the release of which would reasonably be expected to constitute an unwarranted invasion of personal privacy. Ex. A (Howard Decl.) ¶ __.

54. The Department of Homeland Security, of which CBP is a component, is the largest federal law enforcement agency. Ex. A (Howard Decl.) ¶ 41.

55. CBP facilitates trade and travel while enforcing laws and regulations on immigration, border security, and customs. Ex. A (Howard Decl.) ¶ 41.

56. Accordingly, the documents at issue constituted information and records compiled for law enforcement purposes. Ex. A (Howard Decl.) ¶ 41.

57. CBP invoked Exemption 7(C) to protect the names of government employees and third parties. Ex. A (Howard Decl.) ¶ 41.

58. A strong privacy interest counsels against disclosure of the material CBP withheld under Exemption 7(C), and there is no public interest in the information because it does not shed light on how CBP is performing its operations. Ex. A (Howard Decl.) ¶ 41.

59. In addition, disclosing the material withheld under Exemption 7(C) could unnecessarily subject an individual to harassment or harm by people who disagree with DHS's mission or conduct. Ex. A (Howard Decl.) ¶ 41.

60. CBP accordingly determined that disclosure of the information that it withheld under Exemption 7(C) would constitute an unwarranted invasion of personal privacy that was not outweighed by any public interest in the withheld material. Ex. A (Howard Decl.) ¶ 41.

### Segregability

61. All of the information CBP withheld either is exempt from disclosure under a FOIA exemption or is not reasonably segregable because either it is so intertwined with protected

material that segregation is impossible or its release would have revealed the underlying protected material. Ex. A (Howard Decl.) ¶ 42.

62.    CBP has conducted a line-by-line review of the records to confirm the propriety of the withholdings, to determine whether any discretionary waiver of an exemption is warranted, and to determine whether any additional segregable, non-exempt information can be released. Ex. A (Howard Decl.) ¶ 42.

63.    CBP has released all reasonably segregable material to Stevens. Ex. A (Howard Decl.) ¶ 42.

Respectfully submitted,

MORRIS PASQUAL
Acting United States Attorney

By: s/ Alex Hartzler
    ALEX HARTZLER
    Assistant United States Attorney
    219 South Dearborn Street
    Chicago, Illinois 60604
    (312) 886-1390
    alex.hartzler@usdoj.gov

# Exhibit A

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JACQUELINE STEVENS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 22 C 5072 |
| | ) | |
| U.S. CUSTOMS AND BORDER | ) | |
| PROTECTION, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## <u>DECLARATION OF PATRICK HOWARD</u>

I, Patrick Howard, do hereby declare and state as follows:

1.      I am a Branch Chief within the Freedom of Information Act Division (FOIA

Division) at U.S. Customs and Border Protection (CBP or Agency), U.S. Department of

Homeland Security (DHS).  I have been a Branch Chief in the FOIA Division since February 8,

2015.  In this capacity, I oversee a staff of Government Information Specialists (GIS), the

processing of requests for records submitted to CBP pursuant to FOIA, 5 U.S.C. § 552, the

Privacy Act (PA), 5 U.S.C. § 552a, and other activities conducted pursuant to applicable records

access provisions.

2.      I am familiar with CBP's procedures for responding to FOIA requests.  I provide

technical and administrative supervision and direction to a group of FOIA specialists in

processing FOIA requests and assist with FOIA/PA litigation matters, and I am personally

familiar with the processing of FOIA/PA responses, including, at times, by directly reviewing for

adequacy and compliance with federal laws and regulations.

3.     I am familiar with the two FOIA requests submitted to CBP by Jacqueline Stevens (Plaintiff) on May 18, 2022.

4.     I am also familiar with the FOIA request Plaintiff submitted to DHS, which was subsequently transferred by DHS to CBP on December 2, 2019.

5.     The statements I make in this Declaration are based upon my personal knowledge, which includes knowledge acquired through information furnished to me in the course of my official duties and Agency files that I personally reviewed in the course of my official duties.

6.     The purpose of this Declaration is to describe CBP's handling of Plaintiff's FOIA requests.  This Declaration summarizes the relevant facts and correspondence regarding Plaintiff's FOIA requests and explains the searches CBP conducted in responding to the requests.

