UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JACQUELINE STEVENS, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 22 C 5072 ) |
| UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, *et al.*, | ) Judge Kennelly ) ) |
| Defendants. | ) ) |

## **MEMORANDUM IN SUPPORT OF ICE'S MOTION FOR SUMMARY JUDGMENT**

### Introduction

Plaintiff Jacqueline Stevens has sued for the release of government records under the Freedom of Information Act, 5 U.S.C. § 552. She says that several federal agencies or components have improperly withheld records in response to 13 of her FOIA requests. One of those agencies, Immigration and Customs Enforcement, or ICE, is entitled to summary judgment because it has conducted an adequate search for records and has appropriately withheld some information under several exceptions to the FOIA statute.

### Background

Stevens submitted three FOIA requests to ICE in 2021 and 2022, seeking records relating to three people: Miguel Guzman Silvestre, Toan Hoang, and Pascal Charpentier. Defendant's Statement of Facts (DSOF) ¶¶ 9, 26, 37. She filed this lawsuit in September 2022, alleging that several federal agencies or components—including ICE—had improperly withheld records in response to her many FOIA requests. Dkt. 1 (Complaint) ¶¶ 20, 25, 29, 36, 41, 47, 54, 71, 75, 81, 86, 93, 97. She moved for a preliminary injunction against ICE, and the court granted the motion in part, ordering ICE to process Stevens's FOIA requests at a rate of 1,500 pages per month. Dkt.

3, 16, 34, 36. ICE has now completed that search and produced the responsive records it found that are not subject to one or more exceptions to the FOIA statute.

## Argument

ICE is entitled to summary judgment because it has conducted an adequate search for records responsive to Stevens's FOIA requests and because the information it has withheld from production is protected from release by several exceptions to the FOIA statute. Summary judgment is proper when "there is no genuine issue as to any material fact" and the movant "is entitled to judgment as a matter of law." *Stevens v. DHS*, 2014 WL 5796429, *4 (N.D. Ill. Nov. 4, 2014) (citing Fed. R. Civ. P. 56(a)). FOIA cases are typically resolved on summary judgment because they often hinge on whether an agency's undisputed actions violated FOIA. *E.g.*, *Bassiouni v. CIA*, 2004 WL 1125919, *2 (N.D. Ill. Mar. 31, 2004). The court's review is limited to whether the agency (1) improperly (2) withheld (3) agency records. *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 150 (1980) (judicial authority requires violation of all three components). A FOIA defendant's motion should be granted if it provides the court with declarations or other evidence showing that it conducted an adequate search for records and that any responsive records were produced or are exempt from disclosure. *E.g.*, *Carney v. DOJ*, 19 F.3d 807, 812 (2d Cir. 1994). Here, ICE has provided a declaration showing that it conducted an adequate search and that the information it withheld is exempt from disclosure. *See* DSOF ¶¶ 5-74 (citing the Declaration of Fernando Pineiro).

### I.  Adequate Search for Responsive Records

ICE has satisfied its burden on summary judgment to demonstrate that it conducted adequate searches for responsive records because it has shown that it made a good-faith effort to conduct searches "reasonably calculated to uncover all relevant documents." *Hart v. FBI*, 1996 WL 403016, *2 (7th Cir. July 16, 1996); *see also DiBacco v. U.S. Army*, 795 F.3d 178, 188 (D.C.

Cir. 2015) (agency must make good-faith efforts to conduct search using methods that "can be reasonably be expected to produce the information requested"). An agency can establish the reasonableness of its search by reasonably detailed, nonconclusory affidavits describing its efforts, and such submissions are accorded a "presumption of good faith." *Stevens v. State*, 20 F.4th 337, 342-43 (2021). Here, ICE has submitted a reasonably detailed, nonconclusory affidavit describing the efforts outlined below. *See* DSOF ¶¶ 5-50 (citing the Declaration of Fernando Pineiro).

