UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JACQUELINE STEVENS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 22 C 5072 |
| v. | ) | |
| | ) | Judge Kennelly |
| UNITED STATES DEPARTMENT OF | ) | |
| HEALTH AND HUMAN SERVICES, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF RESPONSE TO ICE'S L.R. 56.1 STATEMENT OF
MATERIAL FACTS IN SUPPORT OF SUMMARY JUDGMENT**

Plaintiff Stevens responds as follows to Defendant Immigration and Customs Enforcement (ICE)'s statement of material facts pursuant to Local Rule 56.1 of the United States District Court for the Northern District of Illinois:

**Jurisdiction and Venue**

1.      This is an action brought under the Freedom of Information Act (FOIA), and the court has subject matter jurisdiction under 5 U.S.C. § 552 and 28 U.S.C. § 1331. Answer ¶ 3.

**Response**: Undisputed.

2.      Venue is proper in this district because plaintiff Jacqueline Stevens resides in this district. Answer ¶ 4.

**Response**: Undisputed.

**Parties**

3.      Plaintiff Jacqueline Stevens is a professor at Northwestern University. Dkt. 15 (Answer) ¶ 5.

**Response**: Undisputed.

4.     Defendant United States Immigration and Customs Enforcement, or ICE, is a component of the federal government from whom Stevens has sought information via FOIA.  Dkt. 15 (Answer) ¶¶ 17, 36.

**Response**: Undisputed.

### ICE's FOIA Division

5.     When ICE receives a FOIA request, its FOIA office identifies the program offices that are likely to have responsive records based on the office's knowledge of the various program offices' missions.  Ex. A (Pineiro Decl.) ¶¶ 11-14.

**Response**: Undisputed that the Declaration makes the cited statement but otherwise irrelevant.

6.     Each program office has a FOIA point-of-contact who, upon receipt of a request from the FOIA office, will identify the employees, component offices, or both, that the point-of-contact believes are reasonably likely to have responsive records, based on the point-of-contact's experience and knowledge of the program office's practices and activities.  Ex. A (Pineiro Decl.) ¶ 14.

**Response**: Undisputed that the Declaration makes the cited statement but otherwise irrelevant. Disputed as to whether this is proper under the Act. Whether Defendant has met its obligation under FOIA is a question of law to be determined by the Court *de novo*.

7.     The employees and component offices are instructed to search their file systems that, in their judgment, based on their knowledge of the manner in which they routinely keep records, are the files most likely to contain responsive records.  Ex. A (Pineiro Decl.) ¶ 14.

**Response**: Undisputed that the Declaration makes the cited statement but otherwise irrelevant. Disputed as to whether this is proper under the Act. Whether Defendant has met its obligation under FOIA is a question of law to be determined by the Court *de novo*.

8.     When the searches are completed, the employees and component offices submit any potentially responsive records to the program office's point-of-contact, who provides them to the FOIA office where they are reviewed for responsiveness and for the applicability of any FOIA Exemptions.  Ex. A (Pineiro Decl.) ¶ 14.

**Response**:  Undisputed that the Declaration makes the cited statement but otherwise irrelevant.

### Silvestre Request

9.     Stevens submitted a FOIA request to ICE on June 22, 2021, seeking:

> [A]ll system records and other items maintained, produced, or distributed by ICE pertaining to Miguel Guzman Silvestre.  His date of birth is [PII-REDACTED].  His country of birth is the United States.  His "alien" number is 077-166-008.  I am interested in all

system records pertaining to Mr. Guzman and all ICE correspondence with other government agencies, individuals, or attorneys pertaining to Mr. Guzman as well. Please include as well:

> 1) All records of all grievances filed by Mr. Guzman, orally or in writing and under the control of ICE or its components, including county jails or private prisons with which ICE has contracted.

> 2) Commissary account data, including but not limited to information tracking funds reimbursed to Mr. Guzman on release from custody.

> 3) Work program participation documents and payment records.

> 4) All correspondence, notes, or other records pertaining to assertions or findings of U.S. citizenship from all databases.

> 5) Communications with police, jails, prisons about Mr. Guzman's arrest and detention.

> 6) Screen shots of all tabs for interfaces associated with databases likely to have records responsive to this request.

> 7) All email faxes, notes, and all other analyses and records tied to ICE investigations or findings for any deportation orders or arrests of Mr. Guzman.

> Please note that I am attaching a third party waiver signed by Mr. Guzman and authorizing the release of all responsive documents to me under the FOIA/PA. Please note that components and officials that track detention facility compliance with ICE contracts are likely to have responsive records and will need to be queried. Please note that prior responses to similar requests have been incomplete and in violation of FOIA/PA. If the final response does not include all of the records indicated below it is in violation of the law to represent it as a "final response." It is also a violation of the Administrative Procedures Act, insofar as this is a pattern and practice of this agency. If you are a FOIA agent reviewing this, then I would appreciate your reviewing my request with your colleagues in offices tasked for documents items that are missing when they return you only a few pages from EARM.

