UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JACQUELINE STEVENS, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> UNITED STATES DEPARTMENT OF ) <br> HEALTH AND HUMAN SERVICES, *et al.*, ) <br> ) <br> Defendants. ) | No. 22 C 5072 <br><br> Judge Kennelly |

### ICE'S CONSOLIDATED
### REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND
### RESPONSE TO PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT

#### Introduction

Nothing in plaintiff Jacqueline Stevens's response to Immigration and Customs Enforcement's motion for summary judgment presents a reason to deny the motion. And nothing in her filing—which doubles as a memorandum in support of her cross-motion for summary judgment—presents a basis for granting summary judgment in *her* favor. ICE has conducted an adequate search for records and has appropriately withheld some information under several exceptions to the FOIA statute.

#### Argument

ICE explained in its opening memorandum that it is entitled to summary judgment because it has conducted an adequate search for records responsive to Stevens's FOIA requests (Mem. at 2-8) and because the information it has withheld from production is protected from release by several exceptions to the FOIA statute. Mem. at 8-13.

**I.    Summary Judgment on Count I**

Stevens says that, because ICE did not respond to her FOIA requests within the 20-day

time period directed by the FOIA statute, she is entitled to summary judgment on Count I of her complaint, which alleges that ICE violated FOIA by not complying with its statutory deadlines. Resp. at 3-4. She does not cite a single case standing for this proposition, but she insists that to hold otherwise would be to "render pointless" FOIA's "unambiguous language." *Id*. at 4. In her view, preventing a requester from obtaining summary judgment when an agency does not respond to a FOIA request by the statutory deadline would effectively "bar requesters from obtaining public records within the time frame contained in FOIA." *Id*. FOIA's requirements are "unambiguous," she says, and the court must enforce FOIA's instruction that an agency "shall" make a determination on a FOIA request within 20 business days. *Id*. at 4-5.

Stevens does cite a series of cases standing for the proposition that an agency violates FOIA by not responding by the statutory deadline. Resp. at 5. And it is true that FOIA directs an agency to make a determination on a FOIA request within 20 business days, unless the agency invokes an additional 10-day extension. 5 U.S.C. §§ 552(a)(6)(A)(i), (B)(i). But a FOIA requester is not entitled to summary judgment simply because the agency did not respond by the statutory deadline. *Citizens for a Strong N.H., Inc. v. IRS*, 2015 U.S. Dist. LEXIS 115596 (D.N.H. Aug. 31, 2015) ("an agency's failure to comply with FOIA's timeliness requirements, alone, does not entitle the requesting party to summary judgment" but rather "merely entitles the requester to seek judicial relief"); *Hainey v. Dep't of the Interior*, 925 F.Supp.2d 34, 42 (D.D.C. 2013) ("While the Court agrees that the Department's responses were untimely under the statute, the Department's untimely responses, in and of themselves, do not entitle Hainey to judgment in her favor."); *Barvick v. Cisneros*, 941 F.Supp. 1015, 1019 (D. Kan. 1996) ("This court is persuaded that an agency's failure to respond [by the statutory deadline] does not automatically entitle a FOIA requester to summary judgment.").

Indeed, far from triggering *automatic summary judgment*, an agency's noncompliance with FOIA's statutory deadline merely triggers the FOIA requester's *right to file suit* in federal court. The plain language of the statute says as much. 5 U.S.C. § 552(a)(6)(C)(i) (FOIA requester "shall be deemed to have exhausted his administrative remedies" if the agency "fails to comply with the applicable time limit provisions"). As the *Citizens for a Strong N.H., Inc.* court noted, "[b]y equating the agency's failure [to respond] with the requester's exhaustion of administrative remedies, Congress evidenced an intent to entitle the requester to seek a remedy in the form of judicial relief." 2015 U.S. Dist. LEXIS 1155996 at *18. And the entitlement to seek judicial relief "cannot be read to automatically merit the entry of summary judgment in the requester's favor." *Id*. ("such a reading would effectuate an additional remedy beyond that which Congress expressly created").

