**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **JACQUELINE STEVENS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 22 C 5072** |
| | ) | |
| **UNITED STATES DEPARTMENT OF** | ) | |
| **HEALTH AND HUMAN SERVICES, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

MATTHEW F. KENNELLY, District Judge:

Jacqueline Stevens has filed suit against the Department of Health and Human Services (HHS), the Department of Homeland Security (DHS), Customs and Border Protection (CBP), Immigration and Customs Enforcement (ICE), the United States Citizenship and Immigration Services (USCIS), the Department of Justice (DOJ), and the Executive Office for Immigration Review (EOIR), which is part of DOJ. Stevens's claims arise under the Freedom of Information Act (FOIA). CBP has moved for summary judgment on the ground that it has completed Stevens's FOIA requests. Stevens has filed a cross-motion for summary judgment. For the reasons below, the Court grants both motions in part and denies both in part.

**Background**

The following facts are undisputed unless otherwise noted. Stevens is a political science professor at Northwestern University. Since 2011, she has conducted research and published articles regarding "the U.S. government's unlawful detention and

deportation of U.S. citizens."  Compl. ¶ 7.  In 2012, Stevens founded Northwestern University's Deportation Research Clinic, which was launched with the "purpose of studying government misconduct in deportation proceedings."  *Id.* ¶ 9.

## A.    FOIA Requests

This case concerns FOIA requests that Stevens filed with CBP in 2019 and 2022.

### 1.    Underwood requests

In the first request, filed on November 22, 2019, Stevens sought various records regarding Congresswoman Lauren Underwood and the potential development of an Electronic Health Record (EHR) system at DHS.  Specifically, the request sought:

> 1. All communications and related materials created, received, or maintained by the Department of Homeland Security to which Rep. Lauren Underwood (D-IL) or any member of her staff were a party. This includes but is not limited to all e-mail, text messages, notes, reports, memorandums, proposed bill texts, and bill evaluations. Please note that in a floor speech of 9/26/2019 Rep. Underwood stated she received information from the "Department of Homeland Security" indicating a request for an integrated Electronic Health Records System she referenced as "EHR." She refers to this in her remarks on HR 3525 as a "direct ask from medical officers at the Department of Homeland Security." Here is a link to the bill text in question: https://www.congress.gov/bill/116th-congress/house-bill/3525/text (It is possible that she actually had in mind Immigration and Customs Enforcement but failed to make this explicit. In the event, I am requesting all communications associated with this "direct ask.")

> 2. DHS communications and related materials created by or received from other components of DHS or the Department of Health and Human Services Office of Refugee Resettlement about the use of Electronic Health Records systems already in place as well as the establishment of an EHR for the use by offices of CBP.

> 3. Information on meetings and communications with private individuals, including but not limited to lobbyists or company officials related to past, current, or potential "enterprise" or other information technologies for collecting, coordinating, or maintaining health records data for those encountered or detained by DHS or any component of DHS. I have in mind technical reports, e-mail, text messages, or other communications with the

private sector tied to past, current, or potential contracts tied to EHR systems.

Pl.'s Resp. to Def.'s Mot. for Summ. J., Ex. E.

On December 2, 2019, DHS transferred the request to CBP. CBP has a FOIA division tasked with "determin[ing] which CBP systems, databases, and offices are likely to contain records responsive to a particular FOIA request." Def.'s L.R. 56.1 Stmt. ¶ 5.

Stevens filed the present suit on September 16, 2022. On June 8, 2023, she moved for summary judgment against multiple defendants, including CBP. On October 2, 2023, this Court granted Stevens's motion in part and denied it in part. *Stevens v. U.S. Dep't of Health & Hum. Servs.*, No. 22 C 5072, 2023 WL 6392407 (N.D. Ill. Oct. 2, 2023) (Kennelly, J.). With respect to CBP, this Court concluded that Stevens was not entitled to summary judgment on the March 2022 Hoang request and directed CBP to search for records responsive to Stevens's Underwood request. *Id.* at *7-8.

To fulfill part one of Stevens's request relating to Representative Underwood, CBP conducted a search within the e-mail inboxes of the directors of the CBP Office of Congressional Affairs (OCA). OCA directors were instructed to search their e-mail inboxes for communications with Representative Underwood and/or her staff about EHR systems. The directors used the search terms "Underwood," "Lauren Underwood," "EHR," "Health Record," and "Electronic health record." Howard Decl. ¶ 29. CBP determined that part two of the Underwood request sought only DHS records, and thus it did not conduct a search of CBP records to fulfill this part of Stevens's request. For part three, CBP FOIA staff determined that CBP's Procurement Office, which is "responsible for contract oversight and administration," was the only office reasonably likely to have any potential responsive records. *Id.* ¶ 26. The Procurement

3

Office identified an employee who "serves as the point of contact for electronic medical records within the Procurement Directorate." *Id.* ¶ 28. This employee advised that per her "clear recollection," she has never had any verbal or written correspondence with any private individuals related to "collecting, coordinating or maintaining health record data for people encountered by DHS or any DHS component such as CBP." Def.'s L.R. 56.1 Stmt. ¶ 32. On July 14, 2023, CBP issued its first response to Stevens, stating that it had not located any information responsive to her FOIA request.

