IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JACQUELINE STEVENS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 22 C 5072 |
| ) | |
| UNITED STATES DEPARTMENT OF ) | |
| HEALTH AND HUMAN SERVICES, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

In September 2022, Jacqueline Stevens filed suit against multiple federal agencies alleging that they had failed to comply with the requirements of the Freedom of Information Act requirements and were wrongfully withholding records to which she was entitled. Regarding one of those agencies, the Executive Office for Immigration Review (EOIR), Stevens alleged that the agency inappropriately responded to: (1) a June 2021 request for records concerning Miguel Silvestre; (2) a March 2022 request for records concerning Toan Hoang; (3) an August 2021 request for records concerning Christopher Archie; (4) a July 2020 request for records that the agency had previously produced to journalist Joel Rubin; and (5) an August 2022 request for records concerning Pascal Charpentier.

In September 2022, Stevens moved for a preliminary injunction, asking the Court to order multiple agencies, including EOIR, to respond to expedited FOIA requests she filed for records concerning Pascal Charpentier. On December 15, 2022, the Court

denied the plaintiff's motion with respect to EOIR. In May 2023, EOIR filed a motion for summary judgment, contending that it had fully responded to Stevens's requests. Stevens filed a cross-motion for summary judgment. On October 2, 2023, the Court granted summary judgment in EOIR's favor on the Rubin request but denied summary judgment on all other requests. *See Stevens v. U.S. Dep't of Health & Human Servs.*, No. 22 C 5072, 2023 WL 6392407 (N.D. Ill. Oct. 2, 2023). The Court held that EOIR unreasonably interpreted the Silvestre, Hoang, Archie, and Charpentier requests as seeking only records of proceedings associated with each individual, and it ordered EOIR to conduct a good-faith and reasonable search for all remaining records. *See id.* at *3-6, 8.

In an attempt to comply with the Court's October 2023 order, EOIR produced fifty-six pages of screenshots containing information about Silvestre, Archie, Hoang, and Charpentier discovered in CASE, EOIR's electronic case management system. EOIR also directed its Information Technology (IT) office to search the e-mails of all EOIR employees and contractors using the full names of the four individuals who were the subject of Stevens's requests. The search returned 297 items. EOIR reviewed the 180 items that remained after "deduplication" and identified 85 items totaling 504 pages. EOIR produced these 504 pages, some of which had redactions.

EOIR now moves for summary judgment, contending that it has complied with the Court's prior order and has fully resolved Steven's FOIA requests. Stevens has filed a cross-motion for summary judgment. For the reasons stated below, the Court denies both sides' motions for summary judgment and directs EOIR to conduct further searches in two respects. The Court also directs EOIR to provide additional information

to justify some of its withholdings.

## Discussion

**A.      Effect of EOIR's previous summary judgment motion**

Stevens argues that this Court cannot consider EOIR's current summary judgment motion because it denied EOIR's May 2023 summary judgment motion regarding the requests at issue. Stevens contends that because EOIR failed to file a motion for relief from judgment, if the Court finds that EOIR has conducted a sufficiently adequate search in response to her FOIA request, this Court should dissolve or modify the previously issued preliminary injunction rather than grant summary judgment in EOIR's favor. CBP agrees with Stevens that this Court should construe its prior summary judgment ruling as a preliminary injunction order against EOIR in order to be able to enter summary judgment in EOIR's favor now.

The Court's prior ruling is not a barrier to considering EOIR's present motion. FOIA cases are commonly resolved on motions for summary judgment, *Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Veterans Affairs*, 828 F. Supp. 2d 325, 329 (D.D.C. 2011), and it is not uncommon for an agency to file a renewed motion for summary judgment after the court has addressed the adequacy of the agency's search in a previous summary judgement opinion. *See, e.g.*, *Stevens v. Broad. Bd. of Governors*, No. 18 C 5391, 2023 WL 2428839, at *1 (N.D. Ill. Mar. 9, 2023) (Rowland, J.) ("Defendants believe they have cured those deficiencies and thus now renew their motion for summary judgment . . ."); *Erwin v. U.S. Dep't of State*, No. 11 C 6513, 2013 WL 842601 (N.D. Ill. Mar. 6, 2013) (inviting defendant to file a renewed motion for summary judgment to address deficiencies in materials supporting original motion);

3

*Stanley v. U.S. Dep't of Treasury*, No. 2:06-CV-072, 2007 WL 2025212 (N.D. Ind. July 9, 2007) (considering defendant's renewed motion for summary judgment).

