**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **JACQUELINE STEVENS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 22 C 5072** |
| | ) | |
| **UNITED STATES DEPARTMENT OF** | ) | |
| **HEALTH AND HUMAN SERVICES, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

MATTHEW F. KENNELLY, District Judge:

Jacqueline Stevens has filed suit against the Department of Health and Human Services and several other federal agencies, including Immigration and Customs Enforcement (ICE), under the Freedom of Information Act (FOIA), 5 U.S.C. § 552. ICE has moved for summary judgment on the grounds that it has adequately completed Stevens's requests as defined by FOIA. Stevens has filed a cross-motion for summary judgment. For the reasons stated below, the Court grants Stevens's motions in part and denies it in part, and denies ICE's motion in full.

**Background**

The following facts are undisputed unless otherwise noted. Jacqueline Stevens is a professor at Northwestern University. In 2021 and 2022, Stevens submitted three FOIA requests to ICE, for records related to Miguel Guzman Silvestre, Toan Hoang, and Pascal Charpentier. The requests for Silvestre and Hoang sought the same information:

> 1) All records of all grievances filed by [the individual], orally or in writing and under the control of ICE or its components, including county jails or private prisons with which ICE has contracted. 2) Commissary account data, including but not limited to information tracking funds reimbursed to [the individual] on release from custody. 3) Work program participation documents and payment records. 4) All correspondence, notes, and other records pertaining to assertions or findings of U.S. citizenship from all databases. 5) Communications with police, jails, prisons about [the individual]'s arrest and detention. 6) Screen shots of all tabs for interfaces associated with databases likely to have records responsive to this request. 7) All email, faxes, notes, and all other analyses and records tied to ICE investigations or findings for any deportation orders or arrests of [the individual].[1]

*See* ICE's SOF ¶¶ 9, 26. The request for Charpentier sought similar information:

> 1) All records of all grievances filed by Mr. Charpentier orally or in writing and under the control of ICE or its components, including county jails or private persons with which ICE has contracted. 2) Commissary account data, including but not limited to information tracking funds reimbursed to Mr. Charpentier on release from custody. 3) All correspondence, notes, and other records pertaining to assertions or findings of U.S. citizenship, including but not limited to entries into PLANet. 4) All ICE Fugitive Operation notes, memorandums, text messages, and other information in any medium related to the search and arrest of Mr. Charpentier. This includes but is not limited to database search protocols on which agents relied for information leading to the arrest. I am seeking all instructions in any form on which ICE employees relied in their search for the information that led to the arrest of Mr. Charpentier. 5) Screen shots of all tabs for interfaces to databases searched for information responsive to this request.

*Id.* ¶ 37. Stevens provided privacy waivers for Silvestre, Hoang, and Charpentier authorizing ICE to release its records to her. *Id.* ¶¶ 10, 27, 37.

In September 2022, Stevens brought this lawsuit against ICE and the other agencies, alleging they had improperly withheld records in response to her FOIA requests. In her complaint, Stevens asserted three claims against ICE for violations of FOIA: failure to comply with statutory deadlines (Count 1), failure to grant requests for

---

[1] With regard to point (4), Stevens also requested "records tied to proceedings in Los Angeles in 1999" related to Mr. Hoang.

2

expedited processing (Count 2), and unlawful withholding of agency records (Count 3).

Compl. ¶¶ 101–116.  Stevens moved for a preliminary injunction, which this Court

granted on March 30, 2023, ordering ICE "to process 1,500 pages of documents

responsive to Stevens's FOIA request per month until production is complete."  *Stevens*

*v. U.S. Dep't of Health & Hum. Servs.*, 666 F. Supp. 3d 734, 749 (N.D. Ill. 2023).

In April 2024, Fernando Pineiro Jr., the FOIA Director of ICE, filed a declaration

detailing ICE's search for the requested records.  Pineiro affirms that ICE's various

program offices found approximately 13,703 pages of potentially responsive records.

*See* ICE's SOF ¶¶ 28, 31, 45, 50, 52, 55, 58, 60, 66.  Of these, "ICE produced 2,802

pages of responsive records to Stevens over the course of seventeen productions."

ICE's SOF ¶ 51.  ICE withheld certain information from these records, alleging that such

redactions were proper under FOIA Exemptions 5, 6, 7(C), and 7(E).  ICE also

"prepared a *Vaughn* index that provides descriptions of ICE's withholdings and the

exemption that ICE applied."  *Id.* ¶ 52.  Stevens challenged the adequacy of this first

*Vaughn* index because "some of the pages that the parties agreed would be included on

ICE's *Vaughn* index did not appear on the *Vaughn* index that ICE submitted with its

motion for summary judgment."  ICE's Consol. Reply in Supp. of Mot. for Summ. J. &

Resp. to Pl.'s Cross-motion for Summ. J. at 5 (citing Pl.'s Opp. to ICE's Mot. for Summ.

