UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JACQUELINE STEVENS, )
)
                    Plaintiff, )
)
        v. )   No. 22 C 5072
)
                              )   Judge Kennelly
UNITED STATES DEPARTMENT OF )
HEALTH AND HUMAN SERVICES, *et al.*, )
)
                    Defendants. )

## AFFIDAVIT FROM U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT

In this Freedom of Information Act lawsuit, the court has directed defendant United States Immigration and Customs Enforcement to file an affidavit providing the court with certain information. Dkt. 121. ICE attaches that affidavit as Exhibit A to this filing. In summary, the affidavit provides the following information:

1.      In response to the court's finding that the declaration that ICE submitted in support of its motion for summary judgment did not sufficiently explain why ICE did not search other program offices, the affidavit identifies the program offices that ICE did not search and explains why those offices are not reasonably likely to have records responsive to the FOIA requests at issue in this case. Ex. A ¶¶ 5-18.

2.      The affidavit explains that ICE has complied with the court's order directing ICE to direct its Office of the Principal Legal Advisor to re-do its search for records relating to a person named Toan Hoang. Ex. A at ¶¶ 21-26. OPLA has not yet returned its results yet, but ICE will process any potentially responsive records at the previously ordered rate of 1,500 pages per month. *Id.* ¶ 27. However, ICE tentatively expects the volume to be much lower than 1,500 pages. *Id.*

3.  The affidavit explains that ICE has complied with the court's order directing ICE to direct OPLA to re-do its search for records relating to Pascal Charpentier's alias "Pascual Carpenter." Ex. A ¶¶ 28-33.  OPLA has not yet returned its results yet, but ICE will process any potentially responsive records at the previously ordered rate of 1,500 pages per month.  *Id*. ¶ 34. However, ICE tentatively expects the volume to be much lower than 1,500 pages.  *Id*.

The court has directed plaintiff to file any response to ICE's affidavit by February 13, 2025, and the court has scheduled a status hearing for February 20, 2025.  Dkt. 121 at 19.  The undersigned AUSA is hopeful that OPLA will have returned its search results to ICE's FOIA office before the February 20 status hearing.

Respectfully submitted,

MORRIS PASQUAL
Acting United States Attorney

By: s/ Alex Hartzler
    ALEX HARTZLER
    Assistant United States Attorney
    219 South Dearborn Street
    Chicago, Illinois 60604
    (312) 886-1390
    alex.hartzler@usdoj.gov

# Exhibit A

UNITED STATES DISTRICT COURT
For the Northern District of Illinois –
Eastern Division

JACQUELINE STEVENS )
)
     *Plaintiffs,* )
)
v. )     Case No. 22 C 5072
)
UNITED STATES DEPARTMENT OF )     Judge Kennelly
HEALTH AND HUMAN SERVICES, *et al.,* )
)
)
)
)
     *Defendants.* )
)
_____ )

### SUPPLEMENTAL DECLARATION OF FERNANDO PINEIRO

I, Fernando Pineiro, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1. I am the FOIA Director of the U.S. Immigration and Customs Enforcement ("ICE") Freedom of Information Act ("FOIA") Office. I have held this position since August 14, 2022, and I am the ICE official immediately responsible for supervising ICE responses to requests for records under the Freedom of Information Act, 5 U.S.C § 552 (the FOIA), the Privacy Act, 5 U.S.C. § 552a (the Privacy Act), and other applicable records access statutes and regulations. Prior to this position, I was the Deputy FOIA Officer of the ICE FOIA Office from December 29, 2013, to August 13, 2022, and prior to that I was the FOIA Officer for three years at the Office for Civil Rights and Civil Liberties ("CRCL") at the U.S. Department of Homeland Security ("DHS"). The ICE FOIA office mailing address is 500 12th Street, S.W., STOP 5009, Washington, D.C. 20536-5009.

2. As the FOIA Director my official duties and responsibilities include the general management, oversight, and supervision of the ICE FOIA Office regarding the processing of FOIA, 5 U.S.C. § 552, and Privacy Act, 5 U.S.C. § 552a, requests received at ICE. In connection

with my official duties and responsibilities, I am familiar with ICE's procedures for responding to requests for information pursuant to the FOIA and the Privacy Act.

3.   I submit this supplemental declaration in response to the Court's Order from January 16, 2025. The statements contained in this declaration are based on my personal knowledge, my review of the documents maintained by ICE in the ordinary course of business, and information provided to me by other ICE employees in the course of my official duties.

4.   In its Order, the Court found ICE did not provide the requisite explanation regarding its search for records related to prison grievances, commissary account data, and work program participation and ordered ICE to either redo the search or to submit a declaration averring and explaining why no other program offices are likely to contain responsive records.  The Court also ordered ICE to direct OPLA to redo the search for records related to Toan Hoang and explain how it conducted its search.  The Court further ordered ICE to direct OPLA to redo the search for records for Pascal Charpentier seeking records that include the alias "Pascual Carpenter" and provide an explanation for how that search was conducted.

