UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JACQUELINE STEVENS,                      )
                                         )
                    Plaintiff,           )
                                         )
                                         )   No. 22 C 5072
          v.                             )
                                         )
                                         )   Judge Kennelly
UNITED STATES DEPARTMENT OF              )
HEALTH AND HUMAN SERVICES, *et al.*,     )
                                         )
                    Defendants.          )

**JOINT STATUS REPORT**

At the court's direction (Dkt. 119), the parties in this Freedom of Information Act case jointly submit this status report regarding plaintiff Jacqueline Stevens's Freedom of Information Act request to U.S. Customs and Border Protection.

**Defendant's Position**:

1.      Since the court issued its summary judgment ruling regarding CBP in August 2023 (Dkt. 102), CBP has processed more than 28,000 pages of potentially responsive records. This greatly exceeds the standard FOIA processing rate of around 500 pages per month because a small number of plainly non-responsive records contained an astronomical number of pages.

2.      Speaking of astronomical numbers, CBP has received the results of the taskings sent out by its FOIA office, and the total number of potentially responsive records amounts to 492,147 documents, for a total of nearly 1.3 million pages.

3.      If CBP were to process this universe at its standard FOIA processing rate of 500 pages per month, it would take 2,000 years.

4.      The search terms CBP employed were: "E.H.R." (which yielded 5 hits); "E.M.R." (which yielded 0 hits); "Electronic Health Record" (which yielded 6,577 hits); "Electronic Medical

Record" (which yielded 24,928 hits); "EHR" (which yielded 11,259 hits); and "EMR" (which yielded 361,980 hits). (Those are document counts, not page counts, and those numbers do not include "family members," for example attachments, which are included in the total number mentioned in paragraph 2 above.)

5.      At the in-person status hearing on December 13, 2024, the court directed the parties to confer in good faith in an effort to reach resolution regarding the scope of the additional search ordered by the court. *See* Dkt. 119.

6.      Accordingly, CBP invited Stevens to propose additional search terms to narrow the universe of records that need to be reviewed. Stevens has refused to provide additional search terms.

7.      CBP proposes four possible solutions: (1) this lawsuit be dismissed with respect to CBP for want of prosecution; (2) the court order Stevens to provide CBP with additional search terms that CBP can use to narrow the universe of records that need to be reviewed; (3) the court schedule a virtual settlement conference for the purpose of negotiating an agreed approach to narrowing the universe of records; or (4) the court refer the parties to the magistrate judge for the same purpose. CBP notes that plaintiff is in agreement with options (3) and (4), as shown below.

**Plaintiff's position:**

8.      Following the partial grant of Plaintiff's summary judgment motion CBP elected to search the following components in response to part 2 of the Underwood Request: (1) the Office of the Commissioner (in case someone in that office had oversight of the relevant topic); (b) the Office of Field Operations/U.S. Border Patrol/Air and Marine Operations (which are enforcement offices that could possibly have responsive records given the subject matter's potential nexus to encounters with non-citizens or other travelers); (c) Operations Support's sub-office called the

Office of the Chief Medical Officer (the *most* likely office to have responsive records, in CBP's view); and (d) Public Affairs (in case members of the media or public reached out to CBP with questions on the topic). *See* ECF # 109. This search performed over three years after the submission of the FOIA request resulted in "records amount[ing] to 492,147 documents, for a total of nearly 1.3 million pages".

9. Defendant now blames Plaintiff for its refusal to perform its statutory duties under the Act and for its inability to design proper searches. **First**, despite repeatedly asserting during this litigation that it has capacity to process no more than 500 pages per month, Defendant now admits that it processed over 1600 pages per month following the partial grant of Plaintiff's motion for summary judgment. **Second**, Defendant provides the "hits" count returned by using six search terms but omits any information about the databases or type of files from which these "hits" were returned for each search term. Plaintiff and the undersigned have no knowledge of how CPB maintains its records. Without further information about the type of databases or files searched Plaintiff cannot meaningfully narrow her request. For example, if "hits" were returned from searching emails or correspondence then Plaintiff can propose select custodians' accounts to be searched. If the "hits" were returned from databases or files containing policies, protocols, special operative procedures, etc., then Plaintiff could make an informed decision and select those that are relevant to her research and scholarly work. On the other hand, if some of the "hits" represent retrieval from databases that house individual personal medical or health records of non-citizens, the parties could readily agree that those would not be subject to production under Exception 3 & 6 and thus do not need to be processed. But CBP refuses to provide meaningful information to Plaintiff regarding the searches. The undersigned agrees that the parties should engage in a

meaningful meet and confer process rather than exchange ad hominem attacks and place blame on the other side's "refusal" the accept "take it or leave it" offers.

10. **Plaintiff's proposal**: (1) the Court should schedule an evidentiary hearing to hear from the parties and make factual findings as to all factual issue that remain following the partial denials of the Rule 56 cross-motions relative to EOIR, CBP, and ICE; (2) in the alternative, the Court should issue a final injunction or remand to the agency with vacatur directing CBP and ICE to comply with the searches and productions already ordered by the Court in ruling on the various Rule 56 motions and retain jurisdiction over the case should compliance with such a final injunction becomes an issue. Issuing a final injunction/remand would have the added benefit of providing Plaintiff the statutorily mandated opportunity to "seek assistance from the FOIA Public Liaison of the agency," as well as "to seek dispute resolution services from the [agency's] FOIA Public Liaison ... or the Office of Government Information Services." *Id.* § 552(a)(6)(A)(i)(II)-(III). (3) in the alternative, Plaintiff joins Defendant's request for a virtual settlement conference with the Court or a referral to a magistrate for the same purpose.

Respectfully submitted,

MORRIS PASQUAL
Acting United States Attorney

By: s/ Alex Hartzler
    ALEX HARTZLER
    Assistant United States Attorney
    219 South Dearborn Street
    Chicago, Illinois 60604
    (312) 886-1390
    alex.hartzler@usdoj.gov

s/ Nicolette Glazer
NICOLETTE GLAZER
Attorney for Plaintiff
Law Office of Larry R. Glazer
Watt Plaza
1875 Century Park East #700
Century City, California 90067
(708) 435-0404
nicolette@glazerandglazer.com