UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JACQUELINE STEVENS, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 22 C 5072 ) |
| UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, *et al.*, | ) Judge Kennelly ) ) |
| Defendants. | ) ) |

**PLAINTIFF'S RESPONSE TO ICE'S SUPPLEMENTAL AFFIDAVIT (ECF #139)**

At the court's direction Plaintiff responds as follows to the 31 January 2024 Supplemental Affidavit of Mr. Pinero:

1. Although ICE asserts that in response to this Court's memorandum opinion ICE has directed OPLA to re-do its search for records relating to Pascal Charpentier's alias "Pascual Carpenter and for "Toan Huang", to date ICE has produced no responsive records to Plaintiff. *See concurrently filed* Stevens Declaration.

2. In light of the age of the case and the admission that both searches are likely to return *"volume [..] much lower than 1,500 pages"* the Court should order that ICE produce all responsive record by a date certain.

3. In his affidavit Mr. Pineiro at paragraphs 15-18 states as follows:

*15. OPR's Investigations program office manages and investigates allegations of employee misconduct and oversees integrity programs such as the Prison Rape Elimination Act program and the Giglio/Henthorn program.*
*16. OPR's Inspections program office inspects, audits, and reviews ICE directorates and programs to assess compliance with federal laws, applicable policies and procedures, and the agency's detention standards. OPR's detention oversight includes biannual inspections of detention facilities and detainee death reviews.*
*17. OPR's Security program office mitigates risk to people, information, and facilities by*

> *managing personnel security and by detecting and preventing internal and external threats.*
> *18. OPR was not tasked to search for prison grievances, commissary account data, and work program participation records in this case because their mission is to ensure ICE adheres to the agency's professional standards. Immigration enforcement, detention, and maintaining detention records such as prison grievances, commissary account data, and work program participation do not fall under OPR's portfolio, and OPR is therefore not likely to possess such records.*

It defies credulity that OPR's Investigation whose mission is to "*manages and investigates allegations of employee misconduct and oversees integrity programs such as the Prison Rape Elimination Act program and the Giglio/Henthorn program*" could not have records of prison grievances. Similarly, Mr. Pineiro provides no explanation why OPR's Inspections program *that "inspects, audits, and reviews ICE directorates and programs to assess compliance with federal laws, applicable policies and procedures, and the agency's detention standards" and inspects and audits detention facilities* would not be searched for records related to *prison grievances, commissary account data, and work program participation in ICE facilities.* The issue is not whether ICE would uncover such grievances, commissary account data or work program participation but whether ICE performed and meet its Rule 56 burden to show that it has conducted a search for all responsive records.

    4.    Plaintiff further details issues with the state of the ICE FOIA requests in the attached declaration.

                                                          Respectfully submitted,

                                       s/ Nicolette Glazer
                                   NICOLETTE GLAZER
                                   Attorney for Plaintiff
                                   Law Office of Larry R. Glazer
                                   Watt Plaza
                                   1875 Century Park East #700
                                   Century City, California 90067
                                   (708) 435-0404
                                   nicolette@glazerandglazer.com



PLAINTIFF'S EXHIBIT

**Declaration**

## **DECLARATION OF JACQUELINE STEVENS**

I, Jacqueline Stevens, state and declare under penalty of perjury that the following is true and correct:

1. I am a named Plaintiff in the Complaint under the Freedom of Information Act ("FOIA"). I have been a tenured full professor in the Political Science Department at Northwestern University ("Northwestern") since 2010. In 2012 I became the founding Director of the Deportation Research Clinic, Buffet Institute for Global Affairs, Northwestern University ("Clinic").

2. I make this declaration based on personal knowledge and observations as stated herein. Further, this Declaration contains my professional opinions on certain topic for which I have specialized knowledge based on my education, professional experience, expertise, and research.

3. If called to testify I could and would testify to each of the facts stated within this Declaration.

4. This Declaration is made to support my suggestion that this Court consider appointing an official from Immigration and Customs Enforcement's ("ICE") Office of Inspector General ("OIG") to provide an affidavit with information responsive to this Court's questions and concerns about the inadequacies of previously submitted ICE affidavits, as well as concerns about the ICE affidavit of January 30, 2025.

**Fernando Pineiro's Affidavit of January 30, 2025 (ECF #139)**

5. Since this Court's order of January 16, 2025 (ECF #121), ICE has released to me zero additional responsive pages.

6. ICE's failure to comply with the FOIA and Court orders is forcing me to spend substantial time tracking records, redactions, and record-retention policies. This persistent and burdensome obligation to rebut ICE's vague declarations and remedy meagre releases is substantially affecting my ability to produce scholarship on the records ICE has been releasing and to respond to ongoing requests for information from the media about how the new Trump orders will affect U.S. citizens, a focus of my research.[1]

7. Prior to the Court's order of January 16, 2025, ICE released to me five pages of records (digital printout) on Miguel Silvestre Guzman, 53 pages on Toan Hoang, and 2,303 pages for Pascal Charpentier, many of which are withheld in full or heavily redacted for all three.

8. Numerous pages are withheld in full and not tracked on the Vaughn Index, as previously noted.

9. Mr. Pineiro's recent affidavit provides no attestations to indicate ICE has reviewed a single additional page since this Court's order of January 16, 2025.

10. Mr. Pineiro's affidavit still withholds information on which *specific databases and officials* ICE officials rely on to access the systems records still not released to me, such as the I-213 arrest reports, as well as: (a) detainee grievances; (b) detainee records on commissary accounts and work program participation; and (c) email on claims of U.S. citizenship.

11. Pineiro's affidavits, including the present one, is consistent with locations and databases being searched, and *responsive records being located and withheld without documentation in the Vaughn Index.*

---

[1] Reporters from national and international media, including the "Voice of America," *Wall Street Journal*, and *Washington Post* in the last two weeks have interviewed me; numerous other local television and online media reporters also have solicited my comments on ICE's new arrest policies, which are highly likely to result in the unlawful detention and possible deportation of U.S. citizens.

12. I have received copies of grievances of other U.S. citizens in ICE custody pursuant to FOIA litigation of other cases.

The above is true and correct to the best of my knowledge and recollections.

Dated: February 13, 2025

_____

JACQUELINE STEVENS
601 University Place
Second Floor, Political Science Department
Evanston, Illinois 60208
(847) 467-2093
jacqueline-stevens@northwestern.edu