UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JACQUELINE STEVENS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 22 C 5072 |
| v. ) | |
| ) | Judge Kennelly |
| UNITED STATES DEPARTMENT OF ) | |
| HEALTH AND HUMAN SERVICES, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**ICE'S MOTION TO PARTIALLY STAY
JANUARY 16 AND 29, 2025 ORDERS PENDING APPEAL**

Defendant U.S. Immigration and Customs Enforcement, by Morris Pasqual, Acting United States Attorney for the Northern District of Illinois, moves to partially stay, pending appeal, the portions of the court's January 16 and 29, 2025 orders (Dkt. 121, 138) directing ICE to produce by April 30 all of the material that it had previously withheld. In support, ICE states as follows:

1. In this Freedom of Information Act case, earlier this year the court granted in part plaintiff Jacqueline Stevens's motion for summary judgment against ICE and denied it in part, and the court denied in full ICE's motion for summary judgment. Dkt. 121. The court directed ICE to take several remedial steps regarding its search for records responsive to Stevens's FOIA requests. Among those steps, the court directed ICE to produce in full all of the material ICE had previously withheld under one or more exceptions to the FOIA statute. *Id*. at 24.

2. The court initially directed ICE to produce the material by January 30, 2024. Dkt. 121 at 24. After filing a notice of appeal, Dkt. 133, ICE moved to stay, pending appeal, the portion of the order directing production by January 30. Dkt. 131. In the motion, ICE explained that the

Acting Solicitor General had not yet made a final determination under 28 C.F.R. § 0.20(b) on whether to authorize an appeal.

3. The court denied the motion "without prejudice to refiling" but extended the production deadline to April 30 to "allow the solicitor general [time] to make a decision." Dkt. 138; Ex. A (Jan. 29, 2025 Tr.) at 7-8 ("I may hear from you guys again in a couple of months, but that kind of takes the heat off everybody for now.").

4. Since then, the Acting Solicitor General has authorized the appeal, and ICE filed its opening brief with the Seventh Circuit on March 10. Stevens's response brief is currently due April 9, and ICE's reply brief will be due 21 days after Stevens files her brief. Briefing is therefore unlikely to be complete until April 30 (assuming neither party seeks an extension), meaning the production deadline will likely arrive before the Seventh Circuit has had a chance to rule.

5. ICE accordingly asks that the court stay its order directing ICE to produce the unredacted materials by April 30 and that the stay remain in force until the Seventh Circuit disposes of the appeal.

6. Courts consider four factors when determining whether to grant a stay: (1) "the likelihood the applicant will succeed on the merits of the appeal"; (2) "whether the applicant will be irreparably injured absent a stay"; (3) "whether the issuance of a stay will substantially injure other parties"; and (4) "the public interest." *Castro v. Castro*, 978 F.3d 1036, 1039 (7th Cir. 2020). When the government is a party, the government's interest and the public interest "merge." *Nken v. Holder*, 556 U.S. 418, 435 (2009). The "goal" of a stay pending appeal "is to minimize the costs of error." *In re A & F Enters., Inc. II*, 742 F.3d 763, 766 (7th Cir. 2014).

7. Here, the second factor—whether ICE will be irreparably harmed absent a stay—is crucial. Once information has been disclosed under FOIA, "the information belongs to the

general public," *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 174 (2004), and any protections to the information's disclosure are irretrievably lost, making any appeal moot. "Disclosure followed by appeal . . . is obviously not adequate in such cases—the cat is out of the bag." *In re Papandreou*, 139 F.3d 247, 251 (D.C. Cir. 1998).

