UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JACQUELINE STEVENS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 22 C 5072 |
| v. | ) | |
| | ) | Judge Kennelly |
| UNITED STATES DEPARTMENT OF | ) | |
| HEALTH AND HUMAN SERVICES, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**DECLARATION OF PLAINTIFF IN RE: CBP PRODUCTION**

 s/ Nicolette Glazer
NICOLETTE GLAZER
Attorney for Plaintiff
Law Office of Larry R. Glazer
2121 Avenue of the Stars #800
Century City, California 90067
(310) 407-5353
nicolette@glazerandglazer.com

## DECLARATION OF JACQUELINE STEVENS

I, Jacqueline Stevens, state and declare under penalty of perjury that the following is true and correct:

1.      I am a named Plaintiff in the Complaint under the Freedom of Information Act ("FOIA"). I have been a tenured full professor in the Political Science Department at Northwestern University ("Northwestern") since 2010.  In 2012 I became the founding Director of the Deportation Research Clinic, Buffet Institute for Global Affairs, Northwestern University ("Clinic").

2.      I make this declaration based on personal knowledge and observations as stated herein. Further, this Declaration contains my professional opinions on certain topic for which I have specialized knowledge based on my education, professional experience, expertise, and research.

3.      If called to testify I could and would testify to each of the facts stated within this Declaration.

### Customs and Border Protection

**2020-HQFQ-00215/CBP-2020-019389 — Lauren Underwood**

4.       On September  26, 2019, Rep. Lauren Underwood (D-IL) described on the House floor her sponsorship of HR 3525: "First, my bill ensures implementation of an integrated electronic health records system, or E.H.R., to be used by those caring for migrants at the border. This is a direct ask from medical officers at the Department of Homeland Security who have identified it as a high priority barrier to providing care. We know that migrants may be transferred between different sites and components multiple times while in custody, and an interoperable E.H.R. is

essential to their health records remaining accessible.  Immigration and Customs  Enforcement has an E.H.R. the office of refugee resettlement has an E.H.R., but Customs and Border Protection, which includes the U.S. Border Patrol, doesn't."[1]

5.      On November 22, 2019 I sought from the Department Homeland Security ("DHS"):

> 1) all communications and related materials created, received, or maintained by the Department of Homeland Security to which Rep. Lauren Underwood(D-IL) or any member of her staff. This includes but is not limited to all email, text messages, notes,reports, memorandums, proposed bill texts, and bill evaluations. In a floor speech of 9/26/2019 Rep. Underwood stated she received information from the 'Department of Homeland Security' indicating a request for an integrated Electronic Health Records System she referenced as 'EHR.' She refers to this in her remarks on HR 3525 as a 'direct ask from medical officers at the Department of Homeland Security.'
> 2) DHS communications and related materials created by or received from other components of DHS or the Department of Health and Human Services Office of Refugee Resettlement about the use of Electronic Health Records systems already in place as well as the establishment of an EHR for the use by offices of CBP.
> 3) Information on meetings and communications with private individuals, including but not limited to lobbyists or company officials related to past, current, or potential "enterprise" or other information technologies for collecting, coordinating, or maintaining health records data for those encountered or detained by DHS or any component of DHS. Technical reports, email, text messages, or other communications with the private sector tied to past, current, or potential contracts tied to EHR systems.  Doc. 1, Complaint, ¶29.

6.      On January 4, 2020, *The Intercept* published an article I co-authored.  The article quotes experts concerned that EHRs and EMRswill be used for surveillance and not to promote migrant health.[2]  The article provides additional research to support these inferences.

7.      On December 9, 2025, a federal court heard arguments about whether Immigration and Customs Enforcement could access EHRs maintained by Medicare.[3]  Health and Human Services, which has jurisdiction over Medicare, uses for its EHRs the same federal contractors as

---

[1]  CSPAN House Session 9/26/2019, Lauren Underwood discusses H.R. 3525 U.S. Border Patrol Medical Screening Standards Act (Time stamp: 3:21:21) https://www.c-span.org/video/?464575-2/house-session&start=9080&transcriptSpeaker=86608#

[2]     John Washington Stevens Jacqueline, "A Massive Migrant Health Database That No One Wants," *The Intercept*, January 4, 2020, https://theintercept.com/2020/01/04/border-patrol-cbp-migrant-health-database/.

[3]     Margaret Attridge, "Judge Considers ICE Policy Allowing Use of Medicare Patients' Info for Immigration Enforcement," *Courthouse News Service*, December 9, 2025, https://www.courthousenews.com/judge-considers-ice-policy-allowing-use-of-medicare-patients-info-for-immigration-enforcement.

agencies of Homeland Security, including General Dynamics Information Technologies and its subsidiaries.

8.      On February 28, 2025 I participated in a status hearing to address shortfalls in the response of CBP to the request CBP assigned case number **CBP-2020-019380**.

9.      On March 25, 2025, the Court directed the CBP to process the 5,766 pages of records identified in CBP's status report (Dkt. 147) at a rate of 750 pages per month. Dkt. 151.

10.     CBP's productions fail to meet this court's order.  For example, for March 31, 2025 the letter states that "CBP FOIA has reviewed 513 pages of records in response to your request…"[1]

11.     I received no responsive records for November, 2025.  Instead, I received a letter from Patrick Howard reiterating information from our status hearing of February 28, 2025, pointing out the massive volume of non-responsive information in Excel sheets and a screenshot for purposes of demonstration of information already shared with us and the court.  Mr. Howard wrote, "At this time, CBP FOIA is proposing to identify and remove all Excel files as non responsive due to limited keyword hits, non-CBP information, and the files themselves being summary documents with no actual detailed information about EHR systems. This will allow CBP FOIA to focus on documents that may be of more interest to the plaintiff." Patrick Howard to Jacqueline Stevens, November 24, 2025."

