UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JACQUELINE STEVENS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 22 C 5072 |
| v. | ) | |
| | ) | Judge Kennelly |
| UNITED STATES DEPARTMENT OF | ) | |
| HEALTH AND HUMAN SERVICES, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## JOINT STATUS REPORT REGARDING HHS

### Introduction

The court has directed plaintiff Jacqueline Stevens and defendant United States Department of Health and Human Services to submit a joint status report "containing their respective positions on any outstanding issues." Dkt. 173. The parties do so here.

As background, Stevens alleged in her complaint that HHS had withheld records responsive to a request for records relating to Representative Lauren Underwood (D-IL).

The request quoted in the complaint seeks the following records:

> records tied to the hiring, transfers, and scope of work performed by Lauren Underwood at HHS. Underwood is at present a member of Congress (D-IL).
>
> 1) all position announcements associated with any jobs she held at HHS.
>
> 2) all reports, memorandums, or analyses she produced, including but not limited to her work on Ebola and other emergency public health matters.
>
> 3) all travel itineraries.
>
> 4) all expense reports. The time frame of this request is Jan. 1, 2010 to January 22, 2017.

Dkt. 15 (Answer) ¶ 20.

**Arguments**

In accordance with the court's instructions (Dkt. 173), HHS sent Stevens on December 18, 2025, a declaration outlining its efforts to search for records responsive to her FOIA request. Exhibit A. Through counsel, the parties have engaged in correspondence and have jointly prepared the below description of the remaining issues.

## I. Requirement to Conduct Search Reasonably Calculated to Uncover "All" Records

Stevens takes issue with the fact that the declaration asserts only that HHS's search was reasonably calculated to uncover responsive records and does not assert that the search was reasonably calculated to uncover "all" responsive records.

### A. HHS's Position:

HHS's December 2018 declaration contained a scrivener's error in that it averred that the agency's search was reasonably calculated to uncover responsive records rather than "all" responsive records. However, as outlined below, the scrivener's error is now moot, because the meet-and-confer process has led to the identification of an issue than can now be addressed by a supplemental search performed by HHS for records responsive to the request for "position announcements" and "expense reports." (HHS's search effort thus far focused on pulling all of Underwood's emails.) In other words, the "simplified" process that the parties underwent over the past two months has been something of a success: it has crystallized an issue that can now be resolved without having needed to invoke the machinery of Local Rule 56.1 or the court's resolution of competing summary judgment motions. HHS proposes that it be given until March 31, 2026 to complete its supplemental search.

### B. Stevens's Position

Considering Defendant's concessions above, Plaintiff consents to the proposed deadline for the additional searches. Plaintiff requests that the Court orders Defendant HHS to provide a Vaughn index and/or new Declaration showing all the new *actions and searches performed by* the agency reasonably calculated to uncover ***all*** records responsive to the requester's submission. *See Weisberg v. United States Department of Justice,* 627 F.2d 365, 371 (D.C.Cir.1980) (agency affidavit must denote which files were searched and reflect a systematic approach to document location in order to enable the appellant to challenge the procedures utilized). "At a bare minimum, the agency's affidavits need to specify 'what records were searched, by whom, and through what process.'" *Rodriguez v. DOD*, 236 F. Supp. 3d 26, 38 (D.D.C. 2017) (quoting *Steinberg v. DOJ*, 23 F.3d 548, 552 (D.C. Cir. 1994)).

### II. Search for Position Announcements, Memoranda, and Expense Reports

Stevens says that HHS's declaration does not show that it searched for: (1) all position announcements relating to Congresswoman Lauren Underwood's jobs at HHS; (2) all reports or memoranda that she produced; (3) all travel itineraries; and (4) all expense reports.

### A. HHS's Position

Regarding subtopics (1) and (3), as mentioned above in Section I, HHS now agrees that it needs to do more to search for records responsive to the request for "position announcements" and "expense reports." To emphasize the point again, this shows that the "simplified" process that the parties underwent over the past two months has been successful in crystallizing an issue that can now be remedied without having needed to invoke the machinery of Local Rule 56.1 or the court's resolution of competing summary judgment motions. Again, HHS proposes that it be given until March 31, 2026 to complete its supplemental search. Stevens's request below for an injunction is

extreme. Courts commonly supervise agencies' compliance with FOIA through the normal channels of case management.

Regarding subtopic (2), HHS pulled all of Underwood's emails that were available, which would reasonably be expected to contain any reports or memoranda that she produced.

