UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JACQUELINE STEVENS,          )
                                           )
           Plaintiff,        )
                                         )   No. 22 C 5072
        v.                 )
                                         )   Judge Kennelly
UNITED STATES DEPARTMENT OF   )
HEALTH AND HUMAN SERVICES, *et al.*,   )
                                         )
           Defendants.     )

## JOINT STATUS REPORT REGARDING CBP

Per the court's February 5, 2026 minute order (Dkt. 198), the parties jointly submit this status report regarding United States Customs and Border Protection:

### Points of Agreement

1.      The parties agree that, coming out of the February 2025 settlement conference, CBP agreed it would search for responsive records containing communications of 100 pages or less that had been collected from the Office of Acquisition, using the additional search term "General Dynamics" and that CBP would process at least 750 pages per month.

2.      The parties agree that they both understood at the time that plaintiff might wish to provide additional search terms based on the "General Dynamics" production.

3.      The parties agree that the question of what to do about records pulled from locations other than the Office of Acquisition was not resolved at the time of the February 2025 settlement conference.

4.      The parties agree that, at the recent hearing on January 28, 2026, plaintiff proposed that CBP: (1) apply a certain set of search terms to the previously discussed existing large universe of millions of pages of records pulled from CBP's Office of Acquisition (excluding documents of

more than 100 pages); and (2) apply the same set of search terms to the following sub-offices: (a) the office of the Assistant Commissioner of Congressional Affairs; (b) the office of the Executive Director of Policy; (c) the Office of the Intergovernmental Public Liaison; and (d) any sub-offices within the Office of Acquisition that were not previously searched.

5. The parties agree that plaintiff's requested search terms are @generaldynamics.com, @gdit.com, @ervingraves.com, @cgagroup.com, @acgadvocacy.com, @harbingerdc.com, @pennavenue.com, @potadv.com, @teamsubjectmatter.com, @vsadc.com, @federalstrategies.com, @nelsonmullins.com, @meltsnerstrategies.com, @align-strategies.com, and @bakerdonelson.com.

6. CBP represents that it has applied the requested search terms to the records from the Office of Acquisitions. CBP has also applied the requested search terms to the *entire* universe of even more millions of pages of potentially responsive records that it had initially pulled in the wake of the court's 2024 summary judgment ruling. None of the search terms yielded any hits except for "@gdit.com," which yielded 177 hits, yielding 2,704 pages. Many of the records containing "@gdit.com" have already been produced—recall the plan coming out of the February 2025 settlement conference to search for records containing the phrase "General Dynamics"—but 98 documents totaling 976 pages remain to be processed. (Note that some of these records may be duplicates of previously produced records.) .

7. The additional millions of pages—the ones that did *not* come from the Office of Acquisitions—came from custodians within the Office of the Commissioner (namely, the Executive Secretary), U.S. Border Patrol (two custodians), and the Office of the Chief Medical Officer (seven custodians),. *See* Dkt. 109 ¶ 2, 115 ¶ 2, 147 ¶ 2. (CBP initially reported that the total number of pages was just over a million, but that ended up being an undercount, because it

2

turned out that only a portion of the returned records had been ingested into CBP's FOIA software at the time. Dkt. 140 ¶ 2, 147 ¶ 2.) The search terms CBP employed to generate the huge universe of records were "E.H.R.," "E.M.R.," "Electronic Health Record," "Electronic Medical Record," "EHR," and "EMR." Dkt. 140 ¶ 4.

8. The parties agree that plaintiff alleges discrepancies between the agreement of February 2025 and the productions released to plaintiff, that plaintiff's position is that a large number of pages CBP produced are nonresponsive to plaintiff's requests, and that plaintiff therefore questions the reliability of these statements.

