UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JACQUELINE STEVENS,                          )
                                             )
                    Plaintiff,               )
                                             )
          v.                                 )     No. 22 C 5072
                                             )
                                             )     Judge Kennelly
UNITED STATES DEPARTMENT OF                  )
HEALTH AND HUMAN SERVICES, *et al.*,         )
                                             )
                    Defendants.              )

**CBP AND HHS'S LR 56.1 STATEMENT OF**
**MATERIAL FACTS IN SUPPORT OF SUMMARY JUDGMENT**

Defendants United States Customs and Border Protection and United States Department of

Health and Human Services and, by Andrew S. Boutros, United States Attorney for the Northern

District of Illinois, submit the following statement of material facts as to which there is no genuine

issue pursuant to Local Rule 56.1 of the United States District Court for the Northern District of

Illinois.

**Jurisdiction and Venue**

1.      This is an action brought under the Freedom of Information Act (FOIA), and the

court has subject matter jurisdiction under 5 U.S.C. § 552 and 28 U.S.C. § 1331.  Answer (Dkt.

15) ¶ 3.

2.      Venue is proper in this district because plaintiff Jacqueline Stevens resides in this

district.  Answer (Dkt. 5) ¶ 4.

**Parties**

3.      Plaintiff Jacqueline Stevens is a professor at Northwestern University.  Answer

(Dkt. 15) ¶ 5.

4.      Defendants CBP and HHS are agencies of the executive branch (in CBP's case, a component of the Department of Homeland Security) within the meaning of 5 U.S.C. § 552(f). Answer (Dkt. 15) ¶¶ 16-17.

### FOIA Requests to CBP

5.      CBP received in December 2019 a FOIA request that Stevens had submitted to DHS, seeking (1) communications between CBP and Congresswoman Lauren Underwood or her staff, (2) communications with other DHS components or with HHS regarding the use of electronic health records systems, and (3) communications with outside individuals regarding the use of information technology to maintain health records data of people encountered by DHS.  Ex. A (2024 Howard Decl.) ¶ 24.

6.      Stevens submitted two more FOIA requests in May 2022, seeking records regarding a person named Toan Hoang.  Ex. A (2024 Howard Decl.) ¶¶ 9, 18.

7.      The court previously granted summary judgment to CBP regarding: (1) its response to part one of the "Underwood" request; and (2) its response to both "Hoang" requests.  Dkt. 102 at 18 ("The Court concludes that CBP is entitled to summary judgment on part one of Stevens's Underwood request."), 24 ("CBP is therefore entitled to summary judgment on the Hoang requests.").

8.      CBP initially interpreted part two of the "Underwood" request to be directed to its parent agency DHS.  Ex. A (2024 Howard Decl.) ¶ 26(b).

9.      After the court denied summary judgment on part two of the "Underwood" request (Dkt. 102 at 24), CBP began attempting to negotiate with Stevens to see if the parties could reach an agreement about which component offices and custodians should be searched for responsive records.  Dkt. 105 ¶ 3.

2

10. By October 28, 2024, the parties had been unable to reach any agreement. Dkt. 109 ¶ 2. CBP accordingly reported to the court that it planned to proceed with its search for records by searching the following component offices: (a) the Office of the Commissioner (in case someone in that office had oversight of the relevant topic); (b) the Office of Field Operations/U.S. Border Patrol/Air and Marine Operations (which are enforcement offices that could possibly have responsive records given the topic's potential nexus to encounters with non-citizens or other travelers); (c) Operations Support's sub-office called the Office of the Chief Medical Officer (the *most* likely office to have responsive records, in CBP's view); and (d) Public Affairs (in case members of the media or public reached out to CBP with questions on the topic). Dkt. 109 ¶ 2.

11. By November 20, 2024, CBP had tasked those offices to search for responsive records. Dkt. 115 ¶ 2; *see also* Ex. B (2026 Howard Decl.) ¶ 8.

12. CBP did *not* task the following component offices: (a) the Office of Trade (which has no probable link to electronic health records); (b) Operations Support (which has no probable link to electronic health records, except for the sub-office called the Office of the Chief Medical Officer, which CBP did task as mentioned above); (c) International Affairs (which has no probable link to electronic health records); (d) Enterprise Services (which has no probable link to electronic health records, except for the Office of Acquisition, which was already being searched in response to part *three* of the request, as mentioned below); (e) the Office of Chief Counsel (because any responsive records from this office would almost certainly be privileged); (f) the Office of Congressional Affairs (whose connection to electronic health records was already satisfied in response to part *one* of the Underwood request, *see* Dkt. 102 at 10-18 (granting summary judgment to CBP with respect to part one)); and (g) the Office of Professional Responsibility (which has no probable link to electronic health records). Ex. B (2026 Howard Decl.) ¶ 9; *see also* Dkt. 115 ¶ 4.

13. Air and Marine Operations responded that it did not have any responsive records. Ex. B (2026 Howard Decl.) ¶ 10; *see also* Dkt. 115 ¶ 3.

14. The Office of the Chief Medical Officer identified 17 custodians who were reasonably likely to have responsive records, and by November 20, 2024, efforts were underway to compile any responsive records. Ex. B (2026 Howard Decl.) ¶ 11; *see also* Dkt. 115 ¶ 3.

15. CBP's taskings were thought to have yielded about 492,147 documents totaling 1.3 million pages of potentially responsive records. Ex. B (2026 Howard Decl.) ¶ 12; *see also* Dkt. 140 ¶ 2.

16. The search terms CBP employed were: "E.H.R." (which yielded 5 hits), "E.M.R." (which yielded 0 hits); "Electronic Health Record" (which yielded 6,577 hits), "Electronic Medical Record" (which yielded 24,928 hits), "EHR" (which yielded 11,259 hits), and "EMR" (which yielded 361,980 hits). Ex. B (2026 Howard Decl.) ¶ 13; *see also* Dkt. 140 ¶ 4. (These are document counts, not page counts, and the numbers do not include "family members," for example attachments, which are included in the total number of documents mentioned above. *Id.*)

17. At an in-person status hearing on December 13, 2024, the court directed the parties to confer in good faith to try to reach a resolution on the scope of the search. Dkt. 119, 140 ¶ 5.

18. CBP accordingly invited Stevens to propose additional search terms to narrow the universe of records that needed to be reviewed, but Stevens refused to provide additional search terms. Dkt. 140 ¶ 6; Ex. B (2026 Howard Decl.) ¶ 14.

19. Regarding part three of the "Underwood" request, CBP initially determined that any work with outside individuals to develop the described data would go through CBP's procurement office, which is part of CBP's Office of Acquisition. Ex. A (2024 Howard Decl.) ¶

4

26(c). So CBP determined that the Office of Acquisition was reasonably likely to have responsive records, should any exist. *Id*.

20. The Office of Acquisition identified the employee who serves as the point of contact for electronic medical records, and that employee "confirmed that she has a clear recollection that she had no correspondence verbally or in writing on meetings and communications with private individuals for collecting, coordinating or maintaining health record data for those encountered or detained by DHS or any component of DHS (CBP)." Ex. A (2024 Howard Decl.) ¶ 28.

21. After the court denied summary judgment on part three of the "Underwood" request (Dkt. 102 at 24), CBP searched the emails of the previously identified Office of Acquisition employee. Ex. B (2026 Howard Decl.) ¶ 15; *see also* Dkt. 105 ¶ 3.

22. The search terms were "Electronic Health Record," "EHR," and "E.H.R." Ex. B (2026 Howard Decl.) ¶ 16.

23. By November 20, 2024, CBP had processed more than 1,100 pages of potentially responsive records and had produced the responsive records, and CBP had identified more than 16,000 pages of potentially responsive records. Ex. B (2026 Howard Decl.) ¶ 17; *see also* Dkt. 115 ¶ 5.

24. CBP's search of its Office of Acquisition eventually yielded more than 2.3 million pages of potentially responsive records. Ex. B (2026 Howard Decl.) ¶ 19. By early 2025 (when the court asked CBP how many pages had been returned from the Office of Acquisition), CBP's efforts to locate records responsive to parts two and three of the "Underwood" request had effectively merged. *Id*. ¶¶ 18-19.

5

25.     After a virtual settlement conference, the court directed CBP to identify the volume of records that had been collected from its Office of Acquisition.  Ex. B (2026 Howard Decl.) ¶ 19; *see also* Dkt. 147 ¶ 1.  CBP determined that the total volume from that office was 26,012 documents totaling more than 2.3 million pages.  Ex. B (2026 Howard Decl.) ¶ 19; *see also* Dkt. 147 ¶ 2.  (The reason that number is larger than the number CBP previously reported for *all* the component offices was that the previously reported number turned out to be an undercount because only a portion of the returned records had been ingested into CBP's eDiscovery software for analysis, and the total number of pages that came back from all the component offices was actually in the tens of millions.  Ex. B (2026 Howard Decl.) ¶ 19; *see also* Dkt. 147 ¶ 2.)

26.     Excluding any documents previously produced and any documents exceeding 100 pages, the remaining number of Office of Acquisition records was 21,596 documents totaling 180,405 pages.  Ex. B (2026 Howard Decl.) ¶ 20; *see also* Dkt. 147 ¶ 3.

27.     The settlement conference revealed that Stevens's primary interest was communications between CBP and outside contractors such as General Dynamics, so CBP applied the search term "General Dynamics" to the under-100-page Office of Acquisitions universe, which yielded 230 documents totaling 5,766 pages.  Ex. B (2026 Howard Decl.) ¶ 21; *see also* Dkt. 147 ¶ 4.

28.     The court directed CBP to begin processing those pages, Dkt. 151, and CBP began doing so, but it also invited Stevens in March 2025 to propose additional or different search terms.  Dkt. 147 ¶¶ 5-6; Ex. B (2026 Howard Decl.) ¶¶ 22-23.

29.     CBP had completed its production (with the exception of some unwieldy Excel files) by January 2026.  Ex. B (2026 Howard Decl.) ¶ 24; *see also* Dkt. 189 ¶ 5.

30.     CBP made efforts to provide Stevens with a sample of what the Excel files would look like if CBP did a "reverse redaction"—meaning that instead of having to redact thousands of lines of irrelevant information, CBP would "extract" the smaller number of lines that might be responsive, but Stevens did not affirmatively respond.  Ex. B (2026 Howard Decl.) ¶ 24.

31.     By January 12, 2026, the parties had failed to reach any agreement regarding what to do with the remaining huge universe of potentially responsive records discussed above.  Dkt. 189 ¶¶ 5-6.  CBP proposed that: (1) Stevens would propose additional search terms for CBP to apply to the under-100-page documents from the Office of Acquisition that had not yet been reviewed; (2) CBP would apply those search terms to determine how many potentially responsive records the search terms yielded; (3) the parties would negotiate which terms to use based on that volume (4) CBP would process the resulting records at the expedited rate of 750 pages per month and would produce the responsive records subject to the application of any FOIA exemptions; (5) the parties would then present any remaining issues to the court.  Dkt. 189 ¶ 7.  Stevens did not accept CBP's proposal.  Dkt. 189 ¶¶ 6-8.

32.     At a status hearing held on January 28, 2026, Stevens proposed that CBP: (1) apply a certain set of search terms to the previously discussed existing large universe of millions of pages pulled from the Office of Acquisition (excluding documents of more than 100 pages); and (2) apply the same set of search terms to the following sub-offices: (a) the office of the Assistant Commissioner of Congressional Affairs; (b) the office of the Executive Director of Policy; (c) the Office of the Intergovernmental Public Liaison; and (d) any sub-offices within the Office of Acquisition that were not previously searched.  Dkt. 201 ¶ 4.