7.     The FOIA Division determines which CBP systems, databases, and/or offices are likely to contain records responsive to the request.  Assessments of where responsive records are likely to be contained is based on a review of the content of the request, the nature of the records sought, the FOIA Division's familiarity with the types and locations of the records at issue, and discussions with knowledgeable Agency personnel.  The FOIA Division will then search CBP systems and databases and/or request identified CBP offices to gather any/all potentially responsive records. The FOIA Division reviews all gathered records for responsiveness, redacts the documents as appropriate, reviews redaction marks, and obtains final authorization for release prior to production. The FOIA Division will also consult with CBP personnel, other components within DHS, or agencies outside of DHS, as necessary, prior to release. CBP does not usually include documents located in the public domain, readily accessible to the requester, and/or known to be in the possession of the requester with its production.  FOIA may refer the requester to a public domain containing requested documents, if necessary.

**Plaintiff's Toan Hoang FOIA Requests**

8.      On May 18, 2022, CBP received two separate FOIA requests from Plaintiff requesting records on Toan Hoang.  The CBP FOIA Division instructs all FOIA requesters to provide a clear and detailed description of the records sought.

9.      Plaintiff's May 18 request sought the following records:

> "This letter constitutes a request under the Freedom of Information Act ("FOIA"), 5 U.S.C. §552, for all system records and other items maintained, produced or distributed by CBP pertaining to Toan Hoang. His 'alien number' is [redacted].  He was born in Vietnam on [redacted].  Information responsive to this request includes but is not limited to: (1) all memoranda, notes, reports, email messages, and all other system records or communications associated with or pertaining to Mr. Hoang generated or received by CBP and; (2) screen shots of all databases likely to have responsive records.  The time frame of this request is March 29, 1977 to the present. Mr. Hoang has signed a waiver, including a certificate of identity, allowing me to receive these records.  Please find a copy of this waiver attached."

10.      Plaintiff provided a signed authorization form with the FOIA request.

11.      On June 6, 2022, CBP acknowledged receipt and assigned the tracking number CBP-2022-080126.  In addition, CBP notified Plaintiff that due to the increasing number of FOIA requests, there may be some delay in processing the request.

12.      CBP FOIA staff evaluated the CBP-2022-080126 request and determined that the E3/Enforce systems and the TECS platform were the only CBP systems reasonably likely to contain responsive records.

13.      The e3 portal ("e3") is used to collect and transmit data related to law enforcement activities to the U.S. Immigration and Customs Enforcement (ICE) Enforcement Integrated Database (EID) and the DHS Automated Biometric Identification System (IDENT). CBP uses e3 to collect and transmit biographic, encounter, and biometric data of individuals for identification and verification of individuals encountered by the U.S. Border Patrol (USBP). E3/Enforce is reasonably likely to contain responsive records for individuals encountered by

USBP at and around international land borders outside the ports of entry.  If a person crosses between official ports of entry and is encountered by USBP, E3 will likely have a record of it.

14.      CBP FOIA staff queried the E3/Enforce system for responsive records using the name, date of birth, and Alien File (A-File) Number.  CBP FOIA staff did not locate any responsive CBP records.

15.      TECS is an information-sharing platform, which allows users to access different databases that may be maintained on the platform or access through the platform, and the name of a system of records that include temporary and permanent enforcement, inspection, and operational records relevant to the anti-terrorism and law enforcement mission of CBP and numerous other federal agencies that it supports.  TECS provides a platform for interaction between these databases and defined TECS users, and also serves as a data repository to support law enforcement "lookouts," border screening, and reporting for CBP's primary and secondary inspection processes.  TECS is the principal system used by officers at the border to assist with screening and determinations regarding the admissibility of travelers arriving to the U.S.at a port of entry.  TECS is reasonably likely to contain responsive records for those travelers who are encountered at the ports of entry into the United States, including airports.  If CBP processes an arriving person for admissiblity when entering the United States at an airport port of entry, TECS will likely have a record of it.

16.      CBP FOIA staff queried the TECS platform for responsive records using the name, date of birth and A-file Number provided in the FOIA request.  CBP FOIA staff did not locate any responsive records.

17.      On October 26, 2022, CBP issued its final response to Plaintiff for CBP-2022-080126, stating no responsive records were found.  The letter also informed Plaintiff that records

of apprehensions made by Border Patrol before 2000 may be available in the A-File maintained by USCIS and notified her of her right to appeal.