A. **Silvestre Request**

Stevens submitted a FOIA request to ICE in June 2021, seeking records relating to a person named Miguel Guzman Silvestre. DSOF ¶ 9. ICE's FOIA office determined that the program offices likely to have responsive records were the Enforcement and Removal Operations office, the Homeland Security Investigations office, and the Office of the Principal Legal Advisor. DSOF ¶ 11.

The Enforcement and Removal Operations office determined that the Phoenix field office should be tasked to search for responsive records. DSOF ¶ 12. At that office, a supervisory detention and deportation officer searched databases using Silvestre's "alien number" and searched the office's shared drive database using the terms "Miguel Silvestre," "Miguel Guzman Silvestre," "Miguel," "Silvestre," "Guzman," and the alien number. DSOF ¶ 13. The officer also searched their sent and received emails using the terms "Silvestre," "Guzman," "Miguel," and his alien number. *Id*. The search located four pages of potentially responsive records. DSOF ¶ 14.

At the Homeland Security Investigations office, a management and program analyst searched the office's Investigative Case Management system, which serves as the office's core law enforcement case management tool, using Silvestre's alien number and the term "Miguel Silvestre." DSOF ¶ 15. The search located no responsive records. DSOF ¶ 16.

The Office of the Principal Legal Advisor determined that the chief counsel's office in

3

Phoenix should be tasked to search for responsive records. DSOF ¶ 17. Twenty-four assistant chief counsels subsequently searched their shared drive databases using the terms "Miguel Silvestre," "Silvestre," "Silvestre Miguel," "Guzman Silvestre," "Miguel," and Silvestre's alien number. DSOF ¶ 18. They also searched their sent and received emails using the terms "Guzman Silvestre," "Guzman-Silvestre," "Miguel Silvestre," "Miguel Silvestre [alien number]," "Silvestre," "Silvestre, Miguel," Silvestre's alien number, and the last three digits of his alien number. *Id*.

Seven of the 24 assistant chief counsels also searched the PLAnet system—the legal advisor office's case management system, which provides a repository for all ICE attorneys' casework related to immigration and removal proceedings—using the terms "Silvestre," "Miguel Silvestre," Silvestre's alien number, and the last three digits of his alien number. DSOF ¶ 19. One assistant chief counsel also searched the ENFORCE Alien Removal Module, which supports ICE's processing and removal of aliens from the United States, using Silvestre's alien number. DSOF ¶ 20. A senior attorney also searched their shared drive database and sent and received emails using the terms "Miguel Silvestre," "Silvestre," and Silvestre's alien number. DSOF ¶ 21.

In addition, four deputy chief counsels searched their shared drive database using the terms "Miguel," "Silvestre," "Silvestre, Miguel," "Miguel Guzman Silvestre," "Miguel Silvestre," and Silvestre's alien number. DSOF ¶ 22. They also searched their sent and received emails using the terms "Miguel," "Miguel Guzman Silvestre," "Miguel Silvestre," "Silvestre," "Silvestre, Miguel," and Silvestre's alien number. *Id*. Two of the four deputy chief counsels also searched the PLAnet system using Silvestre's name and alien number. DSOF ¶ 23.

Finally, two legal assistants searched the PLAnet system using the terms "Miguel Silvestre," "Silvestre, Miguel," and Silvestre's alien number. DSOF ¶ 24. They also searched their shared drive database using the terms "Miguel Silvestre," "Silvestre, Miguel," and Silvestre's

4

alien number. *Id*. They also searched their sent and received emails using the terms "Miguel Silvestre," "Silvestre, Miguel," and Silvestre's alien number. *Id*.

None of the searches in the Office of the Principal Legal Advisor located any responsive records. DSOF ¶ 25.

### B. Hoang Request

Stevens submitted another FOIA request to ICE in March 2022, seeking records relating to a person named Toan Hoang. DSOF ¶ 26. ICE's FOIA office determined that the program offices likely to have responsive records were the Enforcement and Removal Operations office, the Homeland Security Investigations office, and the Office of the Principal Legal Advisor. DSOF ¶ 28.