Dkt. 15 (Answer) ¶ 36.

**Response**: Undisputed.

4

10.    Stevens provided a privacy waiver signed by Silvestre and authorizing ICE to release his records to Stevens.  Dkt. 15 (Answer) ¶ 37.

**Response**: Undisputed.

11.    ICE's FOIA office determined that the program offices likely to have responsive records were the Enforcement and Removal Operations office, the Homeland Security Investigations office, and the Office of the Principal Legal Advisor.  Ex. A (Pineiro Decl.) ¶ 20.

**Response**:  Undisputed  that  the  Declaration  makes  the  cited  statement  but  otherwise irrelevant. **Disputed** as to whether this is proper under the Act. The Request specifically provides that "that components and officials that track detention facility compliance with ICE contracts are likely to have responsive records and will need to be queried." No evidence has been presented to show that Defendant tasked any component or official whose responsibility is to track detention facility compliance such as the actual detention facility's administrator/warden or the ICE officer in charge of the respective detention facility where Mr. Silvestre, Mr. Hoang, and Mr. Silvestre were held in detention during their removal proceedings, to search for records in response to subsection 1 to 4 of each FOIA Request. Whether Defendant has met its obligation under FOIA is a question of law to be determined by the Court *de novo*.

12.    The Enforcement and Removal Operations office determined that the Phoenix field office should be tasked to search for responsive records.  Ex. A (Pineiro Decl.) ¶ 27.

**Response**:  Undisputed  that  the  Declaration  makes  the  cited  statement  but  otherwise disputed. Mr. Silvestre was initially apprehended and place in ICE custody and held at the El Centro Detention Facility in El Centro, CA Disputed as which at the time was under the operative control of ERO and OPLA in San Diego and/or Imperial, CA. See Exhibit 1 at page 1. Any search by Phoenix officials of their share drives will not retrieve records from the share drives or other databases maintained by ICE/OPLA San Diego, Imperial, or Los Angeles. Whether defendant's

searches were proper under the Act and whether Defendant has met its obligation under FOIA is a question of law to be determined by the Court *de novo*

13.     At the Phoenix office, a supervisory detention and deportation officer searched databases using Silvestre's "alien number." *Id*.  The officer also searched the office's shared drive database using the terms "Miguel Silvestre," "Miguel Guzman Silvestre," "Miguel," "Silvestre," "Guzman," and Silvestre's alien number. *Id*.  The officer also searched their sent and received emails using the terms "Silvestre," "Guzman," "Miguel," and his alien number. *Id.*

**See Response to Fact No. 12.**

14.     The Phoenix search located four pages of potentially responsive records.  Ex. A (Pineiro Decl.) ¶ 28.

**Response**: Undisputed that the Declaration makes the cited statement but otherwise irrelevant since Defendant has provided no evidence that the 4 pages were produced to Plaintiff. Disputed as to whether this is proper under the Act.

15.     At the Homeland Security Investigations office, a management and program analyst searched HSI's Investigative Case Management system, which serves as HIS's core law enforcement case management tool, using Silvestre's alien number and the term "Miguel Silvestre." Ex. A (Pineiro Decl.) ¶¶ 29-30.

**Response**: Undisputed that the Declaration makes the cited statement. Disputed as to whether this is proper under the Act.

16.     Homeland Security Investigation's search located no responsive records. *Id*. ¶ 31.

**Response**: Undisputed that the Declaration makes the cited statement

17.     The Office of the Principal Legal Advisor determined that ICE's FOIA office's Office of the Chief Counsel in Phoenix should be tasked to search for responsive records.  Ex. A

(Pineiro Decl.) ¶ 32.

Response: Disputed. See Response to Fact no. 12 above.

18.     At the Phoenix office, twenty-four assistant chief counsels searched their shared drive databases using the terms "Miguel Silvestre," "Silvestre," "Silvestre Miguel," "Guzman Silvestre," "Miguel," and Silvestre's alien number. *Id.* ¶ 34. They also searched their sent and received emails using the terms "Guzman Silvestre," "Guzman-Silvestre," "Miguel Silvestre," "Miguel Silvestre [alien number]," "Silvestre," "Silvestre, Miguel," Silvestre's alien number, and the last three digits of his alien number. *Id.*

**Response**: Undisputed that the Declaration makes the cited statement but otherwise disputed as to whether this is proper under the Act. See Response to Fact No. 12.

19.     Seven of the 24 assistant chief counsels also searched the PLAnet system—the legal advisor office's case management system, providing a repository for all ICE attorneys' casework related to immigration and removal proceedings—using the terms "Silvestre," "Miguel Silvestre," Silvestre's alien number, and the last three digits of his alien number. Ex. A (Pineiro Decl.) ¶ 35.

**Response**: Undisputed that the Declaration makes the cited statement but otherwise Disputed as to whether this is proper under the Act. Defendant's own records show that ICE system of record maintains records for Mr. Silvestre using the nomenclature: "Guzman Sivestre, Miguel A #". See Exhibit 1 at page 1. Other offices used "Guzman Silvestre" and/or "Guzman" as search terms, the 24 assistant chief counsels did not.