In other words, noncompliance with the statutory deadline simply provides the requester with a ticket *into* federal court, not a winning ticket. *Oglesby v. Dep't of the Army*, F.2d 57, 64 (D.C. Cir. 1990) (statutory deadline's purpose is "to allow a FOIA requester, who has not yet received a response from the agency, to seek a court order compelling the release of the requested documents"); *Carmody & Torrance v. Def. Contract Mgmt. Agency*, 2014 U.S. Dist. LEXIS 33130, 2014 WL 1050908, *6 (D. Conn. Mar. 13, 2014) ("untimeliness is not a *per se* statutory violation entitling the requester to any specific remedy," because when an agency does not respond by the statutory deadline, "the recourse under FOIA is litigation in federal court," as the requester is deemed to have exhausted administrative remedies and may sue to compel disclosure); *Kimm v. DOJ*, 1996 U.S. Dist. LEXIS 13018, 1996 WL 509724, *3 (S.D.N.Y. Oct. 1, 1996) ("the government's failure to respond to Kimm's request within the statutory [deadline] does not give Kimm the right to obtain the requested documents; *it merely amounts to an exhaustion of*

3

*administrative remedies* and allows Kimm to bring this lawsuit") (emphasis added).

This very lawsuit illustrates the principle that noncompliance with FOIA's statutory deadline provides the requester with a ticket into federal court (as opposed to automatic summary judgment). Stevens filed suit in September 2022 and ten days later moved for a preliminary injunction compelling ICE to respond to her FOIA requests. Dkt. 1, 3, 6 ¶ 2. After briefing, the court granted the motion in part and directed ICE to process 1,500 pages of records per month. Dkt. 34 at 20. In other words, the process worked.

In sum, there is no basis for awarding summary judgment to Stevens based on the simple fact that ICE did not respond to her FOIA requests within 20 business days. When ICE did not respond within 20 business days to the requests that she submitted in June 2021, March 2022, and August 2022 (Defendant's Statement of Fact (DSOF) ¶¶ 9, 26, 37), that gave her the right to sue to procure the records—a right she exercised when she filed this lawsuit in September 2022. Dkt. 1.

## II.  Adequate Search for Responsive Records

Astonishingly, Stevens claims that "to this day" ICE "has not issued the required 'determination.'" Resp. at 5. But this is simply wrong. As explained, ICE has shown that it made a good-faith effort to conduct searches reasonably calculated to uncover all relevant documents and produced the responsive ones. Mem. at 2-8.

Stevens responds that ICE produced only 2,802 pages of the 13,703 pages of potentially responsive records that its searches returned, and she says that ICE has "failed" to produce the rest. Resp. at 6. But a FOIA requester is not entitled to records that are not responsive to her request. *E.g., White v. DOJ*, 460 F.Supp.3d 725, 747 (S.D. Ill. May 19, 2020) (rejecting plaintiff's proposed search terms that would have yielded records "too numerous" to "review for responsiveness").

4

Stevens also says that some of the pages that the parties agreed would be included on ICE's *Vaughn* index did not appear on the *Vaughn* index that ICE submitted with its motion for summary judgment. Resp. at 6-7. And it is true that ICE inadvertently omitted a number of pages from its *Vaughn* index that should have been included. *See* Dkt. 98 (ICE's motion seeking additional time to prepare a supplemental *Vaughn* index to correct the omissions), 99 (order granting motion). ICE has now corrected that error and has offered a supplemental declaration from its FOIA director Fernando Pineiro attaching a supplemental *Vaughn* index, which is attached as Exhibit B to ICE's LR 56.1(b)(3) statement of additional facts in opposition to Stevens's cross-motion for summary judgment. *See also* Defendant's Statement of Additional Facts ¶¶ 77-87.

Stevens next argues that ICE's searches were inadequate. Resp. at 7. She cites a case from the District of Connecticut stating that declarations explaining an agency's search efforts "must detail files searched and the general scheme of the agency file system." *Id*. (quoting *Serv. Women's Action Network v. Dep't of Def.*, 888 F.Supp.2d 231, 245 (D. Conn. 2012)). And she faults ICE's declaration for not providing enough "details about the scope and methods of the searches." *Id.* at 7. In support of this contention, she attempts to cite her response to ICE's Local Rule 56.1 statement of facts and her own statement of additional facts, but she provides only "??" as a placeholder for the statements she intends the court to review, so the claim is impossible to evaluate. Resp. at 7-8. In any event, the Seventh Circuit takes a different approach than the District of Connecticut, approving of declarations that describe what was searched and explain that the locations were determined by employees familiar with the recordkeeping systems. *Compare Vietnam Veterans v. DHS*, 8 F.Supp.2d 188, 221 (D. Conn. 2014) (criticizing declaration that stated that "hard drives, shared drives, and email accounts" were searched without explaining "whether there are other electronic files that were not searched") *with Stevens v. State*, 20 F.4th 337 (7th Cir.

5

2021) (approving declaration that described the locations searched and asserted that officers "made choices about what to search based on their familiarity with the holdings of the Department's records system") (internal quotation omitted).