Following this initial search, OCA informed CBP FOIA division staff that responsive records potentially could be found in the OCA's "OCATaskings" e-mail inbox. A search of the OCATaskings inbox using the same search terms produced twenty-three pages of records that "discussed medical issues related to Representative Underwood and to the Agency." Howard Decl. ¶ 31. On October 31, 2023, CBP sent Stevens a final response to her FOIA request relating to Representative Underwood. The response stated that CBP had reviewed twenty-three pages of records and determined that three pages were non-responsive, thirteen pages should be withheld, and seven pages were available for production with redactions. CBP contends that these redactions were proper withholdings under three FOIA statutory exemptions for private information. CBP also prepared a *Vaughn* index explaining the basis for its withholdings and redactions.

### 2. Hoang requests

In her first FOIA request relating to Hoang, filed in spring 2022,[1] Stevens

---

[1] The parties dispute whether this request was filed on March 10, 2022 or May 18, 2022. *See* Def.'s Resp. to Pl.'s L.R. 56.1 Stmt. ¶ 1.

submitted a FOIA request directly to CBP. Stevens believes that Hoang is a United States citizen against whom ICE mistakenly issued a deportation order. The request sought "[a]ll system records and other items maintained, produced, or distributed by CBP pertaining to Toan Hoang." Compl. ¶ 25. The request listed various examples of information that could be responsive to the request, including "all memoranda, notes, reports, e-mail messages, and all other system records or communications" pertaining to Hoang and "screen shots of all databases likely to have responsive records." *Id.* The request also included Hoang's "alien number," or A-file number.

CBP's FOIA staff determined that there were two CBP systems reasonably likely to contain responsive information: the e3 portal (E3) and an information sharing platform called TECS. E3 is used "to collect and transmit biographic, encounter, and biometric data for identification and verification of individuals encountered at the border and checkpoints in pursuit of CBP's law enforcement and immigration mission." Def.'s L.R. 56.1 Stmt. ¶ 13. CBP contends that "[i]f a person crosses between official ports of entry and is encountered by the U.S. Border Patrol, E3 will likely have a record of it." *Id.* TECS is an information-sharing platform that collects and transmits data between CBP and various federal agencies to advance CBP's anti-terrorism and law enforcement mission. TECS is "the principal system used by officers at the border to assist with screening and determining travelers' admissibility, and it is reasonably likely to contain records of travelers who are encountered at the United States' ports of entry." *Id.* ¶ 15. CBP FOIA staff queried the E3 and TECS system for responsive records using Hoang's name, birthdate, and A-file number.

On May 18, 2022, Stevens filed an additional FOIA request for records pertaining

to Hoang.  CBP determined that Stevens did not provide a signed third-party authorization form from Hoang along with this request.  On May 20, 2022, CBP sent Stevens a letter information her that it was closing the request due to the absence of a signed authorization form.  Stevens contends that this letter was sent in error and asserts that her May 18, 2022 request included the necessary authorization form.  Pl.'s L.R. 56.1 Stmt. ¶ 2.  On October 26, 2022, CBP sent Stevens a letter informing her that it was unable to locate or identify any records responsive to her Hoang request.  This Court previously ruled that Stevens was not entitled to summary judgment regarding the adequacy of CBP's response to her Hoang request.  *Stevens*, 2023 WL 6392407 at *7.

CBP filed the instant motion for summary judgment on January 19, 2024. Stevens subsequently filed a cross-motion for summary judgment.

## Discussion

Summary judgment is appropriate if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(a); *Martinsville Corral, Inc. v. Soc'y Ins.*, 910 F.3d 996, 998 (7th Cir. 2018).  "A genuine dispute is present if a reasonable jury could return a verdict for the nonmoving party, and a fact is material if it might bear on the outcome of the case." *Wayland v. OSF Healthcare Sys.*, 94 F.4th 654, 657 (7th Cir. 2024).  When considering cross-motions for summary judgment, the Court "view[s] all facts and inferences in the light most favorable to the nonmoving party on each motion."  *Lalowski v. City of Des Plaines*, 789 F.3d 784, 787 (7th Cir. 2015) (internal quotation marks omitted).  "[C]onclusory statements, not grounded in specific facts, are not sufficient to avoid summary judgment."  *Lucas v. Chi. Transit Auth.*, 367 F.3d 714, 726 (7th Cir. 2004).

### A.     CBP's motion for summary judgment

FOIA "requires federal agencies to make Government records available to the public, subject to nine exemptions for specific categories of material." *Milner v. Dep't of Navy*, 562 U.S. 562, 564 (2011); 5 U.S.C. § 552(a)(3).  "The policy goal behind FOIA is the 'broad disclosure' of documents that illuminate for the public the workings of government." *Jackson v. U.S. Dep't of Just.*, 596 F. Supp. 3d 1119, 1124 (N.D. Ill. 2022) (quoting *Lakin L. Firm, P.C. v. FTC*, 352 F.3d 1122, 1123 (7th Cir. 2003)).