There is case law suggesting that a district court may elect to treat a FOIA defendant's motion to reconsider a prior summary judgment ruling as a motion under Rule 60(b). *See Nat'l Pub. Radio, Inc. v. FBI*, 539 F. Supp. 3d 1, 8 (D.D.C. 2021) ("In FOIA cases where the government presents new facts and moves for reconsideration after an initial judgment, courts typically consider the motion under Rule 60(b)(6)."). But the parties do not cite, nor has the Court found, any Seventh Circuit precedent indicating that treating EOIR's motion as a renewed motion for summary judgment is in the least bit problematic. *See Gordon v. Veneman*, 61 F. App'x 296, 298 (7th Cir. 2003) ("Permitting a second summary judgment motion is essentially a decision concerning case management, and district court judges are in the best position to make such decisions."). The Court also notes that it did not enter a final judgment after the earlier ruling, as the ruling did not dispose of all claims in the case. Thus strictly speaking, Rule 60(b), which governs relief from final judgments and final orders, does not apply.

In sum, there is no legal barrier to consideration of EOIR's motion, even if it amounts to a second crack at summary judgment.

**B.    Adequacy of EOIR's search**

An agency may prevail on a motion for summary judgment in a FOIA case by showing that it performed an "adequate" search for responsive records or documents. *Becker v. IRS*, 34 F.3d 398, 406 (7th Cir. 1994). Adequacy is evaluated using a reasonableness standard. *Id.* An agency may demonstrate the reasonableness of its search through affidavits or declarations. *Id.* In support of its motion for summary

4

judgment, EOIR has submitted a declaration prepared by Jennifer Prez Santiago, an Associate General Counsel for FOIA at EOIR.

Stevens advances two main arguments regarding the adequacy of EOIR's search. First, Stevens argues that EOIR unreasonably narrowed the search terms by only using the request subjects' names and omitting their A-numbers. Second, Stevens argues that EOIR unreasonably limited the search period by imposing a five-year time frame for the searched e-mail accounts.

1. A-numbers

To support her argument that the omission of the search subjects' A-numbers was unreasonable, Stevens relies on *Bagwell v. United States Department of Justice*, 311 F. Supp. 3d 223 (D.D.C. 2018). In *Bagwell*, D.C. District Court found that the defendant's search for documents concerning Pennsylvania State University was inadequate. The court found that using only the school's full name as a search term and omitting abbreviations such as "PSU" or "Penn State" was inadequate: it was "likely that emails concerning the investigation would use" other common names for the university, and thus the defendant's search was "not reasonably calculated to find all responsive emails." *Id.* at 230.

Stevens's reliance on *Bagwell* is misplaced. In *Bagwell*, the defendant admitted that "in common conversation," Pennsylvania State University was "more likely to be referred to" by other, shorter names that it omitted from its search terms. *Id.* Here, EOIR has not made a similar admission indicating that individuals are likely to be referred to by their A-numbers rather than their names in e-mail messages. Nor has Stevens adduced any evidence that referring to individuals solely by their A-numbers is

5

a common practice at EOIR.