J. & Cross-motion for Summ. J. at 6–7).  ICE conceded that it "inadvertently omitted a

number of pages from its *Vaughn* index that should have been included."  *Id.*  The Court

granted ICE's motion to prepare a supplemental *Vaughn* index to correct the omissions,

and ICE has submitted a supplemental *Vaughn* index and accompanying declaration.

*See* ICE's SOAF, Ex. B, Attach. A.

3

ICE contends that it has completed an adequate search "and produced the responsive records it found that are not subject to one or more exceptions to the FOIA statute." Mem. in Supp. of ICE's Mot. for Summ. J. at 1. Accordingly, ICE asserts that it is entitled to entry of summary judgment in its favor. *See, e.g.*, *Carney v. U.S. Dep't of Just.*, 19 F.3d 807, 812 (2d Cir. 1994) ("In order to prevail on a motion for summary judgment in a FOIA case, the defending agency has the burden of showing that its search was adequate and that any withheld documents fall within an exemption to the FOIA.").

In response, Stevens contends that the burden is on ICE to show it has "conducted a good faith and reasonable search for the 'agency records' requested and to justify any withholdings or redaction in the production." Pl.'s Opp. to ICE's Mot. to Summ. J. & Cross-motion for Summ. J. at 2. Stevens asserts that ICE has failed to carry this burden and therefore "summary judgment should be denied and a final judgment entered" in Stevens's favor. *Id.* Stevens has also filed a cross-motion seeking summary judgment for Counts 1 and 3 of her complaint.

## Discussion

Summary judgment is appropriate if the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "On cross-motions for summary judgment, [the court] construe[s] all facts and inferences therefrom in favor of the party against whom

4

the motion under consideration was made." *Five Points Rd. Joint Venture v. Johanns*, 542 F.3d 1121, 1124 (7th Cir. 2008).

For the sake of addressing the motion and cross-motion in an orderly fashion, the Court will first address Stevens's cross-motion seeking summary judgment on Count 1 before moving on to addressing the arguments in both parties' motions on Count 3.[2]

## A. Failure to comply with statutory deadlines (Count 1)

Stevens first moves for summary judgment on Count 1, asserting that ICE has failed to comply with FOIA's requirement under section 552(a)(6).  Section 552(a)(6)(A) states:

> Each agency, upon any request for records made under paragraph (1), (2), or (3) of this subsection, shall determine within 20 days . . . after the receipt of any such request whether to comply with such request and shall immediately notify the person making such request of such determination and the reasons therefor.

5. U.S.C. § 552(a)(6)(A)(i)(I) (cleaned up).  Section 552(a)(6) also allows for an "extension" of no more than "ten working days" upon a showing of "unusual circumstances" as defined by the subsection.  *Id.* § 552(a)(6)(B)(i).  To qualify for the extension, an agency must provide "written notice to the person making such request setting forth the unusual circumstances for such extension and the date on which a determination is expected to be dispatched."  *Id.*

Stevens contends that summary judgment in her favor on Count 1 is warranted because ICE "does not and cannot dispute that it did not comply with the statutory

---

[2] Stevens does not seek summary judgment on Count 2 because "[t]he Court granted Plaintiff's Request for Preliminary Injunction and ordered ICE to process Plaintiff's request.  The count is thus now moot as Plaintiff has obtained some of the relief she was seeking in Count [2] and the Court cannot grant further substantive redress" at this time.  Pl.'s Opp. to ICE's Mot. for Summ. J. & Cross-motion for Summ. J. at 3 n.1.

command regarding acknowledging, docketing, and/or responding to Plaintiff's FOIA requests" and that "Congress provided a remedy in 5 U.S.C. § 552(a)(4)(B)."  Pl.'s Opp. to ICE's Mot. for Summ. J. & Cross-motion for Summ. J. at 3, 5.

ICE concedes that it did not send determinations for any of the three FOIA requests at issue.  *See* ICE's Consol. Reply in Supp. of Mot. for Summ. J. & Resp. to Pl.'s Cross-motion for Summ. J. at 4 ("When ICE did not respond within 20 business days to the requests that she submitted . . . that gave her the right to sue to procure the records . . . .").  ICE, however, asserts that this failure on its part to meet section 552(a)(6)'s statutory deadline "merely triggers the FOIA requester's *right to file suit* in federal court."  *Id.* at 3.

Section 552(a)(4)(B) states:  "On complaint, the district court of the United States in the district in which the complainant resides . . . has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant."  5 U.S.C. § 552(a)(4)(B).  In other words, section 552(a)(4)(B) creates the requisite jurisdictional hook to allow a federal court to adjudicate the matter once section 552(a)(6)'s deadline has passed.  *See Kissinger v. Reps. Comm. for Freedom of the Press*, 445 U.S. 136, 139 (1980) (noting that section 552(a)(4)(B) "vests jurisdiction in federal district courts").  Though this section does create both a federal cause of action and remedy, as Stevens contends, it does not go as far as Stevens seemingly would like.  The Court has already issued a preliminary injunction ordering ICE to "process Stevens's FOIA request at a rate of 1,500 pages per month."  *Stevens*, 666 F. Supp. 3d at 749.  Therefore, any relief sought by Stevens under this section has already been granted, making entry of summary judgment in

Stevens's favor on this particular point inappropriate. Stevens also challenges the adequacy of ICE's disclosures, but that is a separate analysis addressed by the Court below. *See, e.g.*, *U.S. Dep't of Just. v. Tax Analyst*, 492 U.S. 136, 151 n.12 (1989) ("Even when an agency does not deny a FOIA request outright, the requesting party may still be able to claim 'improper' withholding by alleging that the agency has responded in an *inadequate* manner.") (emphasis added).