### I.   ICE'S SUPPLEMENTAL EXPLANATION FOR ITS SEARCH OF RECORDS INVOLVING PRISON GRIEVANCES, COMMISSARY ACCOUNT DATA, AND WORK PROGRAM PARTICIPATION

5.   In its Order, the Court found that there was insufficient information to explain why only Homeland Security Investigations (HSI), Enforcement and Removal Operations (ERO) and Office of the Principal Legal Advisor (OPLA) were initially tasked. Furthermore, the Court instructed ICE to either "redo" the search or submit another declaration averring and explaining why no other program offices are likely to contain these specific responsive records or do both. In this section, I will explain why ICE did not search every one of its operational program offices and sub-offices in response to the Court's concerns.

6.   ICE was created in 2003 through a merger of the investigative and interior enforcement elements of the former U.S. Customs Service and the Immigration and Naturalization Service. ICE now has more than 20,000 law enforcement and support personnel in more than 400 offices in the United States and around the world.

7. The agency is primarily devoted to three operational directorates —HSI, ERO, and OPLA. The other ICE directorates consist of Management and Administration (M&A), the Office of the Chief Financial Officer (OCFO), and the Office of Professional Responsibility (OPR).[1]

8. M&A identifies and tracks the agency's performance measurements and leads a human capital program that includes recruitment endeavors and commitment to equal employment opportunity. M&A also directs and maintains ICE's budget, expenditures, accounting and finance, procurement, facilities, property, and policy and privacy programs.

9. M&A has seven program offices under its purview: Office of Human Capital, Office of Acquisition Management, Office of Asset and Facilities Management, Office of the Chief Information Officer, Office of Leadership and Career Development, Office of Information Governance and Privacy, and Office of Investment and Program Accountability.

10. M&A was not tasked to search for prison grievances, commissary account data, and work program participation records in this case because their mission is technical support and financing. Immigration enforcement, detention, and maintaining detention records such as prison grievances, commissary account data, and work program participation do not fall under M&A's portfolio, and M&A is therefore not likely to possess such records.

11. OCFO manages ICE's physical and financial resources and locates resources for ICE's operational components. OCFO has no program offices under its purview.

12. OCFO was not tasked to search for prison grievances, commissary account data, and work program participation records in this case because their mission involves budgetary, accounting, and financial oversight. Immigration enforcement, detention, and maintaining detention records such as prison grievances, commissary account data, and work program participation do not fall under OCFO's portfolio, and OCFO is therefore not likely to possess such records.

13. OPR is responsible for upholding the agency's professional standards by managing ICE's security programs, conducting independent reviews of ICE programs and operations, and impartially investigating allegations of employee and contractor misconduct.

14. OPR has three program offices under its purview: Investigations, ICE Inspections, and ICE Security.

---

[1] https://www.ice.gov/leadership/organizational-structure
https://www.ice.gov/about-ice

15. OPR's Investigations program office manages and investigates allegations of employee misconduct and oversees integrity programs such as the Prison Rape Elimination Act program and the Giglio/Henthorn program.

16. OPR's Inspections program office inspects, audits, and reviews ICE directorates and programs to assess compliance with federal laws, applicable policies and procedures, and the agency's detention standards. OPR's detention oversight includes biannual inspections of detention facilities and detainee death reviews.

17. OPR's Security program office mitigates risk to people, information, and facilities by managing personnel security and by detecting and preventing internal and external threats.

18. OPR was not tasked to search for prison grievances, commissary account data, and work program participation records in this case because their mission is to ensure ICE adheres to the agency's professional standards. Immigration enforcement, detention, and maintaining detention records such as prison grievances, commissary account data, and work program participation do not fall under OPR's portfolio, and OPR is therefore not likely to possess such records.

19. ERO manages aspects of the immigration enforcement process, including the identification, arrest, detention, and removal of aliens who are subject to removal or are unlawfully present in the U.S. As part of its mission, ERO oversees civil immigration detention in facilities nationwide that house aliens to secure their presence for immigration proceedings or removal from the U.S.

20. ICE tasked ERO to search for records in this case because ERO's mission includes immigration enforcement, detention, and maintaining detention records. ERO would therefore likely have detention records such as prison grievances, commissary accounts, and work program participation if any such records exist.

## II.     OPLA SEARCH FOR RECORDS RELATING TO "TOAN HOANG"

21. The Court's Order instructed ICE to direct OPLA to redo the search for "Toan Hoang," because OPLA previously did not spell Mr. Toan Hoang's name correctly. As a result, the ICE FOIA Office sent a FOIA tasking to OPLA FOIA requesting that OPLA redo its prior search and locate all responsive records regarding "Toan Hoang, DOB: 03/29/1977, COB: Vietnam, A# 025 10 5060."

22. Searching for records using the name "Toan Hoang" and his alien number is reasonably calculated to uncover to uncover all available OPLA records regarding Mr. Toan Hoang.