8. As a result, courts routinely grant stays of disclosure in FOIA cases, because "denial of a stay will utterly destroy the status quo, . . . but the granting of a stay will cause relatively slight harm to appellee." *Providence Journal Co. v. FBI*, 595 F.2d 889, 890 (1st Cir. 1979); *accord People for the Am. Way Found. v. Dep't of Educ.*, 518 F.Supp.2d 174, 177 (D.D.C. 2007) (in FOIA context, "courts have routinely issued stays where the release of documents would moot a defendant's right to appeal"); *see HHS v. Alley*, 556 U.S. 1149 (2009) (Thomas, J., in chambers) (staying FOIA disclosure pending disposition of appeal); *John Doe Agency v. John Doe Corp.*, 448 U.S. 1306, 1309 (1989) (Marshall, J., in chambers) (denial of stay of FOIA order would cause mootness and irreparable injury); *City of Chicago v. Dep't of Treasury*, 423 F.3d 777, 779 (7th Cir. 2005) (noting that district court stayed pending appeal its order directing release of material under FOIA); *Menasha Corp. v. DOJ*, 707 F.3d 846, 850 (7th Cir. 2013) (same).

9. As noted above, appellate briefing is unlikely to be completed before April 30. That same deadline for disclosure therefore does not permit the Seventh Circuit time to consider and decide this case, depriving ICE of its opportunity for appellate review. The second factor accordingly provides, by itself, a powerful reason to grant a stay.

10. Meanwhile, Stevens would suffer little if any appreciable harm—the third factor—if the court enters a stay. This case involves three FOIA requests that Stevens submitted to ICE in June 2021, March 2022, and August 2022. Dkt. 15 (Answer) ¶¶ 36, 41, 47. She filed this lawsuit in September 2022—more than a year after the filing of the first request and six months after the

3

filing of the second. Two and a half years of litigation have occurred since then, including ICE's processing of records at an accelerated pace of 1,500 pages per month as directed by the court in response to Stevens's motion for an injunction. Dkt. 34. A stay pending appeal will not appreciably harm Stevens, particularly when she waited more than a year after filing the first request before she even brought this lawsuit. And in previously opposing a stay, Stevens has offered only generalities about the importance of disclosures under FOIA. Dkt. 124, 136.

11. The public interest—the fourth factor—would also be harmed by the absence of a stay. Compelled disclosure of confidential records under FOIA would, for example, discourage candid discussions among government officials who reasonably expect that their communications will be protected by the attorney-client privilege, the attorney work product doctrine, and FOIA's privacy protections. *See, e.g.*, *United States v. Jicarilla Apache Nation*, 564 U.S. 162, 169 (2011) (observing that the attorney-client privilege "encourage[s] full and frank communication between attorneys and their clients and thereby promote[s] broader public interests in the observance of law and administration of justice," and that these "objectives . . . apply to governmental clients"). Moreover, the disclosure of third parties' personal information—such as social security numbers, *see* Dkt. 101, at 23-24—would impose irremediable harms on the public. *See, e.g.*, *Sherman v. U.S. Dep't of Army*, 244 F.3d 357, 365 (5th Cir. 2001) ("As both our sister circuits and Congress have suggested, an individual's informational privacy interest in his or her [social security number] is substantial.").

12. Where the balance of equities strongly favors a stay, ICE satisfies the first stay factor by demonstrating that it has a reasonable basis for appeal, as the Acting Solicitor General has determined exists in this case. *See Providence Journal*, 595 F.2d at 890 (noting that "appellants need not show an absolute probability of success in order to be entitled to a stay" of

4

FOIA disclosure order and granting stay where appeal had "potential merit" and presented "serious legal questions"); *Cuomo v. NRC*, 772 F.2d 972, 974 (D.C. Cir. 1985) (degree of probability of success needed "is inversely proportional to the degree of irreparable injury"). This court "may grant a stay even though its own approach may be contrary to movant's view of the merits." *Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 843 (D.C. Cir. 1977).

13. ICE meets that standard here. The court based its order requiring disclosure on its conclusion that the *Vaughn* index was insufficiently detailed and that ICE's declaration was unreliable. Dkt. 121 at 20-24. The court identified a few entries on the *Vaughn* index that the court viewed as providing an insufficient justification for disclosure; in particular, the court criticized ICE's withholding of a court filing on the grounds that court records are accessible to the public. *Id.* But FOIA protections cover individuals' privacy interests even in some publicly available information. *See DOJ v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 763-64, 763 n.15 (1989) (discussing the privacy interest that individuals may have in publicly available rap-sheet information); *U.S. Dep't of Def. v. Fed. Labor Relations Auth.*, 510 U.S. 487, 500 (1994) (approving the withholding of employees' home addresses, which are "often are publicly available through sources such as telephone directories"). There is at least "potential merit" to the argument that releasing information in a publicly available court record could risk a clearly unwarranted invasion of privacy.