12.     This letter disregards the agreement of February 28, 2028, when, per a conversation with the Court, Mr. Howard previously agreed to prioritize searching e-mail and other non-Excel sources and then to see how information thus obtained might guide additional searches of Excel records, as acknowledged in the CBP status report of March 13, 2025: "Stevens's primary interest is in communications between CBP and outside contractors such as General Dynamics,

CBP has applied the search term 'General Dynamics' to the under-100-page-document universe. The application of that search term yields 230 documents totaling 5,766 pages." Dkt 147.

13.     CBP appears to be avoiding discovery platforms that would allow for the agency's compliance with court orders and its own stated commitments in status reports.

14.     CBP also is double-counting pages for purposes of its processing obligations. For instance, CBP informs the Court that in June, 2025 "CBP processed 810 pages and produced 195 pages as responsive, withheld 92 pages as exempt from production, and **withheld 523 pages as duplicates** of previously produced pages" [emp. added]. In July 2025, "CBP processed 753 pages and produced 219 as responsive, withheld 89 pages as exempt from production, and **withheld 445 pages as duplicates** of previously produced pages" [emp. added]. Dkt. 163, CBP Late Status Report.

15.     On information and belief, CBP's FOIA office has access to commercial digital discovery platforms that would allow it to identify "dupes" in advance and thus not count these toward its processing obligations.

16.     Of special concern is that CBP is producing radically inconsistent counts of potentially responsive records and pages. In the status report of March, 2025, CBP states: "Because it now seems that Stevens's primary interest is in communications between CBP and outside contractors such as General Dynamics, CBP has applied the search term "General Dynamics" to the under-100-page-document universe. The application of that search term yields **230** documents totaling 5,766 pages." Dkt. 147at ¶6. However, in the status report of August, 2025, CBP states: "After the August 2025 production goes out, CBP will have **441** documents that remain to be processed.

Due to a quirk in the way the documents are stored, CBP cannot determine the total number of pages until it processes the documents." Dkt. 163 at ¶6.

17.     CBP does not explain this "quirk." CBP also does not explain how it arrived at a much higher number of responsive documents left to produce several months into their processing of 750 pages/month of records 100 pages or less, nor why CBP previously told the court CBP expected to process 5,766 pages.  Is this "quirk" a new one?  How did the number of existing potentially responsive records increase and not decrease?

18.     Based on its own attestations, it appears as though CBP has actually reviewed only a small proportion of nonduplicative pages as part of the promised 750 pages/month to be processed.  (There are an additional number of pages reviewed as "non-responsive."  My particular concern is over the duplicative pages CBP is counting toward its processing count.)

19.     CBP has not indicated which systems it is search nor how it has tasked this search, including to whom Mr. Howard reached out in order to obtain an an understanding of which employees and systems would be most likely to store communications with General Dynamics or its lobbyists and political advocates and in Congress, the focus of the search as agreed on in February 28, 2025.

20.     At that hearing the court also recognized that search terms additional to "General Dynamics" should be used, in consultation with Plaintiff. *See* Dkt 147 at ¶6.

21.     In anticipation of records responsive to our agreement, I waited for records of communications about CBP contracts with General Dynamics tied to electronic health records or electronic medical records so that I would have an understanding of additional useful search terms.

22.     Per our meeting of February 28, 2025 with the Court, and in light of the above specified deficiencies, I am requesting CBP searches of email and cloud-based storage for communications include: **EMR** OR **EHR** *AND* **General Dynamics**, **GD**, **GDIT**, *OR* **3525**.  This would require eight new searches.

23.     I am further requesting searches of the following suffix email addresses for EHR OR EMR OR Underwood: @generaldynamics.com, @gdit.com @ervingraves.com, @cgagroup.com, @acgadvocacy.com, @harbingerdc.com, @pennavenue.com/, @potadv.com, @teamsubjectmatter.com, @vsadc.com/, @federalstreetstrategies.com, @nelsonmullins.com, @meltsnerstrategies.com, @align-strategies.com, @bakerdonelson.com.  This would require 45 searches.

24.     At a rate of 1 search/five minutes for all communications databases likely to hold responsive records, this would be 265 minutes, or 4 hours and 40 minutes.

25.     In FY 2023, CBP spent $14,387,570, or just  .73%, of its total budget on its FOIA operations, even though its FOIA operations are mandatory and vastly exceed the agency's discretionary spending.  In FY 2024, CBP reduced this amount to $8,865,071, or .41% of its the agency's annual budget.[4]

26.     I am requesting that the universe of systems searches and "hits" responsive to paragraphs 19 and 20 be produced as a CBP December, 2026 status report.

---

[4]     FOIA Data Dashboard, https://deportationresearch.shinyapps.io/FOIAdashboard/#section-foia-budget-agency-budget/.  With citations to Customs and Border Protection annual budget and annual FOIA expenses.

Dated: December 11, 2025

JACQUELINE STEVENS
601 University Place
Second Floor, Political Science Department
Evanston, Illinois  60208
(847) 467-2093
jacqueline-stevens@northwestern.edu