### B.      Stevens's Position

Plaintiff welcomes HHS's commitment to conduct additional searches. Plaintiff notes that as to subtopic (2) there is nothing produced by HHS or supporting its position that Underwood's reports and other responsive records would be solely in emails and not on cloud platforms or other electronic media on which agencies typically rely for tracking internal reports and notes.

Stevens is willing to waive additional searches for records created between January 1, 2015 and November 2, 2016.

### III.     Stevens's Time in the Executive Secretary's Office from 2010-2014

Stevens says that HHS's declaration does not show that HHS searched for records from the time when Underwood worked in the Executive Secretary's Office from 2010 to 2014.

### A.      HHS's Position

HHS pulled all of Underwood's emails that were available. Clearly at least some emails from Underwood's time in the Executive Secretary's Office were available, as evidenced by the 2012 email from Underwood that HHS produced. Exhibit B.

### B.      Stevens's Position

HHS provides no explanation as to how and where Underwood's emails were stored prior to November, 2014, while she was employed as Policy Coordinator in the HHS Office of the Secretary, nor does HHS identify the platform(s) in which HHS and its components store/archive emails. HHS declaration and position stated above do not explain why would a APSR staff be able

to search or that in fact it searched for records tied to Underwood's employment in the records maintained by a different component of the agency and for her original position at HHS.

HHS's position appears to be that either Underwood produced only one email between 2010-2014 or that whatever system stored Underwood's email stored just that one email, either of which is absurd.

## IV. Search Terms

Stevens says that HHS's declaration does not explain which search terms were used or why.

### A. HHS's Position

HHS pulled all of Underwood's emails that were available, so no search terms were necessary. As explained above, HHS is now working to conduct a search for records responsive to the request for position announcements and expense reports. To the extent that that search involves search terms, HHS will of course provide them.

### B. Stevens's Position

Plaintiff concurs in HHS's Position.

## V. Combining Two Search Efforts

Stevens says that HHS "chose to combine" the request at issue in this lawsuit with another FOIA request with another FOIA request that Stevens had separately submitted.

### A. HHS's Position

HHS does not understand what Stevens's point here is or how this supposedly constitute a violation of FOIA. Stevens's claim below that HHS "did not even search for records" is baseless and is belied by HHS's December 2018 declaration.

### B. Stevens's Position

As a result of HHS dysfunctional FOIA platform [Pl. Decl, Ex. C at ¶¶12-14] Stevens submitted more than one request about Lauren Underwood. *See* Ex. C, ¶¶, 4-11. This lawsuit involves a single request. Stevens alleged in her complaint that HHS had withheld records responsive to a request for records relating to Representative Lauren Underwood (D-IL), for which HHS provided tracking number 2020-00435-FOIA-OS on January 13, 2020. Dkt. 15 (Answer) ¶¶ 20-22.

During more than 2 and a half years of litigation and repeated assertions that Defendant is purportedly acting diligently to conduct searches for the records requested, it has now became apparent that Defendant did not even search for records responsive to the Request underlying this lawsuit but "identified records that had been previously located in response to a substantially similar request submitted to the Department, assigned Request Number 2019-00656-FOIA-OS" and then allegedly conducted a search for both requests using some unidentified search terms and located "76,128 items, totaling approximately 14.63 gigabytes of data". The Declaration conveniently omits any details as to how many records were deemed responsive (after "deduplication") to the request underlying this lawsuit and how many were **actually produced to Plaintiff.**

## VI. Referred Pages

Stevens says that HHS's monthly production letters mentioned pages that were referred to other entities for review.

### A. HHS's Position

22 pages of referred records have recently been returned to HHS. HHS is processing the records and expects to produce them by February 11, 2026. HHS is still waiting on 20 additional pages that were referred out for review and is following up on status. Again, that this issue has

now been flagged demonstrates the success of the recent meet-and-confer process. HHS proposes that it be given until March 31, 2026 to review and process the remaining 20 referred pages.

### B. Stevens's Position

No position.

## VII. HHS's "Exemption 5" Withholdings

Initially, HHS had withheld certain information from its production under Exemption 5 to the FOIA statute. Exemption 5 protects "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with an agency." 5 U.S.C. § 552(b)(5).

HHS subsequently represented to Stevens that it had withdrawn its Exemption 5 withholdings and that it would process and produce the relevant pages with the holdings lifted. HHS produced the pages, but Stevens says that she cannot assess whether HHS actually lifted all of its Exemption 5 withholdings because the pages that HHS initially produced (with the withholdings in place) do not have Bates numbers.