9. The parties disagree about how to proceed.

### CBP's Proposal

10. CBP stands ready and willing to apply additional search terms provided by plaintiff to its universe of millions of pages of potentially responsive records. CBP proposes that this approach is the most sensible way to resolve this litigation, because the universe of records was generated by CBP's initial taskings for records responsive to the portion of the FOIA request still at issue, and no additional locations within CBP are reasonably likely to contain responsive records, and

11. Regarding plaintiff's request that CBP search the office of the Assistant Commissioner of Congressional Affairs (see item (1)(a) in paragraph 4 above), CBP does have an Assistant Commissioner of Congressional Affairs. However, the Office of Congressional Affairs' connection to electronic health records was already satisfied in response to part *one* of the Underwood request, which is the part of the Underwood request on which CBP already won summary judgment. *See* Dkt. 102 at 10-18 (granting summary judgment to CBP with respect to part one of the Underwood request).

3

12. Regarding plaintiff's request that CBP search the office of the Executive Director of Policy (see item (1)(b) in paragraph 4 above), CBP does have an Office of Policy and Planning. However, the office sits under the umbrella of the Office of the Commissioner, which CBP previously tasked in 2024 to search for responsive records. Nevertheless, as a show of good faith CBP is reaching out to the Office of Policy and Planning to confirm whether the office is reasonably likely to have responsive records.

13. Regarding plaintiff's request that CBP search the Office of the Intergovernmental Public Liaison (item (1)(c) in paragraph 4 above), CBP does have an Office of Intergovernmental Public Liaison. However, the office sits under the umbrella of the Office of the Commissioner, which CBP previously tasked in 2024 to search for responsive records. Nevertheless, as a show of good faith CBP is reaching out to the Office of Intergovernmental Public Liaison to confirm whether the office is likely to have responsive records.

14. Regarding plaintiff's request that CBP search any sub-offices within the Office of Acquisition that were not previously searched (see item (2)(d) in paragraph 4 above), the Office of Acquisitions already provided the FOIA office a comprehensive list of custodians, consisting of employees who were directly involved electronic health records project. This yielded the universe of millions of pages from the Office of Acquisitions. There is no reason to go back to the well to scour for additional potential custodians considering the comprehensive work that was already done.

15. Overall, CBP performed a comprehensive search for responsive records back in 2024 and stands ready to apply additional search terms supplied by plaintiff to this enormous universe. CBP suggests that, if plaintiff is unwilling to provide additional search terms, that the court could dismiss the case for want of prosecution with respect to CBP or invite CBP to submit

a renewed motion for summary judgment on the issue of the adequacy of its efforts since the court's initial summary judgment ruling in 2024.

## Plaintiff's Position

16.     CBP's status reports since December, 2025 do not dispute Plaintiff's identification of discrepancies between the agreement of February, 2025 and how it performed its search. CBP has not disputed that it produced hundreds to thousands of pages of nonresponsive records, processed fewer than 750 pages month, and not searched locations likely to have responsive records.  Dkt. 115, Jt. Status Rept. 11/20/2025, ¶¶11-21, and Dkt. 189, 01/12/26, ¶¶1-5.

17.     CBP still has not identified the number of documents with 100 or fewer pages responsive to Stevens' request, i.e., communications and not contracts and other unresponsive records.  CBP since February, 2025 has made different representations about its capacity to identify these records subsequent to its agreement to do so.

18.     Stevens recently received a release of records from the Department of Homeland Security headquarters, from a different FOIA case with Judge Rowland.  The release indicates a Congressional appropriation in 2019 of $30 million for a CBP EHR system, from an appropriations bill separate from H.R. 3525.  This further confirms that CBP offices that liaison with contractors and Congress are likely to have responsive records.  Stevens has been repeatedly pointing out that searching for records about communications between Congress and CBP about a the procurement of an EHR system by CBP is not duplicative of records responsive to her first request, specific to an authorization bill Underwood introduced and was not passed in the Senate, following publication of an article in *The Intercept* Stevens co-authored. See, e.g., Dkt. 115 at ¶19.