33.     Stevens's requested search terms were @generaldynamics.com, @gdit.com, @ervingraves.com, @cgagroup.com, @acgadvocacy.com, @harbingerdc.com,

7

@pennavenue.com, @potadv.com, @teamsubjectmatter.com, @vsadc.com, @federalstrategies.com, @nelsonmullins.com, @meltsnerstrategies.com, @align-strategies.com, and @bakerdonelson.com. Dkt. 201 ¶ 5.

34. CBP applied the requested search terms to the records from the Office of Acquisitions and to the *entire* universe of even more millions of pages of potentially responsive records that it had initially pulled in the wake of the court's 2024 summary judgment ruling, and none of the search terms yielded any hits except for @gdit.com, which yielded 177 hits totaling 2,704 pages. Ex. B (2026 Howard Decl.) ¶¶ 26-28; *see also* Dkt. 201 ¶ 6.

35. Many of those records had already been produced—recall the plan coming out of the February 2025 settlement conference to search for records containing the phrase "General Dynamics"—but CBP completed its processing of the remaining records and produced them on March 20, 2026. Ex. B (2026 Howard Decl.) ¶ 28; *see also* Dkt. 201 ¶ 6.

36. Stevens proposed that CBP search the office of the Assistant Commissioner of Congressional Affairs, but CBP's Office of Congressional Affairs' connection to electronic health records was already satisfied in response to part *one* of the Underwood request, which is the part of the Underwood request on which CBP previously won summary judgment. Dkt. 201 ¶ 11.

37. Stevens proposed that CBP search the office of the Executive Director of Policy, but that office sits under the umbrella of the Office of the Commissioner, which CBP previously tasked in 2024 to search for responsive records. Dkt. 201 ¶ 12. Nevertheless, as a show of good faith CBP reached out to the Office of Policy and Planning to confirm whether the office is reasonably likely to have responsive records. *Id*. That office responded in February 2026 that it had no records regarding guidance or implementation of EHR systems. Ex. B (2026 Howard Decl.) ¶ 31.

8

38.     Stevens proposed that CBP search the Office of the Intergovernmental Public Liaison, but that office sits under the umbrella of the Office of the Commissioner, which CBP previously tasked in 2024 to search for responsive records. Dkt. 201 ¶ 13. Nevertheless, as a show of good faith CBP reached out to the Office of Intergovernmental Public Liaison to confirm whether the office is likely to have responsive records. *Id.* That office responded in February 2026 that it had no records regarding EHR systems or any communications about them. Ex. B (2026 Howard Decl.) ¶ 32.

39.     Stevens proposed that CBP search any sub-offices within the Office of Acquisition that were not previously searched, but the Office of Acquisition had previously provided CBP's FOIA office with a comprehensive list of custodians, consisting of employees who were directly involved in the electronic health records project. Dkt. 201 ¶ 14. The search of those custodians yielded millions of pages. *Id.*; *see also* Ex. B (2026 Howard Decl.) ¶ 33.

40.     CBP reported on February 4 and 5, 2026, that it stood ready to apply additional search terms supplied by Stevens to the enormous universe of potentially responsive records. Dkt. 195 ¶ 9, 201 ¶ 15.

### FOIA Request to HHS

41.     Stevens submitted a FOIA request to HHS in December 2019, seeking several categories of records relating to Congresswoman Lauren Underwood's time as an HHS employee: (1) position announcements for jobs Underwood had at HHS; (2) reports, memoranda, or analyses Underwood produced there; (3) travel itineraries; and (4) expense reports. Ex. C (Dec. 2025 Lancey Decl.) ¶ 5. Stevens identified the time frame of the request as January 1, 2010, to January 22, 2017. *Id.*

42.     When Underwood was at HHS, she served as a Senior Advisor to the Assistant Secretary for Preparedness and Response, so HHS directed its search efforts to the current iteration of that office, which is now known as the Administration for Strategic Preparedness and Response. Ex. C (Dec. 2025 Lancey Decl.) at 2.

43.     To accomplish that search, the Office of the Secretary's Office of the Chief Information Officer searched for every email Underwood sent between January 1, 2010, and January 22, 2017. Ex. C (Dec. 2025 Lancy Decl.) at 2-3. The search for Underwood's emails yielded 76,128 items, which were de-duplicated and reviewed for responsiveness. Ex. C (Dec. 2025 Lancey Decl.) at 3.

44.     After that de-duplication, HHS reviewed 18,804 pages of potentially responsive records and produced the responsive records over the course of more than 30 monthly productions. Ex. E (Mar. 2026 Lancey Decl.) ¶ 33 (stating that HHS produced a total of 18,824 pages); *id.* ¶¶ 26-27 (clarifying that the final, 32nd production in March 2026 contained 20 pages).

45.     In addition, HHS liaised with personnel in the Administration for Strategic Preparedness and Response as well as the Assistant Secretary for Administration, Office of Human Resources to identify systems reasonably likely to contain responsive employment and travel-related records. Ex. E (Mar. 2026 Lancey Decl.) ¶ 8.

46.     To find employment records, HHS queried its official personnel and staffing systems that maintain records relating to federal employees' appointments, position classifications, and hiring documentation, using Underwood's name, position titles, and organizational affiliations. Ex. E (Mar. 2026 Lancey Decl.) ¶ 10.

10

47. To find travel-related records, HHS queried, for records associated with Underwood during the relevant period, its travel-management systems used to authorize, book, and reimburse official government travel. Ex. E (Mar. 2026 Lancey Decl.) ¶ 11.

48. These searches yielded around 92 pages of responsive records, which HHS produced in its first two productions of records responsive to Stevens's FOIA request, in December 2022 and January 2023. Ex. E (Mar. 2026 Lancey Decl.) ¶ 12.

49. HHS's initial search efforts were reasonably calculated to locate all records responsive to Stevens's request. Ex. D (Feb. 2026 Lancey Decl.) at 1-2.

50. From its monthly productions that began in 2022, HHS redacted certain material under one or more exemptions from disclosure under the FOIA statute. Ex. C (Dec. 2025 Lancey Decl.) at

51. HHS initially redacted certain information under Exemption 5, which protects "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with an agency," 5 U.S.C. § 552(b)(5), but HHS subsequently withdrew its Exemption 5 withholdings and re-produced those pages with the Exemption 5 redactions lifted. Ex. E (Mar. 2026 Lancey Decl.) ¶ 5.

52. The court set a specific schedule governing how Stevens was to present to HHS any issues she had with HHS's production. Dkt. 173. Under that schedule, Stevens needed to send HHS a letter outlining "her objections to HHS's search or withholdings" by January 2, 2026. *Id*.

53. Stevens's January 2, 2026 letter contained no objections relating to HHS's Exemption 5 withholdings. Ex. F (Jan. 2, 2026 Stevens letter). And Stevens has acknowledged

as much. Dkt. 199 (Joint Status Report) at 7 ("Stevens acknowledges that she did not identify concerning b(5) redactions by the court's deadline.").

54. The parties previously agreed that Stevens would not challenge HHS's "routine" Exemption 6 withholdings. Dkt. 199 (Joint Status Report) at 8.

55. Stevens has cited a redaction that she says is not "routine." *See* Ex. F (Jan 2, 2026 Stevens letter) at 3. The challenged redaction appears on an email HHS produced that Underwood sent on November 3, 2016, in which Underwood wrote, "I got promoted! I'm now the Senior Advisor for Nicki in ASPR! Yay—," followed by a little over one line of redacted text. Ex. G (Nov. 3, 2016 Underwood email (redacted)).

56. The line of text that HHS redacted contains information about Underwood's personal life. Ex. E (Mar. 2026 Lancey Decl.) ¶ 7.

57. Following correspondence between counsel in late 2025 and early 2026, HHS undertook additional searches to ensure that all locations reasonably likely to contain responsive records had been adequately searched. Ex. E (Mar. 2026 Lancey Decl.) ¶ 13.

58. As a part of this supplemental effort, HHS conducted additional outreach to the Office of the Assistant Secretary for Administration's Office of Human Resources to identify any records relating to position announcements associated with Underwood's positions at HHS. Ex. E (Mar. 2026 Lancey Decl.) ¶ 14.

59. Personnel in the Office of Human Resources then searched the Department's Enterprise Human Capital Management system to confirm Underwood's employment history, including that she applied for an initial appointment in 2010 and for a merit promotion in 2014. Ex. E (Mar. 2026 Lancey Decl.) ¶ 15.

60. The Office of Human Resources responded that HHS transitioned to a newer version of "USA Staffing" around 2017-2018, that historical records were not migrated to that system, and that under Office of Personnel Management requirements, vacancy announcement records are retained for only three years, after which point they are deleted unless subject to a litigation hold. Ex. E (Mar. 2026 Lancey Decl.) ¶ 16.

61. HHS accordingly determined that position announcements responsive to Stevens's request are no longer maintained and do not exist within HHS's control. Ex. E (Mar. 2026 Lancey Decl.) ¶ 17.

62. HHS also conducted additional outreach to its Immediate Office of the Secretary, Office of Business Operations, to determine whether records relating to Underwood's travel itineraries and related travel documentation from 2010 to 2014 could be located. Ex. E (Mar. 2026 Lancey Decl.) ¶ 18.

63. The personnel in that office responded that, while records from that period would have originally been maintained within HHS's official travel and financial management systems, the office does not maintain access to travel documentation from that period due to system and program transitions, including HHS's transition from GovTrip to Concur Government Edition in 2015 and changes to the government travel card program. Ex. E (Mar. 2026 Lancey Decl.) ¶ 19.

64. The office further explained that travel records—including itineraries, authorizations, and vouchers—are maintained in accordance with the National Archives and Records Administration General Records Schedule for travel records, which requires retention for six years and three months after payment. Ex. E Mar. 2026 Lancey Decl.) ¶ 20.

13

65.     HHS accordingly determined that the Immediate Office of the Secretary, Office of Business Operations would not reasonably be expected to have responsive records for the relevant time period.  Ex. E (Mar. 2026 Lancey Decl.) ¶ 21.

66.     HHS also sought to identify records relating to Underwood's travel expense reports, vouchers, and related financial documentation, through the Immediate Office of the Secretary, Office of Business Operations and relevant financial and travel systems.  Ex. E (Mar. 2026 Lancey Decl.) ¶ 22.

67.     The personnel in the Immediate Office of the Secretary, Office of Business Operations advised that records such as travel vouchers, local vouchers, expense reports, receipts, and government travel card transactions from the relevant period would have been maintained in HHS's official travel and financial systems and subject to the same retention schedules described above.  Ex. E (Mar. 2026 Lancey Decl.) ¶ 23.

68.     The office further explained that receipts and supporting documentation are retained for only limited periods under applicable records schedules, and the requested time period significantly precedes those retention periods, so the records are no longer available.  Ex. E (Mar. 2026 Lancey Decl.) ¶ 24.

69.     HHS accordingly determined that it does not have responsive expense report records for the relevant time period.  Ex. E (Mar. 2026 Lancey Decl.) ¶ 25.

70.     On March 13, 2026, HHS issued its thirty-second production in response to Stevens's FOIA request.  Ex. E (Mar. 2026 Lancey Decl.) ¶ 26.

71.     In preparing to issue that production, HHS reviewed 20 pages of records that had previously been referred to other offices for consultation, which were more recently returned to HHS for final disposition.  Ex. E (Mar. 2026 Lancey Decl.) ¶ 27.