18.     Also on May 18, 2022, CBP received the following FOIA request for Toan Hoang's records:

> "All system records and other items maintained, produced, or distributed by CBP pertaining to Toan Hoang. His 'alien number' is [redacted]. He was born in Vietnam on [redacted]. Information responsive to this request includes but is not limited to: (1) all memoranda, notes, reports, email messages, and all other system records or communications associated with or pertaining to Mr. Hoang generated or received by CBP and; (2) screen shots of all databases likely to have responsive records. The time frame of this request is March 29, 1977 to the present."

19.     On May 18, 2022, the same day CBP received the request, CBP acknowledged receipt and assigned tracking number CBP-2022-080265.

20.     Plaintiff did not provide a signed third-party authorization form with the CBP-2022-080265 May 18 request.

21.     On May 20, 2022, CBP issued a letter to Plaintiff advising her that her May 18, 2022 FOIA request, case number CBP-2022-080265, did not include an authorization from the individual and informed Plaintiff that if she wished to receive records on the individual, she should resubmit her request with a signed authorization form. Plaintiff was further informed that the FOIA request was closed as insufficient.

22.     Based on my experience in the FOIA Division, discussions with knowledgeable Agency personnel, understanding of the scope of Plaintiff's May 18, 2022 requests and the information gathered, the search was reasonably calculated to uncover all potentially responsive records and that all systems and databases likely to contain responsive documents were searched.

**Plaintiff's FOIA Request for Records with Representative Lauren Underwood**

23.     On December 2, 2019, the DHS Headquarters FOIA office sent a memo to the

CBP FOIA office transferring a FOIA request to CBP and requested that CBP respond directly to

the requestor.  DHS FOIA attached the letter emailed to Plaintiff on December 2, 2019, where

DHS FOIA informed Plaintiff that her FOIA request was transferred to the FOIA Officers for

ICE and CBP for processing.

24.     Plaintiff's request sought the following records from January 1, 2017 to the

present:

> "1) all communications and related materials created, received, or maintained by the
> Department of Homeland Security to which Rep. Lauren Underwood(D-IL) or any
> member of her staff. This includes but is not limited to all email, text messages, notes,
> reports, memorandums, proposed bill texts, and bill evaluations. In a floor speech of
> 9/26/2019 Rep. Underwood stated she received information from the 'Department of
> Homeland Security' indicating a request for an integrated Electronic Health Records
> System she referenced as 'EHR.' She refers to this in her remarks on HR 3525 as a
> 'direct ask from medical officers at the Department of Homeland Security.'
>
> 2) DHS communications and related materials created by or received from other
> components of DHS or the Department of Health and Human Services Office of
> Refugee Resettlement about the use of Electronic Health Records systems already in
> place as well as the establishment of an EHR for the use by offices of CBP.
>
> 3) Information on meetings and communications with private individuals, including
> but not limited to lobbyists or company officials related to past, current, or potential
> "enterprise" or other information technologies for collecting, coordinating, or
> maintaining health records data for those encountered or detained by DHS or any
> component of DHS. Technical reports, email, text messages, or other communications
> with the private sector tied to past, current, or potential contracts tied to EHR
> systems."

25.     On December 12, 2019, CBP acknowledged receipt of the December 2, 2019

transferred request and assigned tracking number CBP-2020-019380.  In addition, CBP notified

Plaintiff that due to the increasing number of FOIA requests, there may be some delay in

processing the request.

26.     CBP FOIA staff evaluated the request and determined two component offices within the agency were reasonably likely to have responsive records.

a.     Number 1 of the FOIA request involved communications with Representative Underwood and any materials to which the Representative was a party.  CBP's policy is that official communication with members of Congress be routed through the Office of Congressional Affairs (OCA).  Therefore, FOIA staff determined the Office of Congressional Affairs would reasonably likely have responsive records, if any.

b.     Number 2 of the FOIA request sought DHS records.  CBP FOIA staff determined that this part of the request did not seek CBP records.

c.     Number 3 of the FOIA request sought "information on meetings and communications with private individuals . . . related to past, current, or potential 'enterprise' or other information technologies for collecting, coordinating, or maintaining health records data for those encountered or detained by DHS or any component of DHS."  Any work with outside persons or companies to develop the health records data described in the FOIA request would have to go through CBP's Procurement office.  The Procurement office is a part of the CBP Office of Acquisition.  The office is responsible for contract oversight and administration.  Therefore, FOIA staff determined the Procurement office within the Office of Acquisition was reasonably likely to have responsive records, if there were any.