The Enforcement and Removal Operations office determined that its Los Angeles and San Francisco field offices should be tasked to search for responsive records. DSOF ¶ 29. At the Los Angeles field office, a supervisory detention and deportation officer searched the ENFORCE Alien Removal Module and a database called RAILS using Hoang's alien number. DSOF ¶ 30. At the San Francisco field office, four supervisory detention and deportation officers and two deportation officers searched their shared drive database and their sent and received emails using the terms "Hoang," "Hoang [A-Number]," "Hoang, Manh," "Hoang, Toan," "Hoang, Toan Manh," and Hoang's alien number. DSOF ¶ 31. They also searched ENFORCE Alien Removal Module and PLAnet using the terms "Hoang," "Hoang [A-Number]," "Hoang, Manh," "Hoang, Toan," "Hoang, Toan Manh," and Hoang's alien number. *Id*. The searches located seven pages of potentially responsive records. DSOF ¶ 32.

At the Homeland Security Investigations office, a management and program analyst searched the Investigative Case Management System using the term "Toan Hoang" and his alien number and located no responsive records. DSOF ¶ 33.

5

The Office of the Principal Legal Advisor determined that the chief counsel's offices in Los Angeles and Dallas should be tasked to search for responsive records. DSOF ¶ 34. A deputy chief counsel in Los Angeles and an acting deputy chief counsel in Dallas searched PLAnet and their sent and received emails using the terms "Tom Hoang" and his alien number. DSOF ¶ 35. The searches located 52 pages of potentially responsive records. DSOF ¶ 36.

C. **Charpentier Request**

Stevens submitted a third FOIA request to ICE in August 2022, seeking records relating to a person named Pascal Charpentier. DSOF ¶ 37. ICE's FOIA office determined that the program offices likely to have responsive records were the Enforcement and Removal Operations office, the Homeland Security Investigations office, and the Office of the Principal Legal Advisor. DSOF ¶ 38.

The Enforcement and Removal Operations office determined that the New York field office should be tasked to search for responsive records. DSOF ¶ 39. At the New York field office, a deportation officer and an assistant field office director searched their shared drive database and their sent and received emails using the terms "Charpentier, Pascal," "Pascal Charpentier," and both of his alien numbers. DSOF ¶ 40. The searches located 39 pages of potentially responsive records. DSOF ¶ 41.

At the Homeland Security Investigations office, a management and program analyst searched the Investigative Case Management system using the terms "Pascal Charpentier" and both of his alien numbers. DSOF ¶ 42. The search located no responsive records. DSOF ¶ 43.

The Office of the Principal Legal Advisor determined that the chief counsel's office in New York should be tasked to search for responsive records. DSOF ¶ 44. At the New York office, eleven assistant chief counsels searched their shared drive databases using the terms "Charpentier," "Pascal Charpentier," "Varick," both of Charpentier's alien numbers, and the name of one of

6

Charpentier's relatives who is relevant to his citizenship claim. DSOF ¶ 45. They also searched their sent and received emails using the terms "August 2020," "Birth Certificate," "Charpentier," "Pascal," "Pascal Charpentier," both of his alien numbers, the name of the relative, and the names of two assistant chief counsels who were an integral part of Charpentier's immigration proceedings. *Id*. Of the eleven assistant chief counsels, four of them searched PLAnet using the terms "Charpentier," "Pascal Charpentier," and both of Charpentier's alien numbers. DSOF ¶ 46.