20.     One assistant chief counsel also searched the ENFORCE Alien Removal Module, which supports ICE's processing and removal of aliens from the United States, using Silvestre's alien number. Ex. A (Pineiro Decl.) ¶¶ 37-38.

**Response**: Undisputed that the Declaration makes the cited statement.

21.     A senior attorney searched their shared drive database and sent and received emails using the terms "Miguel Silvestre," "Silvestre," and Silvestre's alien number. Ex. A (Pineiro Decl.) ¶ 39.

**Response**: Undisputed that the Declaration makes the cited statement but otherwise Disputed as to whether this is proper under the Act. Defendant's own records show that ICE system of record maintains records for Mr. Silvestre using the nomenclature: "Guzman Sivestre, Miguel A #". See Exhibit 1 at page 1. Other offices used "Guzman Silvestre" and/or "Guzman" as search terms, senior attorney did not. Defendant also does not provide context as to why a senior attorney searched his or her sent and received emails rather than the email records of the attorneys involved in handling the section 240 proceedings.

22. Four deputy chief counsels searched their shared drive database using the terms "Silvestre," "Silvestre, Miguel," "Miguel Guzman Silvestre," "Miguel Silvestre," and Silvestre's alien number. Ex. A (Pineiro Decl.) ¶ 40. They also searched their shared drive database using the terms "Miguel," "Miguel Guzman Silvestre," "Miguel Silvestre," "Silvestre," "Silvestre, Miguel," and Silvestre's alien number. *Id*. They also searched their sent and received emails using the terms "Miguel," "Miguel Guzman Silvestre," "Miguel Silvestre," "Silvestre," "Silvestre, Miguel," and Silvestre's alien number. *Id*.

See Response to Fact no 21.

23.     Two of the four deputy chief counsels searched the PLAnet system using Silvestre's name and alien number.  Ex. A (Pineiro Decl.) ¶ 41.

**Response**: Undisputed that the Declaration makes the cited statement but otherwise Disputed as to whether this is proper under the Act.

24.     Two legal assistants searched the PLAnet system using the terms "Miguel Silvestre," "Silvestre, Miguel," and Silvestre's alien number.  Ex. A (Pineiro Decl.) ¶ 44.  They also searched their shared drive database using the terms "Miguel Silvestre," "Silvestre, Miguel," and Silvestre's alien number.  *Id*.  They also searched their sent and received emails using the terms "Miguel Silvestre," "Silvestre, Miguel," and Silvestre's alien number.  *Id*.

**Response**: Undisputed that the Declaration makes the cited statement but otherwise Disputed as to whether this is proper under the Act. Defendant's own records show that ICE system of record maintains records for Mr. Silvestre using the nomenclature: "Guzman Sivestre, Miguel A #". See Exhibit 1 at page 1. Other offices used "Guzman Silvestre" and/or "Guzman" as search terms, the legal assistants did not. Also, Defendant does not explain why both legal assistants and deputy chief counsels searched PLAnet, see Fact no. 23. To the extent that different PLAnet users have access to different data within the system, Defendant has not provided sufficient details or information for the Court to conduct the required *de novo* review.

25.     The Office of the Principal Legal Advisor's searches located no responsive records. Ex. A (Pineiro Decl.) ¶ 45.

**Response:** Undisputed that the Declaration makes the cited statement.

### Hoang Request

26.     Stevens submitted a FOIA request to ICE on March 10, 2022, seeking:

> 1) All records of grievances filed by Mr. Hoang, orally or in writing and under the control of ICE or its components, including county jails or private prisons with which ICE has contracted.

2) Commissary account data, including but not limited to information tracking funds reimbursed to Mr. Hoang on release from custody.

3) Work program participation documents and payment records.

4) All correspondence, notes, and other records pertaining to assertions or findings of U.S. citizenship from all databases, including records tied to proceedings in Los Angeles in 1999.

5) Communications with police, jails, prisons about Mr. Hoang's arrest and detention.

6) Screen shots of all tabs for interfaces associated with databases likely to have records responsive to this request.

7) All email, faxes, notes, and all other analyses and records tied to ICE investigations or findings for any deportation order or arrests of Mr. Hoang.

> The time frame of this request is January 1, 1996 through the present.  Mr. Hoang has signed a waiver, including a certificate of identity, allowing me to receive these records.  Please find a copy of the waiver attached.  Please note that prior responses to similar requests have been incomplete and in violation of the FOIA.  If your response does not include all of the records indicated below it is in violation of the law to represent it as a "final response." The purpose of the FOIA is to provide the public timely information.  The information I obtain from the government has featured in my own research, from which journalists have drawn for widely circulated stories on matters of obvious public interest, especially ICE detaining and deporting U.S. citizens.

Dkt. 15 (Answer) ¶ 41.