Stevens says that she requested grievances, commissary account data, and work program participation records relating to Silvestre, Hoang, and Charpentier, but that ICE did not search for these records. Resp. at 8. But ICE has explained that its searches were broad enough to capture these records, should they exist. For Silvestre, ICE searched for records using his "alien number" and various versions of his name. DSOF ¶¶ 13-15, 18-24. Likewise, for Hoang, ICE searched for records using his alien number and various versions of his name. DSOF ¶¶ 30-31, 33, 35. And for Charpentier, ICE searched for records using *both* of his alien numbers and various versions of his name. DSOF ¶¶ 40, 42, 45-48. Stevens says that ICE searched the wrong sub-offices and should have searched its offices "that track detention facility compliance with ICE contracts." Resp. at 8. But she offers no basis other than (at best) speculation for challenging ICE's determinations regarding which of its offices were reasonably likely to have responsive records. DSOF ¶¶ 11-12, 17, 28-29, 34, 38-39, 44.

Stevens says that ICE's declaration does not "describe or name" the systems and databases that ICE maintains or describe what records are maintained in those systems. Resp. at 8. Again, the Seventh Circuit does not require that level of specificity about places that ICE did not search. *Stevens*, 20 F.4th 337 (approving declaration that described the locations searched and asserted that officers "made choices about what to search based on their familiarity with the holdings of the Department's records system") (internal quotation omitted).

Stevens also complains that, when searching for records relating to Hoang, ICE searched databases called EARM and RAILS, but that, when searching for records relating to Charpentier,

6

ICE did not search EARM or RAILS. Resp. at 8-9. She likewise notes that, when searching for records relating to Hoang, the OPLA offices in Los Angeles and Dallas searched PLAnet, but when searching for records relating to Charpentier, the OPLA office in New York searched its shared drive databases, PLAnet, and PCQS, without explaining the reason for the difference. *Id*. at 8. But ICE has explained that the component offices that are tasked with FOIA searches are instructed to search the file systems that, in their judgment, based on their knowledge of the manner in which they routinely keep records, are the files most likely to contain responsive records. DSOF ¶ 7. That different component offices might execute searches differently is unsurprising, and Stevens has not offered any basis for questioning ICE's determinations regarding what locations were reasonably likely to have responsive records. She *speculates* that, if one office decided to search a particular database and another office did not, the second office's search was insufficient. But it could just as easily be speculated that the first office's approach represented a belt-and-suspenders approach or that the search of the particular database was unnecessary in the first place. And speculation is not enough to survive summary judgment. *Dawson v. Brown*, 803 F.3d 829, 833 (7th Cir. 2015) (favor toward non-moving party "does not extend to inferences that are supported only by speculation or conjecture").

Similarly, Stevens complains that, when searching for records relating to Silvestre, ICE's OPLA office in Phoenix searched their shared drive databases, the PLAnet system, the ENFORCE component of EARM, and RAILS, but the OPLA office in El Centro did not conduct a search. Resp. at 9. But instead of citing either party's Local Rule 56.1 statement of facts for this proposition, she instead cites her "Exhibit 1" directly. This violates Local Rule 56.1(g) (summary judgment memoranda "must cite directly to specific paragraphs in the LR 56.1 statements or responses" when "addressing facts"), so the assertion can be disregarded. *Midwest Imports v.*

7

*Coval*, 71 F.3d 1311, 1317 (7th Cir. 1995) (LR 56.1 provides "the only acceptable means of disputing the other party's facts and of presenting additional facts"). And regardless, Stevens has not offered any basis on which to suppose that ICE incorrectly decided which sub-offices were likely to contain responsive records.

Stevens also criticizes ICE's OPLA office for not using the search term "Guzman" when searching for records relating to Silvestre, because, she says, ICE's records refer to "Guzman Silvestre, Miguel A#" when referring to him. Resp. at 9. But the OPLA office used the word "Silvestre" *by itself* as a search term, which would have captured any record containing the phrase "Guzman Silvestre Miguel A#." DSOF ¶¶ 34-35, 39-40.

Stevens also criticizes ICE's OPLA office for searching for "Tom Hoang" instead of "Toan Hoang." Resp. at 9. In support of this claim she cites "para 54" of Dkt. 89, which is ICE's statement of facts, or DSOF. But DSOF ¶ 54 does not even say anything about Hoang.