To prevail on summary judgment against a FOIA challenge, the agency must demonstrate that "there is no genuine issue of material fact about the adequacy of its records search." *Rubman v. U.S. Citizenship & Immigr. Servs.*, 800 F.3d 381, 387 (7th Cir. 2015).  To be considered adequate, an agency search must be the result of a "good faith effort" and also must be "reasonable in light of the request." *Id.*  An agency may support the adequacy of its search through a "reasonably detailed nonconclusory affidavit." *Id.* (citation omitted).  "Good faith [on the party of the agency] is presumed, and it can be reinforced by evidence of the agency's attempts to satisfy the [FOIA} request." *Henson v. Dep't of Health & Hum. Servs.*, 892 F.3d 868, 875 (7th Cir. 2018).  "In response to an agency affidavit, the FOIA requester can present 'countervailing evidence' as to the adequacy of the agency's search." *Rubman*, 800 F.3d at 387 (quoting *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 314 (D.C. Cir. 2003)).  At the summary judgment stage, the relevant question is not "whether the agency *might* have additional, unidentified responsive documents in its possession" but "whether the search itself was performed reasonably and in good faith." *Rubman*, 800 F.3d at 387.

Before turning to the adequacy of CBP's searches, this Court addresses

7

Stevens's objections to various declarations CBP provided.  CBP submitted a declaration prepared by Patrick Howard, a Branch Chief within CBP's FOIA Division. Stevens argues that Howard's declaration contains insufficient detail to support a grant of summary judgment in CBP's favor because it fails to describe "DHS and CBP's respective general file systems," "the reason for refusing to search databases and locations obviously likely to contain responsive records," and "reasonable details about the scope and methods of the searches performed in response to the FOIA requests." Pl.'s Resp. & Cross-Mot. for Summ. J. at 5.

Stevens cites no binding legal authority in support of her argument that details about an agency's general record-keeping systems or specific justifications for the failure to search a particular database are necessary to assess the adequacy of the agency's search.  Furthermore, Howard's descriptions of CBP's identification of the locations likely to contain responsive materials, the "type[s] of search[es] performed," and "the search terms" used, are consistent with the categories of information that have been found sufficient to allow a court to analyze the adequacy of the agency's search. *Rubman*, 800 F.3d at 387 (quoting *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)); *Turner v. U.S. Forest Serv.*, No. 316CV00635, 2018 WL 4051840, at *7 (S.D. Ill. Aug. 24, 2018) (finding identification of relevant search terms, individuals who contributed to the search and the records the agency discovered constituted sufficient detail for agency's supporting declaration).  Howard's declaration also attests that "all files likely to contain responsive documents were searched."  *See* Howard Decl. ¶¶ 7, 22, 34.  This information is sufficient to support an agency's motion for summary judgment on a FOIA challenge.  *Henson*, 892 F.3d at 875.

8

Stevens also argues that CBP improperly filed a supplemental declaration by Howard that includes new factual assertions. First, some of the information that Stevens identifies is not "new." For example, Stevens objects to the inclusion of a statement that CBP does not have complete records of Border Patrol apprehensions prior to 2000. *See* Pl.'s Reply at 2. But Stevens admits that the letter that CBP issued in response to her first Hoang request informed her that apprehension records from before 2000 may be maintained by USCIS, not CBP. Pl.'s Resp. to Def.'s L.R. 56.1 Stmt., ¶ 17.

Second, in each of the cases that Stevens cites in support of her argument, a party submitted a supplemental affidavit or declaration along with its reply brief, which effectively denied the opposing party the opportunity to respond to those materials. *See Ctr. Dev. Venture v. Kinney Shoe Corp.*, 757 F. Supp. 34, 36 (E.D. Wis. 1991) (refusing to consider affidavit introducing new factual assertions in reply brief); *Griffin Indus., Inc. v. Couch*, No. 1:05-CV-0684-WSD, 2006 WL 783354, at *2 n. 1 (N.D. Ga. Mar. 23, 2006) (same). But Stevens ignores that CBP's reply brief also served as a *response* to her cross-motion for summary judgment. A party is entitled to file supplemental material in support of its response to a cross-motion for summary judgment. *Astellas US Holding, Inc. v. Starr Indem. & Liab. Co.*, 566 F. Supp. 3d 879, 892 (N.D. Ill. 2021). Furthermore, courts in this district have allowed parties seeking summary judgment on a FOIA request to file supplemental materials that "merely respond[] to the search-related issues raised" in the plaintiff's response brief. *Wilson v. U.S. Dep't of Treasury*, No. 15 C 9364, 2016 WL 8504990, at *3 (N.D. Ill. Oct. 12, 2016) (Finnegan, J.); *Stevens v. Broad. Bd. of Governors*, No. 18 C 5391, 2021 WL 1192675, at *9 (N.D. Ill. Mar. 30,

2021) (Rowland, J.) (citing information in defendant's supplemental declaration showing that the locations the plaintiff identified had already been searched). The Court agrees with these decisions.