That said, EOIR bears the burden of establishing why its choice to use the search terms it did was reasonable. *New Orleans Workers' Ctr. for Racial Just. v. U.S. Immigr. & Customs Enf't*, 373 F. Supp. 3d 16, 46 (D.D.C. 2019). It is difficult to determine based on the evidence in the record whether utilizing the individual's name as the sole search term for each request satisfied the reasonableness standard. Though the Court obviously knows what an A-number is through presiding over other litigation, neither Stevens's motion nor Santiago's declaration describe how often A-numbers are used, nor do they provide any other information shedding light on whether an EOIR representative reasonably would be expected to refer to an individual by his or her A-number in an e-mail. Some courts have ruled that it is not reasonable for an agency to omit from its search terms common variations of the name of subject of the search. *See Jud. Watch, Inc. v. U.S. Dep't of State*, No. CV 20-1729, 2022 WL 4094069, at *7 (D.D.C. Sept. 7, 2022) (denying summary judgment to agency due to failure to search "obvious permutations" of individual's name); *The Few, the Proud, the Forgotten v. U.S. Dep't of Veterans Affs.*, 254 F. Supp. 3d 341, 356 (D. Conn. 2017) ("An agency's declaration about a search must reasonably explain why it selected certain search terms and rejected obvious alternatives."). On the other hand, under FOIA, agencies generally enjoy a healthy amount of discretion in developing search terms. *Am. Ctr. for Equitable Treatment, Inc. v. Ofc. of Mgmt. & Budget*, 281 F. Supp. 3d 144, 151 (D.D.C. 2017) ("So long as the selected terms are reasonably calculated to unearth responsive documents, courts should avoid micromanaging the agency's search.")

Though the question is arguably a close one, the Court concludes that EOIR has

6

not met its burden of showing that a search using solely the individuals' names was reasonably calculated to discover responsive records. Reasonableness is a "context-dependent standard," *Rubman v. U.S. Citizenship & Immigr. Servs.*, 800 F.3d 381, 387 (7th Cir. 2015), and in the context of a request for information about a particular individual, it would be logical for EOIR to conduct a search that incorporates the number that EOIR uses to uniquely identify that individual, in addition to the individual's name. Furthermore, Santiago's declaration provides no explanation regarding why EOIR elected not to use the individuals' A-numbers as a search term, even though Stevens specifically included each A-number in her requests. *Am. Ctr. for Equitable Treatment, Inc.*, 281 F. Supp. 3d at 152 ("[W]here, as here, a FOIA requester suggests search terms that are common in practice, but the agency elects not to use them, the failure of the agency to explain its choices prevents the court from evaluating the reasonableness of the agency's search method.").

In sum, EOIR is not entitled to summary judgment with regard to the adequacy of its searches.

    **2.    Time frame**

In Stevens's requests, she sought records dating as far back as 1972. Per its official retention policy, EOIR only retains records for up to seven years. Santiago Decl. ¶ 19. EOIR decided to limit its search to e-mails sent or received from August 2017 through August 2022. *Id.* Santiago's declaration contains no justification for this decision, other than the conclusory statement that she "determined that a five year timeframe for all email accounts in EOIR during that time was reasonable." *Id.*

"[A]n agency . . . has a duty to construe a FOIA request liberally." *Rubman*, 800

7

F.3d at 389. Given the expansive time frame provided by Stevens's request, EOIR's decision to limits its search to a seemingly arbitrary five-year time frame rather than the seven-year period provided by its own retention policy gives rise to a genuine dispute regarding whether the search was reasonably calculated to uncover all relevant documents. Furthermore, EOIR has provided no justification for the temporal limits it placed on this search. *See James Madison Project v. Dep't of State*, 235 F. Supp. 3d 161, 169 (D.D.C. 2017) (noting defendant's failure to explain why its searches were limited to 2015 despite plaintiff's request seeking records from 2013 to 2015).

Stevens asks the Court to order EOIR to conduct a search spanning the full seven-year retention period. The Court agrees. It seems at least possible, however, that because it is now September 2024, and EOIR's original search period ran back to August 2017—seven years ago—this search may not produce any additional responsive records. But EOIR must at least try; it is also possible, for example, that records from August 2015 through August 2017 have not yet actually been destroyed despite the agency's policy.