As a separate matter, even if the Court were to grant summary judgment in favor of Stevens on Count 1, it's worth asking what specific relief she could expect from the Court beyond what it has already done. The Court has ordered ICE to comply with the FOIA request under the expedited timeline referenced above, and ICE contends via its motion for summary judgment that it has complied with the preliminary injunction order. If the Court determines that ICE has adequately searched for the requested records or that the records in question qualify for one of FOIA's nine exemptions, then there is no further relief for the Court to provide under Count 1. *See, e.g.*, *Kissinger*, 445 U.S. at 139 ("When an agency has demonstrated that it has not 'withheld' requested records in violation of the standards established by Congress, the federal courts have no authority to order the production of such records under the FOIA.").

Accordingly, the Court denies Stevens's motion for summary judgment on Count 1.

## B. Unlawful withholding of agency records (Count 3)

Stevens next challenges the adequacy of ICE's searches for records related to Miguel Guzman Silvestre, Toan Hoang, and Pascal Charpentier in three respects. First, Stevens contends that ICE failed to adequately search for the portion of her FOIA

request "seeking prison grievances, commissary account data, and work program participation." Pl.'s Opp. to ICE's Mot. for Summ. J. & Cross-motion for Summ. J. at 8. Second, Stevens challenges ICE's proffered affidavit because, she contends, it does not contain a sufficient explanation of why ICE elected to search certain databases and not others for the requested records. Third, Stevens asserts that ICE failed to adequately search for responsive records because ICE used "a narrow and unreasonable selection of search terms." *Id.* at 9.

Stevens also challenges ICE's reliance on FOIA exemptions to justify its withholding of responsive records. This amounts to a challenge to the sufficiency of ICE's proffered *Vaughn* index and accompanying declaration. Stevens also separately challenges whether ICE reasonably segregated the exempted material as required by FOIA. *See* 5 U.S.C. § 552(b) ("Any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection.").

The Court will address each argument in turn, beginning with the adequacy of the searches before turning to the *Vaughn* index, and finishing with whether ICE reasonably segregated the exempted portions of the responsive records.

### 1. Adequate searches

The Supreme Court has stated that FOIA is "broadly conceived" and that "its basic policy is in favor of disclosure." *NLRB v. Robbins Tire and Rubber Co.*, 437 U.S. 214, 220 (1978) (citations and quotation marks omitted); *see id.* at 242 ("The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors

8

accountable to the governed.").  The plain language of FOIA places an affirmative duty on agencies, requiring that "each agency, upon any request for records which (i) reasonably describes such records . . . *shall* make the records *promptly* available to any person."  5 U.S.C. § 552(a)(3)(A) (emphases added).

FOIA also places the burden on agencies to justify any withholding of records responsive to a request for disclosure.  *See id.* § 552(a)(4)(B).  Courts have interpreted this to place a burden on an agency to show that its search in response to a FOIA request was adequate.  *See Rubman v. U.S. Citizenship & Immigr. Servs.*, 800 F.3d 381, 387 (7th Cir. 2015) ("To prevail on summary judgment in this type of FOIA claim, the agency must show that there is no genuine issue of material fact about the *adequacy* of its records search." (emphasis added)); *Carney*, 19 F.3d at 812 ("In order to prevail on a motion for summary judgment in a FOIA case, the defending agency has the burden of showing that its search was adequate . . . .").

"To demonstrate that its search was adequate, 'the agency must show that it made a good faith effort to conduct a search for the requested records, using methods reasonably expected to produce the information requested.'" *Rubman*, 800 F.3d at 388 (quoting *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)). "[R]easonableness is a flexible and context-dependent standard." *Stevens v. U.S. Dep't of State*, 20 F.4th 337, 342 (7th Cir. 2021) (citation and quotation marks omitted). "Good faith is presumed," and an agency can bolster this presumption by producing evidence showing its efforts to satisfy the request, like affidavits.  *Id.*  The presumption of good faith requires courts "to credit the agency's sworn statements in the absence of evidence to the contrary."  *Id.* at 342–43.