23. A broad search for name and alien number is commonly performed when records are requested for a specific person. In my experience, it is common for this type of search to return not only records responsive to a request but also records outside the scope of a request. Any records that are returned that are outside of the scope of the request will be reviewed and marked as non-responsive during the course of production while responsive records will be processed and produced subject to the FOIA.

24. Upon receipt of the Court's Order, the ICE FOIA Office reviewed the case record and tasked OPLA to perform an expedited search for responsive records related to Toan Hoang. ICE FOIA has not yet received a response from OPLA.

25. When an OPLA FOIA POC receives a tasking they review the tasking, along with any case-specific instructions that may have been provided, and based on their experience and knowledge of their program office practices and activities, forward the request and instructions to the individual employee(s) or component office(s) within the program office that they believe are reasonably likely to have responsive records, if any. In conformity with the ICE FOIA Office's instructions, the individuals and component offices are directed to conduct searches of their file systems, including both paper files and electronic files, which in their judgment, based on their knowledge of the manner in which they routinely keep records, would most likely be the files to contain responsive documents. Once those searches are completed, the individuals and component offices provide any potentially responsive records to their program office's POC, who in turn, provides the records to the ICE FOIA Office.

26. The ICE FOIA Office then reviews the collected records for responsiveness and the application of appropriate FOIA Exemptions. When reviewing records for responsiveness, ICE carefully reviews all potentially responsive records in light of the specific FOIA request. Records that do not contain information pertaining to Plaintiff's FOIA request are deemed nonresponsive. Any documents that contain information pertaining to Plaintiffs' FOIA request will be marked as responsive and then processed and produced subject to the FOIA.

27. It is not yet known how many potentially responsive documents OPLA's search will recover. ICE FOIA intends to process any documents that are found by OPLA as quickly as practicable, with the minimum processed being 1,500 pages per month as the Court has previously

ordered. However, ICE tentatively expects the number of potentially responsive pages to be well below 1,500.

### III. OPLA SEARCH FOR RECORDS RELATING TO THE ALIAS "PASCUAL CARPENTER"

28. The Court's Order instructed ICE to direct OPLA to search for records using the alias "Pascual Carpenter." As a result, the ICE FOIA Office sent a FOIA tasking to OPLA FOIA requesting that OPLA redo its prior search and locate all responsive records regarding "Pascual Carpenter."

29. The search term "Pascual Carpenter" was selected because a search for Mr. Pascal Charpentier's true and correct name and alien numbers has already been completed. A search for the alias "Pascual Carpenter" is reasonably calculated to find all OPLA records associated with that alias.

30. A search for a name alone is intended to capture all records involving that name. In my experience, it is common for a broad search for all documents associated with a name to return records outside the scope of a request. Any records that are returned that are outside of the scope of the request will be reviewed and marked as non-responsive during the course of production while responsive records will be processed and produced subject to the FOIA.

31. Upon receipt of the Court's Order, the ICE FOIA Office reviewed the case record and tasked OPLA to perform an expedited search for responsive records related to "Pascual Carpenter." ICE FOIA has not yet received a response from OPLA.

32. When an OPLA FOIA POC receives a tasking they review the tasking, along with any case-specific instructions that may have been provided, and based on their experience and knowledge of their program office practices and activities, forward the request and instructions to the individual employee(s) or component office(s) within the program office that they believe are reasonably likely to have responsive records, if any. In conformity with the ICE FOIA Office's instructions, the individuals and component offices are directed to conduct searches of their file systems, including both paper files and electronic files, which in their judgment, based on their knowledge of the manner in which they routinely keep records, would most likely be the files to contain responsive documents. Once those searches are completed, the individuals and component offices provide any potentially responsive records to their program office's POC, who in turn, provides the records to the ICE FOIA Office.

33. The ICE FOIA Office then reviews the collected records for responsiveness and the application of appropriate FOIA Exemptions. When reviewing records for responsiveness, ICE carefully reviews all potentially responsive records in light of the specific FOIA request. Records that do not contain information pertaining to Plaintiff's FOIA request are deemed nonresponsive. Any documents that contain information pertaining to Plaintiffs' FOIA request will be marked as responsive and then processed and produced subject to the FOIA.

34. It is not yet known how many potentially responsive documents OPLA's search will recover. ICE FOIA intends to process any documents that are found by OPLA as quickly as practicable, with the minimum processed being 1,500 pages per month as the Court has previously ordered. However, ICE tentatively expects the number of potentially responsive pages to be well below 1,500.

I declare under penalty of perjury that the forgoing is true and correct to the best of my knowledge and belief.

Signed this _____ day of January, 2025.

FERNANDO PINEIRO JR
Digitally signed by FERNANDO PINEIRO JR
Date: 2025.01.30 15:50:51 -05'00'

Fernando Pineiro, FOIA Director
Freedom of Information Act Office
U.S. Department of Homeland Security
U.S. Immigration and Customs Enforcement
500 12th Street, S.W., Stop 5009
Washington, DC 20536-5009