14. But even if ICE did err in redacting certain information, such an error would arguably not constitute a basis on which to require disclosure of *every other* piece of withheld information, without an individualized determination that one or more exceptions to the FOIA statute do not apply. *Kowal v. DOJ*, 107 F.4th 1018, 1030 (D.C. Cir. 2024) (courts "are forbidden from prying loose from the government even the smallest bit of information that is properly

5

withheld") (internal quotation omitted). And the case the court cited, *King v. DOJ*, 830 F.2d 210, 223 (D.C. Cir. 1987), does not support the proposition that having submitted an inadequate declaration and *Vaughn* index on a particular withholding could form a basis for automatic disclosure of every other piece of withheld information. *Id*. at 225. Rather, the *King* court observed that a district court may order "production of the excised material or some sample thereof *for in camera inspection*" or order the agency "to supplement its *Vaughn* filings." *Id*. (emphasis added); *see also Mink v. EPA*, 410 U.S. 73 (1973) (if agency "fails to meet its burden without *in camera* inspection, the District Court may order such inspection").

15. Plaintiff opposes ICE's motion. *See* Dkt. 124, 136. But for the reasons above, ICE has a reasonable chance of succeeding on appeal. That is sufficient to warrant a stay where disclosure would moot the appeal and the balance of equities strongly favors a stay.

16. ICE requests that the court render a decision on this motion by April 1, 2025. A decision by that date would permit ICE to seek relief from the Seventh Circuit, if necessary, on a non-emergency basis.

WHEREFORE, ICE requests that the court stay the portion of its January 16 and 29, 2025 orders (Dkt. 121, 138) directing ICE to produce all of the material that it had previously withheld and that the stay remain in force until the Seventh Circuit disposes of the appeal.

    Respectfully submitted,

    MORRIS PASQUAL
    Acting United States Attorney

    By: s/ Alex Hartzler
       ALEX HARTZLER
       Assistant United States Attorney
       219 South Dearborn Street
       Chicago, Illinois 60604
       (312) 886-1390
       alex.hartzler@usdoj.gov

# Exhibit A

1

```
                   IN THE UNITED STATES DISTRICT COURT
                       NORTHERN DISTRICT OF ILLINOIS
                              EASTERN DIVISION


   JACQUELINE STEVENS,                    )  Docket No. 22 C 5072
                                          )
                    Plaintiff,            )
                                          )
              vs.                         )
                                          )
   UNITED STATES DEPARTMENT HEALTH AND    )  Chicago, Illinois
   HUMAN SERVICES,                        )  January 29, 2025
                                          )  9:30 a.m.
                    Defendant.


                       TRANSCRIPT OF PROCEEDINGS
                 BEFORE THE HONORABLE MATTHEW F. KENNELLY

   APPEARANCES:

   For the Plaintiff:    LAW OFFICES OF LARRY R. GLAZER
                         BY:  MS. NICOLETTE GLAZER
                         2121 Avenue of the Stars #800
                         Century City, CA 90067
                         (310) 407-5353



   For the Defendant:    UNITED STATES ATTORNEY'S OFFICE
                         (NDIL - Chicago)
                         BY:  MR. ALEX HARMS HARTZLER
                         219 South Dearborn Street
                         Chicago, IL 60604
                         (312) 886-1390




   Court Reporter:       MS. CAROLYN R. COX, CSR, RPR, CRR, FCRR
                         Official Court Reporter
                         219 S. Dearborn Street, Suite 2102
                         Chicago, Illinois  60604
                         (312) 435-5639
```