### A. HHS's Position

HHS has withdrawn the withholdings that it had previously claimed under Exemption 5 and has re-produced the relevant pages with the information no longer redacted. If Stevens believes that information is still improperly withheld under Exemption 5, the burden was on her to identify the instances in her January 2, 2026 letter, as directed in the court's scheduling order. Dkt. 173.

### B. Stevens's Position

Stevens acknowledges she did not identify concerning b(5) redactions by the court's deadline.

**VIII.   HHS's "Exemption 6" Withholdings**

The parties previously agreed that Stevens would not challenge the "routine" withholdings that HHS applied to its production under Exemption 6, which protects information when its release would be a "clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  Stevens says that some of HHS's Exemption 6 withholdings are not "routine."  She cites to an email HHS produced that Underwood sent on November 3, 2016, in which Underwood wrote, "I got promoted!  I'm now the Senior Advisor for Nicki in ASPR! Yay –," followed by a little over one line of redacted text.  Exhibit D.

**A.      HHS's Position**

The line of text that HHS redacted contains information about Underwood's personal life. HHS invites the court to conduct an *in camera* review of this document, and HHS stands ready to provide it on short notice should the court wish to conduct such a review.

**B.      Stevens's Position**

Plaintiff notes that there is no categorical privacy exemption for  information on one's "personal life" conveyed via a government email account to someone outside of the agency.  The public has an interest in understanding the relationship between a Beltway Sidley Austin advisor and a high-ranking government official who is now running for the U.S. Senate. Plaintiff agrees and joins Defendant's request for an in camera review of the short email in contention.

8

**Conclusion**

The parties welcome the court's rulings on the above issues.  Should the court conclude that additional briefing or commentary on one or more issues would be helpful, the parties would welcome an opportunity to submit additional materials or to appear for a status hearing.

Respectfully submitted,

ANDREW S. BOUTROS
United States Attorney

By: s/ Alex Hartzler
    ALEX HARTZLER
    Assistant United States Attorney
    219 South Dearborn Street
    Chicago, Illinois 60604
    (312) 886-1390
    alex.hartzler@usdoj.gov

 s/ Nicolette Glazer
NICOLETTE GLAZER
Attorney for Plaintiff
Law Office of Larry R. Glazer
Watt Plaza
1875 Century Park East #700
Century City, California 90067
(708) 435-0404
nicolette@glazerandglazer.com

9

# Exhibit A

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JACQUELINE STEVENS,

PLAINTIFFS,

V.                                                  CIVIL ACTION NO. 22-CV-05072

U.S. DEPARTMENT OF HEALTH AND
HUMAN SERVICES, ET AL.,

DEFENDANT.

DECLARATION OF BRANDON L. LANCEY

I, Brandon L. Lancey, declare the following to be true and correct:

1.  I am a Lead Government Information Specialist in the Office of the Assistant Secretary of

    Public Affairs ("ASPA"), Office of the Secretary ("OS"), U.S. Department of Health and

    Human Services ("HHS" or "the Department").  In this capacity, I am responsible for

    managing the handling of FOIA appeals and litigations received by the ASPA FOIA

    Division (OS-FOIA), which is an OS staff division.  I have led OS-FOIA's Litigation and

    Appeals Team since April 2025.

2.  From December 2014 to October 2023, I served as a Government Information Specialist

    in ASPA.  In that capacity, I processed FOIA appeals for OS and other HHS Operating

    Divisions and processed FOIA requests that were the subject of litigation.  Prior to that,

    from August 2010 to December 2014, I was a Government Information Specialist at the

    Centers for Medicare and Medicaid Services ("CMS").  In that capacity, I processed

requests from the public for CMS records under the FOIA.

3. The statements contained in this declaration are based upon my personal knowledge, upon information provided to me in my official capacity as a Lead Government Information Specialist, and upon conclusions I reached based on that knowledge or information.

4. It is my understanding that the Department's Exemption 6 redactions are not being challenged in this case. It is also my understanding that the Department has elected to lift **all** Exemption 5 redactions and withholdings that were made throughout the Department's interim productions in this case. Thus, the purpose of this declaration is to provide information about the Department's search for documents responsive to Plaintiff's FOIA request.

## PLAINTIFF'S FOIA REQUEST

5. On December 11, 2019, Stevens submitted the following request to HHS pursuant to the FOIA: records tied to the hiring, transfers, and scope of work performed by Lauren Underwood at HHS. Underwood is at present a member of Congress (D-IL).

1) all position announcements associated with any jobs she held at HHS.