19.     CBP has not adhered to the FOIA statute or the agreement of February of 2025. However, CBP's recent proffers resemble the commitment the parties made in February of 2025.

20. There is a copious record beyond this case that CBP does not deserve "good faith" deference of the FOIA case law,[1] including the fact that CBP has waited until several years after litigation before even agreeing to consult offices likely to have responsive records.

21. In addition, the case law driving the "good faith" deference is inconsistent with prevailing judicial canons of statutory construction obligating adherence to the plain text of a statute. *Loper Bright Enters. v. Raimondo, Sec'y of Commerce*, 603 U.S. 369, 411 (2024) ("Chevron was a judicial invention that required judges to disregard their statutory duties.")

22. CBP has provided conflicting statements about its searches of the Office of Acquisitions, in particular about the number of pages with responsive records after excluded Excel spread sheets. CBP appears to have searched for "General Dynamics" in all Office of Acquisitions records, instead of confining the search to the subject matter of the request, refined later to communications of 100 pages or fewer..

23. CBP's narrative of its searches of the millions of records maintained by the Office of Acquisitions it says are potentially responsive to her request provides insufficient information to evaluate its accuracy or credibility.

24. Plaintiff proposes that (1) CBP provide Stevens by February 11, 2026 the following:

    a. the names and positions of the individuals on whom CBP is relying for its representations in this report;

---

[1] The *Columbia Journal Review* on a an American Oversight analysis showing, "ICE and Border Protection have an 'abysmal' track record of transparency." Of 137 requests [American Oversight] has filed with ICE and CBP over the course of 2025, there has been a 'substantive response' to just one—'and that took almost seven months ... ICE and CBP remain among the slowest and least transparent agencies we deal with, routinely flouting FOIA's requirements and denying the public timely access to information about their operations.'" Dave Levinthal, ICE Might Be Breaking the Law to Stonewall Reporters, Columbia Journalism Review, https://www.cjr.org/analysis/ice-cbp-dhs-journalism-foia.php (last visited Sept. 23, 2025), quoting Chioma Chukwu.

b. following a search of only documents of 100 pages or fewer and only the timeframe 2019, production of the records containing the search terms Stevens identified in her November 2024, December 2025 and January 2026 status reports, and any additional search terms CBP determines are likely to produce responsive records. The search terms Stevens has identified are:

   i. @generaldynamics.com, @gdit.com, @ervingraves.com, @cgagroup.com, @acgadvocacy.com, @harbingerdc.com, @pennavenue.com, @potadv.com, @teamsubjectmatter.com, @vsadc.com, @federalstrategies.com, @nelsonmullins.com, @meltsnerstrategies.com, @align-strategies.com, and @bakerdonelson.com;

   ii. EMR OR EHR *AND* "General Dynamics", GD, GDIT, *OR* 3525; and

   iii. "Underwood," and members of her staff on the House Committee on Homeland Security, *and* any other contractors or their lobbyists identified by a subject matter expert as likely to be involved in negotiations for the EHR database.

c. Stevens requests that these searches be conducted of the offices she has identified as likely to have responsive records, namely the Assistant Commissioner of Congressional Affairs, the Office of the Commissioner, the Office of the Executive Director of Policy, the Office of Policy and Planning, and the Office of the Intergovernmental Public Liaison, and any offices of the Office of Acquisition not previously searched.

Respectfully submitted,

ANDREW S. BOUTROS
United States Attorney

By: s/ Alex Hartzler
ALEX HARTZLER
Assistant United States Attorney
219 South Dearborn Street
Chicago, Illinois 60604
(312) 886-1390
alex.hartzler@usdoj.gov

Jacqueline Stevens

By: s/ Rima Kapitan
Atty No. 6286541
Kapitan Gomaa Law, P.C.
P.O. Box 46503
Chicago, IL 60646
(312) 566-9590
rima@kapitangomaa.com

8