14

72.     HHS redacted portions of the 20 pages under Exemptions 5 and 6.   Ex. E (Mar. 2026 Lancey Decl.) ¶ 29.

73.     The Exemption 5 redactions consist of pre-decisional and deliberative internal agency communications, including discussions regarding proposed revisions to the National Emergency Repatriation Plan, potential updates to interagency roles, and possible protocols and policy changes.  Ex. E (Mar. 2026 Lancey Decl.) ¶ 30.

74.     The Exemption 6 redactions consist of personal information, including personal cell phone numbers, the name of a potential candidate for a public health position, and other personal information such as personal health information.  Ex. E (Mar. 2026 Lancey Decl.) ¶ 31.

75.     HHS has released all reasonably segregable, non-exempt portions of the referred records produced on March 13, 2026: it has conducted a careful review and has determined that all the withheld information is either exempt from disclosure under FOIA or is not reasonably segregable.  Ex. E (Mar. 2026 Lancey Decl.) ¶ 32.  Any non-exempt information is inextricably intertwined with exempt material such that segregation is not possible without revealing protected information.  *Id*.

76.     Overall, HHS's supplemental search efforts were reasonably calculated to locate all records responsive to Stevens's request.  Ex. E (Mar. 2026 Lancey Decl.) ¶ 34.

Respectfully submitted,

ANDREW S. BOUTROS
United States Attorney

By: s/ Alex Hartzler
    ALEX HARTZLER
    Assistant United States Attorney
    219 South Dearborn Street
    Chicago, Illinois 60604
    (312) 886-1390
    alex.hartzler@usdoj.gov

15

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JACQUELINE STEVENS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 22 C 5072 |
| v. | ) | |
| | ) | Judge Kennelly |
| UNITED STATES DEPARTMENT OF | ) | |
| HEALTH AND HUMAN SERVICES, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**INDEX OF EXHIBITS TO**
**CBP AND HHS'S RULE 56.1 STATEMENT OF FACTS**

| Exhibit A | 2024 Declaration of Patrick Howard |
|---|---|
| Exhibit B | 2026 Declaration of Patrick Howard |
| Exhibit C | December 2025 Declaration of Brandon Lancey |
| Exhibit D | February 2026 Corrected Declaration of Brandon Lancey |
| Exhibit E | March 2026 Declaration of Brandon Lancey |
| Exhibit F | January 2, 2025 Stevens letter |
| Exhibit G | November 3, 2016 Underwood email |

Respectfully submitted,

ANDREW S. BOUTROS
United States Attorney

By: s/ Alex Hartzler
ALEX HARTZLER
Assistant United States Attorney
219 South Dearborn Street
Chicago, Illinois 60604
(312) 886-1390
alex.hartzler@usdoj.gov

# Exhibit A

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JACQUELINE STEVENS,              )
                                      )
            Plaintiff,        )
                                      )
            v.           )   No. 22 C 5072
                                      )
U.S. CUSTOMS AND BORDER      )
PROTECTION, et al.,            )
                                      )
            Defendants.    )

### DECLARATION OF PATRICK HOWARD

I, Patrick Howard, do hereby declare and state as follows:

1.      I am a Branch Chief within the Freedom of Information Act Division (FOIA Division) at U.S. Customs and Border Protection (CBP or Agency), U.S. Department of Homeland Security (DHS).  I have been a Branch Chief in the FOIA Division since February 8, 2015.  In this capacity, I oversee a staff of Government Information Specialists (GIS), the processing of requests for records submitted to CBP pursuant to FOIA, 5 U.S.C. § 552, the Privacy Act (PA), 5 U.S.C. § 552a, and other activities conducted pursuant to applicable records access provisions.

2.      I am familiar with CBP's procedures for responding to FOIA requests.  I provide technical and administrative supervision and direction to a group of FOIA specialists in processing FOIA requests and assist with FOIA/PA litigation matters, and I am personally familiar with the processing of FOIA/PA responses, including, at times, by directly reviewing for adequacy and compliance with federal laws and regulations.

3. I am familiar with the two FOIA requests submitted to CBP by Jacqueline Stevens (Plaintiff) on May 18, 2022.

4. I am also familiar with the FOIA request Plaintiff submitted to DHS, which was subsequently transferred by DHS to CBP on December 2, 2019.

5. The statements I make in this Declaration are based upon my personal knowledge, which includes knowledge acquired through information furnished to me in the course of my official duties and Agency files that I personally reviewed in the course of my official duties.

6. The purpose of this Declaration is to describe CBP's handling of Plaintiff's FOIA requests. This Declaration summarizes the relevant facts and correspondence regarding Plaintiff's FOIA requests and explains the searches CBP conducted in responding to the requests.

7. The FOIA Division determines which CBP systems, databases, and/or offices are likely to contain records responsive to the request. Assessments of where responsive records are likely to be contained is based on a review of the content of the request, the nature of the records sought, the FOIA Division's familiarity with the types and locations of the records at issue, and discussions with knowledgeable Agency personnel. The FOIA Division will then search CBP systems and databases and/or request identified CBP offices to gather any/all potentially responsive records. The FOIA Division reviews all gathered records for responsiveness, redacts the documents as appropriate, reviews redaction marks, and obtains final authorization for release prior to production. The FOIA Division will also consult with CBP personnel, other components within DHS, or agencies outside of DHS, as necessary, prior to release. CBP does not usually include documents located in the public domain, readily accessible to the requester, and/or known to be in the possession of the requester with its production. FOIA may refer the requester to a public domain containing requested documents, if necessary.

**Plaintiff's Toan Hoang FOIA Requests**

8. On May 18, 2022, CBP received two separate FOIA requests from Plaintiff requesting records on Toan Hoang. The CBP FOIA Division instructs all FOIA requesters to provide a clear and detailed description of the records sought.

9. Plaintiff's May 18 request sought the following records:

> "This letter constitutes a request under the Freedom of Information Act ("FOIA"), 5 U.S.C. §552, for all system records and other items maintained, produced or distributed by CBP pertaining to Toan Hoang. His 'alien number' is [redacted]. He was born in Vietnam on [redacted]. Information responsive to this request includes but is not limited to: (1) all memoranda, notes, reports, email messages, and all other system records or communications associated with or pertaining to Mr. Hoang generated or received by CBP and; (2) screen shots of all databases likely to have responsive records. The time frame of this request is March 29, 1977 to the present. Mr. Hoang has signed a waiver, including a certificate of identity, allowing me to receive these records. Please find a copy of this waiver attached."

10. Plaintiff provided a signed authorization form with the FOIA request.

11. On June 6, 2022, CBP acknowledged receipt and assigned the tracking number CBP-2022-080126. In addition, CBP notified Plaintiff that due to the increasing number of FOIA requests, there may be some delay in processing the request.

12. CBP FOIA staff evaluated the CBP-2022-080126 request and determined that the E3/Enforce systems and the TECS platform were the only CBP systems reasonably likely to contain responsive records.

13. The e3 portal ("e3") is used to collect and transmit data related to law enforcement activities to the U.S. Immigration and Customs Enforcement (ICE) Enforcement Integrated Database (EID) and the DHS Automated Biometric Identification System (IDENT). CBP uses e3 to collect and transmit biographic, encounter, and biometric data of individuals for identification and verification of individuals encountered by the U.S. Border Patrol (USBP). E3/Enforce is reasonably likely to contain responsive records for individuals encountered by

USBP at and around international land borders outside the ports of entry. If a person crosses between official ports of entry and is encountered by USBP, E3 will likely have a record of it.

14. CBP FOIA staff queried the E3/Enforce system for responsive records using the name, date of birth, and Alien File (A-File) Number. CBP FOIA staff did not locate any responsive CBP records.

15. TECS is an information-sharing platform, which allows users to access different databases that may be maintained on the platform or access through the platform, and the name of a system of records that include temporary and permanent enforcement, inspection, and operational records relevant to the anti-terrorism and law enforcement mission of CBP and numerous other federal agencies that it supports. TECS provides a platform for interaction between these databases and defined TECS users, and also serves as a data repository to support law enforcement "lookouts," border screening, and reporting for CBP's primary and secondary inspection processes. TECS is the principal system used by officers at the border to assist with screening and determinations regarding the admissibility of travelers arriving to the U.S.at a port of entry. TECS is reasonably likely to contain responsive records for those travelers who are encountered at the ports of entry into the United States, including airports. If CBP processes an arriving person for admissiblity when entering the United States at an airport port of entry, TECS will likely have a record of it.

16. CBP FOIA staff queried the TECS platform for responsive records using the name, date of birth and A-file Number provided in the FOIA request. CBP FOIA staff did not locate any responsive records.

17. On October 26, 2022, CBP issued its final response to Plaintiff for CBP-2022-080126, stating no responsive records were found. The letter also informed Plaintiff that records

of apprehensions made by Border Patrol before 2000 may be available in the A-File maintained by USCIS and notified her of her right to appeal.

18. Also on May 18, 2022, CBP received the following FOIA request for Toan Hoang's records:

> "All system records and other items maintained, produced, or distributed by CBP pertaining to Toan Hoang. His 'alien number' is [redacted]. He was born in Vietnam on [redacted]. Information responsive to this request includes but is not limited to: (1) all memoranda, notes, reports, email messages, and all other system records or communications associated with or pertaining to Mr. Hoang generated or received by CBP and; (2) screen shots of all databases likely to have responsive records. The time frame of this request is March 29, 1977 to the present."

19. On May 18, 2022, the same day CBP received the request, CBP acknowledged receipt and assigned tracking number CBP-2022-080265.

20. Plaintiff did not provide a signed third-party authorization form with the CBP-2022-080265 May 18 request.

21. On May 20, 2022, CBP issued a letter to Plaintiff advising her that her May 18, 2022 FOIA request, case number CBP-2022-080265, did not include an authorization from the individual and informed Plaintiff that if she wished to receive records on the individual, she should resubmit her request with a signed authorization form. Plaintiff was further informed that the FOIA request was closed as insufficient.

22. Based on my experience in the FOIA Division, discussions with knowledgeable Agency personnel, understanding of the scope of Plaintiff's May 18, 2022 requests and the information gathered, the search was reasonably calculated to uncover all potentially responsive records and that all systems and databases likely to contain responsive documents were searched.

**Plaintiff's FOIA Request for Records with Representative Lauren Underwood**

23.     On December 2, 2019, the DHS Headquarters FOIA office sent a memo to the CBP FOIA office transferring a FOIA request to CBP and requested that CBP respond directly to the requestor.  DHS FOIA attached the letter emailed to Plaintiff on December 2, 2019, where DHS FOIA informed Plaintiff that her FOIA request was transferred to the FOIA Officers for ICE and CBP for processing.

24.     Plaintiff's request sought the following records from January 1, 2017 to the present:

> "1) all communications and related materials created, received, or maintained by the Department of Homeland Security to which Rep. Lauren Underwood(D-IL) or any member of her staff. This includes but is not limited to all email, text messages, notes, reports, memorandums, proposed bill texts, and bill evaluations. In a floor speech of 9/26/2019 Rep. Underwood stated she received information from the 'Department of Homeland Security' indicating a request for an integrated Electronic Health Records System she referenced as 'EHR.' She refers to this in her remarks on HR 3525 as a 'direct ask from medical officers at the Department of Homeland Security.'
>
> 2) DHS communications and related materials created by or received from other components of DHS or the Department of Health and Human Services Office of Refugee Resettlement about the use of Electronic Health Records systems already in place as well as the establishment of an EHR for the use by offices of CBP.
>
> 3) Information on meetings and communications with private individuals, including but not limited to lobbyists or company officials related to past, current, or potential "enterprise" or other information technologies for collecting, coordinating, or maintaining health records data for those encountered or detained by DHS or any component of DHS. Technical reports, email, text messages, or other communications with the private sector tied to past, current, or potential contracts tied to EHR systems."