27.     Per CBP Directive 2130-012A, no one outside of Office of Congressional Affairs is to communicate with members of Congress without the Office of Congressional Affairs' permission and involvement.

28.     The Procurement office identified the employee who serves as the point of contact for electronic medical records within the Procurement Directorate.  The employee confirmed that

she has a clear recollection that she had no correspondence verbally or in writing on meetings
and communications with private individuals for collecting, coordinating or maintaining health
record data for those encountered or detained by DHS or any component of DHS (CBP).

29.     Plaintiff's FOIA request covered the time period of January 1, 2017 to present.
CBP FOIA noted that Representative Underwood did not begin serving as a member of Congress
until January 3, 2019, so this date was used as the beginning of OCA's search. The Directors in
the Office of Congressional Affairs searched their email inboxes for communication with
Representative Underwood or her staff about electronic health records systems.  The search
terms used were "Underwood" "Lauren Underwood" "EHR" "Health Record" and "Electronic
health record".  There was no responsive information located.

30.     On July 14, 2023, CBP FOIA issued its first response to Plaintiff, stating no
responsive records were found.

31.     Subsequently, the Office of Congressional Affairs informed FOIA staff that the
"OCATaskings" email box, which was not previously searched, was a location that was
reasonably likely to contain responsive records.  The Office of Congressional Affairs staff
conducted a search for communications with Representative Underwood or her staff about
electronic health records systems in the "OCATaskings" inbox.  The search terms used were
"Underwood" "Lauren Underwood" "EHR" "Health Record" and "Electronic health record".
There were some items located which discussed medical issues related to Representative
Underwood and to the Agency.  Those items, totaling 23 pages, were turned over to CBP FOIA.

32.     CBP FOIA reviewed the 23 pages of records.  CBP FOIA determined that 20
pages of records were responsive and that 3 pages of records were non-responsive.  CBP FOIA
applied redactions to parts of 7 pages of the responsive records pursuant to FOIA Exemptions 6

and 7C and determined that 13 pages of the responsive records must be withheld in full pursuant to FOIA Exemptions 5, 6, and 7C.

33.     On October 31, 2023, CBP issued its final response to Plaintiff, disclosing seven pages of records with the redactions pursuant to FOIA Exemptions 6 and 7C.

34.     Based on my experience in the FOIA Division, discussions with knowledgeable Agency personnel, understanding of the scope of Plaintiff's FOIA request and the information gathered, the search was reasonably calculated to uncover all potentially responsive records and that all component offices likely to contain responsive documents were searched.

35.     Attached to this declaration is a *Vaughn* index identifying and describing each document in which information was withheld and explaining how the exemption applies to the withheld information.  I am familiar with the records described in the index.  (*Vaughn* index attached as Exhibit 1)

**Description of Exemptions**

**Exemption 5**

36.     Exemption 5 protects "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency, provided that the deliberative process privilege shall not apply to records created 25 years or more before the date on which the records were requested."  5 U.S.C. § 522(b)(5).

37.     The deliberative process privilege was invoked to protect CBP's decision making processes. The privilege was applied to documents that are in draft form and had not been finalized, thereby reflecting initial opinions and recommendations before agency decisions were made.  It was also applied to documents in which an attorney provided advice to a client about pending litigation and advice relating to legal matters for which CBP sought professional advice.

The withheld material was created less than 25 years before the records were requested. Exemption 5 was also used to protect the attorney-client privilege and attorney work product protection where an attorney was rendering advice to a client and was revealing litigation strategy. The invocation of Exemption 5 is described in detail in the attached Vaughn index.

### Exemption 6

38.    FOIA Exemption (b)(6) protects "personnel and medical files and similar files, the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6).

39.    Exemption 6 was invoked to withhold identifying information in records that related to CBP employees and third party individuals who did not provide consent for release. The withheld information consisted of the names of individuals, however, the job title for employees and third parties was not redacted.  There is no public interest in the redacted information because it does not shed light on how the agency is performing its operations, and there is a strong privacy interest in this information.  CBP FOIA determined that disclosure of this information would constitute an unwarranted invasion of privacy that is not outweighed by any public interest in the material.