In addition, a senior attorney searched PLAnet and the Person Centric Query Service—a database that contains sensitive information about applicants for immigration benefits, pulling information from over 20 databases—using both of Charpentier's alien numbers. DSOF ¶ 47. The attorney also searched their sent and received emails using the terms "Charpentier" and "Pascal." *Id*. And a deputy chief counsel searched PLAnet using one of Charpentier's alien numbers and searched their shared drive database using the terms "Charpentier," "Pascal," and the last three digits of one of his alien numbers. DSOF ¶ 48. They also searched their sent and received emails using the terms "August 2020," "Birth Certificate," "Charpentier," and "Pascal." *Id*. The searches located 13,601 pages of potentially responsive records. DSOF ¶ 49.

D. **Searches' Adequacy**

The searches detailed above were adequate because they constituted a "good faith effort" to find responsive records, and ICE's approach was "reasonable in light of the request." *Stevens*, 20 F.4th at 342. The question the court considers "is not whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate." *Weisberg v. DOJ*, 745 F.2d 1476, 1485 (D.C. Cir. 1984). The search is thus gauged "not by the fruits of the search, but by the appropriateness of the methods used to carry out the search." *Ancient Coin Collectors Guild v. State*, 641 F.3d 504, 514 (D.C. Cir. 2011) (quotation omitted). Here, ICE searched all of its locations that were reasonably likely to have records

responsive to Stevens's FOIA requests. DSOF ¶ 50.

## II. No Information Improperly Withheld

ICE has also satisfied the second requirement for summary judgment: it did not improperly withhold records. An agency must release responsive information unless it is protected from disclosure by one or more of nine FOIA exemptions. 5 U.S.C. § 552(b); *Stevens*, 20 F.4th at 344 (agency need not release material that "falls under one of the nine FOIA exemptions"). An agency bears the burden of showing that an exemption applies. 5 U.S.C. § 552(a)(4)(B); *NRDC v. NRC*, 216 F.3d 1180, 1190 (D.C. Cir. 2000). Here, ICE withheld material under FOIA Exemptions 5, 6, 7(C), and 7(E). DSOF ¶ 51. And ICE has adequately described the withheld material and the justifications for nondisclosure. DSOF ¶¶ 52-74; *Vaughn v. Rosen*, 484 F.2d 820, 826-27 (D.C. Cir. 1973); *Stevens v. DHS*, 2014 WL 5796429, *4 (N.D. Ill. Nov. 4, 2014) (summary judgment appropriate if agency affidavits "describe the documents withheld and the justifications for nondisclosure in enough detail and with enough specificity to demonstrate that the material withheld is logically within the domain of the exemption claimed").

### A. Exemption 5 (deliberative process)

Exemption 5 protects "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with an agency." 5 U.S.C. § 552(b)(5). To qualify for this exemption, a document must fall within the ambit of the traditional privileges that the government could assert in civil litigation against a private litigant. *Enviro Tech Int'l, Inc. v. EPA*, 371 F.3d 370, 374 (7th Cir. 2004). Those privileges are the deliberative-process, attorney work-product, and attorney-client privileges. *Barnes v. IRS*, 60 F.Supp.2d 896, 901 (S.D. Ind. 1998) (citing *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975)). Here, ICE withheld information under all three privileges. DSOF ¶¶ 53, 56.

Under the deliberative-process privilege, ICE withheld pre-decisional deliberations and

8

recommendations between ICE employees regarding how to address certain issues and strategy in preparation for litigation. DSOF ¶ 53. The discussions are pre-decisional because they were made by ICE employees to assist in making a final decision about how to respond to motions or inquiries from the court or other parties. DSOF ¶ 54. ICE's employees must be able to discuss proposed agency action freely, and releasing the material at issue would chill ICE's decision-making process because it would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas and would ensure that ICE employees would be less likely to circulate materials for consideration and comment by peers. DSOF ¶ 55.

Under the attorney-work-product privilege, ICE withheld records drafted by ICE's Office of the Principal Legal Advisor's chief counsel's office in New York to prepare for the litigation of a particular case, including oral argument. DSOF ¶ 57. ICE also withheld advice between attorneys on how to prepare for immigration court hearings, what arguments to present at immigration court, what type of evidence to look for, and what lines of questioning to pursue. DSOF ¶ 58. Disclosing this information would harm the attorney's preparation process and their ability to effectively represent ICE. DSOF ¶ 59.