**Response**: Undisputed.

27.    Stevens provided a privacy waiver signed by Hoang and authorizing ICE to release his records to Stevens.  Dkt. 15 (Answer) ¶ 41.

**Response**: Undisputed.

28.    ICE's FOIA office determined that the program offices likely to have responsive records were the Enforcement and Removal Operations office, the Homeland Security Investigations office, and the Office of the Principal Legal Advisor,.  Ex. A (Pineiro Decl.) ¶ 20

**Response**: Undisputed that the Declaration makes the cited statement but otherwise irrelevant since Defendant has provided no evidence as to their general filing and record keeping systems and databases.

29.    The Enforcement and Removal Operations office determined that its Los Angeles and San Francisco field offices should be tasked to search for responsive records.  Ex. A (Pineiro Decl.) ¶ 46.

**Response**: Undisputed that the Declaration makes the cited statement.

30.    At the Los Angeles field office, a supervisory detention and deportation officer searched the ENFORCE Alien Removal Module and a database called RAILS, using Hoang's

alien number.  Ex. A (Pineiro Decl.) ¶ 47.

**Response**: Undisputed that the Declaration makes the cited statement but otherwise irrelevant since Defendant has provided no evidence or explanation of their record keeping systems. Disputed as to whether this is proper under the Act. Whether or not Defendant has complied with the commands of the Act is an issue of law to be decided by the Court *de novo*.

31.    At the San Francisco field office, four supervisor detention and deportation officers and two deportation officers searched their shared drive database and their sent and received emails using the terms "Hoang," "Hoang [A-Number]," "Hoang, Manh," "Hoang, Toan," "Hoang, Toan Manh," and Hoang's alien number.  Ex. A (Pineiro Decl.) ¶ 48.  They also searched ENFORCE

Alien Removal Module and PLAnet using the terms "Hoang," "Hoang [A-Number]," "Hoang, Manh," "Hoang, Toan," "Hoang, Toan Manh," and Hoang's alien number. *Id*. ¶ 49.

> **Response**: Undisputed that the Declaration makes the cited statement.

32.     The Los Angeles and San Francisco searches located seven pages of potentially responsive records. Ex. A (Pineiro Decl.) ¶ 50.

> **Response**: Undisputed that the Declaration makes the cited statement but otherwise irrelevant since Defendant has provided no evidence that they have produced the records to Plaintiff.

33.     At the Homeland Security Investigations office, a management and program analyst searched the Investigative Case Management System using the term "Toan Hoang" and his alien number and located no responsive records. Ex. A (Pineiro Decl.) ¶¶ 51-52.

> **Response**: Undisputed that the Declaration makes the cited statement but otherwise irrelevant since Defendant has provided no evidence or explanation of their record keeping systems.

34.     The Office of the Principal Legal Advisor determined that the chief counsel's offices in Los Angeles and Dallas should be tasked to search for responsive records. Ex. A (Pineiro Decl.) ¶ 53.

> **Response**: Undisputed that the Declaration makes the cited statement disputed otherwise. Defendant does not explain why OPLA Los Angeles and Dallas were tasked to search their records but OPLA San Francisco with jurisdiction over Kern county detention facility where Mr. Toang was held was not tasked with a search. See Pltf Exhibit 1 at page 2. Disputed as to whether this is proper under the Act. Whether or not Defendant has complied with the commands of the Act is an issue of law to be decided by the Court *de novo*.

35.     A deputy chief counsel in Los Angeles and an acting deputy chief counsel in Dallas searched PLAnet and their sent and received emails using the terms "Tom Hoang" and his alien number.  Ex. A (Pineiro Decl.) ¶ 52.

Response: See Response to Fact no. 34. Further, the search was clearly insufficient and not likely to retrieve responsive records since the subject name is "Toan Hoang" not "Tom Hoang".

36.     The Office of the Principal Legal Advisor's searches located 52 pages of potentially responsive records.  Ex. A (Pineiro Decl.) ¶ 55.

**Response**: Undisputed that the Declaration makes the cited statement but otherwise irrelevant see Response to Fact no. 36.

## Charpentier Request

37.     Stevens submitted a FOIA request to ICE on August 18, 2022, seeking:

> All system records and other items maintained, produced, or distributed by ICE, including ICE trial attorneys and HQ, pertaining to Pascal Charpentier.  His date of birth is [PII-REDACTED].  His country of birth is Germany.  His "alien" number was 029001711 and in 2016 he was given this number: 020578103.  I am interested in all system records pertaining to Mr. Charpentier and all ICE correspondence with other government agencies, individuals, or attorneys pertaining to Mr. Charpentier as well.  Please include as well:

1) All records of all grievances filed by Mr. Charpentier orally or in writing and under the control of ICE or its components, including county jails or private persons with which ICE has contracted.

2) Commissary account data, including but not limited to information tracking funds reimbursed to Mr. Charpentier on release from custody.

3) All correspondence, notes, and other records pertaining to assertions or findings of U.S. citizenship, including but not limited to entries into PLAnet.