Finally, Stevens criticizes ICE's OPLA office in New York for not searching for "Pascual Carpenter" even though she says his "Notice to Appear" identified that as one of Charpentier's aliases. Resp. at 9. Again, she cites one of her exhibits directly, in violation of Local Rule 56.1, so the assertion can be disregarded. *Midwest Import*, 71 F.3d at 1317 (LR 56.1 provides "the only acceptable means of disputing the other party's facts and of presenting additional facts"). And regardless, a lone reference on a single document to a *possible* alternative spelling of Charpentier's name hardly rises to the level of the type of "positive indicator[] of overlooked material" that might preclude summary judgment. *Wallick v. Agric. Mktg. Serv.*, 281 F.Supp.3d 56, 73 (D.D.C. 2017). Note that Stevens does not even argue that *all* of ICE's sub-offices should have used her preferred search term—only that ICE's OPLA office in New York should have. And "there is no requirement that an agency use identical search terms in all of its offices." *Fox News Network,*

8

*LLC v. Dep't of Treasury*, 739 F.Supp.2d 515, 534 (S.D.N.Y.).

### III. No Information Improperly Withheld

ICE has explained that it has also satisfied the second requirement for summary judgment: it did not improperly withhold records. Mem. at 8-12. Stevens says that ICE has "failed to establish proper grounds" for its withholdings. Resp. at 10. None of her arguments has merit.

Regarding Exemption 5, Stevens says that ICE produced Hoang's "USC memo" with minimal redactions but redacted Charpentier's "USC memo" in full. Resp. at 10. She says that both records are "final documents" and therefore are "neither pre-decisional nor deliberative." Resp. at 10. But the memos are not final. As ICE's *Vaughn* index explains, the Charpentier memo is a memorandum "authored by an ICE attorney" that "will be used by ICE leadership to render a decision." DSAF ¶ 77. That is why ICE withheld the Charpentier memo as pre-decisional, deliberative material. *Id*. Perhaps ICE should also have withheld the Hoang memo in full, rather than simply making a few redactions for personal privacy. DSAF ¶ 78. But ICE's failure to withhold information that it could have properly withheld does not preclude ICE from withholding other, similar information. *Mehl v. EPA*, 797 F.Supp. 43, 48 (D.D.C. 1992) ("partial disclosure of the contents of a document does not constitute a waiver of the applicable FOIA exemptions for the entire document").

Stevens next says that ICE applied Exemption 5 to a "Standard Operational Procedure" document that she says is "final" and therefore neither pre-decisional nor deliberative. Resp. at 10. But she ignores that ICE has withdrawn its claim that Exemption 5 applies to this document and has produced the document. DSAF ¶ 79. Stevens then complains that ICE has re-processed certain records and urges the court to order ICE to "review the entire production." Resp. at 10-11. One might think that, if Stevens felt that ICE's voluntary lifting of its redactions on a particular

9

record implicated other redactions that it applied, she would point out which records might be implicated. But she has not done so. Nor has she offered any basis or cited any case supporting the idea that ICE should be forced to "re-process" its entire production, which—recall—took ten months to accomplish. Dkt. 27 ¶ 3 (reporting in December 2022 that ICE had started producing records), 54 ¶ 5 (reporting in October 2023 that ICE had completed its production).

Stevens also says that ICE applied Exemption 5 to "documents filed and appearing on court dockets." Resp. at 10. This is simply false. She cites two pages on which this supposedly happened, citing directly page 48 of her Exhibit 1 and page 2 of her Exhibit 2—yet another violation of Local Rule 56.1. But even on the face of the cited pages, not a single Exemption 5 redaction appears on either page. *See* Dkt. 96-1 at 48 of 100, 96-2 at 2 of 59. (That ICE is forced to cite Stevens's exhibits directly to point out her mischaracterization of them illustrates the problem that arises when litigants ignore Local Rule 56.1.)

Regarding Exemption 6, Stevens says that ICE has improperly applied the exemption to "information pertinent to the parents of the subjects of the request." Resp. at 11. She cites "Vaughn Index at 41," which apparently is a reference to page 41 of Dkt. 89, on which appears a *Vaughn* index entry for the Bates range 12-17. (The difficulty that arises when a litigant cites evidence directly rather than a LR 56.1 statement becomes increasingly clear.) The entry shows that ICE redacted the names of third parties, and a glance at the record in question shows that ICE did indeed redact the names of Hoang's parents. Dkt. 96-1 (Pl. Ex. 1) at 4 of 100 (referring to a "marriage dissolution between [redacted] (Claimant's mother) and [redacted] (Claimant's father)"). Why it might have been improper for ICE to redact those names is left to the reader's imagination. Stevens adds that "it appears that some are now deceased," Resp. at 11, but she does not even attempt to explain what significance this development would have even if it were

10

supported by evidence in the summary judgment record, which it is not.