This Court finds that Howard's original declaration and supplemental declaration describe the searches conducted by CBP in sufficient detail and therefore will not be disregarded.

### 1. Underwood request

#### a. Part one

Part one of Stevens's Underwood request seeks, in part, materials "to which Rep. Lauren Underwood (D-IL) or any member of her staff were a party." Pl.'s Resp. to Def.'s Mot. for Summ. J., Ex. E. CBP's FOIA division determined that its Office of Congressional Affairs, which is responsible for handling all official communication with members of Congress, was the CBP component most likely to have responsive records. Howard's declaration explains that directors within OCA sought responsive records by searching their e-mail inboxes using the search terms "Underwood," "Lauren Underwood," "EHR," "Health Record," and "Electronic health record." Howard Decl. ¶ 29. After an initial search where no responsive information was found, CBP conducted another search within the "OCATaskings" e-mail box, which produced twenty-three pages of potentially responsive documents. After screening for non-responsive records and applying redactions, CBP ultimately provided Stevens with seven pages of responsive documents. CBP also produced a *Vaughn* index describing each redacted or withheld document along with the exemption that CBP asserts is applicable to each such document.

Stevens asserts that her request was for all CBP records "tied to Rep. Underwood's so-called Electronic Health Records ("EHR") bill (HR 3525)." Pl.'s Resp. & Cross-Mot. for Summ. J. at 10. This assertion incorrectly characterizes Stevens's original request, which references H.R. 3525 only to "note" that Representative Underwood "gave a floor speech" about the bill in 2019. *See* Pl.'s Resp. to Def.'s Mot. for Summ. J., Ex. E. In short, this reference does not serve to modify Stevens's request so that it includes any and all information CBP possesses about H.R. 3525. Furthermore, Stevens originally requested communications and related materials to which Representative Underwood and/or members of her staff "were a party." Pl.'s Resp. to Def.'s Mot. for Summ. J., Ex. E. Representative Underwood and her staff are not employed by CBP, and therefore can only be "a party" to CBP communications or documents that were shared with or received by CBP employees. Thus Stevens's assertion that part one of her request sought "internal or interagency" materials that were "about the [sic] Underwood and HR3525," regardless of whether Representative Underwood or her staff were a party to these materials, would significantly expand the scope of her original request. Pl.'s Resp. & Cross-Mot. for Summ. J. at 11. But "a FOIA plaintiff may not expand the scope of [her] request once [her] original request is made." *Coss v. U.S. Dep't of Just.*, 98 F. Supp. 3d 28, 34 (D.D.C. 2015). Because the adequacy of an agency's search depends on the "reasonableness of the effort in light of the *specific* request," this Court will only assess the adequacy of CBP's search in response to Stevens's actual, original request. *Turner*, 2018 WL 4051840, at *8 (quoting *Larson v. U.S. Dept. of State*, 565 F.3d 857, 869 (D.C. Cir. 2009)).

Stevens argues that CBP improperly limited its search to the OCA. But given

11

that Stevens asked for "communications and related materials" regarding a member of Congress, it was not unreasonable for CBP to limit its search to the office that oversees all of CBP's communications with members of Congress.  *See* Howard Decl. ¶ 27.  And Stevens provides no evidence to support any suggestion that CBP employees may have violated CBP's official policy by communicating with Representative Underwood or her staff without OCA authorization.  *See Daniels v. Raimondi*, No. 22 C 4027, 2024 WL 3566637, at *3 (N.D. Ill. July 29, 2024) ("[M]ere speculation that as yet uncovered documents might exist[] does not undermine the determination that the agency conducted an adequate search for the requested records.").

Stevens further argues that it was unreasonable for CBP to search only the e-mail inboxes of OCA directors and not other forms of communication involving lower-level OCA employees.  An agency's burden is not to show that it performed every search that could have potentially yielded responsive records.  Instead, it is the agency's burden "to show that its search efforts were reasonable and logically organized to uncover relevant documents."  *DiBacco v. U.S. Army*, 795 F.3d 178, 191 (D.C. Cir. 2015).  Because Stevens requested "communications and related materials," it was not unreasonable for CBP to search the e-mail records of employees in the office likely to have been involved in communications responsive to the request.  Regarding CBP's decision to search only the inboxes of directors, "the agency is in the best position to determine custodians most likely to have relevant records."  *Am. Oversight v. U.S. Dep't of Just.*, 401 F. Supp. 3d 16, 30 (D.D.C. 2019).  And Stevens has not adduced any evidence that any OCA employees in non-director positions communicated with Representative Underwood or her staff or that communications

would have been through a means other than e-mail. *See Shteynlyuger v. Ctrs. for Medicare & Medicaid Servs.*, 698 F. Supp. 3d 82, 109 (D.D.C. 2023) ("Agencies can be required to search text messages when it is 'reasonably likely' that an employee conducted agency business on a pertinent topic via text."); *cf. U.S. Immigr. & Customs Enf't*, No. 21-CV-2519, 2024 WL 2053123, at *6 (N.D. Ill. May 8, 2024) (concluding agency's search of one employee's e-mails inadequate given evidence in the record suggesting that other employees' e-mail accounts contained responsive records).