**C.     Withholding of responsive records**

    **1.     Deduplication**

Stevens notes that Santiago's declaration does not explain EOIR's "deduplication" process, which apparently resulted in shrinking the universe of responsive records. In the Court's view, however, this lack of explanation does not undermine the adequacy of EOIR's search. The term "deduplication" seems fairly self-explanatory. Stevens has not provided any evidence to suggest that EOIR may have used this "deduplication process" to shield responsive records that were not otherwise

8

produced by EOIR.

Stevens also contends that deduplication is a *per se* violation of FOIA because the statute requires the agency to produce all responsive records in the absence of a statutory exemption. But Stevens does not cite any legal authority in support of this argument. The only case from this district the Court has found that supports Stevens's argument is a case that Stevens brought against a different agency. In that case, Immigration and Customs Enforcement (ICE) stated that it found documents responsive to Stevens's FOIA request in in-boxes maintained by various ICE program offices but determined during that search that the in-boxes contained no "unique" responsive documents. *Stevens v. U.S. Immigr. & Customs Enf't*, 432 F. Supp. 3d 752, 762 (N.D. Ill. 2020) (Pallmeyer, J.). In that case, the judge "wondered why [the defendant] did not simply produce the duplicates it purportedly located or explain why it would be burdensome to do so." *Id.* But that particular *Stevens* case does not stand for the proposition that the failure to produce duplicative renders a search inadequate. Instead, the court found that ICE's inconsistent statements about whether certain locations had been searched, along with evidence in the record that different program offices served different functions, amounted to "positive indications of overlooked materials" that "raise[d] substantial doubt" about the adequacy of ICE's search. *Id.* at 762-63. Here, Stevens has pointed to no similar indica suggesting that EOIR's deduplication process improperly excluded responsive material.

The Court has not found any Seventh Circuit case law that directly addresses an agency's obligation to produce duplicative records. The D.C. District Court, however, has consistently held that "FOIA does not require agencies to produce duplicate

9

records." *Competitive Enter. Inst. v. Ofc. of Sci. & Tech. Pol'y*, 241 F. Supp. 3d 14, 22 (D.D.C. 2017); *Leopold v. CIA*, 177 F. Supp. 3d 479, 490 (D.D.C. 2016) (concluding that agency properly withheld duplicate records); *Jett v. FBI*, 139 F. Supp. 3d 352, 365 (D.D.C. 2015) ("The statute is not a discovery tool that requires agencies to produce every conceivable copy in the possession of every governmental custodian."). The Court finds these decisions persuasive. In sum, EOIR's deduplication process does not undermine the adequacy of its search.

2. **Manual responsiveness review**

Stevens also objects to EOIR's conduct of a "manual responsiveness review" after it removed duplicative materials. Stevens notes that of the 180 items that remained after the de-duplication process, EOIR deemed 95 of these records non-responsive—just over 50 percent. Again, Stevens cites no legal authority to support her argument that EOIR's screening process is indicative of an inadequate search. In facts, courts have generally approved agencies' manual review of records prior to production. *See Hall & Assocs. v. USEPA*, 14 F. Supp. 3d 1, 7 (D.D.C. 2014) (concluding search that involved counsel's review of potentially responsive documents was adequate.). And the adequacy of a search is determined by the methods the agency used to carry out the search, not the number of documents that the search produced. *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003). In sum, EOIR's manual review process does not undermine the adequacy of its search.

3. **Audio records**

Stevens concedes that she received multiple audio files along with the records of proceedings for Hoang, Charpentier, and Archie, *see* dkt. no. 44 ¶¶ 35, 40 44, but she

10

identifies specific proceedings for Hoang and Silvestre for which she believes EOIR failed to produce an audio recording. Pl.'s Stmt. of Add'l Fact Stmt. ¶¶ 7-8. In response, EOIR contends that the Silvestre hearings "appear to have been vacated" and that "many" of the scheduled Hoang hearings never actually occurred. Def.'s Resp. to Pl.'s Stmt. of Add'l Fact ¶¶ 7-8. Specifically, Santiago's supplemental declaration states that the Silvestre hearings set for March 23 and 24 were vacated. Santiago Supp. Decl. ¶ 4.