9

An agency may submit affidavits to support that its search was adequate, "so long as they are non-conclusory and reasonably detailed." *Id.* at 343. To be sufficiently detailed, an affidavit must "set forth the search terms used in electronic searches and the kind of search performed by the agency, and aver that all files likely to contain responsive documents were searched." *Henson v. Dep't of Health & Hum. Servs.*, 892 F.3d 868, 875 (7th Cir. 2018). Though "[t]here is no requirement that an agency search every record system," if an agency does limit its search to certain databases, "[a]t the very least, [the agency is] required to explain in its affidavit that no other record system was likely to produce responsive documents." *Oglesby*, 920 F.2d at 68.

A FOIA requester can rebut the presumption of good faith by presenting "countervailing evidence as to the adequacy of the agency's search." *Rubman*, 800 F.3d at 387. If, based on review of this evidence, the court finds the agency's search was inadequate, the FOIA requester must then "show some reason to think that the document would have turned up if the agency had looked for it, though since neither the requester nor the court know the content of the agency's records, this is a low bar." *Id.* "[T]he question at summary judgment is not whether the agency *might* have additional, unidentified responsive documents in its possession. Rather the court need only determine whether the search itself was performed reasonably and in good faith." *Id.* (internal citation omitted).

ICE has submitted the declaration of Fernando Pineiro Jr., ICE's FOIA Director, to support its position that it adequately searched for the requested records. Pineiro states that "ICE records are maintained by leadership offices and/or within ICE directories, *including but not limited to*, the ICE FOIA Office, the Homeland Security

10

Investigations (HSI), the Office of Enforcement and Removal Operations (ERO), the ICE

FOIA Office, and the Office of the Principal Legal Advisor (OPLA)." Pineiro Decl. ¶ 13

(emphasis added). It is apparent from the way Pineiro worded this that his declaration

does not contain a full list of program offices where ICE maintains its records, nor does

it explain why he listed only four program offices as potential locations where

responsive records may be found.[3] Each program office is "typically staffed with a

designated point of contact (POC) who is the primary point person responsible for

communications between that program office and the ICE FOIA Office." *Id.* According

to Pineiro, "[e]ach POC is a person with detailed knowledge about the operations of

his/her respective program office." *Id.*

Pineiro's declaration affirms that "[u]pon receipt of a proper FOIA request, the

ICE FOIA Office will identify which program offices, based upon their experience and

knowledge of ICE's program offices, within ICE are reasonably likely to possess records

responsive to that request, if any, and task the relevant program offices with searches."

*Id.* ¶ 14. In turn, the POCs at each program office review the FOIA request and, "based

on their experience and knowledge of their program office practices and activities,

forward the request and instructions to the individual employee(s) or component

office(s) within the program office that they believe are reasonably likely to have

responsive records, if any." *Id.* These employees or component offices then "conduct

searches of their file systems, including both paper files and electronic files, which in

their judgment, based on their knowledge of the manner in which they routinely keep

---

[3] Though paragraph 13 of Pineiro's declaration lists five offices, "the ICE FOIA Office" is listed twice, with no indication regarding whether this duplication was intentional or in error. *See* Pineiro Decl. ¶ 13.

records, would most likely be the files to contain responsive documents." *Id.* Upon completion of these searches, the component offices send the potentially responsive records to their program office's POC, who then provides them to the ICE FOIA Office. "The ICE FOIA Office then reviews the collected records for responsiveness and the application of appropriate FOIA Exemptions." *Id.*

To recap, then, once ICE has determined that a FOIA request is valid, its central FOIA office determines the program office(s) to which it will direct the request. In turn, the program office(s) determine which individual employee(s) or component office(s) should conduct the actual search for potentially responsive documents. At each step, an ICE employee uses his or her knowledge and experience to winnow down locations containing potentially responsive documents. As previously mentioned, Pineiro's declaration provides no insight or explanation into the total number of program offices or how many component offices are contained within the program offices it does list.

This lack of detail regarding the program offices and their component offices is concerning. The Seventh Circuit has repeatedly emphasized that affidavits used to support the adequacy of an agency's search must be "reasonably detailed," which includes an averment "that all files likely to contain responsive documents were searched." *Henson*, 892 F.3d at 875; *see also Rubman*, 800 F.3d at 387; *Stevens*, 20 F.4th at 343. This reasonably detailed affidavit "is necessary to afford a FOIA requester an opportunity to challenge the adequacy of the search and to allow the district court to determine if the search was adequate in order to grant summary judgment." *Oglesby*, 920 F.2d at 68. And ICE's lack of explanation regarding the scope of program offices and corresponding component offices makes it difficult for the Court to assess whether

ICE "used methods reasonably expected to produce the information requested." *Rubman*, 800 F.3d at 388.