1    (The following proceedings were had by video:)
2    THE CLERK: Case 22 C 5072, Stevens v. United States
3    Health and Human Services.
4    THE COURT: Good morning. This is Judge Kennelly.
5    We're doing this by video. Can plaintiff's counsel please
6    give your name for the record.
7    MS. GLAZER: Good morning, your Honor. Nicolette
8    Glazer on behalf of Jacqueline Stevens, plaintiff.
9    THE COURT: Thanks.
10   Counsel for the defendants.
11   MR. HARTZLER: Good morning, your Honor. Alex
12   Hartzler for the government.
13   THE COURT: Okay. So I just want to make sure I'm
14   clear on one thing, and that's exactly -- hang on a second. I
15   just got to get the docket back up here.
16   So am I right, Mr. Hartzler, that -- it's a motion to
17   partially stay, and the part that you're asking to stay is the
18   part that would have required -- that would require production
19   by whatever it was tomorrow or the next day of certain
20   documents by ICE; is that right?
21   MR. HARTZLER: That's exactly right.
22   THE COURT: Okay. So I've looked at both the motion
23   and the response that was filed my Ms. Glazer. The last thing
24   I read was Ms. Glazer's response. So, Mr. Hartzler, what else
25   would you like to tell me?

3

1  MR. HARTZLER: I guess it would depend on what your
2  Honor is interested in hearing.
3  THE COURT: I don't have any specific questions. The
4  question would be if there's something in Ms. Glazer's
5  response that you wanted to address that you didn't think --
6  MR. HARTZLER: My only comment is generalities in
7  terms of Ms. Stevens' desire to get records, I don't think
8  those quite outweigh the impossibility of unringing the bell
9  that would happen if ICE is not allowed to, you know, evaluate
10 the appeal.
11 THE COURT: Ms. Glazer, what else, if anything, would
12 you like to tell me?
13 MS. GLAZER: Your Honor, I put in my motion I believe
14 the standard is very stringent. And one other thing that I
15 didn't put in my response is that if the argument is accepted
16 that any time that there is an injunctive form of relief
17 provided, it would basically make a FOIA request in a position
18 of never winning because anytime the government is made to
19 produce something, then there is an automatic 60-day appeal,
20 and then another year and a half and whatnot and that would
21 defeat the FOIA. The Supreme Court has never said that there
22 is a stay outright and nothing in FOIA's text has suggested
23 that there is such an envisioning by Congress.
24 THE COURT: So that's a really great segue to
25 something that I actually did think about asking which I'm now

1  going to to ask.
2          So my sense of this is that the category of documents
3  that we're talking about here that were subject to this more
4  or less immediate production order is a known set of
5  documents. How big of a set of documents is it?
6          MR. HARTZLER: I believe it's something like 2800
7  pages of documents that were produced.
8          THE COURT: Okay. So let me ask a question of Mr. --
9  a couple questions of Mr. Hartzler. And I don't care what the
10 answers are. I just want to know.
11         Is the issue on appeal likely to be -- I get that
12 it's the solicitor general that makes the final determination
13 of all of this stuff. I get that. I'm not trying to bind the
14 government. You're the litigating lawyer, so you have a
15 better handle on the case than anybody on the defense side.
16 Is the issue likely to be a contention that it was
17 inappropriate, even given the rulings, to order production
18 that quickly, or is the contention going to be more, I guess,
19 underlying merits related?
20         Here's the reason -- let me tell you why I'm asking
21 the question. The reason I'm asking the question is if the
22 major bone of contention for appeal is, hey, you know,
23 Kennelly shouldn't have told us to turn all this stuff over
24 right now, then I could potentially solve that problem. We
25 could come up with a different schedule. Okay? So that's a

1  solvable problem and it might cut off an appeal entirely, and
2  it would effectively render moot Ms. Glazer's issue or concern
3  regarding, you know, basically if the stay is given, that
4  means essentially the FOIA plan never wins.  If it's something
5  that I can't fix that way, that's a different story.  So
6  that's why I'm asking the question.
7         MR. HARTZLER:  So the speed with which the Court
8  ordered the production has created complications with respect
9  to the timing of the appeal that your Honor has become
10 familiar with.
11        THE COURT:  Understood.
12        MR. HARTZLER:  I think, though, that even if the
13 Court had ordered full production with no redactions of the
14 entire universe let's just say three months from now which
15 would, of course, give ample time, I think there would still
16 be a potential issue for appeal on the question of whether the
17 Court has discretion under FOIA to order lifting of redactions
18 or lifting of the holdings essentially as a sanction for a
19 smaller number of, let's just say for the sake of it, improper
20 withholdings that the Court identifies.  And in the normal
21 course, if we had more time, that's what we would be
22 evaluating.  I obviously can't speak to whether --
23        THE COURT:  Understood.  All right.  So I mean, this
24 isn't a negotiation, but what the heck.  Let's just kind of
25 talk this through.  You know, I will say as lawyers say, the