2) all reports, memorandums, or analyses she produced, including but not limited to her work on Ebola and other emergency public health matters.

3) all travel itineraries.

4) all expense reports. The time frame of this request is Jan. 1, 2010 to January 22, 2017.

## THE DEPARTMENT'S SEARCH FOR DOCUMENTS RESPONSIVE TO PLAINTIFF'S REQUEST

The Office of the Secretary of the U.S. Department of Health and Human Services ("HHS")

conducted searches reasonably calculated to locate records responsive to the requester's submission. Because the subject of the request served within the Assistant Secretary for Preparedness and Response—now known as the Administration for Strategic Preparedness and Response ("ASPR")—the Office of the Secretary directed its search efforts to ASPR, the office in which the subject of the request worked during the relevant period.

In addition to conducting a search for this request, HHS also identified records that had been previously located in response to a substantially similar request submitted to the Department, assigned Request Number 2019-00656-FOIA-OS. That earlier request sought: (1) a comprehensive job description for the position(s) held by Ms. Underwood, including clarification of her direct supervisor; (2) all employment records, including her résumé, dates of hire, promotion and leave, all job titles held, and the circumstances of her departure; (3) Ms. Underwood's personnel file, including any disciplinary actions, complaints filed by or against her, and employer performance reviews; (4) all available compensation records, including salary information, pay grade, salary adjustments, and any other benefits; (5) all expenses reimbursed to Ms. Underwood by the federal government; (6) all federally funded travel records and corresponding receipts; (7) all financial disclosure forms, conflict-of-interest disclosures or recusals, and ethics disclosures or recusals filed during her tenure at HHS; and (8) all gift or travel disclosures filed during her tenure. HHS located these records in electronic form as part of its response to that prior request.

To identify records responsive to both the prior request and the instant request, HHS searched the Department's Human Resources and Travel systems.

Additionally, for purposes of identifying records responsive to the instant request, the Office of the Secretary's Office of the Chief Information Officer ("OCIO") conducted a search of Ms.

Underwood's HHS email account. OCIO searched for all emails, including attachments, that she sent or received between January 1, 2010, and January 22, 2017. This search yielded 76,128 items, totaling approximately 14.63 gigabytes of data. These records were ingested into the Office of the Secretary's FOIA tracking system for processing.

After ingestion, the records were deduplicated, and the remaining unique items were reviewed on a rolling basis to determine responsiveness. Records identified as responsive were then reviewed for applicable withholdings and produced. This processing occurred over the course of thirty interim responses.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury the foregoing to be true and correct, to the best of my knowledge, information and belief.

Brandon L. Lancey -S

Digitally signed by Brandon L. Lancey -S
Date: 2025.12.18 18:39:07 -05'00'

Executed this 18th day of December 2025.

# Exhibit B

| | |
|---|---|
| **From:** | Altizer, Jon F. (CDC/OD/OADP) (CTR) <fzi5@cdc.gov> |
| **To:** | Underwood, Lauren (HHS/ASPR/IO) /o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=user263e5598 <Lauren.Underwood@hhs.gov> |
| **CC:** | Shaw, Frederic (CDC/OPHSS/CSELS) /o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=97981602106c4545a1a446d6a58933a4-Shaw, Frede <fxs6@cdc.gov>; Rein, Andrew S. (CDC/OD/OADP) /O=HHS EES/OU=First Administrative Group/cn=Recipients/cn=andrew.rein.cdc <jjx9@cdc.gov> |
| **Subject:** | RE: For Your Clearance: RFI Regarding Health Care Quality for Exchanges |
| **Date:** | 2012/11/05 13:05:54 |
| **Priority:** | Normal |
| **Type:** | Note |

Lauren:

Would you mind removing Lydia Ogden from your distribution list and adding Frederic Shaw (fxs6@cdc.gov), Cc'ed above? Dr. Shaw is acting director for our office since Lydia's departure from the agency last week.