25.     On December 12, 2019, CBP acknowledged receipt of the December 2, 2019 transferred request and assigned tracking number CBP-2020-019380.  In addition, CBP notified Plaintiff that due to the increasing number of FOIA requests, there may be some delay in processing the request.

26. CBP FOIA staff evaluated the request and determined two component offices within the agency were reasonably likely to have responsive records.

a. Number 1 of the FOIA request involved communications with Representative Underwood and any materials to which the Representative was a party. CBP's policy is that official communication with members of Congress be routed through the Office of Congressional Affairs (OCA). Therefore, FOIA staff determined the Office of Congressional Affairs would reasonably likely have responsive records, if any.

b. Number 2 of the FOIA request sought DHS records. CBP FOIA staff determined that this part of the request did not seek CBP records.

c. Number 3 of the FOIA request sought "information on meetings and communications with private individuals . . . related to past, current, or potential 'enterprise' or other information technologies for collecting, coordinating, or maintaining health records data for those encountered or detained by DHS or any component of DHS." Any work with outside persons or companies to develop the health records data described in the FOIA request would have to go through CBP's Procurement office. The Procurement office is a part of the CBP Office of Acquisition. The office is responsible for contract oversight and administration. Therefore, FOIA staff determined the Procurement office within the Office of Acquisition was reasonably likely to have responsive records, if there were any.

27. Per CBP Directive 2130-012A, no one outside of Office of Congressional Affairs is to communicate with members of Congress without the Office of Congressional Affairs' permission and involvement.

28. The Procurement office identified the employee who serves as the point of contact for electronic medical records within the Procurement Directorate. The employee confirmed that

she has a clear recollection that she had no correspondence verbally or in writing on meetings and communications with private individuals for collecting, coordinating or maintaining health record data for those encountered or detained by DHS or any component of DHS (CBP).

29. Plaintiff's FOIA request covered the time period of January 1, 2017 to present. CBP FOIA noted that Representative Underwood did not begin serving as a member of Congress until January 3, 2019, so this date was used as the beginning of OCA's search. The Directors in the Office of Congressional Affairs searched their email inboxes for communication with Representative Underwood or her staff about electronic health records systems. The search terms used were "Underwood" "Lauren Underwood" "EHR" "Health Record" and "Electronic health record". There was no responsive information located.

30. On July 14, 2023, CBP FOIA issued its first response to Plaintiff, stating no responsive records were found.

31. Subsequently, the Office of Congressional Affairs informed FOIA staff that the "OCATaskings" email box, which was not previously searched, was a location that was reasonably likely to contain responsive records. The Office of Congressional Affairs staff conducted a search for communications with Representative Underwood or her staff about electronic health records systems in the "OCATaskings" inbox. The search terms used were "Underwood" "Lauren Underwood" "EHR" "Health Record" and "Electronic health record". There were some items located which discussed medical issues related to Representative Underwood and to the Agency. Those items, totaling 23 pages, were turned over to CBP FOIA.

32. CBP FOIA reviewed the 23 pages of records. CBP FOIA determined that 20 pages of records were responsive and that 3 pages of records were non-responsive. CBP FOIA applied redactions to parts of 7 pages of the responsive records pursuant to FOIA Exemptions 6

and 7C and determined that 13 pages of the responsive records must be withheld in full pursuant to FOIA Exemptions 5, 6, and 7C.

33. On October 31, 2023, CBP issued its final response to Plaintiff, disclosing seven pages of records with the redactions pursuant to FOIA Exemptions 6 and 7C.

34. Based on my experience in the FOIA Division, discussions with knowledgeable Agency personnel, understanding of the scope of Plaintiff's FOIA request and the information gathered, the search was reasonably calculated to uncover all potentially responsive records and that all component offices likely to contain responsive documents were searched.

35. Attached to this declaration is a *Vaughn* index identifying and describing each document in which information was withheld and explaining how the exemption applies to the withheld information. I am familiar with the records described in the index. (*Vaughn* index attached as Exhibit 1)

**Description of Exemptions**

**Exemption 5**

36. Exemption 5 protects "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency, provided that the deliberative process privilege shall not apply to records created 25 years or more before the date on which the records were requested." 5 U.S.C. § 522(b)(5).

37. The deliberative process privilege was invoked to protect CBP's decision making processes. The privilege was applied to documents that are in draft form and had not been finalized, thereby reflecting initial opinions and recommendations before agency decisions were made. It was also applied to documents in which an attorney provided advice to a client about pending litigation and advice relating to legal matters for which CBP sought professional advice.

The withheld material was created less than 25 years before the records were requested. Exemption 5 was also used to protect the attorney-client privilege and attorney work product protection where an attorney was rendering advice to a client and was revealing litigation strategy. The invocation of Exemption 5 is described in detail in the attached Vaughn index.

### Exemption 6

38.     FOIA Exemption (b)(6) protects "personnel and medical files and similar files, the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).

39.     Exemption 6 was invoked to withhold identifying information in records that related to CBP employees and third party individuals who did not provide consent for release. The withheld information consisted of the names of individuals, however, the job title for employees and third parties was not redacted.  There is no public interest in the redacted information because it does not shed light on how the agency is performing its operations, and there is a strong privacy interest in this information.  CBP FOIA determined that disclosure of this information would constitute an unwarranted invasion of privacy that is not outweighed by any public interest in the material.

### Exemption 7(C)

40.     FOIA Exemption (b)(7)(C) protects from disclosure "records or information compiled for law enforcement purposes" if a release of the records or information "could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(7)(C).

41.     The Department of Homeland Security is the largest federal law enforcement agency.  CBP, as a component of DHS, facilitates trade and travel while enforcing regulations,

including immigration, border security, and customs laws. Therefore, the documents at issue constituted information and records compiled for law enforcement purposes. Exemption 7(C) was invoked to protect the names of government employees and third parties. There is a strong privacy interest in this material, and there is no public interest in this information because it does not shed light on how the agency is performing its operations. Additionally, disclosure of this information could unnecessarily subject that individual to harassment or harm by individuals who disagree with the agency's mission or activities. CBP FOIA determined that disclosure of this information would constitute an unwarranted invasion of personal privacy that is not outweighed by any public interest in the material.

**Segregability**

42. All information CBP has withheld is exempt from disclosure pursuant to a FOIA exemption or is not reasonably segregable, whether because it is so intertwined with protected material that segregation is not possible or because its release would have revealed the underlying protected material. In responding to Plaintiffs' request in this case, I have conducted a line-by-line review of the record to confirm that any withholdings were proper, examined whether any discretionary waiver of an exemption was warranted, and determined whether any segregable, non-exempt information could further be released. All reasonably segregable portions of the relevant records have been released to Plaintiff.

I declare under a penalty of perjury that the information provided is true and correct to the best of my information, knowledge, and belief.

Signed this 16th day of January, 2024

*Patrick Howard*
_____
Patrick Howard
Branch Chief, FOIA Division
U.S. Customs and Border Protection
U.S. Department of Homeland Security

# Exhibit B

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JACQUELINE STEVENS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 25 C 2719 |
| | ) | |
| U.S. DEPARTMENT OF HEALTH AND | ) | Judge Kennelly |
| HUMAN SERVICES, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**DECLARATION OF PATRICK HOWARD**

I, Patrick Howard, do hereby declare and state as follows:

1.  I am a Branch Chief within the Freedom of Information Act Division (FOIA Division) at U.S. Customs and Border Protection (CBP or Agency), U.S. Department of Homeland Security (DHS). I have been a Branch Chief in the FOIA Division since February 8, 2015. In this capacity, I oversee a staff of Government Information Specialists (GIS), the processing of requests for records submitted to CBP pursuant to FOIA, 5 U.S.C. § 552, the Privacy Act (PA), 5 U.S.C. § 552a, and other activities conducted pursuant to applicable records access provisions.

2.  I am familiar with CBP's procedures for responding to FOIA requests. I provide technical and administrative supervision and direction to a group of FOIA specialists in processing FOIA requests and assist with FOIA litigation matters, and I am personally familiar with the processing of FOIA responses, including, at times, by directly reviewing for adequacy and compliance with federal laws and regulations.

3. The statements I make in this Declaration are based upon my personal knowledge, which includes knowledge acquired through information furnished to me in the course of my official duties and Agency files that I personally reviewed in the course of my official duties.

4. I am familiar with the FOIA request submitted to CBP by Jacqueline Stevens (Plaintiff) in December 2019 (the "Underwood" request).

5. I am aware that the U.S. District Court granted summary judgment to CBP regarding CBP's response to part one of the "Underwood" request.

6. I am aware that the U.S. District Court denied summary judgment to CBP regarding CBP's responses to parts two and three of the "Underwood" request.

7. Regarding part two of the "Underwood" request, after the court denied summary judgment, I am aware that counsel in the district court litigation attempted to negotiate with Stevens to see if an agreement could be reached about which offices and custodians to search.

8. In the fall of 2024, CBP FOIA tasked numerous offices to search for records: (a) the Office of the Commissioner (in case someone in that office had oversight of the relevant topic); (b) the Office of Field Operations/U.S. Border Patrol/Air and Marine Operations (which are enforcement offices that could possibly have responsive records given the topic's potential nexus to encounters with non-citizens or other travelers); (c) Operations Support's sub-office called the Office of the Chief Medical Officer (the *most* likely office to have responsive records, in CBP's view); and (d) Public Affairs (in case members of the media or public reached out to CBP with questions on the topic.

9. CBP FOIA did *not* task the following component offices: (a) the Office of Trade (which has no probable link to electronic health records); (b) Operations Support (which has no probable link to electronic health records, except for the sub-office called the Office of the Chief

Medical Officer, which CBP did task as mentioned above); (c) International Affairs (which has no probable link to electronic health records); (d) Enterprise Services (which has no probable link to electronic health records, except for the Procurement Office, which was already being searched in response to part *three* of the request, as mentioned below); (e) the Office of Chief Counsel (because any responsive records from this office would almost certainly be privileged); (f) the Office of Congressional Affairs (whose connection to electronic health records was already satisfied in response to part *one* of the Underwood request, and (g) the Office of Professional Responsibility (which has no probable link to electronic health records.

10. Air and Marine operations responded that it did not have any responsive records.

11. The Office of the Chief Medical Officer identified 17 custodians who were reasonably likely to have responsive records, and by November 20, 2024, efforts were underway to compile responsive records.

12. The taskings initially were thought to have yielded 492,147 documents totaling 1.3 million pages of potentially responsive records.

13. The search terms CBP employed were: "E.H.R." (which yielded 5 hits), "E.M.R." (which yielded 0 hits); "Electronic Health Record" (which yielded 6,577 hits), "Electronic Medical Record" (which yielded 24,928 hits), "EHR" (which yielded 11,259 hits), and "EMR" (which yielded 361,980 hits). (These are document counts, not page counts, and the numbers do not include "family members," for example attachments, which are included in the total number of documents mentioned above.)

14. I am aware that, following a district court hearing on December 13, 2024, counsel invited Plaintiff to propose additional search terms to narrow the universe of records that needed to be reviewed, and that Plaintiff did not do so.

15. Regarding part three of the "Underwood" request, after the district court denied summary judgment, CBP searched the emails of the previously identified Office of Acquisition employee.