### Exemption 7(C)

40.    FOIA Exemption (b)(7)(C) protects from disclosure "records or information compiled for law enforcement purposes" if a release of the records or information "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C).

41.    The Department of Homeland Security is the largest federal law enforcement agency.  CBP, as a component of DHS, facilitates trade and travel while enforcing regulations,

including immigration, border security, and customs laws. Therefore, the documents at issue constituted information and records compiled for law enforcement purposes. Exemption 7(C) was invoked to protect the names of government employees and third parties. There is a strong privacy interest in this material, and there is no public interest in this information because it does not shed light on how the agency is performing its operations. Additionally, disclosure of this information could unnecessarily subject that individual to harassment or harm by individuals who disagree with the agency's mission or activities. CBP FOIA determined that disclosure of this information would constitute an unwarranted invasion of personal privacy that is not outweighed by any public interest in the material.

**Segregability**

42.     All information CBP has withheld is exempt from disclosure pursuant to a FOIA exemption or is not reasonably segregable, whether because it is so intertwined with protected material that segregation is not possible or because its release would have revealed the underlying protected material. In responding to Plaintiffs' request in this case, I have conducted a line-by-line review of the record to confirm that any withholdings were proper, examined whether any discretionary waiver of an exemption was warranted, and determined whether any segregable, non-exempt information could further be released. All reasonably segregable portions of the relevant records have been released to Plaintiff.

I declare under a penalty of perjury that the information provided is true and correct to the best of my information, knowledge, and belief.

Signed this 16th day of January, 2024

_Patrick Howard_

Patrick Howard
Branch Chief, FOIA Division
U.S. Customs and Border Protection
U.S. Department of Homeland Security

*Jacqueline Stevens v. U.S. Customs and Border Protection, et al.*
Civil Action No. 22 C 5072
U.S. District Court
Northern District of Illinois
VAUGHN INDEX  CBP-2020-019380

| Document | Document Description | Pages | Disposition & Exemption(s) |
|---|---|---|---|
| 1 | Document titled "Meeting between Acting Commissioner Miller and Congresswoman Ed Case (D-HI) [*sic*], Tuesday, April 18, 2023, 11:20 a.m.-11:40 a.m., Microsoft Teams"<br><br>Briefing memo for Acting Commissioner for his meeting with Rep. Lauren Underwood | 2 | Document released with partial redactions:  Exemption (b)(6) is applied to elements of information when that information is considered to fall within the scope of "Personally Identifiable Information."  Exemption (b)(7)(C) similarly protects the privacy of individuals whose personal information appears in records created for law enforcement purposes. Names of CBP employees and third parties are redacted pursuant to Exemption (b)(6) and (b)(7)(C) because there is no public interest in knowing the identify of these individuals and release could reasonably be expected to constitute an unwarranted disclosure of personal information without any increase in information about government operations. |
| 2 | Document titled "Meet and Greet with Rep. Lauren Underwood (D-IL-14), Monday May 17th, 2021, 11:00-11:30 AM, TEAMS Video Conference"<br><br>Briefing memo for Acting Commissioner for his meeting with Rep. Lauren Underwood | 3 | Document released with partial redactions:  Exemption (b)(6) is applied to elements of information when that information is considered to fall within the scope of "Personally Identifiable Information."  Exemption (b)(7)(C) similarly protects the privacy of individuals whose personal information appears in records created for law enforcement purposes. Names of CBP employees and third parties are redacted pursuant to Exemption (b)(6) and (b)(7)(C) because there is no public interest in knowing the identify of these individuals and release could reasonably be expected to constitute an unwarranted disclosure of personal information without any increase in information about government operations. |