Finally, it scarcely needs to be said that the records ICE withheld under the attorney-client privilege are shielded from disclosure to encourage the frank and full discussion between clients and legal advisors. DSOF ¶ 60. ICE's attorneys must be able to discuss the merits of legal arguments with total candor, and disclosure of their discussions with ICE would significantly hinder their ability to effectively represent ICE's interests. DSOF ¶ 61.

In sum, the material ICE withheld under Exemption 5 falls squarely within the class of material that Exemption 5 protects from disclosure. *Russell v. Air Force*, 682 F.2d 1045, 1048 (D.C. Cir. 1982) (deliberative-process privilege applies to documents that "would expose to public view the deliberative process of an agency"); *Jordan v. DOJ*, 592 F.2d 753, 773 (D.C. Cir. 1978)

9

("officials should be judged by what they decided[,] not for matters they considered before making up their minds") (quotation omitted). Considerable deference should be given to ICE's judgment about what constitutes the give-and-take of deliberative process, because an agency is best situated "to know what confidentiality is needed 'to prevent the injury to the quality of agency decisions.'" *Chem. Mfrs. Ass'n v. Consumer Prod. Safety Comm'n*, 600 F.Supp. 114, 118 (D.D.C 1984) (quoting *Sears, Roebuck & Co.*, 421 U.S. at 151). ICE properly withheld this information.

### B. Exemptions 6 and 7(C) (personal privacy)

Exemption 6 protects information when its release would be a "clearly warranted invasion of personal privacy." 5 U.S.C. § 552(b)(6); *Lepelletier v. FDIC*, 164 F.3d 37, 46 (D.C. Cir. 1999) (courts broadly interpret Exemption 6 to encompass all information applying to a particular individual). To determine whether releasing information would constitute a "clearly unwarranted invasion of personal privacy," the court balances the interest of protecting a person's private affairs from unnecessary public scrutiny against the public's right to governmental information. 164 F.3d at 46. The *only* relevant public interest in the FOIA balancing analysis is the extent to which disclosure would shed light "on the agency's performance of its statutory duties" or otherwise let citizens know what their government is up to. *Id*. Similarly, Exemption 7(C) protects from disclosure "records or information compiled for law enforcement purposes," if the disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C).

Here, ICE redacted the names, contact information, photographs, office numbers, initials, social security numbers, signatures, and other personally identifiable information of ICE employees and third parties. DSOF ¶ 63. ICE employees have received an increase in threats, intimidation, and personal attacks in recent years, and disclosing their personally identifiable information could subject them to harassment and harm. DSOF ¶ 65. The employees have a

privacy interest in remaining free from harassment, intimidation, doxing, and annoyance in connection with their official duties and in their private lives. DSOF ¶ 66. Indeed, in recognition of this strong privacy interest, in 2020 the Office of Personnel Management approved ICE's request to be designated as a "security/sensitive" agency for FOIA purposes, ensuring that ICE's employee's personal information would be withheld going forward. DSOF ¶ 67. As for third parties, they have a recognized privacy interest in not being publicly associated with law enforcement investigations through the release of records compiled for law enforcement purposes. DSOF ¶ 68. The identities of people named in law enforcement files are properly withheld in recognition of the stigmatizing connation that comes from being so mentioned. *Id*. The individuals' privacy interest outweighs any minimal public interest in disclosure, and disclosure would serve no public benefit and would not assist the public in understanding how ICE is carrying out its statutory responsibilities. *Id*.

Accordingly, ICE determined that disclosing the information described above—which was compiled for law enforcement purposes—could and would constitute a clearly unwarranted invasion of personal privacy. DSOF ¶ 69. ICE then balanced the interest in protecting the individuals' privacy from unnecessary public scrutiny against the public's interest in understanding how ICE performs its statutory duties and accordingly limited its redactions to names and other personally identifiable information that, if released, would not shed any further light on ICE's operations or activities. DSOF ¶ 70.