4) All ICE Fugitive Operation notes, memorandums, text messages, and other information in any medium related to the search and arrest of Mr. Charpentier. This includes but is not limited to database search protocols on which agents relied for information leading to the arrest.

I am seeking all instructions in any form on which ICE employees relied in their search for the information that led to the arrest of Mr. Charpentier.

5) Screen shots of all tabs for interfaces to databases searched for information responsive to this request.

Please note that I am attaching a third party waiver and certificate of identity signed by Mr. Charpentier and authorizing the release of all responsive documents to me under the FOIA/PA.

Dkt. 15 (Answer) ¶ 47.

**Response**: Undisputed.

38.     ICE's FOIA office determined that the program offices likely to have responsive records were the Enforcement and Removal Operations office, the Homeland Security Investigations office, and the Office of the Principal Legal Advisor. Ex. A (Pineiro Decl.) ¶ 20

**Response**: Undisputed that the Declaration makes the cited statement but otherwise irrelevant since Defendant has provided no evidence or explanation of their record keeping systems. Disputed as to whether this is proper under the Act. Whether or not Defendant has complied with the commands of the Act is an issue of law to be decided by the Court *de novo*.

39.    The Enforcement and Removal Operations office determined that the New York field office should be tasked to search for responsive records.  Ex. A (Pineiro Decl.) ¶ 56.

**Response**: Undisputed that the Declaration makes the cited statement but otherwise irrelevant since Defendant has provided no evidence or explanation of their record keeping systems. Disputed as to whether this is proper under the Act. Whether or not Defendant has complied with the commands of the Act is an issue of law to be decided by the Court *de novo*.

40.    At the New York field office, a deportation officer and an assistant field office director searched their shared drive database and their sent and received emails using the terms

"Charpentier, Pascal," "Pascal Charpentier," and both of his alien numbers.  Ex. A (Pineiro Decl.) ¶ 57.

**Response**: Undisputed that the Declaration makes the cited statement but otherwise irrelevant since Defendant has provided no evidence or explanation of their record keeping systems. Disputed as to whether this is proper under the Act. Whether or not Defendant has complied with the commands of the Act is an issue of law to be decided by the Court *de novo*. Furthermore, Defendant does not provide an explanation why it elected not to search using Mr. Charpentier's alias "Pascual Carpenter". See Plt Exhibit 2 at page 50.

41.    The New York searches located 39 pages of potentially responsive records.  Ex. A (Pineiro Decl.) ¶ 58.

**Response**: Undisputed that the Declaration makes the cited statement but otherwise irrelevant since Defendant has provided no evidence that the records were produced to Plaintiff.

42.    At the Homeland Security Investigations office, a management and program analyst searched the Investigative Case Management system using the terms "Pascal Charpentier" and both of his alien numbers.  Ex. A (Pineiro Decl.) ¶ 59.

See Response to Fact No. 40 above.

43.    Homeland Security Investigation's search located no responsive records.  Ex. A (Pineiro Decl.) ¶ 60.

**Response**: Undisputed that the Declaration makes the cited statement.

44.    The Office of the Principal Legal Advisor determined that the chief counsel's office in New York should be tasked to search for responsive records.  Ex. A (Pineiro Decl.) ¶ 61.

**Response**: Undisputed that the Declaration makes the cited statement but otherwise irrelevant since Defendant has provided no evidence or explanation of their record keeping

18

systems. Disputed as to whether this is proper under the Act. Whether or not Defendant has complied with the commands of the Act is an issue of law to be decided by the Court *de novo*.

45.    At the New York office, eleven assistant chief counsels searched their shared drive databases using the terms "Charpentier," "Pascal Charpentier," "Varick," both of Charpentier's alien numbers, and the name of one of Charpentier's relatives who is relevant to his citizenship claim. Ex. A (Pineiro Decl.) ¶ 62.  They also searched their sent and received emails using the terms "August 2020," "Birth Certificate," "Charpentier," "Pascal," "Pascal Charpentier," both of his alien numbers, the name of the relative, and the names of two assistant chief counsels who were an integral part of Charpentier's immigration proceedings. *Id*.

**See Response to Fact No. 40 above**.

46.    Of the eleven assistant chief counsels, four of them searched PLAnet using the terms "Charpentier," "Pascal Charpentier," and both of Charpentier's alien numbers.  Ex. A (Pineiro Decl.) ¶ 63.

**See Response to Fact No. 40 above.**

47.    A senior attorney searched PLAnet and the Person Centric Query Service—a database that contains sensitive information about applicants for immigration benefits, pulling

information from over 20 databases—using both of Charpentier's alien numbers. Ex. A (Pineiro Decl.) ¶ 64. The attorney also searched their sent and received emails using the terms "Charpentier" and "Pascal." *Id.*

**See Response to Fact No. 40 above.**

48. A deputy chief counsel searched PLAnet using one of Charpentier's alien numbers and searched their shared drive database using the terms "Charpentier," "Pascal," and the last three digits of one of his alien numbers. Ex. A (Pineiro Decl.) ¶ 65. They also searched their sent and received emails using the terms "August 2020," "Birth Certificate," "Charpentier," and "Pascal." *Id.*

**See Response to Fact No. 40 above.**

49. The Office of the Principal Legal Advisor's searches located 13,601 pages of potentially responsive records. Ex. A (Pineiro Decl.) ¶ 66.