Finally, regarding Exemptions 6 and 7(C), Stevens says that ICE redacted "entire documents" even though the documents "appear to contain factual narrative rather than personally identifiable information that could easily be segregated." Resp. at 11. She again cites her exhibits directly, citing her Exhibit 1 at 10-11, 15, 26-30, 49-53, 70-71, 76, and Exhibit 2 at 7, 17-27, 29-36, 38-39. None of the pages contains an improper withholding, as explained below.

Regarding the pages of plaintiff's Exhibit 1 that Stevens cites, pages 10-11 of Exhibit 1 correspond to Bates range 53-54 of ICE's production, which is a naturalization certificate for one of Hoang's relatives and that ICE has agreed to re-process the record and segregate the withheld material. DSAF ¶ 80. Page 15 of plaintiff's Exhibit 1 corresponds to Bates number 388 of ICE's production, and the *Vaughn* index explains that ICE withheld this information under Exemption 7(E) because disclosing the email—a request for assistance from the Joint Intelligence Operations Center—could reveal law enforcement techniques and procedures, the disclosure of which could reasonably be expected to risk circumvention of the law. DSAF ¶ 81. Pages 26-30 and 49-53 of plaintiff's Exhibit 1 correspond to Bates ranges 443-448 and 1011-1015 of ICE's production, and ICE has agreed to re-process these pages with the exempt material segregated. DSAF ¶ 82. Pages 70-71 of plaintiff's Exhibit 1 correspond to Bates range 1088-1089 of ICE's production, which ICE has withheld under Exemption 5, because the document is an email exchange discussing potential arguments relating to a citizenship claim scheduled for the following day. DSAF ¶ 83. And Page 76 of plantiff's Exhibit 1 corresponds to Bates number 1117 of ICE's production, but even the quickest glance at page itself (page 76 of plaintiff's Exhibit 1) shows that ICE redacted only names and portions of phone numbers and email addresses—not any "factual narrative" that could be further segregated as Stevens seems to think.

As for plaintiff's Exhibit 2, page 7 corresponds to Bates number 93 of ICE's production, which is a third party's translated birth certificate, which ICE withheld in full under Exemptions 6 and 7(C) because its disclosure could reasonably be expected to constitute—and in fact would constitute—an unwarranted invasion of personal privacy. DSAF ¶ 84. Pages 17-27 of plaintiff's Exhibit 2 correspond to Bates range 450-460 of ICE's production, which consist of a third party's petition for naturalization, an affidavit of a witness, an application to file a petition for naturalization, a background check, and an application for a permit to re-enter the United States—all of which the United States withheld under Exemptions 6 and 7(C) because the disclosure of the information on the documents could reasonably be expected to constitute—and in fact would constitute—an unwarranted invasion of personal privacy. DSAF ¶ 85. Pages 29-34 of Exhibit 2 correspond to Bates range 1031-1035 of ICE's production, which consist of a third-party report of transfer or discharge from the armed forces. DSAF ¶ 86. ICE withheld the report because its release would disclose a third party's name, social security numbers, ranking, date of rank, date of birth, selective service number, blood type, address, third-party authorizing officer, signatures, and a copy of the front and back of the person's permanent resident card, which could reasonably be expected to constitute—and in fact would constitute—an unwarranted invasion of person privacy. *Id*. And finally, pages 35-36 and 38-39 of Exhibit 2 correspond to Bates range 1316-1318 and 1320-1321, which consist of a fingerprint notification package from the Immigration and Naturalization Service. DSAF ¶ 87. ICE withheld the package under Exemptions 6 and 7(C) because its release would disclose a third party's name, alien numbers, date and place of birth, signatures, social security numbers, addresses, and a copy of the back of their permanent residence card, which could reasonably be expected to constitute—and in fact would constitute—an unwarranted invasion of privacy. *Id*.

## Conclusion

For the above reasons, and for the reasons in ICE's opening memorandum, the court should enter summary judgment in ICE's favor and deny Stevens's cross-motion for summary judgment.

Respectfully submitted,

MORRIS PASQUAL
Acting United States Attorney

By: s/ Alex Hartzler
    ALEX HARTZLER
    Assistant United States Attorney
    219 South Dearborn Street
    Chicago, Illinois 60604
    (312) 886-1390
    alex.hartzler@usdoj.gov