Stevens also asserts that "[d]ocuments obtained from another FOIA case" indicate that CBP possesses additional responsive records. Pl.'s Resp. & Cross-Mot. for Summ. J. at 10. Specifically, she notes that in response to a different FOIA request, ICE "produced records revealing the existence of a DHS EHR working group." *Id.* But according to Stevens's own description of that case, the documents were produced in response to a request sent to ICE, not CBP. Even if the Court were to agree with Stevens's contention that the documents she identified are responsive to her CBP request, the potential existence of additional responsive records is insufficient to demonstrate that CBP's search in response to the specific request at issue was inadequate. *See Stevens v. Broad. Bd. of Governors*, No. 18-CV-5391, 2023 WL 2428839, at *8 (N.D. Ill. Mar. 9, 2023) ("[A] search need not be perfect, only adequate."); *Daniels*, 2024 WL 3566637, at *3 ("The fact that not all of the records [plaintiff] believes should exist were produced is insufficient to give rise to a genuine dispute of material fact.").

Stevens asserts in her declaration that CBP utilized inadequate search terms and suggests that CBP should have used additional terms such as "3525," the bill number

that she referenced in her request. First, legal arguments included in a declaration are generally disregarded. *Greene v. Westfield Ins. Co.*, 963 F.3d 619, 627 (7th Cir. 2020) ("[A]ffidavits are for stating facts, not legal conclusions."). Second, as noted above, despite Stevens's assertions to the contrary, H.R. 3525 was not the subject of part one her original Underwood request. Third, "agencies retain discretion in crafting a list of search terms they believe to be reasonably tailored to uncover responsive documents." *Organized Cmtys. Against Deportations, Immigrant Def. Project v. U.S. Immigr. & Customs Enf't*, No. 21-CV-2519, 2024 WL 2053123, at *7 (N.D. Ill. May 8, 2024). Here, no reasonable trier of fact could find that CBP's search terms were not reasonably calculated to yield responsive materials. CBP searched the full name and last name of the Congresswoman that Stevens sought information about as well as multiple terms designed to locate information about the relevant subject matter, electronic health records. Because CBP's search terms were reasonable, the Court "will not second guess the agency regarding whether other search terms might have been superior." *Liberation Newspaper v. U.S. Dep't of State*, 80 F. Supp. 3d 137, 146–47 (D.D.C. 2015).

Stevens also questions the circumstances underlying CBP's discovery of additional responsive records after its original search. But multiple courts have held that the discovery of additional responsive information in a subsequent search does not, without more, render the original search inadequate. *Nat'l Inst. of Mil. Just. v. U.S. Dep't of Def.*, 404 F. Supp. 2d 325, 333 (D.D.C. 2005), *aff'd*, 512 F.3d 677 (D.C. Cir. 2008) ("[S]ubsequent disclosure of documents initially withheld does not alone establish bad faith."); *Stevens v. U.S. Dep't of Homeland Sec.*, No. 13 C 03382, 2014 WL 5796429, at *5 (N.D. Ill. Nov. 4, 2014) ("[C]ourts have repeatedly held that an agency's

14

remedial efforts to find responsive documents is evidence of good faith, and does not prove a search was inadequate.").  The undisputed facts show that CBP's search in response to part one of Stevens's Underwood request was adequate.

The Court next turns to whether CBP properly withheld or redacted responsive documents.  Under FOIA, "federal agencies must produce each and every responsive record unless it fits within a statutory exemption."  *Vidal-Martinez v. U.S. Dep't of Homeland Sec.*, 84 F.4th 743, 747 (7th Cir. 2023) (citation omitted).  Courts construe FOIA exemptions narrowly.  *Henson*, 892 F.3d at 876.

Stevens does not dispute any of the descriptions of the documents provided in the *Vaughn* index or challenge the application of any exemptions in her cross-motion for summary judgment or response brief.  CBP argues that Stevens waived any objection to CBP's reliance on these exemptions by failing to address them.  *See Henson*, 892 F.3d at 876 ("If the plaintiff wishes to claim that the government has claimed inapplicable exemptions to disclosure, the plaintiff should identify specifically which ones are disputed.").  Because the agency claiming the exemption bears the burden of establishing that the exemption applies, the Court will address whether CBP met that burden.  *Erwin v. U.S. Dep't of State*, No. 11 C 6513, 2013 WL 842601, at *6 (N.D. Ill. Mar. 6, 2013) (concluding that despite the plaintiff's failure to properly challenge FOIA exemption, "there is no forfeiture because the [defendant] has the burden of proving that it is entitled to the exemption.").