The only individual for whom EOIR failed to produce any audio recordings is Silvestre. EOIR has explained that the audio recording of Silvestre's proceeding was damaged. Stevens asserts that the recording should be produced despite this, but in a supplemental declaration Santiago clarified that the recording is "irreparably damaged" and cannot be copied or produced. Santiago Decl. ¶ 5. Because there is no reason to question Santiago's description of the nature of the damage to the audio recording, EOIR's failure to produce this recording does not support ruling in Stevens's favor.

    **4. Deletion/modification and DHS referral**

Stevens's argument that some of the responsive records were deleted or modified appears to be based on a misunderstanding about the notations included on some of the records. On some of the CASE screenshots included in the records produced in repose on Stevens's Silvestre request, there are entries that contain the label "deleted" or "delete." Stevens Decl., Ex. 5. EOIR explains that these labels reflect the Federal Records Center's deletion of the file location, not the actual records. Def.'s Reply at 7. EOIR did not provide any explanation for why an entry might contain a label indicating that the file was modified, but Stevens appears not to have provided the

11

screenshot that includes the label she identified as an exhibit along with her declaration. *See* Stevens Decl. at 6 n. 4 (citing to screenshot on page forty-one despite declaration only containing twenty-five pages). In short, Stevens has now adduced evidence sufficient to support her contention that EOIR improperly deleted or modified responsive records.

5.   **DHS referral**

The Court does not fully understand Stevens's argument regarding certain records that EOIR referred to DHS. FOIA allows for the referral of a request to another agency. *See Schoenman v. FBI*, No. CIV. A. 04-2202CKK, 2009 WL 763065, at *6 (D.D.C. Mar. 19, 2009) ("[A] 'referral' occurs when, in the course of reviewing documents responsive to a FOIA or PA request, an agency finds a document that was originated by a second agency."). Stevens asserts that "immigration court records" are within the exclusive control of EOIR, but all of the documents that EOIR referred to DHS are categorized as "e-mails" on EOIR's *Vaughn* index. Pl.'s Resp. & Cross Mot. for Summ. J. at 10; *See* Def.'s *Vaughn* Index at 1, 3, 5, 7, 9. Stevens also cites case law stating that an agency may not withheld a record that has already been released to the subject of the record, but she offers no evidence to show that any of the request subjects previously received any of the documents at issue. *See* Pl.'s Resp. & Cross Mot. for Summ. J. at 10. In sum, Stevens has not produced evidence sufficient to show a genuine factual dispute regarding the proposition that EOIR's referral of certain records to DHS constituted improper withholding.

6.   **Deliberative process withholdings**

Stevens asserts that EOIR improperly invoked the deliberative process

12

privilege—which applies only to pre-decisional documents—to post-decisional communications between two immigration judges. Pl.'s Resp. & Cross Mot. for Summ. J. at 11. But in support of this argument, Stevens cites to paragraph forty-one of her own declaration, which contains no information about whether the communications were pre- or post-decisional and states only that "Santiago misstates the parties to the correspondence" in her declaration. See Stevens Decl. ¶ 41. The District of Columbia Circuit has noted that "[t]here is no excuse for submitting a Vaughn index that contains errors, even minor ones." *Cause of Action Inst. v. Exp.-Imp. Bank of the U.S.*, 521 F. Supp. 3d 64, 81 (D.D.C. 2021). But in this case, the error that Stevens identifies is unrelated to the basis for the allegedly improper withholding, and Stevens does not point to any other evidence to show that the documents at issue were not exchanged prior to the relevant decision.