Though the lack of insight regarding the scope of FOIA's program offices is concerning, it is not yet fatal. ICE can still show its search was adequate by "explain[ing] in its affidavit that no other record system was likely to produce responsive documents." *Oglesby*, 920 F.2d at 68. In response to all three of Stevens's requests, ICE searched in three program offices: ERO, HSI, and OPLA. *See* ICE's SOF ¶¶ 11, 28, 38. Pineiro asserts that these offices were determined, based on the subject matter of Stevens's requests, to be the places "likely to have responsive records (if such records existed)." Pineiro Decl. ¶ 20. Therefore, Pineiro contends that "all locations likely to contain records responsive to Plaintiffs' FOIA Requests (to the extent that they exist within ICE's custody) were searched." *Id.*

The following information regarding ICE's program offices comes from Pineiro's declaration. "ERO is responsible for arrest and removal of aliens, managing ICE detention operations and providing medical and mental health care to persons in ICE custody." *Id.* ¶ 21. "ERO manages all logistical aspects of the removal process, including domestic transportation, detention, alternatives to detention programs, bond management, and supervised release." *Id.* ¶ 22. "HSI is the principal investigative arm of DHS, responsible for investigating transnational crime and threats . . . ." *Id.* ¶ 21. In addition to its investigative duties, "HSI oversees the agency's international affairs operations and law enforcement intelligence functions." *Id.* ¶ 25. Finally, "OPLA serves as the exclusive representative of DHS in immigration removal proceedings before the [Executive Office for Immigration Review], litigating all removal cases" and also

13

"provides a full range of legal services to ICE programs and offices," including "legal advice and prudential counsel." *Id.* ¶ 26.

### a. Search for specific responsive records

In her cross-motion, Stevens first contends that ICE failed to adequately search for responsive records related to prison grievances, commissary account data, and work program participation.[4]

The Court finds that Pineiro's declaration is not sufficiently detailed to show that ICE adequately searched for the requested records. Notably lacking from the declaration is an *explanation* of why only these program offices were selected to search for responsive records related to the full scope of Stevens's request, an omission that is exacerbated by the fact that Pineiro does not appear to identify the full scope of ICE program offices. Pineiro offers a statement that "[a]ccordingly, and based on the information described below, all locations likely to contain records responsive to Plaintiff's FOIA Requests (to the extent that they exist within ICE's custody) were searched." Pineiro Decl. ¶ 20. Yet, parsing the remainder of Pineiro's declaration, the information he references as forthcoming ("described below") is nowhere to be found. Pineiro does describe the specific search terms used and databases searched, but he does not provide an *explanation* regarding why "no other record system was likely to produce responsive documents" related to prison grievances, commissary account data, and work program participation. *See Oglesby*, 920 F.2d at 68; *cf. Explain*, Merriam-Webster, https://www.merriam-webster.com/dictionary/explain (last visited Jan. 13,

---

[4] Stevens did not request work program participation material for Charpentier, but only for Silvestre and Hoang. *See* ICE's SOF ¶¶ 9, 26, 37.

2025) (defining "explain" as "to make known; to make plain or understanding; to give the reason for or cause of; or to show the logical development or relationship of").  In essence, ICE is asking the Court to take Pineiro's bottom-line word for it without the benefit of any reasoning or justification.

Pineiro's declaration is inadequate for a second reason:  it does not sufficiently explain which of the potentially responsive records found in each of the program offices for each of the individual requests were ultimately produced to Stevens.  For example, Pineiro attests that searches related to Silvestre produced a total of 4 potentially responsive records that were then "sent to the ICE FOIA Office for review and processing."  Pineiro Decl. ¶¶ 28, 31, 45.  Searches related to Hoang produced a total of 59 potentially responsive records that were likewise sent to the ICE FOIA Office for review and processing.  *Id.* ¶¶ 50, 52, 55.  Finally, searches related to Charpentier produced a total of 13,640 potentially responsive records, with 13,601 of those records coming from OPLA.  *Id.* ¶¶ 58, 60, 66.  Pineiro then states that "2,802 pages of records were released to Plaintiff on a rolling basis."  *Id.* ¶ 69.  But Pineiro never sufficiently explains—never explains at all, really—which, or which categories, of the potentially responsive records made it into this final 2,802 page pool.  The Court is thus left wondering whether *any* of the potentially responsive records related to Silvestre or Hoang were ultimately produced to Stevens; without such an explanation, it is possible that the entirety of the 2,802 pages that were released could have come entirely from OPLA's search for Charpentier's records.

Though ICE is afforded the presumption of good faith, Stevens has supplied the requisite evidence to "raise substantial doubt [about the adequacy of the search]" by

providing her "well defined requests" and pointing to "positive indications of overlooked materials." *See Rubman*, 800 F.3d at 387. In particular, Stevens contends that there are over 10,000 pages of documents that ICE identified as potentially responsive but that were withheld without a sufficient explanation or description of which program office they came from, or even to which request they relate. Based on the record, no reasonable factfinder could find that ICE performed its search reasonably and in good faith. This is not a question of whether ICE "*might* have additional, unidentified responsive documents in its possession." *Id.* Rather, ICE has affirmed that there *are* over 10,000 pages of potentially responsive documents found by the various program offices, yet it has not sufficiently explained how it determined which of these pages to produce "to allow the . . . court to determine if the search was adequate." *Oglesby*, 920 F.2d at 68.