1  fact that I haven't reacted to what you said to me doesn't
2  mean I agree with you. I actually don't think it was a
3  sanction. I think it was basically what I would contend was a
4  failure to establish a viable index. That's a bit of a
5  shorthand, but that's a side issue.
6  　　　　So I would -- I thought about this more, you know,
7  since I got these motions. And of course, we had two rounds
8  of this motion. The protective notice of appeal has now been
9  filed, and I would be -- I get that Ms. Glazer probably
10 doesn't like this, but actually, Ms. Glazer hadn't
11 specifically asked me for immediate production I think. So I
12 would be willing to say that that deadline, whatever it was,
13 January 31st or whatever, is extended to April the 30th. And
14 that would take -- that would take the -- that's the three
15 months. That would take the timing issue off the table. That
16 would leave the assessment of the viability of an appeal from
17 the solicitor's end basically down to what I'll call more of a
18 merits question as opposed to a timing question, and I
19 would -- that's something that I thought about before coming
20 in here today. I'd be willing to modify the order to that
21 extent. So, Ms. Glazer, how about that?
22 　　　　MS. GLAZER: May I ask your Honor a question? If the
23 Court modifies and extended, would the Court still be granting
24 a stay pending appeal?
25 　　　　THE COURT: So what I would be -- what I would be

1  doing is I would say there's no immediate harm at this point
2  given that they've got three months.  Now, they could come
3  back to me -- they could come back to me closer to the time
4  and say, okay, now we've decided to pursue the appeal and now
5  we want a stay, but it would actually be potentially a
6  different calculation at that point than it is now.  Right now
7  you've got these two issues on the table, merits and timing.
8  Timing would essentially have been taken off the table, so it
9  would potentially be a different calculation.
10             MS. GLAZER:  Well, I will say it makes sense.  I will
11 not oppose the continuance until April, and then that will
12 allow the solicitor general to make a decision.  And then as
13 the Court said, it would be purely a merits issue, and they
14 bear the burden of proof on FOIA, they fail it, and then you
15 lose a motion for summary judgment; there's either a judgment
16 or trial.
17             THE COURT:  And I'm not meaning by this to confine,
18 you know, what issues the solicitor or the government decides
19 to raise on appeal.  That's what I'm going to do.
20             Let me just pull up the order so that I can dictate
21 something to my courtroom deputy clerk here that actually is
22 coherent.
23             So the order of January the 16th, which is docket
24 No. 21 -- 121, the final paragraph of the order, second
25 sentence, is modified to state, the Court denies ICE's motion

1  for summary judgment in full and orders ICE to produce all
2  responsive records without redactions to Stevens by April --
3  let me make sure it's a weekday -- April the 30th of 2025.
4        The motion to stay pending appeal, which is docket
5  number 131, is denied without prejudice to refiling given the
6  modification of the order. And I may hear from you guys again
7  in a couple of months, but that kind of takes the heat off
8  everybody for now.
9        So anything else anybody wants to say before we sign
10  off?
11        MS. GLAZER: Nothing from plaintiff, your Honor.
12  Thank you.
13        MR. HARTZLER: Nothing. Thanks, Judge.
14        THE COURT: Take care. Have a good day.
15    (Which were all the proceedings had in the above-entitled
16  cause on the day and date aforesaid.)
17    I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.
18
19  /s/ *Carolyn R. Cox, RPR, F/CRR*      February 27, 2025
    Official Court Reporter
    United States District Court
20  Northern District of Illinois
    Eastern Division
21
22
23
24
25