Thanks in advance,
Jon

---

**From:** Underwood, Lauren (HHS/IOS)
**Sent:** Monday, November 05, 2012 11:06 AM
**To:** Greenberg, Mark (ACF); Banis, Mary Jo (ACF); Claypool, Henry (ACL/OA); Bennett, Jason (ACL/OA); Jackson, Caldwell (ACL/OA); Zucker, Phyllis M. (AHRQ); Perry, Wendy (AHRQ); Holland, Ned (HHS/ASA); ASAIO Staff; Levinson, Dawn (OS/ASA/ASAIO); Dilday, Rebecca (HHS/ASFR); Kelley, Curtis (HHS/ASFR); McMillen, Cheryl (HHS/ASFR); Elder, Mark (HHS/ASFR); Trakas, Hayley (HHS/ASFR); Tompkins, Heather (HHS/ASFR); Edwards, Susan (HHS/ASFR); Taylor, Bridgett (HHS/ASL); Hirshorn, Rebecca (HHS/ASL); Hacking, Rose (OS/ASL); Formoso, Paula (HHS/ASPA); Hall, Bill (HHS/ASPA); Robinson, Michael J (HHS/ASPA); Shields, Erin E. (OS/ASPA); Honick, Ryan (HHS/ASPA); Salcido, Dori (HHS/ASPA); Kronick, Richard (HHS/ASPE/HP); Delew, Nancy (HHS/ASPE); Hadley, Elizabeth (HHS/ASPE); Katz, Ruth (HHS/ASPE); McDowell, Audrey (HHS/ASPE); Sheingold, Steven (HHS/ASPE); Pepper, Michael (HHS/ASPE); Spencer, Julia (HHS/ASPE); LinkBrown, Michaela (HHS/ASPE); Johnson, Annette (HHS/ASPE); Cox, Donald R (HHS/ASPE); Rein, Andrew S. (CDC/OD/OADP); Knutson, Donna (CDC/OCOO/FMO); Ogden, Lydia (CDC/OD/OADP); Altizer, Jon F. (CDC/OD/OADP) (CTR); Campbell, Ronald (CDC/OD/OCS); Staley, Paula (CDC/OD/OADP); CDC Review Clear Coordinator; Cantwell, Kathleen M. (CMS/OSORA); Blodgett, Bennett W. (CMS/OC); Cesar, Steve (HRSA); Cochran, Caroline (HRSA); Goodman, Michelle (HRSA); Comeaux, Nicole (HRSA); Morris, Tom (HRSA); Mason, James (HHS/IEA); Moushey, Allyn (HHS/IEA); Snow, Jennifer (HHS/IEA); Roubideaux, Yvette (IHS/HQ); Tibbitts, William D. (IHS/HQ); Gould, Betty Z. (IHS/HQ); Roth, Geoffrey (IHS/HQ); Nious, Lionel (HHS/OCR); Schmidt, Peggy (HHS/OCR); Hopkins, Diane (HHS/OCR); Brown, Carole (HHS/OCR); Heide, Christina (HHS/OCR); OS OGC-IO ControlDesk (HHS); Fisher, Barbara (HHS/OGC); Hoffman, Janice (HHS/OGC); Hash, Michael (HHS/OHR); Fontenot, Yvette (HHS/OHR); Brooks-LaSure, Chiquita (HHS/OHR); Oakar, Catherine (HHS/OHR); Robinson, Vicki L (OIG/IO); Bell, Michelle J (OIG/IO); Drew, Patrice S (OIG/IO); Kraft, Kenneth D (OIG/IO); Vitek, Traci L (OIG/IO); Hinkle, Christina M (OIG/IO); McCoy, Chanteau T (OIG/IO); Weiss, Roxanne A (OIG/IO); Posnack, Steven (HHS/ONC); Cao, Yolanda (HHS/ONC); Fields, Suzanne (SAMHSA); Carroll, Christopher D. (SAMHSA/CMHS); Lopez, Elizabeth (SAMHSA/CMHS); Colker, Allison (SAMHSA/OPPI); Cohen, Rima (HHS/IOS); Patel, Arun (OS/IOS); Strumwasser, Lisa (HHS/IOS);

O'Connell, Dawn (HHS/IOS)
**Cc:** Le Fauve, Charlene (HHS/IOS); Weeden, C'Reda J. (HHS/IOS); Potts, Oliver (HHS/IOS); Miller, Timothy C. (CMS/OSORA)
**Subject:** For Your Clearance: RFI Regarding Health Care Quality for Exchanges

Attached for your clearance is a RFI on Health Care Quality for Exchanges. You may recall that a similar white paper was circulated for clearance back in September. That white paper was never released and was reformatted into this Request for Information, which will publish in the Federal Register. Since the previous round of clearance, the following changes have been made to the document:

- Reformatted from white paper to RFI to be published in Federal Register

- Added question about establishing requirements for quality improvement strategies to elicit broad response

- Included domains of the Medicare Stars program to elicit specific comments on where alignment with Exchange quality rating may be appropriate

- Included specific question about assessing health plan value and price in the quality rating

- Added question to assess performance of services for persons with accessibility or communications barriers

- Added question to assess quality and impact of mental health and substance abuse services

- Added question regarding alignment of Exchange activities with alternative payment models (ex. ACOs)

Offices that previously commented on the white paper will receive the documents via SWIFT for clearance. Please provide comments by 6pm on Thursday, November 8th. All other offices can consider this as FYI. Please let me know if you have any questions.