16. The following search terms were employed: "Electronic Health Record," "EHR," and "E.H.R.."

17. CBP FOIA processed more than 1,100 pages of records by November 20, 2024, and produced the responsive ones, and we had identified more than 16,000 pages of potentially responsive records at that time.

18. As mentioned below, the Office of Acquisition eventually returned more than 2.3 million pages of potentially responsive records. By early 2025, our efforts to locate responsive records for parts two and three of the "Underwood" request had effectively merged.

19. I attended the virtual settlement conference in early 2025, and I recall the court directing CBP to identify the volume of records that had been collected from the Office of Acquisition. CBP FOIA ended up determining that the total volume from that office was 26,012 documents totaling more than 2.3 million pages. The reason that number is larger than the number that was initially thought to have been returned for *all* the component offices is because when the initial number was calculated only a portion of the returned records had been ingested into CBP's FOIA software. The ultimate total number of pages that came back from the component offices is in the tens of millions.

20. Once we excluded documents previously produced, and documents of over 100 pages, the remaining number of documents from the Office of Acquisition was 21,596 documents totaling 180,405 pages.

21.     We learned at the virtual settlement conference in early 2025 that Plaintiff's primary interest was communications between CBP and outside contractors such as General Dynamics.  So, we applied the search term "General Dynamics" to the universe of documents with less than 100 pages from the Office of Acquisition, and that yielded 230 documents totaling 5,766 pages.

22.     CBP FOIA processed those pages.

23.     I understand that counsel also invited Stevens in March 2025 to propose additional or different search terms.

24.     CBP completed its production by January 2026, with the exception of some unwieldy Excel files.  We took efforts to provide Plaintiff with a sample of what the Excel files would look like if we did a "reverse redaction"—meaning that instead of having to redact thousands of lines of irrelevant information, we would "extract" the smaller number of lines that might be responsive.  I am not aware that Plaintiff ever responded affirmatively to our offer.

25.     I am aware that, through counsel in early January 2026, CBP proposed that: (1) Stevens would propose additional search terms for CBP to apply to the under-100-page documents from the Office of Acquisition that had not yet been reviewed; (2) CBP would apply those search terms to determine how many potentially responsive records the search terms yielded; (3) the parties would negotiate which terms to use based on that volume (4) CBP would process the resulting records at the expedited rate of 750 pages per month and would produce the responsive records subject to the application of any FOIA exemptions; (5) the parties would then present any remaining issues to the court.

26.     I understand that, at a district court hearing on January 28, 2026, Plaintiff proposed that CBP: (1) apply a certain set of search terms to the previously discussed existing

large universe of millions of pages pulled from the Office of Acquisition (excluding documents of more than 100 pages); and (2) apply the same set of search terms to the following sub-offices: (a) the office of the Assistant Commissioner of Congressional Affairs; (b) the office of the Executive Director of Policy; (c) the Office of the Intergovernmental Public Liaison; and (d) any sub-offices within the Office of Acquisition that were not previously searched.

27.     Plaintiff's requested search terms were @generaldynamics.com, @gdit.com, @ervingraves.com, @cgagroup.com, @acgadvocacy.com, @harbingerdc.com, @pennavenue.com, @potadv.com, @teamsubjectmatter.com, @vsadc.com, @federalstrategies.com, @nelsonmullins.com, @meltsnerstrategies.com, @align-strategies.com, and @bakerdonelson.com.

28.     CBP FOIA applied the requested search terms to the records from the Office of Acquisitions and to the *entire* universe of even more millions of pages of potentially responsive records that it had initially pulled in the wake of the court's 2024 summary judgment ruling, and none of the search terms yielded any hits except for @gdit.com, which yielded 177 hits totaling 2,704 pages. Many of those records had already been produced, but 98 documents remained to be processed.  Processing of these documents was completed in March of 2026.

29.     I understand that, through counsel, CBP reported on February 5, 2026, that it stood ready and willing to apply additional search terms provided by Plaintiff to its huge universe of potentially responsive records.

30.     I understand that Plaintiff proposed that CBP search the office of the Assistant Commissioner of Congressional Affairs.  That office's connection to electronic health records was already satisfied in response to part one of the "Underwood" request.

31.     I understand that Plaintiff proposed that CBP search the office of the Executive Director of Public Policy.  That office sits under the umbrella of the Office of the Commissioner, which CBP previously tasked back in 2024.  But even so, CBP FOIA reached out to the Office of Policy and Planning to confirm whether the office was reasonably likely to have responsive records, and the office responded in February 2026 that it had no records regarding guidance or implementation of EHR systems.

32.     I understand that Plaintiff proposed that CBP search the Office of the Intergovernmental Public Liaison.  That office sits under the umbrella of the Office of the Commissioner, which CBP previously tasked back in 2024.  But even so, CBP FOIA reached out to the Office of the Intergovernmental Public Liaison to confirm whether it was likely to have responsive records, and the office responded in February 2026 that it had no records regarding EHR systems, or any communications about them.

33.     I understand that Plaintiff proposed that CBP search any sub-offices within the Office of Acquisition that were not previously searched, but the Office of Acquisition had previously provided CBP's FOIA office with a comprehensive list of custodians, consisting of employees who were directly involved in the electronic health records project, and the search of those custodians yielded millions of pages of potentially responsive records.

34.     CBP withheld certain information from its productions under one or more FOIA exemptions.  However, I am aware that the court will not be considering the propriety of CBP's withholdings as a part of the motion for summary judgment for which this declaration is being submitted in support, because CBP FOIA has not had sufficient time to prepare a *Vaughn* index.

I declare under a penalty of perjury that the information provided is true and correct to the best of my information, knowledge, and belief.

Signed this 20th day of March, 2026

*Patrick Howard*

Patrick Howard
Branch Chief, FOIA Division
U.S. Customs and Border Protection
U.S. Department of Homeland Security

# Exhibit C

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JACQUELINE STEVENS,

PLAINTIFFS,

V.                                          CIVIL ACTION NO. 22-CV-05072

U.S. DEPARTMENT OF HEALTH AND
HUMAN SERVICES, ET AL.,

DEFENDANT.

DECLARATION OF BRANDON L. LANCEY

I, Brandon L. Lancey, declare the following to be true and correct:

1.  I am a Lead Government Information Specialist in the Office of the Assistant Secretary of

    Public Affairs ("ASPA"), Office of the Secretary ("OS"), U.S. Department of Health and

    Human Services ("HHS" or "the Department").  In this capacity, I am responsible for

    managing the handling of FOIA appeals and litigations received by the ASPA FOIA

    Division (OS-FOIA), which is an OS staff division.  I have led OS-FOIA's Litigation and

    Appeals Team since April 2025.

2.  From December 2014 to October 2023, I served as a Government Information Specialist

    in ASPA.  In that capacity, I processed FOIA appeals for OS and other HHS Operating

    Divisions and processed FOIA requests that were the subject of litigation.  Prior to that,

    from August 2010 to December 2014, I was a Government Information Specialist at the

    Centers for Medicare and Medicaid Services ("CMS").  In that capacity, I processed

requests from the public for CMS records under the FOIA.

3. The statements contained in this declaration are based upon my personal knowledge, upon information provided to me in my official capacity as a Lead Government Information Specialist, and upon conclusions I reached based on that knowledge or information.

4. It is my understanding that the Department's Exemption 6 redactions are not being challenged in this case. It is also my understanding that the Department has elected to lift **all** Exemption 5 redactions and withholdings that were made throughout the Department's interim productions in this case. Thus, the purpose of this declaration is to provide information about the Department's search for documents responsive to Plaintiff's FOIA request.

## PLAINTIFF'S FOIA REQUEST

5. On December 11, 2019, Stevens submitted the following request to HHS pursuant to the FOIA: records tied to the hiring, transfers, and scope of work performed by Lauren Underwood at HHS**.** Underwood is at present a member of Congress (D-IL).

1) all position announcements associated with any jobs she held at HHS.

2) all reports, memorandums, or analyses she produced, including but not limited to her work on Ebola and other emergency public health matters.

3) all travel itineraries.

4) all expense reports. The time frame of this request is Jan. 1, 2010 to January 22, 2017.

## THE DEPARTMENT'S SEARCH FOR DOCUMENTS RESPONSIVE TO PLAINTIFF'S REQUEST

The Office of the Secretary of the U.S. Department of Health and Human Services ("HHS")

conducted searches reasonably calculated to locate records responsive to the requester's submission. Because the subject of the request served within the Assistant Secretary for Preparedness and Response—now known as the Administration for Strategic Preparedness and Response ("ASPR")—the Office of the Secretary directed its search efforts to ASPR, the office in which the subject of the request worked during the relevant period.

In addition to conducting a search for this request, HHS also identified records that had been previously located in response to a substantially similar request submitted to the Department, assigned Request Number 2019-00656-FOIA-OS. That earlier request sought: (1) a comprehensive job description for the position(s) held by Ms. Underwood, including clarification of her direct supervisor; (2) all employment records, including her résumé, dates of hire, promotion and leave, all job titles held, and the circumstances of her departure; (3) Ms. Underwood's personnel file, including any disciplinary actions, complaints filed by or against her, and employer performance reviews; (4) all available compensation records, including salary information, pay grade, salary adjustments, and any other benefits; (5) all expenses reimbursed to Ms. Underwood by the federal government; (6) all federally funded travel records and corresponding receipts; (7) all financial disclosure forms, conflict-of-interest disclosures or recusals, and ethics disclosures or recusals filed during her tenure at HHS; and (8) all gift or travel disclosures filed during her tenure. HHS located these records in electronic form as part of its response to that prior request.

To identify records responsive to both the prior request and the instant request, HHS searched the Department's Human Resources and Travel systems.

Additionally, for purposes of identifying records responsive to the instant request, the Office of the Secretary's Office of the Chief Information Officer ("OCIO") conducted a search of Ms.

Underwood's HHS email account. OCIO searched for all emails, including attachments, that she sent or received between January 1, 2010, and January 22, 2017. This search yielded 76,128 items, totaling approximately 14.63 gigabytes of data. These records were ingested into the Office of the Secretary's FOIA tracking system for processing.

After ingestion, the records were deduplicated, and the remaining unique items were reviewed on a rolling basis to determine responsiveness. Records identified as responsive were then reviewed for applicable withholdings and produced. This processing occurred over the course of thirty interim responses.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury the foregoing to be true and correct, to the best of my knowledge, information and belief.

Brandon L. Lancey -S

Digitally signed by Brandon L. Lancey -S
Date: 2025.12.18 18:39:07 -05'00'

Executed this 18th day of December 2025.

# Exhibit D

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JACQUELINE STEVENS,

PLAINTIFFS,

V.                                                    CIVIL ACTION NO. 22-CV-05072

U.S. DEPARTMENT OF HEALTH AND
HUMAN SERVICES, ET AL.,

DEFENDANT.

<u>DECLARATION OF BRANDON L. LANCEY</u>

I, Brandon L. Lancey, declare the following to be true and correct:

1. I am a Lead Government Information Specialist in the Office of the Assistant Secretary of Public Affairs ("ASPA"), Office of the Secretary ("OS"), U.S. Department of Health and Human Services ("HHS" or "the Department"). In this capacity, I am responsible for managing the handling of FOIA appeals and litigations received by the ASPA FOIA Division (OS-FOIA), which is an OS staff division. I have led OS-FOIA's Litigation and Appeals Team since April 2025.