**Patrick Howard Declaration, Exhibit 1**

| 3 | Document titled "Rep. Lauren A. Underwood (D-Ill.)"<br><br>Document with biography for Rep. Underwood | 2 | Document released in its entirety. |
|---|---|---|---|
| 4 | Draft document "FY 2022 Budget Hearing Prep"<br><br>The document is a draft of the briefing memo to prepare the DHS Secretary for a budget hearing. The draft document outlines CBP operations, its budgets, and policies within the budget that the Secretary may be asked about. The draft includes proposed summaries of the top issues which are of interest to Members. The draft document includes edits and recommendations proposed during the deliberative process. | 7 | Document withheld in its entirety. FOIA Exemption (b)(5) is applied to the document, which exempts from mandatory disclosure opinions, proposals and recommendations included within inter-agency or intra-agency documentation and protects from disclosure the integrity of the deliberative or decision-making processes within the agency. The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information among agency personnel. This draft document contains proposed edits and recommendations made during the deliberative process, which is exempt under (b)(5).<br><br>Exemption (b)(6) is applied to elements of information when that information is considered to fall within the scope of "Personally Identifiable Information." Exemption (b)(7)(C) similarly protects the privacy of individuals whose personal information appears in records created for law enforcement purposes. Names of CBP employees are shown in the proposed edits and are protected from disclosure pursuant to Exemption (b)(6) and (b)(7)(C) because there is no public interest in knowing the identify of these individuals and release could reasonably be expected to constitute an unwarranted disclosure of personal information without any increase in information about government operations. |

**Patrick Howard Declaration, Exhibit 1**

| 5 | Draft document titled "House Appropriations Subcommittee on Homeland Security Hearing on the Fiscal Year 2023 Budget Request for the Department of Homeland Security"<br><br>The document is a draft of a briefing memo to prepare the DHS Secretary for the Subcommittee hearing. The draft document outlines questions and proposed responses. The draft document includes edits and recommendations proposed during the deliberative process. | 3 | Document withheld in its entirety: Document withheld in its entirety. FOIA Exemption (b)(5) is applied to the document, which exempts from mandatory disclosure opinions, proposals and recommendations included within inter-agency or intra-agency documentation and protects from disclosure the integrity of the deliberative or decision-making processes within the agency. The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information among agency personnel. This draft document contains proposed edits and recommendations made during the deliberative process, which is exempt under (b)(5).<br><br>Exemption (b)(6) is applied to elements of information when that information is considered to fall within the scope of "Personally Identifiable Information." Exemption (b)(7)(C) similarly protects the privacy of individuals whose personal information appears in records created for law enforcement purposes. Names of CBP employees are shown in the proposed edits and are protected from disclosure pursuant to Exemption (b)(6) and (b)(7)(C) because there is no public interest in knowing the identify of these individuals and release could reasonably be expected to constitute an unwarranted disclosure of personal information without any increase in information about government operations. |

**Patrick Howard Declaration, Exhibit 1**

| 6 | Draft document titled "Meeting with Rep. Lauren Underwood (IL-14), December 17, 2021"<br><br>The document is a draft of a briefing memo to prepare the DHS Secretary for meeting with Rep. Underwood. The draft includes edits and comments with guidance made by CBP attorneys. | 3 | Document withheld in its entirety: Document withheld in its entirety. FOIA Exemption (b)(5) is applied to the document, which exempts from mandatory disclosure opinions, proposals and recommendations included within inter-agency or intra-agency documentation and protects from disclosure the integrity of the deliberative or decision-making processes within the agency. The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information among agency personnel.<br><br>Exemption (b)(5) protects from disclosure information that is protected under Attorney Client Privilege. This draft document includes editorial comments from CBP's Office of Chief Counsel discussing matters in litigation and which are confidential communications between the CBP attorney and CBP relating to a legal matter for which CBP sought professional advice. Here the exemption is applied to withhold communications from the Office of Chief Counsel which contains interpretations of law and advice presented during the process for creating the briefing memo.<br><br>Exemption (b)(6) is applied to elements of information when that information is considered to fall within the scope of "Personally Identifiable Information." Exemption (b)(7)(C) similarly protects the privacy of individuals whose personal information appears in records created for law enforcement purposes. Names of CBP employees are shown in the proposed edits and are protected to Exemption (b)(6) and (b)(7)(C) because there is no public interest in knowing the identify of these individuals and release could reasonably be expected to constitute an unwarranted disclosure of personal information without any increase in information about government operations. |

**Patrick Howard Declaration, Exhibit 1**

| 7 | CBP Directive No. 2130-012A "Roles and Responsibilities and Procedures for Congressional and Legislative Activities and Functions"<br><br>CBP Directive which establishes policy and assigns responsibility for the management of CBP activities and functions related to congressional and legislative activities. | 3 | Document was not responsive to the FOIA request because it predated the FOIA request. The document also does not contain any reference to Rep. Underwood or her staff. |

**Patrick Howard Declaration, Exhibit 1**