In sum, ICE properly applied Exemptions 6 and 7(C). *Dep't of Defense v. Fed. Labor Relations Auth.*, 510 U.S. 487, 494-99 (1994) (releasing personal information of third parties and agency employees does not contribute significantly to public understanding of government's operations or activites); *Nat'l Archives and Records Admin. v. Favish*, 541 U.S. 157, 172 (2004) (burden is on requester to demonstrate sufficient public interest for disclosure).

### C. Exemption 7(E) (law-enforcement-sensitive information)

Exemption 7(E) protects from disclosure "records or information compiled for law enforcement purposes," if the disclosure "would disclose techniques and procedures for law enforcement investigations or prosecutions" or "would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(C), (E).

Here, ICE withheld law-enforcement-sensitive information in the form of intranet URLs and law enforcement codes contained in screenshots of databases. DSOF ¶ 71. The withheld information is utilized for law enforcement purposes because it is used in furtherance of ICE's obligation to enforce the country's immigration laws by conducting removal operations and ensuring that these operations are not hindered by actions of bad actors who may obtain access to confidential law-enforcement-sensitive information and intelligence. DSOF ¶ 72. Disclosure of the internal codes and intranet URLs could assist unauthorized parties in deciphering the meaning of the codes, aid in gaining improper access to law enforcement databases, and assist in the unauthorized party's navigation of the databases, which could allow people seeking to circumvent the law to counter operational and investigative actions. DSOF ¶ 73. Disclosure would serve no public benefit and would not assist the public in understanding how ICE is carrying out its statutory duties. DSOF ¶ 74. ICE properly withheld this information. *Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011) ("Exemption 7(E) sets a relatively low bar for the agency to justify withholding," requiring agency only to "demonstrate logically how the release of the requested information *might* create a risk of circumvention of the law") (emphasis added, quotation omitted).

### III. Exempted Information Reasonably Segregated

ICE has also fulfilled its obligation to release all reasonably segregable, non-exempt information to Stevens. FOIA directs that any "reasonably segregable" portion of a record must

be produced after "deletion of the portions which are exempt." 5 U.S.C. § 552(b). But if the proportion of nonexempt material is "relatively small and is so interspersed with exempt material that separation by the agency and policing of this by the courts would impose an inordinate burden," then the material remains FOIA-protected because, "although not exempt, it is not reasonably segregable." *Lead Indus. Ass'n, Inc. v. OSHA*, 610 F.2d 70, 86 (2d Cir. 1979). Agencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable materials. *Stevens*, 2014 WL 5796429 at *9. The court, nonetheless, must make an express finding on the issue of segregability. *Patterson v. IRS*, 56 F.3d 832, 840 (7th Cir. 1995) (remanding where court made no segregability finding).

Here, ICE conducted a line-by-line review of its withholdings and determine that all information not exempt from disclosure was correctly segregated and that the non-exempt portions were released. DSOF ¶ 75. ICE did not withhold any non-exempt information on the ground that it was not segregable. DSOF ¶ 76. In sum, ICE has met its burden of showing that it did not withhold any non-exempt information that was reasonably segregable. *See Matter of Wade*, 969 F.2d 241, 246 (7th Cir. 1992) (veracity of government's submissions regarding reasons for withholding records should not be questioned without evidence of bad faith).

**Conclusion**

For the above reasons, the court should enter summary judgment in ICE's favor.

> Respectfully submitted,
>
> MORRIS PASQUAL
> Acting United States Attorney
>
> By: s/ Alex Hartzler
>     ALEX HARTZLER
>     Assistant United States Attorney
>     219 South Dearborn Street
>     Chicago, Illinois 60604
>     (312) 886-1390
>     alex.hartzler@usdoj.gov