**Response**: Undisputed. Defendant provides no explanation why it has produced only 2,802 pages of the 13,601 pages of potentially responsive records. (Pineiro Decl at paragraph 69. Defendant has an obligation to produce the remaining pages and state the reason for each page withheld.

50. Overall, ICE searched all of its locations that were likely to contain records responsive to Stevens's FOIA requests. Ex. A (Pineiro Decl.) ¶ 20.

**Response**: Undisputed that the Declaration makes the cited statement but otherwise irrelevant since Defendant has provided no evidence or explanation of their record keeping systems. Disputed as to whether this is proper under the Act. Whether or not Defendant has complied with the commands of the Act is an issue of law to be decided by the Court *de novo*.

**ICE's Withholdings**

51.     ICE produced 2,802 pages of responsive records to Stevens over the course of seventeen productions.  Ex. A (Pineiro Decl.) ¶ 69.  ICE withheld certain information from its productions, under FOIA Exemptions 5, 6, 7(C), and 7(E).  *Id*.

**Response**: Undisputed.

52.     ICE has prepared a *Vaughn* index that provides a description of ICE's withholdings and the exemption that ICE applied.  Ex. A (Pineiro Decl.) ¶ 67.

**Response:** Disputed. The parties agreed to select sample of the production to be included in the Vaughn index. Plaintiff's sample is reproduced at Exhibit 1 and covers pages with bates stamp numbers #2023ICLI-00003-**3**, **9**, **12-17**, **23**, **53-54**, 56, **91**, **378**, **388**, **393**, **406-14**, **443-48**, **619-23**, **632-34**, **642-644**, 645-46, **647**, **722, 734**, **752**, **776**, **968**, 991, **1011-15**, **1052-65**, **1072**, **1075**, 1088, **1093-96**, **1116-18**, **1151-59**, **1280-83**, **1610-19**. Defendant's sample is reproduced in Exhibit 2 and covers pages with bates stamp numbers #2023ICLI-00003-14, 34, 89-101, 450-60, 1030-35, 1316-27, 2193-2203, 2204-06. The *Vaughn* index only covers the pages in bold above. Defendant elected not to address pages 56, 645-46, 991, and 1088 of the Plaintiff's sample and the entirety of the Defendant's sample. The pages not included in the *Vaughn* index should either be produced in full or a proper additional *Vaughn* index must be produced to provide Plaintiff with notice and an opportunity to address the exemptions.

## Exemption 5

53.     Under Exemption 5, ICE withheld pre-decisional and deliberative internal discussions, deliberations, and recommendations between ICE employees regarding how to address certain issues and strategy in preparation for litigation.  Ex. A (Pineiro Decl.) ¶ 72.

**Response**: Disputed. In addition to   information that may be pre-decisional and deliberative,  Defendant has applied the b5 exemption in arbitrary and capricious manner to shield information that is subject to disclosure but was withheld because Defendant prefers to shield

21

certain facts from Plaintiff: Defendant produced the *Hoang* USC memo with minimal redactions, Pltf Exhibit 1 at pp. 3-8, but has withheld the *Charpentier* USC memo in full claiming b5, Exhibit 1 at 91-100 [Vaughn Index, PAGE ID1000, 2023-ICLI-0003-1610-1619]. Both USC memos are final documents and are thus neither pre-decisional nor deliberative. Defendant asserted b5 exemption to a final Standard Operative Procedure, Exhibit 1 at 17-25; *Vaughn* Index at PAGE ID 976 2023-ICLI-00003- 406-414. The SOP is final agency action regulating employees' action and thus is neither pre-decisional nor deliberative. Defendant asserted b5 exemption to documents filed and appearing on court dockets, Exhibit 1 at p. 48, Exhibit 2, at p. 2. These documents are in the public domain and cannot be withheld. Moreover, as the *Vaughn* index shows after the selection of the sample Defendant "elected" to reprocess certain records, thus admitting that b5 and other exemptions were originally improperly applied. *See Vaughn* Index at p. 44, 58, 59, 61, 63. The change in position as to applying b5 and b7 exemption to the responsive records shows that during interim production Defendant over-redacted information and thus, Defendant should be ordered to review the entire production based on the revisions in the sample and to the extent that interpretation of b5 exemption is not supported even by Defendant's own view of the applicability of the exemptions.

54.     The contents of the discussions and deliberations are pre-decisional in nature because they were prepared by ICE employees to assist in making a final decision about how to respond to motions or to inquiries from the court or other parties.  Ex. A (Pineiro Decl.) ¶ 73.  The internal discussions include various avenues the attorneys explored to try to resolve a case, and the best routes for responding to opposing counsel.  Ex. A (Pineiro Decl.)  ¶ 74.