CBP contends that it redacted various documents responsive to part one of Stevens's Underwood-related request under three statutory exemptions.  The first is the exemption provided by subsection (b)(5), which protects documents that would be

unavailable by law to a party in litigation with the agency. *See* 5 U.S.C. § 552(b)(5). This exemption encompasses documents protected by the attorney-client privilege, attorney work-product privilege, and deliberative process privilege. *U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 592 U.S. 261, 263 (2021). The second is the exemption provided in subsection (b)(6), which protects documents whose disclosure would result in an unwarranted invasion of personal privacy. *See* 5 U.S.C. § 552(b)(6). The third is the exemption provide by subsection (b)(7)(C), which protects private information included in records developed for law enforcement purposes. *See id.* § 552(b)(7)(C).

The primary focus of the "deliberative process privilege" protected under FOIA exemption five involves documents that "reflect the agency's group thinking in the process of working out its policy and determining what its law shall be." *Nat'l Immigrant Just. Ctr. v. U.S. Dep't of Just.*, 953 F.3d 503, 508 (7th Cir. 2020). CBP invoked the deliberative process privilege to support the withholding of multiple draft briefing memos developed to prepare the DHS Secretary for Congressional meetings and hearings. Howard Decl., Ex. 1 at 2-4. Pre-decisional briefing materials developed as part of the agency's legislative or policy-making process are generally protected by the deliberative process privilege. *Gellman v. Dep't of Homeland Sec.*, 525 F. Supp. 3d 1, 12 (D.D.C. 2021). And CBP has asserted that all of the documents contain "initial opinions and recommendations before agency decisions were made." Howard Decl. ¶ 37. *See Jud. Watch, Inc. v. Consumer Fin. Prot. Bureau*, 60 F. Supp. 3d 1, 11 (D.D.C. 2014) ("[I]nternal communications as part of an Executive Branch decision-making process regarding Congressional hearings are protected under the deliberative process privilege."). Stevens has not requested an *in camera* review of the documents or

demonstrated a "particularized need [for disclosure] to outweigh the reasons for confidentiality." *SEC v. SBB Rsch. Grp., LLC*, No. 19 C 6473, 2022 WL 2982424, at *8 (N.D. Ill. July 28, 2022) (quoting *United States v. Farley*, 11 F.3d 1385, 1389 (7th Cir. 1993)). Based on the descriptions provided in the *Vaughn* index, this Court finds that CBP has met its burden of establishing the proper application of FOIA exemption five to these documents.[2]

FOIA exemptions six and seven both allow for the withholding of information that would result in "an unwarranted invasion of personal privacy." 5 U.S.C. §§ 552(b)(6), (b)(7)(C). On a number of documents, CBP redacted the names of CBP employees and third-party individuals who did not consent to the release of their personal information. Howard Decl., Ex. 1 at 1-4. "[P]ersonal identifying information is regularly exempt from [FOIA] disclosure." *Lakin L. Firm, P.C.*, 352 F.3d at 1124; *Bogan v. FBI*, No. 04-C-532-C, 2005 WL 1367214, at *7 (W.D. Wis. June 7, 2005) (noting that the (b)(6) exemption is generally used to protect government employees' personal information). And Stevens has not demonstrated a "public interest" in the disclosure of these names that outweighs potential privacy concerns. *Becker v. IRS*, 34 F.3d 398, 404 (7th Cir. 1994) (concluding that the plaintiffs had failed to advance any public interest in disclosure of IRS employee names); *see Wilson*, 2016 WL 8504990, at *8 (noting the plaintiff's failure to assert a public interest in obtaining individuals' private identifying information). The Court finds that CBP has met its burden of establishing the

---

[2] CBP also invokes the attorney-client privilege to justify withholding a document that includes "edits and comments with guidance made by CBP attorneys." Howard Decl., Ex. 1. Because this Court has concluded that this document is subject to the deliberative process exemption, it need not address whether additional exemptions apply.

proper application of FOIA exemptions six and seven.

The only dispute that Stevens asserts regarding CBP's withholding of information is that Howard's declaration "fails to justify withholding CBP Directive No. 2130-012A." Pl.'s Resp. & Cross-Mot. for Summ. J. at 5. But CBP's *Vaughn* index states that the document "does not contain any reference to Rep. Underwood or her staff." *Id.* This explanation is sufficient to demonstrate that this document was not a communication or related document to which Representative Underwood or her staff were a party and thus that it was not responsive to part one of Stevens's request.

The Court concludes that CBP is entitled to summary judgment on part one of Stevens's Underwood request.