That said, the burden is on the agency to demonstrate that the records at issue were both predecisional and deliberative. EOIR describes the documents as "drafts of decisions on immigration proceedings and related pre-decisional communications." Def.'s Mot. for Summ. J. at 5. "[D]rafts are commonly found exempt under the deliberative process exemption." *People for the Am. Way Found. v. Nat'l Park Serv.*, 503 F. Supp. 2d 284, 303 (D.D.C. 2007). But because the withheld documents include e-mails accompanying draft decisions, EOIR's short description does not allow this Court to assess whether the e-mails were prepared as part of a deliberative process. In sum, EOIR has not met its burden to demonstrate that exemption five applies to the withheld material.

Stevens also argues that the *Vaughn* index fails to explain the "nature" of the

deliberative process exemption for various documents on pages five and six of the *Vaughn* index. The deliberative process privilege protects materials "reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *NRLB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975). Again, EOIR's short description of the contents of the documents attached to the e-mail messages is insufficient to permit a determination of whether exemption five applies to the messages. For these reasons, EOIR is not entitled to summary judgment on the withholding of records pursuant to FOIA exemption five.

Next, Stevens questions why EOIR's search "failed to locate or release records on the immigration judge (IJ) reassignments in Charpentier's case." It is unclear how this argument is related to Stevens's other withholding arguments, but in any event, "the failure of a search to uncover a particular sought-after document" does not support a FOIA requester's argument regarding the inadequacy of the search. *Bartko v. United States Dep't of Just.*, 898 F.3d 51, 74 (D.C. Cir. 2018).

Lastly, FOIA requires that any "reasonably segregable portion of a record" must be provided "after deletion of the portions which are exempt." 5 U.S.C. § 552(b). Stevens asserts that "[t]o afford a reviewing court an opportunity to assess the scope of redactions, EOIR must do more than simply redact a large number of pages and then assert" a FOIA exemption. Pl.'s Resp. & Mot. for Summ. J. at 12. Stevens suggests that EOIR may have failed to properly segregate exempt and non-exempt material within the redacted documents, but curiously, she does not ask this Court to perform an *in camera* review of the redacted materials. And "an agency is entitled to the

presumption that it complied with its obligation to disclose all reasonably segregable material." *Stevens v. United States Dep't of Homeland Sec.*, No. 13 C 03382, 2014 WL 5796429, at *10 (N.D. Ill. Nov. 4, 2014) (citing *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007)). Stevens has not provided any evidence to rebut that presumption. The Court concludes that EOIR is entitled to summary judgment regarding its segregation of non-exempt material.

In sum, because Stevens's argument that EOIR has not sufficiently justified its withholdings under exemption five has merit, the Court directs EOIR to submit, by September 24, 2024, a detailed affidavit explaining its withholdings under this exemption.

## Conclusion

For the reasons stated above, the Court denies both EOIR's and Stevens's motions for summary judgment regarding her claims against EOIR [dkt. nos. 84, 90]. But pursuant to Fed. R. Civ. P. 56(g), and with respect to points (1), (2), and (4), pursuant to its authority under Fed. R. Civ. P. 65 to issue a preliminary injunction, the Court: (1) directs EOIR to extend its search of e-mails back to August 2015; (2) directs EOIR conduct a further search of e-mails using the A-numbers associated with Silvestre, Hoan, Archie, and Charpentier; (3) overrules Stevens's arguments that EOIR's search was inadequate due to "deduplication," manual review, non-production of certain audio recordings, references to "delete" or "deleted" in certain CASE screenshots, and referral of certain records to DHS; and (4) directs EOIR to file, by September 24, 2024, a detailed affidavit explaining its withholdings under the deliberative process exemption. Given the age of this case, and the fact that this is the

second go-round of summary judgment requests relating to EOIR, the further searches the Court has directed under points (1) and (2) must be conducted, *and* any resulting records (or a verification of the absence of additional records) must be produced to Stevens, by no later than October 1, 2024. The parties are directed to file a joint status report on October 8, 2024 giving their respective positions on the steps necessary to bring this case to a prompt conclusion with respect to EOIR.

Date: September 1, 2024

_____
MATTHEW F. KENNELLY
United States District Judge