Accordingly, because Pineiro's declaration fails to provide the requisite explanation for the three FOIA requests at issue, the Court finds that ICE is not entitled to summary judgment and denies its motion with regard to the adequacy of its search. Instead, the Court grants Stevens's motion with regard to the insufficiency of the search for the portion of her FOIA requests seeking prison grievances, commissary account data, and work program participation. ICE must either redo the search or submit another declaration averring and *explaining* why no other program offices are likely to contain these specific responsive records, or both, by no later than January 30, 2025. The Court acknowledges that this is a short deadline, but that is warranted based on the fact that we are well over two years down the road in this case—and over three years down the road from Stevens's FOIA requests—and ICE has apparently been unable to

16

produce a declaration that comes close to eliminating genuine factual disputes regarding its searches and production.

The Court will address the remainder of Stevens's and ICE's motions regarding the sufficiency of the individual searches to guide ICE's new search and affidavit.

### b. Databases searched

Stevens challenges whether ICE provided sufficient details about the agency's systems of records and its decision to search only certain databases and not others. This dovetails with the Court's analysis above, so the Court will not repeat that here. The Court is not persuaded by Stevens's argument that Pineiro's declaration lacks sufficient detail because it "does not state the name of the database searched" but merely states that ICE searched "databases." Pl.'s Opp. to ICE's Mot. for Summ. J. & Cross-motion for Summ. J. at 8. ICE is not required to search every database. *See Oglesby*, 920 F.2d at 68 ("There is no requirement that an agency search every record system."). ICE must only set forth, through a sufficiently detailed affidavit, "the search terms and the type of search performed, and aver[] that all files likely to contain responsive materials (if such records exist) were searched." *Id.* Part of this—which the Court has determined to be lacking here—must be an explanation supporting the proposition "that no other record system was likely to produce responsive documents" so that the Court can "determine if the search was adequate." *Id.*

Stevens raises this objection for all three FOIA requests. But given the slight differences between these requests, it is reasonable for ICE to search different databases. ICE needs only to provide the required explanation, in sufficient detail,

regarding why, for each individual request, it elected to search the databases it did (and not others).

### c.    Search terms used

Stevens next asserts that ICE failed to adequately search because it used "a narrow and unreasonable selection of search terms."  Pl.'s Opp. to ICE's Mot. for Summ. J. & Cross-motion for Summ. J. at 9.

### i.    Miguel Silvestre

To support this contention for Miguel Silvestre, Stevens points to the singular fact that OPLA's "search terms for searches in PLAnet omit 'Guzman' entirely," despite ICE's "system of records show[ing] 'Guzman Silvestre, Miguel A#' as the nomenclature used for Mr. Silvestre."  *Id.*  Pineiro confirms in his declaration that OPLA searched the PLAnet database "using the subject's full alien number, the last three digits of his alien number, 'Silvestre,' and 'Miguel Silvestre.'"  Pineiro Decl. ¶¶ 35–36.

The Court finds Stevens's argument unpersuasive.  Stevens does not assert that Silvestre is referenced in any requested record using only the name "Guzman." Therefore, it is reasonable to believe—as ICE contends—that any search for the terms "Silvestre" or "Miguel Silvestre" would naturally capture instances mentioning "Miguel Guzman Silvestre" or "Guzman Silvestre, Miguel A#."  And on this point, the burden is on Stevens to "show some reason to think that the documents would have turned up if the agency had looked for it."  *See Rubman*, 800 F.3d at 387 (citation and quotation marks omitted).  Stevens has not shown that there is any reason to think that searching the additional term "Guzman" would produce any records not already found using the above mentioned search terms.  No reasonable factfinder could find otherwise.

### ii.   Toan Hoang

Stevens next challenges the scope of search terms used for Toan Hoang because "OPLA searched for 'Tom Hoang' rather than 'Toan Hoang.'"  Pl.'s Opp. to ICE's Mot. for Summ. J. & Cross-motion for Summ. J. at 9.  Pineiro's declaration provides no explanation for OPLA's decision to search using only "Tom Hoang" when the requested records were for "Toan Hoang."  *See* Pineiro's Decl. ¶¶ 53–55.  At no point does Pineiro assert that "Tom Hoang" is a known alias of "Toan Hoang" or that OPLA would only have records listing his name as "Tom Hoang" rather than "Toan Hoang."

Unlike the search terms used for Silvestre, the Court finds that OPLA's failure to search using the term "Toan Hoang," and Pineiro's corresponding lack of any explanation, is sufficient to show that ICE's OPLA program office did not conduct a reasonable, good faith search for the requested records related to Toan Hoang.  ICE must direct OPLA to redo the search using a broader scope of terms *and* provide a sufficient explanation for its decision to use the search terms it selects.  ICE must file a new affidavit explaining how it conducted its search by January 30, 2025.  Stevens must file any response to this submission by February 13, 2025.  The parties should be prepared to discuss the adequacy of this new affidavit and search at the status hearing set for February 20, 2025.