Thank you,
Lauren Underwood

**Lauren A. Underwood, RN**
Policy Coordinator
Office of the Executive Secretariat
U.S. Department of Health &Human Services
Room 621H, Humphrey Building
Phone: 202-205-5446

| | |
|---|---|
| **Sender:** | Altizer, Jon F. (CDC/OD/OADP) (CTR) <fzi5@cdc.gov> |
| **Recipient:** | Underwood, Lauren (HHS/ASPR/IO) /o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=user263e5598 <Lauren.Underwood@hhs.gov>; Shaw, Frederic (CDC/OPHSS/CSELS) /o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=97981602106c4545a1a446d6a58933a4-Shaw, Frede <fxs6@cdc.gov>; Rein, Andrew S. (CDC/OD/OADP) /O=HHS EES/OU=First Administrative Group/cn=Recipients/cn=andrew.rein.cdc <jjx9@cdc.gov> |
| **Sent Date:** | 2012/11/05 13:05:32 |
| **Delivered Date:** | 2012/11/05 13:05:54 |

# Exhibit C

## DECLARATION OF JACQUELINE STEVENS

I, Jacqueline Stevens, state and declare under penalty of perjury that the following is true and correct:

1.      I am a named Plaintiff in the Complaint under the Freedom of Information Act ("FOIA"). I have been a tenured full professor in the Political Science Department at Northwestern University ("Northwestern") since 2010.  In 2012 I became the founding Director of the Deportation Research Clinic, Buffet Institute for Global Affairs, Northwestern University ("Clinic").

2.      I make this declaration based on personal knowledge and observations as stated herein. Further, this Declaration contains my professional opinions on certain topic for which I have specialized knowledge based on my education, professional experience, expertise, and research.

3.      If called to testify I could and would testify to each of the facts stated within this Declaration.

### Customs and Border Protection

**2020-HQFQ-00215/CBP-2020-019389 — Lauren Underwood**

4.       On September  26, 2019, Rep. Lauren Underwood (D-IL) described on the House floor her sponsorship of HR 3525: "First, my bill ensures implementation of an integrated electronic health records system, or E.H.R., to be used by those caring for migrants at the border. This is a direct ask from medical officers at the Department of Homeland Security who have identified it as a high priority barrier to providing care. We know that migrants may be transferred between different sites and components multiple times while in custody, and an interoperable E.H.R. is

essential to their health records remaining accessible.  Immigration and Customs  Enforcement has an E.H.R. the office of refugee resettlement has an E.H.R., but Customs and Border Protection, which includes the U.S. Border Patrol, doesn't."[1]

5.      On November 22, 2019 I sought from the Department Homeland Security ("DHS"):

> 1) all communications and related materials created, received, or maintained by the Department of Homeland Security to which Rep. Lauren Underwood(D-IL) or any member of her staff. This includes but is not limited to all email, text messages, notes,reports, memorandums, proposed bill texts, and bill evaluations. In a floor speech of 9/26/2019 Rep. Underwood stated she received information from the 'Department of Homeland Security' indicating a request for an integrated Electronic Health Records System she referenced as 'EHR.' She refers to this in her remarks on HR 3525 as a 'direct ask from medical officers at the Department of Homeland Security.'
> 2) DHS communications and related materials created by or received from other components of DHS or the Department of Health and Human Services Office of Refugee Resettlement about the use of Electronic Health Records systems already in place as well as the establishment of an EHR for the use by offices of CBP.
> 3) Information on meetings and communications with private individuals, including but not limited to lobbyists or company officials related to past, current, or potential "enterprise" or other information technologies for collecting, coordinating, or maintaining health records data for those encountered or detained by DHS or any component of DHS. Technical reports, email, text messages, or other communications with the private sector tied to past, current, or potential contracts tied to EHR systems.  Doc. 1, Complaint, ¶29.

6.      On January 4, 2020, *The Intercept* published an article I co-authored.  The article quotes experts concerned that EHRs and EMRswill be used for surveillance and not to promote migrant health.[2]  The article provides additional research to support these inferences.