2. From December 2014 to October 2023, I served as a Government Information Specialist in ASPA. In that capacity, I processed FOIA appeals for OS and other HHS Operating Divisions and processed FOIA requests that were the subject of litigation. Prior to that, from August 2010 to December 2014, I was a Government Information Specialist at the Centers for Medicare and Medicaid Services ("CMS"). In that capacity, I processed

requests from the public for CMS records under the FOIA.

3. The statements contained in this declaration are based upon my personal knowledge, upon information provided to me in my official capacity as a Lead Government Information Specialist, and upon conclusions I reached based on that knowledge or information.

4. It is my understanding that the Department's Exemption 6 redactions are not being challenged in this case. It is also my understanding that the Department has elected to lift **all** Exemption 5 redactions and withholdings that were made throughout the Department's interim productions in this case. Thus, the purpose of this declaration is to provide information about the Department's search for documents responsive to Plaintiff's FOIA request.

## PLAINTIFF'S FOIA REQUEST

5. On December 11, 2019, Stevens submitted the following request to HHS pursuant to the FOIA: records tied to the hiring, transfers, and scope of work performed by Lauren Underwood at HHS. Underwood is at present a member of Congress (D-IL).

1) all position announcements associated with any jobs she held at HHS.

2) all reports, memorandums, or analyses she produced, including but not limited to her work on Ebola and other emergency public health matters.

3) all travel itineraries.

4) all expense reports. The time frame of this request is Jan. 1, 2010 to January 22, 2017.

## THE DEPARTMENT'S SEARCH FOR DOCUMENTS RESPONSIVE TO PLAINTIFF'S REQUEST

The Office of the Secretary of the U.S. Department of Health and Human Services ("HHS")

conducted searches reasonably calculated to locate all records responsive to the requester's submission. Because the subject of the request served within the Assistant Secretary for Preparedness and Response—now known as the Administration for Strategic Preparedness and Response ("ASPR")—the Office of the Secretary directed its search efforts to ASPR, the office in which the subject of the request worked during the relevant period.

In addition to conducting a search for this request, HHS also identified records that had been previously located in response to a substantially similar request submitted to the Department, assigned Request Number 2019-00656-FOIA-OS. That earlier request sought: (1) a comprehensive job description for the position(s) held by Ms. Underwood, including clarification of her direct supervisor; (2) all employment records, including her résumé, dates of hire, promotion and leave, all job titles held, and the circumstances of her departure; (3) Ms. Underwood's personnel file, including any disciplinary actions, complaints filed by or against her, and employer performance reviews; (4) all available compensation records, including salary information, pay grade, salary adjustments, and any other benefits; (5) all expenses reimbursed to Ms. Underwood by the federal government; (6) all federally funded travel records and corresponding receipts; (7) all financial disclosure forms, conflict-of-interest disclosures or recusals, and ethics disclosures or recusals filed during her tenure at HHS; and (8) all gift or travel disclosures filed during her tenure. HHS located these records in electronic form as part of its response to that prior request.

To identify records responsive to both the prior request and the instant request, HHS searched the Department's Human Resources and Travel systems.

Additionally, for purposes of identifying records responsive to the instant request, the Office of the Secretary's Office of the Chief Information Officer ("OCIO") conducted a search of Ms.

Underwood's HHS email account. OCIO searched for all emails, including attachments, that she sent or received between January 1, 2010, and January 22, 2017. This search yielded 76,128 items, totaling approximately 14.63 gigabytes of data. These records were ingested into the Office of the Secretary's FOIA tracking system for processing.

After ingestion, the records were deduplicated, and the remaining unique items were reviewed on a rolling basis to determine responsiveness. Records identified as responsive were then reviewed for applicable withholdings and produced. This processing occurred over the course of thirty interim responses.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury the foregoing to be true and correct, to the best of my knowledge, information and belief.

Brandon L. Lancey -S

Digitally signed by Brandon L. Lancey -S
Date: 2026.02.04 15:03:05 -05'00'

Executed this 4th day of February 2026.

# Exhibit E

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JACQUELINE STEVENS,

PLAINTIFFS,

V.                                          CIVIL ACTION NO. 22-CV-05072

U.S. DEPARTMENT OF HEALTH AND
HUMAN SERVICES, ET AL.,

DEFENDANT.

### SUPPLEMENTAL DECLARATION OF BRANDON L. LANCEY

I, Brandon L. Lancey, declare the following to be true and correct:

1. I am a Lead Government Information Specialist in the Office of the Assistant Secretary for Public Affairs ("ASPA"), Office of the Secretary ("OS"), U.S. Department of Health and Human Services ("HHS" or "the Department"). In this capacity, I am responsible for managing the handling of FOIA appeals and litigations received by the ASPA FOIA Division (OS-FOIA).

2. I submit this supplemental declaration to provide additional detail regarding the Department's searches for records responsive to Plaintiff's FOIA request and subsequent productions.

3. The statements contained in this declaration are based upon my personal knowledge, information provided to me in my official capacity, and conclusions I have reached based on that knowledge and information

**SUPPLEMENTAL INFORMATION REGARDING PRODUCTIONS**

4. Following additional review and coordination with relevant offices, certain records that had previously been referred to other components were returned to the Office of the Secretary. Upon their return, those records were processed and produced to Plaintiff.

5. As stated in my December 18, 2025 declaration (and reiterated in my corrected February 4, 2026 declaration), at that time the Department had elected to lift Exemption 5 redactions that had been applied in earlier interim productions. The Department subsequently re-produced those records with the Exemption 5 redactions removed.

6. Subsequent to that declaration, the Department conducted additional review and processing, including the March 13, 2026 production described below, in which certain information was withheld pursuant to applicable FOIA exemptions.

7. With respect to a November 3, 2016 email authored by Ms. Underwood, the Department redacted a line of text pursuant to FOIA Exemption 6. That redacted portion contains information concerning Ms. Underwood's personal life.

**CLARIFICATION OF PRIOR SEARCH DESCRIPTION**

8. In my December 18, 2025 declaration and my February 4, 2026 corrected declaration, I stated that HHS searched its Human Resources and Travel systems. I provide the following additional detail regarding those searches.

9. The Department coordinated with appropriate personnel within the Administration for Strategic Preparedness and Response ("ASPR") and the Assistant Secretary for Administration, Office of Human Resources to identify systems reasonably likely to contain responsive employment and travel-related records.

10. For Human Resources records, HHS searched the Department's official personnel and staffing systems that maintain records relating to federal employees' appointments,

position classifications, and hiring documentation. These systems were queried using identifiers associated with Ms. Underwood, including her name, position titles, and organizational affiliations.

11. For travel-related records, HHS searched the Department's travel management systems used to authorize, book, and reimburse official government travel. These systems were queried for records associated with Ms. Underwood during the relevant time period.

12. As a result of this search, HHS located approximately 92 pages of responsive records from the period during which Ms. Underwood was employed at ASPR. These records were produced in the Department's first and second interim responses, issued on December 20, 2022, and January 20, 2023, respectively.

13. Following correspondence between counsel in late 2025 and early 2026, the Department undertook additional searches, as described below, to ensure that all locations reasonably likely to contain responsive records had been adequately searched.

**SUPPLEMENTAL SEARCH EFFORTS – POSITION ANNOUNCEMENTS**

14. HHS conducted additional targeted outreach to the Office of Human Resources ("OHR") within the Office of the Assistant Secretary for Administration to identify any records relating to position announcements associated with Ms. Underwood's positions.

15. OHR personnel searched the Department's Enterprise Human Capital Management ("EHCM") system and confirmed Ms. Underwood's employment history, including that she applied for an initial appointment in 2010 and for a merit promotion in 2014.

16. OHR further advised that historical vacancy announcement records are not maintained beyond applicable retention periods. The Department transitioned to a newer version of USA Staffing in or around 2017–2018, and historical records were not migrated to that

system. Additionally, pursuant to Office of Personnel Management requirements, vacancy announcement records are retained for only three years, after which they are deleted unless subject to a litigation hold.

17. Based on this information, HHS determined that position announcements responsive to Plaintiff's request are no longer maintained and do not exist within the Department's control.

## SUPPLEMENTAL SEARCH EFFORTS – TRAVEL ITINERARIES

18. HHS conducted additional outreach to the Immediate Office of the Secretary ("IOS"), Office of Business Operations ("OBO"), to determine whether records relating to Ms. Underwood's travel itineraries and related travel documentation from the period 2010 through 2014 could be located.

19. IOS/OBO personnel advised that, while such records would have originally been maintained within the Department's official travel and financial management systems, IOS does not maintain access to travel documentation from that period due to subsequent system and program transitions, including the Department's transition from GovTrip to Concur Government Edition in 2015 and changes to the government travel card program.

20. IOS further explained that travel records, including itineraries, authorizations, and vouchers, are maintained in accordance with the National Archives and Records Administration General Records Schedule for travel records, which requires retention for six years and three months after payment. Because the timeframe at issue predates that retention period, such records are no longer maintained.

21. Based on this information, HHS determined that IOS/OBO would not reasonably be expected to maintain responsive travel itinerary records for the relevant time period.

**SUPPLEMENTAL SEARCH EFFORTS – EXPENSE REPORTS**

22.     HHS also sought to identify records relating to Ms. Underwood's travel expense reports, vouchers, and related financial documentation through IOS/OBO and relevant financial and travel systems.

23.     IOS/OBO personnel advised that records such as travel vouchers, local vouchers, expense reports, receipts, and government travel card transactions from the relevant period would have been maintained within the Department's official travel and financial systems and subject to the same retention schedules described above.

24.     IOS further explained that receipts and supporting documentation are retained only for limited periods under applicable records schedules. Because the requested timeframe significantly predates those retention periods, such records are no longer available.

25.     Accordingly, HHS determined that it does not maintain responsive expense report records for the relevant time period and that further searches would not be reasonably likely to locate such records.

**MARCH 13, 2026 PRODUCTION**

26.     On March 13, 2026, the Department issued its thirty-second interim response to Plaintiff's FOIA request.

27.     In that production, the Department reviewed twenty pages of records that had previously been referred to other offices for consultation and were subsequently returned for final disposition.

28.     These twenty pages consisted of records originating from prior interim responses, specifically: three pages from Interim Response Seven; six pages from Interim Response Fourteen; five pages from Interim Response Fifteen; and six pages from Interim

Response Twenty-Six.

29. The Department released these records in part, with portions withheld pursuant to FOIA Exemptions 5 and 6, 5 U.S.C. § 552(b)(5) and (b)(6).

30. Information withheld under Exemption 5 consists of predecisional and deliberative internal agency communications, including discussions regarding proposed revisions to the National Emergency Repatriation Plan, potential updates to interagency roles, and possible protocols and policy changes.

31. Information withheld under Exemption 6 consists of personal information, including personal cell phone numbers, the name of a potential candidate for a public health position, and other personal information pertaining to individuals, including personal health information.

32. The Department has conducted a careful review of the referred records produced on March 13, 2026, and has determined that all information withheld is either exempt from disclosure under FOIA or not reasonably segregable. Any non-exempt information is so inextricably intertwined with exempt material that segregation is not possible without revealing protected information. Accordingly, the Department has released all reasonably segregable, non-exempt portions of the records.

33. Including this production, the Department has reviewed a total of 18,824 pages of records across 32 separate productions, of which 1,281 pages have been released to the plaintiff.

**CONCLUSION**

34. The Department's supplemental searches and reprocessing efforts were reasonably calculated to locate all records responsive to Plaintiff's request.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and

correct to the best of my knowledge, information, and belief.