55.     **Response**: Undisputed that the Declaration makes the cited statement but otherwise irrelevant since Defendant has provided sufficient details to justify their claim that the documents are predecisional or deliberative. See Response to Fact 53 above. Disputed as to whether this is proper under the Act. Whether or not Defendant has complied with the commands of the Act is an issue of law to be decided by the Court *de novo*. Plaintiff requests that the Court review the sample in camera.

56.     ICE employees must be able to discuss proposed agency action freely, and releasing the material withheld under Exemption 5 would profoundly chill ICE's decision-making process because it would discourage the expression of candid opinions and inhibit the free and frank exchange of information and ideas between agency personnel and would ensure that personnel would be less inclined to produce and circulate materials for consideration and comment by peers. Ex. A (Pineiro Decl.) ¶ 75.

     **Respons**e: Undisputed.

57.     Also under Exemption 5, ICE withheld portions of documents protected by the attorney-work-product and attorney-client privileges.  Ex. A (Pineiro Decl.) ¶¶ 76-78.

58.      **Response**: Undisputed that the Declaration makes the cited statement but otherwise irrelevant since Defendant has provided sufficient details to justify their claim that the documents are predecisional or deliberative. See Response to Fact 53 above. Disputed as to whether this is proper under the Act. Whether or not Defendant has complied with the commands of the Act is an

issue of law to be decided by the Court *de novo*. Plaintiff requests that the Court review the sample in camera.

59.     The records withheld under the attorney-work-product privilege were drafted by the Office of the Principal Legal Advisor's chief counsel's office in New York to prepare for the litigation of a particular case, including oral argument. Ex. A (Pineiro Decl.) ¶¶ 76-77.

**See Response to Fact No. 58 above**.

60.     ICE also withheld as attorney work product advice between attorneys on how to prepare for immigration court hearings, what arguments to present at immigration court, what type of evidence to look for, and what lines of questioning to pursue. Ex. A (Pineiro Decl.) ¶ 77.

61.          **Response**: Undisputed that the Declaration makes the cited statement but otherwise irrelevant since Defendant has provided sufficient details to justify their claim that the documents are predecisional or deliberative. See Response to Fact 53 above. Disputed as to whether this is proper under the Act. Whether or not Defendant has complied with the commands of the Act is an issue of law to be decided by the Court *de novo*. Plaintiff requests that the Court review the sample in camera.

62.     Disclosure of this attorney-work product information would significantly harm the attorneys' preparation process and their ability to effectively represent ICE. *Id*.


          **Response**: Undisputed.

63. The records ICE withheld under the attorney-client privilege are shielded from disclosure to encourage the full and frank discussion between the client and the client's legal advisor. Ex. A (Pineiro Decl.) ¶ 78.

64. **Response**: Undisputed that the Declaration makes the cited statement but otherwise irrelevant since Defendant has provided sufficient details to justify their claim that the documents are predecisional or deliberative. See Response to Fact 53 above. Disputed as to whether this is proper under the Act. Whether or not Defendant has complied with the commands of the Act is an issue of law to be decided by the Court *de novo*. Plaintiff requests that the Court review the sample in camera.

65. Disclosure of the communications could adversely impact the free flow of advice and information and could chill interactions and communications between agency employees and their counsel. *Id*. ICE's attorneys must be able to discuss the merits of legal arguments with total candor, and disclosure of their discussions with ICE would significantly hinder them from being able to effectively represent ICE's best interests. *Id*.

See Response to Fact No 64 above.

66. For all the records that ICE withheld under Exemption 5, ICE produced ICE's final response and simply withheld the deliberative materials. Ex. A (Pineiro Decl.) ¶ 79.

**Response:** Disputed. Defendant has produced only 2802 pages of the over 13,601 pages of responsive records. See Pineiro Decl at paragraphs 66 and 69.

### Exemptions 6 and 7(C)

67. Under Exemptions 6 and 7(C), ICE redacted the names, contact information, photographs, office numbers, initials, social security numbers, signatures, and other personally identifiable information of ICE employees and third parties. Ex. A (Pineiro Decl.) ¶ 86.

68. **Response**: Undisputed that the Declaration makes the cited statement but disputed as

to all redactions of personally identifiable information of third parties who are the relatives of the subject of the FOIA and are deceased. Disputed as to whether this is proper under the Act. Whether or not Defendant has complied with the commands of the Act is an issue of law to be decided by the Court *de novo*. Plaintiff requests that the Court review the sample in camera.

69.     Disclosure of the withheld information without the individuals' permission could harm them by exposing them to identity theft and might reasonably lead to unwanted contact from someone seeking to harm them.  Ex. A (Pineiro Decl.) ¶ 87.