### b.    Part two

CBP did not conduct a search in response to part two of Stevens's Underwood request because "CBP FOIA staff determined that this part of the request did not seek CBP records." Howard Decl. ¶ 26. It provides no explanation demonstrating how or why its FOIA staff reached this conclusion. *See* Def.'s L.R. 56.1 Stmt. ¶ 30. And it is unclear from the language of the request why CBP interpreted the request as only seeking DHS records. Part two of Stevens's Underwood request asks, in part, for "DHS communications and related materials created by or received from other components of DHS." Pl.'s Resp. to Def.'s Mot. for Summ. J., Ex. E. At first glance, it may appear that this request merely seeks "DHS communications." But agencies have a duty to construe FOIA requests liberally. *Rubman*, 800 F.3d at 389. Given that CBP is a "component[] of DHS", this request also encompasses materials that are created by CBP and sent to DHS, as well as materials that are developed by DHS and sent to

CBP.  CBP does not provide any factual or logical support for its determination that a request for materials exchanged between CBP and DHS could only be fulfilled through a search of DHS records.

CBP's determination is especially unreasonable given that the language of this request is not meaningfully different from the language of part one or part three of Stevens's Underwood request.  Part one of the request seeks "all communications and related materials created, received, or maintained by the Department of Homeland Security," and part three seeks information regarding "collecting, coordinating, or maintaining health records data for those encountered or detained by DHS or any component of DHS."  Pl.'s Resp. to Def.'s Mot. for Summ. J., Ex. E.  It is unclear why CBP would determine that requests for records created, maintained or received by DHS and a request for information related to individuals detained by any component of DHS sought CBP records but that a request for information *created or received by a DHS component* sought only DHS records.

CBP's interpretation of Stevens's request raises a genuine dispute regarding whether CBP responded "reasonably" and "in good faith" to Stevens's request. Consequently, the Court finds that CBP is not entitled to summary judgment on part two of Stevens's Underwood request.

### c.    Part three

To respond to part three of Stevens's Underwood request, CBP focused its search within its Procurement Office, which is "responsible for contract oversight and administration."  Howard Decl. ¶ 26.  The Procurement Office "identified the employee who serves as the point of contact for electronic medical records," and this employee

19

allegedly stated that according to her "clear recollection," she had never corresponded with any private individuals about the subject matter of the request. *Id.* ¶ 28.

CBP's decision to limit its search to the recollection of a single employee may not have rendered the search inadequate. But to prevail on a summary judgment motion, an agency is required to, at a minimum, "explain why it believes such limits are reasonable." *White v. Exec. Off. of U.S. Att'ys*, 444 F. Supp. 3d 930, 937 (S.D. Ill. 2020); *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990) ("At the very least, [defendant] was required to explain in its affidavit that no other record system was likely to produce responsive documents."). CBP asserts that this employee was the "the best possible source of information." Def.'s Reply at 5. But neither Howard's declaration nor CBP's briefs establish that this employee's memory was the only location within CBP likely to identify responsive records. *See* Howard Decl. ¶¶ 31-32. And CBP has provided no information about the employee, such as the duration of her tenure within the Procurement Office, that would allow this Court to assess the reasonableness of CBP's decision to rely solely on this employee's recollection. CBP's failure to explain its reasoning for the limits it applied to its search raises "substantial doubt" about the adequacy of that search. *Rubman*, 800 F.3d at 387. CBP is therefore not entitled to summary judgment on part three of her Underwood request.

### 2. Hoang request

Upon reviewing Stevens's Hoang request, CBP's FOIA division determined that the databases most likely to have responsive documents were its E3 portal and TECS. E3 contains information about individuals encountered by the U.S. Border Patrol and TECS contains records for travelers encountered at United States ports of entry.

Howard Decl. ¶¶ 13, 15.  After entering Hoang's name, birthdate and A-file number into E3 and TECS, CBP FOIA staff did not discover any responsive records.

Stevens argues that CBP did not adequately explain why it limited its search to E3 and TECS records.  Not so.  Howard explains in his declaration that E3 and TECS are two systems that are reasonably likely to have a record of individuals that arrive at ports of entry and encounter United States Border Patrol.  Howard Decl. ¶ 13, 15.  Because Stevens submitted a broad request for "all records" pertaining to Hoang, Howard's explanation is sufficient to show that CBP focused its search on the two databases that were likely to indicate whether any records on Hoang existed in CBP's systems.

Stevens contends that there are other sources of information that CBP did not search that are likely to contain responsive records.  According to a Federal Register notice that Stevens cites, DHS is mandated by statute to create an "automated entry and exit system that records the arrival and departure" of "certain" non-citizens.  Pl.'s Resp. & Cross-Mot. for Summ J., Ex. 1 at 2.  Biometric data obtained from these non-citizens is stored in DHS's Automated Biometric Identification System (IDENT).  Stevens questions why CBP did not search IDENT.  But as Stevens acknowledges, the evidence she provides simply shows that CBP contributes to the "creation of agency records and data" that are "housed within IDENT."  Pl.'s Resp. & Cross-Mot. for Summ. J. at 6.  There is no evidence in the record that CBP, which is a component of DHS, maintains control over or is able to access all of the records contained within over a DHS identification system such as IDENT.  An agency's FOIA obligations generally do not "extend to documents that are not in the agency's immediate custody or control."

21

*Gawker Media, LLC v. U.S. Dep't of State*, 266 F. Supp. 3d 152, 159 (D.D.C. 2017).