### iii.   Pascal Charpentier

Stevens next challenges the scope of search terms used for Pascal Charpentier. In particular, Stevens asserts that OPLA's New York office did not "search for any records for 'Pascual Carpenter' despite the fact that the Notice to Appear identified the

name as an 'a/k/a.'"  Pl.'s Opp. to ICE's Mot. for Summ. J. & Cross-motion for Summ. J. at 9.  This document does confirm that Pascal Charpentier has the known alias of Pascual Carpenter.  *See id.*, Ex. 2 at 59.  Pineiro's declaration contains no explanation or acknowledgement regarding why this known alias of Charpentier was not included in OPLA's search terms.  Accordingly, the Court finds that Pineiro's declaration does not contain a sufficient explanation to show that ICE reasonably searched for Charpentier's requested records.  ICE must direct OPLA to redo the search using a fuller scope of terms, specifically to include the alias "Pascual Carpenter," and provide a sufficient explanation for how it decided to conduct the search.  As previously stated, ICE must file a new affidavit explaining how it conducted its search by January 30, 2025, and Stevens must file any response by February 13, 2025.

    **2.**    **FOIA exemptions**

FOIA requires a federal agency to disclose records in its possession following a valid request for such records.  5 U.S.C. § 552(a).  An agency may withhold a responsive record only if the agency can show that the record meets one of nine exemptions.  *See id.* § 552(b); *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 136 (1975) ("As the Act is structured, virtually every document generated by an agency is available to the public in one form or another, unless it falls within one of the Act's nine exemptions.").  Because FOIA is interpreted broadly and in favor of disclosure, "FOIA exemptions are to be narrowly construed."  *U.S. Dep't of Just. v. Julian*, 486 U.S. 1, 8 (1988).

An agency bears the burden to prove "by a preponderance of the evidence that a withheld document falls within one of the exemptions."  *Enviro Tech Int'l, Inc. v. EPA*,

20

371 F.3d 370, 374 (7th Cir. 2004). To support its use of FOIA exemptions, ICE has supplied a *Vaughn* index describing the withheld material and justifying its nondisclosure. *See Vaughn v. Rosen*, 484 F.2d 820, 826–27 (D.C. Cir. 1973). Stevens challenges ICE's reliance on exemptions 5, 6, 7(C), and 7(E).

The Court finds that ICE has failed to sufficiently support its withholdings via its *Vaughn* index and accompanying declaration. As an initial matter, the *Vaughn* index is at the very least incomplete. "A withholding agency must describe *each* document or portion thereof withheld, and for *each* withholding it must discuss the consequences of disclosing the sought-after information." *King v. U.S. Dep't of Just.*, 830 F.2d 210, 223 (D.C. Cir. 1987). At points throughout the *Vaughn* index, ICE disavows the exemption listed and instead claims to withhold the information under a different exemption without saying anything further. For instance, ICE initially claimed to withhold the "[f]inal page of a court filing dated September 14, 2020" under Exemption 5, but then states that "[u]pon further consideration, ICE no longer claims the (b)(5) exemption as to this information and instead claims exemptions (b)(6) and (b)(7)(C)." ICE's SOF, Attach. A, ECF No. 89 p. 47 of 84.

Having noted this example, the Court would like address this claimed exemption more fully. To be blunt, these redactions are egregious. Most obviously, the redacted record is a *publicly filed document readily available on a public docket*. In other words, ICE contends that information that is available to *every member of the public* must be redacted because it risks revealing "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy," 5 U.S.C. § 552(b)(6), or because it contains "records or information compiled for law

enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy," *id.* § 552(b)(7)(C).  This is ludicrous.  In no universe does publicly available information ever risk a *clearly unwarranted* invasion of privacy.  And it is preposterous for ICE to assert that the *name and phone number of the attorney of record* could possibly qualify as information compiled for law enforcement purposes.  It does not.  This is made even more clear by the fact that *the name and contact information of the attorney of record*, which ICE redacted, *is publicly listed on the very docket used to download the publicly available court filing*.  Again, this asserted redaction by ICE defies comprehension.  The agency's redaction of this information screams of bad faith and firmly rebuts the presumption of good faith afforded to it.  The Court is left wondering whether anyone (and if so, who) vetted these sorts of assertions before they were included in the *Vaughn* index and before the index was filed with the Court.  This is a blatant misuse of FOIA Exemptions 6 and 7(C).[5]

As a second point of support for the Court's determination, Pineiro's declaration contains clearly erroneous statements showing a lack of attention to detail and accuracy.  In particular, Pineiro's declaration states that the proffered *Vaughn* index has five columns, and describes what information each column contains.  *See* Pineiro Decl. ¶ 68.  Yet this description, sworn by Pineiro to be accurate, is just plain wrong*:*  the *Vaughn* index contains four columns, not five.  *See* ICE's SOF, Attach. A.  Though this may seem like a small point, it underscores the proposition that the *Vaughn* index was

---

[5] Equally preposterously, ICE claims Exemptions 6 and 7(C) to justify redacting similar information on another publicly filed court document.  *See* ICE's SOAF, Attach. A, at 8–9.