7.      On December 9, 2025, a federal court heard arguments about whether Immigration and Customs Enforcement could access EHRs maintained by Medicare.[3]  Health and Human Services, which has jurisdiction over Medicare, uses for its EHRs the same federal contractors as

---

1  CSPAN House Session 9/26/2019, Lauren Underwood discusses H.R. 3525 U.S. Border Patrol Medical Screening Standards Act (Time stamp: 3:21:21) https://www.c-span.org/video/?464575-2/house-session&start=9080&transcriptSpeaker=86608#

2      John Washington Stevens Jacqueline, "A Massive Migrant Health Database That No One Wants," *The Intercept*, January 4, 2020, https://theintercept.com/2020/01/04/border-patrol-cbp-migrant-health-database/.

3      Margaret Attridge, "Judge Considers ICE Policy Allowing Use of Medicare Patients' Info for Immigration Enforcement," *Courthouse News Service*, December 9, 2025, https://www.courthousenews.com/judge-considers-ice-policy-allowing-use-of-medicare-patients-info-for-immigration-enforcement.

agencies of Homeland Security, including General Dynamics Information Technologies and its subsidiaries.

8.      On February 28, 2025 I participated in a status hearing to address shortfalls in the response of CBP to the request CBP assigned case number **CBP-2020-019380**.

9.      On March 25, 2025, the Court directed the CBP to process the 5,766 pages of records identified in CBP's status report (Dkt. 147) at a rate of 750 pages per month. Dkt. 151.

10.     CBP's productions fail to meet this court's order.  For example, for March 31, 2025 the letter states that "CBP FOIA has reviewed 513 pages of records in response to your request…"[1]

11.     I received no responsive records for November, 2025.  Instead, I received a letter from Patrick Howard reiterating information from our status hearing of February 28, 2025, pointing out the massive volume of non-responsive information in Excel sheets and a screenshot for purposes of demonstration of information already shared with us and the court.  Mr. Howard wrote, "At this time, CBP FOIA is proposing to identify and remove all Excel files as non responsive due to limited keyword hits, non-CBP information, and the files themselves being summary documents with no actual detailed information about EHR systems. This will allow CBP FOIA to focus on documents that may be of more interest to the plaintiff." Patrick Howard to Jacqueline Stevens, November 24, 2025."

12.     This letter disregards the agreement of February 28, 2028, when, per a conversation with the Court, Mr. Howard previously agreed to prioritize searching e-mail and other non-Excel sources and then to see how information thus obtained might guide additional searches of Excel records, as acknowledged in the CBP status report of March 13, 2025: "Stevens's primary interest is in communications between CBP and outside contractors such as General Dynamics,

CBP has applied the search term 'General Dynamics' to the under-100-page-document universe. The application of that search term yields 230 documents totaling 5,766 pages." Dkt 147.

13. CBP appears to be avoiding discovery platforms that would allow for the agency's compliance with court orders and its own stated commitments in status reports.

14. CBP also is double-counting pages for purposes of its processing obligations. For instance, CBP informs the Court that in June, 2025 "CBP processed 810 pages and produced 195 pages as responsive, withheld 92 pages as exempt from production, and **withheld 523 pages as duplicates** of previously produced pages" [emp. added]. In July 2025, "CBP processed 753 pages and produced 219 as responsive, withheld 89 pages as exempt from production, and **withheld 445 pages as duplicates** of previously produced pages" [emp. added]. Dkt. 163, CBP Late Status Report.

15. On information and belief, CBP's FOIA office has access to commercial digital discovery platforms that would allow it to identify "dupes" in advance and thus not count these toward its processing obligations.

16. Of special concern is that CBP is producing radically inconsistent counts of potentially responsive records and pages. In the status report of March, 2025, CBP states: "Because it now seems that Stevens's primary interest is in communications between CBP and outside contractors such as General Dynamics, CBP has applied the search term "General Dynamics" to the under-100-page-document universe. The application of that search term yields **230** documents totaling 5,766 pages." Dkt. 147at ¶6. However, in the status report of August, 2025, CBP states: "After the August 2025 production goes out, CBP will have **441** documents that remain to be processed.

Due to a quirk in the way the documents are stored, CBP cannot determine the total number of pages until it processes the documents." Dkt. 163 at ¶6.

17.     CBP does not explain this "quirk." CBP also does not explain how it arrived at a much higher number of responsive documents left to produce several months into their processing of 750 pages/month of records 100 pages or less, nor why CBP previously told the court expected to process 5,766 pages.  Is this "quirk" a new one?  How did the number of existing potentially responsive records increase and not decrease?