Brandon L. Lancey -S

Digitally signed by
Brandon L. Lancey -S
Date: 2026.03.19
09:34:35 -04'00'

Executed this 19th day of March 2026.

# Exhibit F



**Law Offices of Larry R Glazer**

**Nicolette Glazer Esq.**
**Direct Dial: (310) 735-3478**

**Please respond with mail to**
Law Offices of Larry R Glazer
79125 Corporate Center Dr #6351
La Quinta, California 92253

2 January 2026

To Alex Hartzler Esq.
Via email only

In Re: *Stevens v HHS*
Case no: 22cv05072

Dear Mr. Hartzler,

Per the Court's order this correspondence will serve as the legal position of Plaintiff pertaining to the claims asserted against HHS:

The 11 December 2019 FOIA request subject to the lawsuit was docketed under 2020-00435-FOIA-OS and requested the following agency records:

> records tied to the hiring, transfers, and scope of work performed by Lauren Underwood at HHS. Underwood is at present a member of Congress (D-IL).
> 1) all position announcements associated with any jobs she held at HHS.
> 2) all reports, memorandums, or analyses she produced, including but not limited to her work on Ebola and other emergency public health matters.
> 3) all travel itineraries.
> 4) all expense reports.
> The time frame of this request is Jan. 1, 2010 to January 22, 2017

**HHS search is deficient**

In order to obtain summary judgment, HHS must show that it made a good faith effort to conduct a search in response to the request, using methods which were "reasonably calculated to uncover **all** relevant documents." *Valencia-Lucena v. U.S. Coast Guard,* 180 F.3d 321, 325–26 (D.C. Cir. 1999)(emphasis added); *accord Truitt v. Department of State,* 897 F.2d 540, 542 (D.C.Cir.1990)



**Law Offices of Larry R Glazer**

(quoting \*326 \*\*391 *Weisberg v. Department of Justice,* 705 F.2d 1344, 1351 (D.C.Cir.1983)). The agency "cannot limit its search" to only one or more places if there are additional sources or locations "that are likely to turn up the information requested." *Oglesby v. United States Dep't of the Army,* 920 F.2d 57, 68 (D.C.Cir.1990).

*First,* here, HHS's affiant declares only that the agency "conducted searches reasonably calculated to uncover records responsive to the requester's submission." Lancey Decl at page 1-2. Because the affidavit does not aver that a search was designed and performed to uncover *all* responsive records nor the process utilized to design the alleged search performed, the search is deficient. *See Weisberg v. United States Department of Justice,* 627 F.2d 365, 371 (D.C.Cir.1980) (agency affidavit must denote which files were searched and reflect a systematic approach to document location in order to enable the appellant to challenge the procedures utilized).

*Second,* "[a]t a bare minimum, the agency's affidavits need to specify 'what records were searched, by whom, and through what process.'" *Rodriguez v. DOD*, 236 F. Supp. 3d 26, 38 (D.D.C. 2017) (quoting *Steinberg v. DOJ*, 23 F.3d 548, 552 (D.C. Cir. 1994)). The Lancey affidavit does not show, with reasonable detail, the search method, namely searching ASRP, Ms. Underwood's email account and the "department's Human Resource and Travel systems" was reasonably calculated to uncover **all** relevant documents. Specifically, the affidavit provides no information or explanation to support the inference that (1) all position announcements associated with all jobs she held at HHS;  (2) all reports, memorandums, or analyses she produced, including but not limited to her work on Ebola and other emergency public health matters; and (3) all expense reports, would be contained solely in her emails and the HR and Travel system the agency maintains. The search and declaration stumble at the threshold requirement.

*Third,* from 6/2010 to 11/2014, Ms. Underwood was in the HHS Exec. Secretary office working on the insurance exchange markets and held the position of "Office of the Secretary, Policy Coordinator." In 11/2014, she moved to ASPR. Electing not to search the HHS Exec. Secretary Office for records related to her pre-11/2014 position is unreasonable, especially in light of a responsive record from this time frame that appeared in the last production in December, 2025, indicating these records are available. The affiant provides no explanation as to why a search of the HHS Exec. Secretary Office was not performed.

.     *Fourth,* the Affidavit contains no details on how the search was conducted, what search terms were used, nor an explanation as to why the specific search terms were selected..

Complicating further the matter and Plaintiff's ability to decipher the agency's actions taken in response to the request subject to this lawsuit is the fact that the agency elected to combine the FOIA request subject to this lawsuit with Plaintiff's 2019-00656-FOIA-OS request which seeks different records. Nor has the affiant explained which production relates to which request. Absent a proper and detailed affidavit Defendant cannot meet its Rule 56 burden and Plaintiff cannot rebut the agency's conclusory, vague, and misleading assertions.



**Law Offices of Larry R Glazer**

**Responsive Records Remain Withheld**

Numerous interim monthly production letters included zero records and indicated referrals to other entities/agencies. See Exhibit A as an example. Nothing in subsequent production cover letters or in the Lancey affidavit indicate that these "referred" records were released to Plaintiff.

**Withholdings Concerns**

*First*, although the affiant declares that all (b)(5) withholding have been lifted, because the agency has not provided bates-stamped productions before December 2025, it is impossible for Plaintiff to track the re-production that occurred 18 December 2025.

*Second*, Plaintiff, through counsel, agreed that routine (b)(6) redactions would not be challenged. However, Plaintiff challenges redactions not encompassed within said agreement. See Exhibit B (highlighted redactions in emails, including portion of email text and suffix of email address).

Considering the deficiencies identified above Plaintiff requests (1) that someone familiar with Underwood's position in HHS Office of Exec. Sec. search for responsive records from 2010-2014; (2) the agency produce all records referred to other agencies described in the interim cover letters; (3) provide Bates numbers for original release that correspond to b(5) withholdings lifted in December, 2025 releases; and (4) remove redactions from Exhibit B.

Regards,

Nicolette Glazer



**DEPARTMENT OF HEALTH & HUMAN SERVICES**

Office of the Secretary
Assistant Secretary for Public Affairs
Washington, D.C. 20201

**Litigation No: 2024-cv-05072/Jacqueline Stevens**
**HHS Case No: 2020-00435-FOIA-OS**

**September 19, 2024**

Ms. Jacqueline Stevens
Northwestern University
Political Science Department
601 University Place
Evanston, IL 60208
Sent via email: drc@northwestern.edu

Dear Ms. Stevens:

This letter is the 22nd interim response to your Freedom of Information Act (FOIA) request submitted to the U.S. Department of Health and Human Services (HHS), Office of the Secretary FOIA Office. Specifically, you requested the following records:

> Records tied to the hiring, transfers, and scope of work performed by Lauren Underwood at HHS.
> 1) All position announcements associated with any jobs she held at HHS.
> 2) All reports, memorandums, or analyses she produced, including but not limited to her work on Ebola and other emergency public health matters.
> 3) All travel itineraries.
> 4) All expense reports.
> The time frame of this request is January 1, 2010 to January 22, 2017.

For this release, the Department reviewed 528 pages of records potentially responsive to your FOIA request. Of these pages, we are releasing 7 pages in their entirety, while releasing 3 pages in part, with portions redacted, pursuant to Exemption 6 of the FOIA (5 U.S.C. §552 (b)(6)). Further, 4 pages were sent to another agency for disclosure review and will be returned to this office for final response to you. Finally, we deemed 514 pages unresponsive to your request.

FOIA exemption (b)(6) permits a federal agency to withhold information and records about individuals in "personnel and medical files and similar files, the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." The definition of "similar files" has historically been broadly interpreted to include a wide variety of files, and the United States Supreme Court has held that Congress intended the term "similar files" to be interpreted broadly, rather than narrowly. I have analyzed these records and find they meet the threshold requirement of this exemption. Additionally, we have reviewed and weighed the public interest in disclosure

Page 1 of 2

of this information against the privacy interest in nondisclosure and found that the privacy interest outweighs the public's interest in disclosure.  In this case, the redacted information consisted of undisclosed cell phone numbers, account information and other unpublished information.

For all exemptions applied, we have found that it is reasonably foreseeable that disclosure would harm an interest protected by one or more of the exemptions to the FOIA's general rule of disclosure and/or that disclosure is prohibited by law.

We will continue to review the remaining records as efficiently and expeditiously as possible, consistent with the terms of the joint status report and our available resources.  Should you have questions or concerns regarding the Department's response and\or the processing of your request, any such issues should be communicated to your legal counsel and Department of Justice Attorney representing the Department in this matter.

Sincerely,


Alesia Y. Williams
Director, FOIA Appeals and Litigation
FOI/Privacy Acts Division


Enclosures: 10 pages

Page 2 of 2

| | |
|---|---|
| **From:** | Pereira, Esmeralda (OS/ASPR/OEM) /O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=USER32D79DEB <esmeralda.pereira@hhs.gov> |
| **To:** | Underwood, Lauren (HHS/ASPR/IO) /o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=user263e5598 <Lauren.Underwood@hhs.gov> |
| **Subject:** | RE: For Review: Flint DLG SOI |
| **Date:** | 2016/07/06 12:46:34 |
| **Priority:** | Normal |
| **Type:** | Note |

I think it's fine. People may still send them to Tim, but we had limited attendance so many will also go by what we write.

Esmeralda Pereira
Office: 202-205-0065
Cell: [ (b)(6) ]
esmeralda.pereira@hhs.gov
www.PHE.gov/recovery

**From:** Underwood, Lauren (HHS/ASPR/IO)
**Sent:** Wednesday, July 06, 2016 12:46 PM
**To:** Pereira, Esmeralda (OS/ASPR/OEM)
**Subject:** RE: For Review: Flint DLG SOI

If possible, yes

**From:** Pereira, Esmeralda (OS/ASPR/OEM)
**Sent:** Wednesday, July 06, 2016 12:39 PM
**To:** Underwood, Lauren (HHS/ASPR/IO)
**Subject:** RE: For Review: Flint DLG SOI

And ps, so all comments to me rather than me and/or Tim?

Esmeralda Pereira
Office: 202-205-0065
Cell: [ (b)(6) ]
esmeralda.pereira@hhs.gov
www.PHE.gov/recovery

**From:** Underwood, Lauren (HHS/ASPR/IO)
**Sent:** Wednesday, July 06, 2016 12:30 PM
**To:** Pereira, Esmeralda (OS/ASPR/OEM)
**Subject:** RE: For Review: Flint DLG SOI

Looks good. I would ask that we (NL and KD) see the consolidated comments on the metrics. Want to make sure they're ok with the final the goes back to CMS.

**From:** Pereira, Esmeralda (OS/ASPR/OEM)
**Sent:** Wednesday, July 06, 2016 12:20 PM
**To:** Lurie, Nicole (OS/ASPR/IO); DeSalvo, Karen (OS/ONC); Harris, Andrea (OS/OASH); Underwood, Lauren (HHS/ASPR/IO); Goldhaber, Benjamin (OS/ASPR/COO); Fantinato, Jessica (OS/ASPR/OEM); Boyce, Don (OS/ASPR/OEM); Phillips, Sally (HHS/ASPR/OPP)
**Subject:** For Review: Flint DLG SOI

Good afternoon – attached is a summary of yesterday's Flint DLG. Sorry for the delay in getting it to you all. I will send it out by COB if I don't hear anything.

Regarding metrics, I gave ASPE's Amy Nevel (who missed yesterday's meeting) a heads up that comments are due tomorrow.