**See Response to Fact No. 68 above.**

70.     Indeed, ICE employees have received an increase in threats, intimidation, and personal attacks in recent years, and disclosing their personally identifiable information could subject them to harassment and harm.  Ex. A (Pineiro Decl.) ¶ 88.

**Response**: undisputed but irrelevant. See Response to Fact No. 68 above.

71.     ICE's employees have a privacy interest in remaining free from harassment, intimidation, doxing, and annoyance in connection with their official duties and in their private lives. Ex. A (Pineiro Decl.) ¶ 89.

**Response**: Undisputed.

72.     In recognition of this strong privacy interest, in 2020 the Office of Personnel Management approved ICE's request to be designated as a "security/sensitive" agency for FOIA purposes, ensuring that the Office of Personnel Management will withhold all personally identifiable information of ICE employees.  Ex. A (Pineiro Decl.) ¶ 89.

73.         **Response**: Undisputed that the Declaration makes the cited statement Disputed as to whether this is proper under the Act. Whether or not Defendant has complied with the commands of the Act is an issue of law to be decided by the Court *de novo*. Plaintiff requests that the Court review the sample in camera.

74.     Moreover, third parties have a recognized privacy interest in not being publicly associated with law enforcement investigations through the release of records compiled for law enforcement purposes.  Ex. A (Pineiro Decl.) ¶ 90.  The identities of people named in law enforcement files are properly withheld in recognition of the stigmatizing connotation associated with being so mentioned.  *Id*.  The individuals' privacy interest outweighs any minimal public interest in disclosure, and disclosure would serve no public benefit and would not assist the public in understanding how ICE is carrying out its statutory responsibilities.  *Id*.

**Response: See Response to Fact No. 68 above.**

75.     Here, ICE determined that disclosing the information described above—which was compiled for law enforcement purposes—could reasonably be expected to constitute an unwarranted invasion of personal privacy and that, indeed, disclosure *would* constitute a clearly unwarranted invasion of personal privacy.  Ex. A (Pineiro Decl.) ¶ 91.

76.         **Response**: Undisputed that the Declaration makes the cited statement but otherwise irrelevant since Plaintiff dispute the propriety of invoking such interest of behalf of individuals who are deceased and who are the relatives of the subjects of the FOIA request and PA Waivers. See Response to Fact 68 above. Disputed as to whether this is proper under the Act. Whether or

not Defendant has complied with the commands of the Act is an issue of law to be decided by the Court *de novo*. Plaintiff requests that the Court review the sample in camera.

77.     ICE then balanced the interest in safeguarding the individuals' privacy from unnecessary public scrutiny against the public's interest in understanding how ICE performs its statutory duties and accordingly limited its redactions to names and other personally identifiable information that, if released, would not shed any further light on ICE's operations or activities. Ex. A (Pineiro Decl.) ¶ 92.

**See Response to Fact. No. 76 above.**

## Exemption 7(E)

78.     ICE applied Exemption 7(E) to law-enforcement-sensitive information, specifically intranet URLs and law enforcement codes contained in screenshots of databases.  Ex. A (Pineiro Decl.) ¶ 95.

79.         **Response**: Undisputed.

80.     The withheld information is utilized for law enforcement purposes because it is used in furtherance of ICE's obligation to enforce the country's immigration laws by conducting removal operations and ensuring that these operations are not hindered by actions of bad actors who may obtain access to confidential law-enforcement-sensitive information and intelligence. Ex. A (Pineiro Decl.) ¶ 96.

**Response**: Undisputed.

81.     Disclosure of the internal codes and intranet URLs could assist unauthorized parties in deciphering the meaning of the codes, aid in gaining improper access to law enforcement databases, and assist in the unauthorized party's navigation of the databases, which could allow people seeking to circumvent the law to counter operational and investigative actions.  Ex. A (Pineiro Decl.) ¶ 97.

**Response**: Undisputed.

82.     Disclosure of the information would serve no public benefit and would not assist the public in understanding how ICE is carrying out its statutory duties.  Ex. A (Pineiro Decl.) ¶ 98.

**Response:** Undisputed.

## Segregability

83.     ICE has conducted a line-by-line review of its withholdings and determined that all information not exempted from disclosure was correctly segregated and that the non-exempt

portions were released.  Ex. A (Pineiro Decl.) ¶ 100.

84.        **Response**: Undisputed that the Declaration makes the cited statement disputed as to whether this is proper under the Act. As Plaintiff's Exhibit 1 and 2 show, Defendant has applied exemptions to entire documents and the substance of entire emails where it is clear that the documents contain historical facts, factual narratives, and other information information that is not exempted and could easily be segregated. Whether or not Defendant has complied with the commands of the Act is an issue of law to be decided by the Court *de novo*. Plaintiff requests that the Court review the sample in camera.

85.     ICE did not withhold any non-exempt information on the ground that it was not segregable. Ex. A (Pineiro Decl.) ¶ 101.

Response: **Undisputed.**

Respectfully submitted,

By: s/ Nicolette Glazer _____
        Nicolette Glazer Esq.
        Attorney for Plaintiff