Stevens also identifies another Federal Register notice indicating that CBP maintains a system called CBP-007 Border Crossing Information (BCI) that contains various records from people crossing the U.S. border. In his supplemental declaration, Howard clarifies that BCI records reside on the TECS platform and thus that BCI records were already searched during CBP's initial response to Stevens's request. Howard Suppl. Decl. ¶ 6. Furthermore, a "[plaintiff]'s speculation that responsive records may be found in other locations is not enough to undermine the adequacy of the [agency]'s search." *Stevens v. United States Dep't of State*, No. 17 C 2494, 2020 WL 1330653, at *4 (N.D. Ill. Mar. 23, 2020), *aff'd*, 20 F.4th 337 (7th Cir. 2021).

Stevens also asserts that Howard's declaration fails to explain whether CBP determined whether a "legacy INS A-File" exists for Hoang. Stevens points to evidence that DHS maintains records from its predecessor agency, Immigration and Naturalization Services (INS), through A-files. CBP notes that A-files are maintained by USCIS. Stevens suggests that CBP's argument is "frivolous" because CBP is a component of DHS, and DHS replaced INS after the passage of the 2003 Department of Homeland Security Act. Pl.'s Reply at 9. But the evidence that Stevens cites supports CBP's argument, not hers. A 2017 DHS notice published in the Federal Register cites states that A-files currently take three forms: (1) paper records; (2) electronic records from the Enterprise Document Management System or USCIS Electronic Immigration System; or (3) a combination of paper and electronic records. Pl.'s Reply at 9. The notice also states that "USCIS is the custodian of the A-File and the documents that are contained within it." *Id.* This notice does not support the

22

proposition that CBP possesses all of the information that is included in an individual's A-file.  In fact, the notice states that A-files contain documents from systems belonging to various DHS components, including USCIS and ICE.  Moreover, Stevens did not request Hoang's A-file in her original request.  The fact that CBP's search did not produce this specific file does not undermine the adequacy of its search.  *Bartko v. United States Dep't of Just.*, 898 F.3d 51, 74 (D.C. Cir. 2018) (noting that "the failure of a search to uncover a particular sought-after document" does not evidence the search's inadequacy).

CBP contends that it did not respond to one of Stevens's Hoang requests because Stevens did not submit a signed third-party authorization form.  Stevens disputes this contention and argues that she attached Hoang's authorization form to the e-mail containing her request.  In support of her argument, Stevens points to an e-mail message that she sent to CBP's FOIA division on March 10, 2022 that contains an attachment titled "Hoang_Waiver.pdf."  Pl.'s L.R. 56.1 Stmt. Ex. A.  But Stevens has not produced the waiver form or any other admissible evidence to establish that this form was *signed*.  In the absence of evidence supporting Stevens's argument that CBP's determination that her request did not include a signed authorization form was made in error, Stevens has not shown that there is a genuine dispute over this fact.  *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) ("The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts.").

In fulfilling a FOIA request, an agency is not required to search all of its record systems.  *Oglesby*, 920 F.2d at 68.  CBP has provided sufficient support for its contention that it searched all locations likely to contain responsive records.  CBP has

also clearly explained the reasoning supporting its determination that no other record system was likely to produce responsive materials. CBP is therefore entitled to summary judgment on the Hoang requests.

### 3. Statutory deadline

Stevens argues that she is entitled to summary judgment because CBP failed to comply with FOIA's statutory deadline. But she raises this argument for the first time in her reply brief, which is not the appropriate vehicle for new legal arguments. *Tellabs Operations, Inc. v. Fujitsu Ltd.*, 283 F.R.D. 374, 379 (N.D. Ill. 2012) ("Arguments and evidence that could have been raised in the opening brief but are first raised in a reply brief are waived."). Second, in a prior opinion in this case, this Court rejected Stevens's argument that she is entitled to summary judgment based solely on an agency's failure to adhere to FOIA's statutory deadlines. *Stevens*, 2023 WL 6392407, at *7. Third, Stevens's argument is foreclosed by well-settled precedent. *Elec. Priv. Info. Ctr. v. Dep't of Just.*, 15 F. Supp. 3d 32, 40 (D.D.C. 2014) ("[N]othing in the FOIA statute establishes that an agency's failure to comply with this 20–day deadline automatically results in the agency's having to produce the requested documents without continued processing.").

### Conclusion

For the foregoing reasons, the Court grants CBP's motion for summary judgment [67] with respect to the Hoang requests and part one of the Underwood request but denies CPB's motion with respect to parts two and three of the Underwood request. The Court denies Stevens's cross-motion for summary judgment [77] without prejudice. The Court directs CBP to promptly conduct a good-faith and reasonable search for

records responsive to part two of the Underwood request.  The Court also directs CBP

to promptly conduct additional searches responsive to part three of the Underwood

request, including but not limited to the e-mail inbox of the previously identified

Procurement Office employee.  CBP is to file a status report in this regard on

September 27, 2024.

_____
MATTHEW F. KENNELLY
United States District Judge

Date:  August 30, 2024