not prepared by ICE in good faith. *See King*, 830 F.2d at 218 ("The significance of agency affidavits in a FOIA case cannot be underestimated. As, ordinarily, the agency alone possess knowledge of the precise content of documents withheld, the FOIA requester and the court both must rely upon its representations for an understanding of the material sought to be protected."). If Pineiro—and whoever prepared the *Vaughn* index for his review—did not take the time to actually review it closely enough to see that it contained a basic error regarding the number of columns in the index, the Court cannot help but wonder what other shortcuts were taken and what other errors and omissions were overlooked. For instance, Pineiro asserts that "[a] line-by-line review was conducted to identify information exempt from disclosure or for which a discretionary waiver of exemption could be applied." Pineiro Decl. ¶ 100. But given the inaccuracy of Pineiro's statement describing the organization of the *Vaughn* index itself, why should this Court believe that actually was done? Further, as the Court noted above, information in publicly filed documents was redacted that *clearly* does not fall under Exemption 7(C), and no reasonable factfinder could find that it does.

Given that the *Vaughn* index lacks sufficient detail, and the accompanying declaration has been shown to be unreliable, the Court finds that ICE has not carried its burden to withhold information under any of FOIA's exemptions. The remaining question, then, is what should happen next. When the *Vaughn* index and declaration provide an insufficient basis to justify withholdings under a FOIA exemption, the district court "may employ any of several measures to acquire enough information to conduct the review requisite." *King*, 830 F.2d at 225.

> The District Court may, in its discretion, order production of the excised material or some sample thereof for in camera inspection. An opportunity

for first-hand inspection enables the court to determine whether the weakness of the affidavits is a result of poor draftsmanship or a flimsy exemption claim, but the district court's inspection prerogative is not a substitute for the government's burden of proof, and should not be resorted to lightly. Moreover, should the task of in camera examination appear too burdensome, the court may allow appellant to engage in further discovery, or order the [agency] to supplement its *Vaughn* filings.

*Id.* (cleaned up).

The Court orders ICE to produce the records in full. The volume of records is too cumbersome to allow for in camera review, and ICE has already been afforded the opportunity to file a supplemental *Vaughn* index after its first *Vaughn* index admittedly "omitted a number of pages . . . that should have been included." ICE's Consol. Reply in Supp. of Mot. for Summ. J. & Resp. to Pl.'s Cross-motion for Summ. J. at 5. ICE does not get continual bites at the apple, and permitting it to file *another* supplemental *Vaughn* index in light of lack of good faith as described above would only reward its delay. After two years, enough is enough. ICE must produce all responsive records to Stevens, without redaction, by January 30, 2025, along with its new affidavit, as it has completely failed to carry its burden that any exemptions are warranted.

### 3. Reasonably segregated

Section 552(b) states:

Any reasonably segregable portion of the record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection. The amount of information deleted, and the exemption under which the deletion is made, shall be indicated on the released portion of the record, unless including that indication would harm an interest protected by the exemption in this subsection under which the deletion is made. If technically feasible, the amount of the information deleted, and the exemption under which the deletion is made, shall be indicated at the place in the record where such deletion is made.

5 U.S.C. § 552(b). Courts have interpreted this to require that "non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions." *PHE, Inc. v. Dep't of Just.*, 983 F.2d 248, 252 (D.C. Cir. 1993); *see also Patterson v. I.R.S.*, 56 F.3d 832, 841 (7th Cir. 1995). A determination that an agency reasonably segregated exempt information from disclosed records is a separate finding from whether an agency properly qualifies for an exemption. *See Patterson*, 56 F.3d at 840; *Krikorian v. Dep't of State*, 984 F.2d 461, 467 (D.C. Cir. 1993) ("A district court that simply approves the withholding of an entire document without entering a finding of segregability, or the lack thereof, errs." (cleaned up)).

The Court finds that ICE has not met its burden to show that it released all reasonably segregated, non-exempt information to Stevens. The Court has already addressed above why the *Vaughn* index is insufficient to carry ICE's burden for certain claimed exemptions. And the egregiousness of several of ICE's claimed exemptions leads the Court to find that ICE has not acted in good faith when compiling the *Vaughn* index.

In sum, the Court grants Stevens's motion for summary judgment on Count 3 and orders ICE to produce to Stevens , without redaction, all documents identified as responsive no later than January 30, 2025.

## Conclusion

In conclusion, the Court denies Stevens's motion for summary judgment [dkt. no. 96] on Count 1 but grants her motion on Count 3. The Court denies ICE's motion for summary judgment [dkt. no. 87] in full and orders ICE to produce all responsive records, without redaction, to Stevens by January 30, 2025. The Court also orders ICE to redo

25

the search for responsive records for Silvestre, Hoang, and Charpentier and submit a new affidavit sufficiently explaining how it conducted its search such that it meets the parameters the Court has outlined above.  In addition, Count 2 is dismissed as moot.

MATTHEW F. KENNELLY
United States District Judge

Date:  January 16, 2025