18.     Based on its own attestations, it appears as though CBP has actually reviewed only a small proportion of nonduplicative pages as part of the promised 750 pages/month to be processed.  (There is an additional number of pages reviewed as "non-responsive."  My particular concern is over the duplicative pages CBP is counting toward its processing count.)

19.     CBP has not indicated which systems it is search nor how it has tasked this search, including to whom Mr. Howard reached out in order to obtain an an understanding of which employees and systems would be most likely to store communications with General Dynamics or its lobbyists and political advocates and in Congress, the focus of the search as agreed on in February 28, 2025.

20.     At that hearing the court also recognized that search terms additional to "General Dynamics" should be used, in consultation with Plaintiff. *See* Dkt 147 at ¶6.

21.     In anticipation of records responsive to our agreement, I waited for records of communications about CBP contracts with General Dynamics tied to electronic health records or electronic medical records so that I would have an understanding of additional useful search terms.

22.     Per our meeting of February 28, 2025 with the Court, and in light of the above specified deficiencies, I am requesting CBP searches of email and cloud-based storage for communications include: **EMR** OR **EHR** *AND* **General Dynamics**, **GD**, **GDIT**, *OR* **3525**.  This would require eight new searches.

23.     I am further requesting searches of the following suffix email addresses for EHR OR EMR OR Underwood: @generaldynamics.com, @gdit.com @ervingraves.com, @cgagroup.com, @acgadvocacy.com, @harbingerdc.com, @pennavenue.com/, @potadv.com, @teamsubjectmatter.com, @vsadc.com/, @federalstreetstrategies.com, @nelsonmullins.com, @meltsnerstrategies.com, @align-strategies.com, @bakerdonelson.com.  This would require 45 searches.

24.     At a rate of 1 search/five minutes for all communications databases likely to hold responsive records, this would be 265 minutes, or 4 hours and 40 minutes.

25.     In FY 2023, CBP spent $14,387,570, or just  .73%, of its total budget on its FOIA operations, even though its FOIA operations are mandatory and vastly exceed the agency's discretionary spending.  In FY 2024, CBP reduced this amount to $8,865,071, or .41% of its the agency's annual budget.[4]

26.     I am requesting that the universe of systems searches and "hits" responsive to paragraphs 19 and 20 be produced as a CBP January, 2026 status report.

---

4     FOIA Data Dashboard, https://deportationresearch.shinyapps.io/FOIAdashboard/#section-foia-budget-agency-budget/.  With citations to Customs and Border Protection annual budget and annual FOIA expenses.

Dated: December 11, 2025

JACQUELINE STEVENS
601 University Place
Second Floor, Political Science Department
Evanston, Illinois  60208
(847) 467-2093
jacqueline-stevens@northwestern.edu

# Exhibit D

**From:** Hughes, Dora <dhughes@sidley.com>
**To:** Underwood, Lauren (HHS/ASPR/IO) /o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=user263e5598 <Lauren.Underwood@hhs.gov>
**Subject:** RE: Congratulate Lauren A. Underwood on the new position
**Date:** 2016/11/03 19:42:45
**Priority:** Normal
**Type:** Note

Yay!! Congrats!!

Sent with Good Work (www.good.com)

**From:** Underwood, Lauren (HHS/ASPR/IO) <Lauren.Underwood@hhs.gov>
**Date:** Thursday, Nov 03, 2016, 1:38 PM
**To:** Hughes, Dora <dhughes@sidley.com>
**Subject:** RE: Congratulate Lauren A. Underwood on the new position

Hi Dora,
I got promoted! I'm now the Senior Advisor for Nicki in ASPR! Yay – (b)(6)
(b)(6)

How are you doing?

**From:** Hughes, Dora [mailto:dhughes@sidley.com]
**Sent:** Thursday, November 03, 2016 1:22 PM
**To:** Underwood, Lauren (HHS/ASPR/IO)
**Subject:** FW: Congratulate Lauren A. Underwood on the new position

What's the new gig? I don't remember my linked in password and so can't look myself.

**DORA HUGHES, MD, MPH**
Senior Policy Advisor

**SIDLEY AUSTIN LLP**
+1 202 736 8653
dhughes@sidley.com

**From:** LinkedIn Updates [mailto:messages-noreply@linkedin.com]
**Sent:** Thursday, November 03, 2016 1:14 PM
**To:** Hughes, Dora
**Subject:** Congratulate Lauren A. Underwood on the new position



LinkedIn



Dora Hughe