Esmeralda Pereira
Office: 202-205-0065
Cell: [ (b)(6) ]
esmeralda.pereira@hhs.gov
www.PHE.gov/recovery

| | |
|---|---|
| **Sender:** | Pereira, Esmeralda (OS/ASPR/OEM) /O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=USER32D79DEB <esmeralda.pereira@hhs.gov> |
| **Recipient:** | Underwood, Lauren (HHS/ASPR/IO) /o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=user263e5598 <Lauren.Underwood@hhs.gov> |
| **Sent Date:** | 2016/07/06 12:46:32 |
| **Delivered Date:** | 2016/07/06 12:46:34 |

| From: | Lurie, Nicole (OS/ASPR/IO) /O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=8EB6325DE6044D8FA04C013E2CF73258-LURIE, NICO <Nicole.Lurie@hhs.gov> |
|---|---|
| To: | Underwood, Lauren (HHS/ASPR/IO) /o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=user263e5598 <Lauren.Underwood@hhs.gov> |
| Subject: | RE: Data on Marketplace enrollment for Flint |
| Date: | 2016/04/07 18:13:12 |
| Priority: | Normal |
| Type: | Note |

Very nice. Thank you

Nicole Lurie MD MSPH
Assistant Secretary for Preparedness and Response
Rear Admiral, US Public Health Service
Department of Health and Human Services
200 Independence Ave SW
Washington, DC
202 205 2882

**From:** Underwood, Lauren (HHS/ASPR/IO)
**Sent:** Thursday, April 07, 2016 9:39 AM
**To:** Lurie, Nicole (OS/ASPR/IO)
**Subject:** RE: Data on Marketplace enrollment for Flint

To summarize:

- The Medicaid expansion in Michigan covers adults up to 138% of the Federal Poverty Level. The Health Insurance Marketplace (ACA) covers individuals above 200% of the Federal Poverty Level.
- The American Community Survey (2014) identified 2,450 +/- 1,466 residents of Flint city, Genesee County, Michigan between 138% and 199% of the Federal Poverty Level. These are residents of <u>all ages</u>.
    - So on the low end, we can estimate 984 residents of all ages that are uninsured.
    - On the high end, we can estimate 3,916 residents of all ages are uninsured.
- The 2016 Marketplace enrollment for the City of Flint through April 4, 2016 indicates 2,326 residents of all ages have selected an insurance plan.
- **Based on the all ages data, we can estimate between 0 and 1,590 individuals of all ages are uninsured in Flint. (If we accept the 2,450 estimate listed above, there are only <u>134</u> individuals between 138% and 199% of the FPL that are still uninsured).**

**From:** Lurie, Nicole (OS/ASPR/IO)
**Sent:** Wednesday, April 06, 2016 10:11 PM
**To:** Underwood, Lauren (HHS/ASPR/IO)
**Subject:** FW: Data on Marketplace enrollment for Flint

Do you feel able to pull the math together between this and the prior reports? This is a tomorrow thing!

Nicole Lurie MD MSPH
Assistant Secretary for Preparedness and Response
Rear Admiral, US Public Health Service
Department of Health and Human Services
200 Independence Ave SW
Washington, DC
202 205 2882

---

**From:** Frank, Richard (OS/ASPE)
**Sent:** Wednesday, April 06, 2016 6:28 PM
**To:** Lurie, Nicole (OS/ASPR/IO); DeSalvo, Karen (OS/ONC); Reid, Anne (HHS/IOS)
**Cc:** Moore, Jonathan (HHS/ASPE)
**Subject:** Data on Marketplace enrollment for Flint

See attached

Richard G. Frank
Assistant Secretary for Planning and Evaluation
U.S. Department of Health and Human Services
200 Independence Avenue SW
Washington, D.C. 20201

202-690-7858

| | |
|---|---|
| **Sender:** | Lurie, Nicole (OS/ASPR/IO) /O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=8EB6325DE6044D8FA04C013E2CF73258-LURIE, NICO <Nicole.Lurie@hhs.gov> |
| **Recipient:** | Underwood, Lauren (HHS/ASPR/IO) /o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=user263e5598 <Lauren.Underwood@hhs.gov> |
| **Sent Date:** | 2016/04/07 18:13:10 |
| **Delivered Date:** | 2016/04/07 18:13:12 |

| | |
|---|---|
| **From:** | Hughes, Dora <dhughes@sidley.com> |
| **To:** | Underwood, Lauren (HHS/ASPR/IO) /o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=user263e5598 <Lauren.Underwood@hhs.gov> |
| **Subject:** | RE: Congratulate Lauren A. Underwood on the new position |
| **Date:** | 2016/11/03 19:42:45 |
| **Priority:** | Normal |
| **Type:** | Note |

Yay!! Congrats!!

Sent with Good Work (www.good.com)

**From:** Underwood, Lauren (HHS/ASPR/IO) <Lauren.Underwood@hhs.gov>
**Date:** Thursday, Nov 03, 2016, 1:38 PM
**To:** Hughes, Dora <dhughes@sidley.com>
**Subject:** RE: Congratulate Lauren A. Underwood on the new position

Hi Dora,
I got promoted! I'm now the Senior Advisor for Nicki in ASPR! Yay – _____ (b)(6)
_____ (b)(6)

How are you doing?

**From:** Hughes, Dora [mailto:dhughes@sidley.com]
**Sent:** Thursday, November 03, 2016 1:22 PM
**To:** Underwood, Lauren (HHS/ASPR/IO)
**Subject:** FW: Congratulate Lauren A. Underwood on the new position

What's the new gig? I don't remember my linked in password and so can't look myself.

**DORA HUGHES, MD, MPH**
Senior Policy Advisor

**SIDLEY AUSTIN LLP**
+1 202 736 8653
dhughes@sidley.com

**From:** LinkedIn Updates [mailto:messages-noreply@linkedin.com]
**Sent:** Thursday, November 03, 2016 1:14 PM
**To:** Hughes, Dora
**Subject:** Congratulate Lauren A. Underwood on the new position





\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| **Sender:** | Hughes, Dora <dhughes@sidley.com> |
| **Recipient:** | Underwood, Lauren (HHS/ASPR/IO) /o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=user263e5598 <Lauren.Underwood@hhs.gov> |
| **Sent Date:** | 2016/11/03 19:42:17 |
| **Delivered Date:** | 2016/11/03 19:42:45 |

| | |
|---|---|
| **From:** | Weinberger, Collin (OS/ASPR/IO) (CTR) /O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=641554FC7843407585827AF5898D9C26-WEINBERGER, <Collin.Weinberger@hhs.gov> |
| **To:** | Underwood, Lauren (HHS/ASPR/IO) /o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=user263e5598 <Lauren.Underwood@hhs.gov>; Lurie, Nicole (OS/ASPR/IO) /o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=8eb6325de6044d8fa04c013e2cf73258-Lurie, Nico <Nicole.Lurie@hhs.gov> |
| **CC:** | Moss, Marcille (OS/ASPR/IO) /o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=4c680a4bb39b46be8ebd457d03aeb5cc-Moss, Marci <Marcille.Moss@hhs.gov>; Callahan, Victoria (OS/ASPR/IO) (CTR) /o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=95162cb185624a6ebe5fadf08484c141-Callanhan, <Victoria.Callahan@hhs.gov> |
| **Subject:** | RE: Schedule and Material for Tomorrow |
| **Date:** | 2016/11/02 16:24:12 |
| **Priority:** | Normal |
| **Type:** | Note |

Hi Nicki,

As a follow up, don't forget to bring your briefing book with you tomorrow for GHSI.

Best,
Collin

**From:** Underwood, Lauren (HHS/ASPR/IO)
**Sent:** Wednesday, November 2, 2016 4:20 PM
**To:** Lurie, Nicole (OS/ASPR/IO) <Nicole.Lurie@hhs.gov>
**Cc:** Weinberger, Collin (OS/ASPR/IO) (CTR) <Collin.Weinberger@hhs.gov>; Moss, Marcille (OS/ASPR/IO) <Marcille.Moss@hhs.gov>; Callahan, Victoria (OS/ASPR/IO) (CTR) <Victoria.Callahan@hhs.gov>
**Subject:** Schedule and Material for Tomorrow

Nicki,
Here's what tomorrow looks like:
8:30 – 9:00 ASPR Senior Staff Meeting
9:00 – 4:30 GHSI Senior Officials Meeting
9:45 – 10:30 Weekly Political Staff Meeting (Lauren will attend)
12:30 – 1:00 PR Check in
5:30 – 6:00 UCG FEMA Report Discussion
6:30 – 8:30 GHSI Senior Official Reception

Thanks
Lauren

**Lauren A. Underwood, RN**
Senior Advisor
Office of the Assistant Secretary for Preparedness and Response
U.S. Department of Health &Human Services
Room 639D, Humphrey Building
Phone: 202-205-4246

| | |
|---|---|
| **Sender:** | Weinberger, Collin (OS/ASPR/IO) (CTR) /O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=641554FC7843407585827AF5898D9C26-WEINBERGER, <Collin.Weinberger@hhs.gov> |
| **Recipient:** | Underwood, Lauren (HHS/ASPR/IO) /o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=user263e5598 <Lauren.Underwood@hhs.gov>; Lurie, Nicole (OS/ASPR/IO) /o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=8eb6325de6044d8fa04c013e2cf73258-Lurie, Nico <Nicole.Lurie@hhs.gov>; Moss, Marcille (OS/ASPR/IO) /o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=4c680a4bb39b46be8ebd457d03aeb5cc-Moss, Marci <Marcille.Moss@hhs.gov>; Callahan, Victoria (OS/ASPR/IO) (CTR) /o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=95162cb185624a6ebe5fadf08484c141-Callanhan, <Victoria.Callahan@hhs.gov> |
| **Sent Date:** | 2016/11/02 16:24:11 |
| **Delivered Date:** | 2016/11/02 16:24:12 |

# Exhibit G

**From:** Hughes, Dora <dhughes@sidley.com>

**To:** Underwood, Lauren (HHS/ASPR/IO) /o=ExchangeLabs/ou=Exchange Administrative Group (FYDIBOHF23SPDLT)/cn=Recipients/cn=user263e5598 <Lauren.Underwood@hhs.gov>

**Subject:** RE: Congratulate Lauren A. Underwood on the new position

**Date:** 2016/11/03 19:42:45

**Priority:** Normal

**Type:** Note

Yay!! Congrats!!

Sent with Good Work (www.good.com)

**From:** Underwood, Lauren (HHS/ASPR/IO) <Lauren.Underwood@hhs.gov>
**Date:** Thursday, Nov 03, 2016, 1:38 PM
**To:** Hughes, Dora <dhughes@sidley.com>
**Subject:** RE: Congratulate Lauren A. Underwood on the new position

Hi Dora,
I got promoted! I'm now the Senior Advisor for Nicki in ASPR! Yay – _____ (b)(6)
_____ (b)(6) _____

How are you doing?

**From:** Hughes, Dora [mailto:dhughes@sidley.com]
**Sent:** Thursday, November 03, 2016 1:22 PM
**To:** Underwood, Lauren (HHS/ASPR/IO)
**Subject:** FW: Congratulate Lauren A. Underwood on the new position

What's the new gig? I don't remember my linked in password and so can't look myself.

**DORA HUGHES, MD, MPH**
Senior Policy Advisor

**SIDLEY AUSTIN LLP**
+1 202 736 8653
dhughes@sidley.com

**From:** LinkedIn Updates [mailto:messages-noreply@linkedin.com]
**Sent:** Thursday, November 03, 2016 1:14 PM
**To:** Hughes, Dora
**Subject:** Congratulate Lauren A. Underwood on the new position



