UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JACQUELINE STEVENS,                       )
                                          )
                    Plaintiff,            )
                                          )
                                          )   No. 22 C 5072
            v.                            )
                                          )
                                          )   Judge Kennelly
UNITED STATES DEPARTMENT OF               )
HEALTH AND HUMAN SERVICES, *et al.*,      )
                                          )
                    Defendants.           )

**Plaintiff's Standalone Response to HHS's Motion for Summary Judgment**

I.       INTRODUCTION

The Freedom of Information Act (FOIA) mandates that government agencies make requested records available to any person unless one of nine narrow exemptions applies. 5 U.S.C. §552(a)(3)(A). The Act places the burden on the agency to demonstrate that it has conducted a good faith and reasonable search for the 'agency records' requested and to justify any withholding or redaction in the production. *Judicial Watch, Inc. v. U.S. Secret Serv*., 726 F.3d 208, 220 (D.C. Cir. 2013). While government agencies are permitted to withhold from disclosure certain information that falls within one of the FOIA's nine exemptions, these exemptions are to be narrowly construed to promote the statute's broad disclosure policy. *In re Wade*, 969 F.2d 241, 246 (7th Cir. 1992). Furthermore, federal courts may review agency action to determine whether the agency properly withheld the information, 5 U.S.C. §552(a)(4)(B), not blindly afford deference to the agency reasoning, *City of Chicago v. A.T.F.,* 423 F.3d 777 (7th Cir. 2005). To justify summary judgment, Defendant HHS has the burden to make two showings: (1) that its search was adequate and (2) that any withheld document falls within an exemption to FOIA. Defendant has again failed to carry its burden; summary judgment should be denied.

II.      FACTS

The facts are largely undisputed. The issue presented for the Court's review is mixed

question of law and fact, to wit, application of settled legal principles to undisputed historical facts. The Court's review is *de novo*.

### III. ARGUMENTS

HHS moves for summary judgment on the ground that it conducted a reasonable and adequate search for the four categories of records identified in Plaintiff Stevens's 2019 FOIA request: (1) position announcements for jobs held by then-HHS employee Lauren Underwood; (2) reports, memoranda, or analyses she produced while at HHS; (3) travel itineraries; and (4) expense reports, all covering the period January 1, 2010, through January 22, 2017. DSOF ¶ 41. The declarations, Statement of Facts, and Plaintiff's responses to the Statement of Facts show its search was that HHS failed to design and conduct a search "reasonably calculated to uncover *all* relevant documents," as FOIA requires. *Ancient Coin Collectors Guild v. U.S. Dep't of State,* 641 F.3d 504, 514 (D.C.Cir.2011) (citations and internal quotation marks omitted) (An agency "fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was reasonably calculated to uncover all relevant documents."); *Campbell v. U.S. Dep't of Justice,* 164 F.3d 20, 27 (D.C.Cir.1998) ("The Court employs a 'reasonableness' test to determine the 'adequacy' of search methodology, consistent with the congressional intent tilting in favor of disclosure.") (internal citations omitted); *Truitt v. Dep't of State*, 852 F.2d 1486, 1489 (D.C. Cir. 1988); *see also Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). Although Defendant can meet its burden through declarations, self-serving, ambiguous, and conclusory declaration, like the ones submitted in this case, are utterly insufficient. *See Weisberg v. United States Department of Justice,* 627 F.2d 365, 371 (D.C.Cir.1980) (agency affidavit must denote which files were searched and reflect a systematic approach to document location in order to enable the appellant to challenge the procedures utilized). "At a bare minimum, the agency's affidavits need to specify 'what records were searched, by whom, and through what process.'" *Rodriguez v. DOD*, 236 F. Supp. 3d 26, 38 (D.D.C. 2017) (quoting *Steinberg v. DOJ*, 23 F.3d 548, 552 (D.C. Cir. 1994)). Here, Genuine issues of material fact preclude summary judgment.

**A. HHS Failed to Search Any Non-Email Systems of Records for Reports, Memoranda, or Analyses Produced by Underwood.**

The FOIA request here expressly sought "reports, memoranda, or analyses Underwood produced" during her HHS tenure. DSOF ¶ 41. HHS's only described effort to locate such documents was the limited "sent and receive email" search. DSOF ¶¶ 43-44. The declarations are silent as to any search of:

- shared network drives or folders;

- document management systems or repositories where policy, preparedness, or analytical work product is routinely stored;

- local hard drives or archived files associated with Underwood's workstation; or

- any other location where an HHS employee in her position would be expected to save or maintain the very documents the request sought.

HHS cannot satisfy its FOIA obligations by looking only in the place most convenient for it and ignoring every other system "likely to turn up the information requested." *Oglesby*, 920 F.2d at 68. The declarations provide no basis for concluding that reports and analyses produced by Underwood were only transmitted via emails she herself sent. The absence of any description of a search for these core categories of records renders the search per se unreasonable.

In addition, HHS fails to account for the discrepancy between its narrative of the searches and the cover letters of productions stating, "None of these documents were produced by Ms. Underwood *or sent to her exclusively*."  None of Stevens's requests confined responsive records only to those emails sent to Underwood exclusively.  For instance, the request tracked as **2020-00435-FOIA-OS** asked for..."2) Underwood's email received and sent while she was an employee at DHHS, including all attachments, *with any party who was not employed by the United States government or was not using a .gov email address*. 3) The first five emails sent and received by Underwood for each January, April, July, and November of each year she was employed by the U.S. government, regardless of the parties. (So the first five sent and received starting Jan. 1 of the first year she was employed, which could be 2010, then the first five starting on July 1, 2010, etc.)."  Dkt. 200 Stevens Decl., Feb. 26, 2023 at ¶4, emphasis added.

3

### B. The Search for Position Announcements Was Inadequate

HHS claims it queried "official personnel and staffing systems" for records relating to appointments, position classifications, and hiring documentation using Underwood's name, position titles, and organizational affiliations. DSOF ¶ 46. Those systems may contain SF-50s and other appointment paperwork, but they do not necessarily contain the position announcements themselves—the vacancy announcements that describe the job, qualifications, and duties for the positions Underwood held or applied for. Position announcements are distinct HR documents, often maintained in separate recruiting or vacancy-posting databases, USAJOBS archives, or HHS-specific HR files. HHS's declarations nowhere state that those systems were searched or that the personnel systems it did query, actually contain the announcements requested. This omission alone creates a triable issue as to whether the search was reasonably calculated to locate category (1) records.

### C. HHS's Post-Hoc Supplemental Searches—Undertaken Only After Plaintiff identified Glaring Issues with the Initial *Lancey* Declaration —Are Themselves Inadequate, Conclusory, and Self-Serving, and Do Not Cure the Deficiencies in the Agency's Initial Search.

HHS now attempts to bolster its motion for summary judgment by describing "additional searches" it performed only "[f]ollowing correspondence between counsel in late 2025 and early 2026." DSOF ¶ 57. These belated efforts were not part of the original search that began in response to Plaintiff's 2019 FOIA request and that produced records over the course of more than thirty monthly productions beginning in December 2022. DSOF ¶¶ 44, 48. Instead, they represent a classic post-hoc attempt to justify an initially unreasonable search after Plaintiff's counsel identified obvious shortcomings, without performing additional searches. Of note: the Supplemental Lancey declaration is abundantly clear that no additional searches were undertaken; instead, HHS "liaised" and "conducted outreach efforts" with unidentified individuals with unidentified expertise, and unexplained basis for asserting first-hand knowledge

4

of the matters.[1] Such after-the-fact measures cannot retroactively render an inadequate search reasonable. *See, e.g., SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1201 (D.C. Cir. 1991) (a search was found to be adequate where the agency actively looked for responsive records, investigated the accidental destruction of some records, and conducted an "unavailing room-to-room search for the box of missing documents" anyway). Moreover, the declarations submitted in support of these alleged supplemental searches are impermissibly vague, self-serving, and lacking in the concrete detail required for this Court to conduct the *de novo* review that FOIA demands. *See Oglesby v. U.S. Dep't of the Army*, 920 F.2d at 68 (affidavits must be "reasonably detailed," set forth the search terms and methods used, and allow the court to assess reasonableness without "agency say-so"). HHS's supplemental assertions consist almost entirely of unverified, hearsay-like statements that "personnel in that office responded that…" or "the office advised that…," without identifying the specific individuals consulted, the basis for their knowledge and/or expertise on the issues, the dates of the inquiries, the exact search parameters employed, or any contemporaneous documentation of the results. DSOF ¶¶ 58-69. This is precisely the sort of "self-serving assertions" that courts routinely reject as insufficient to carry the agency's burden on summary judgment. *See, e.g., Steinberg v. U.S. Dep't of Justice*, 23 F.3d 548, 552 (D.C. Cir. 1994); *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 329 (D.C. Cir. 1999).

    *SafeCard Services, Inc. v. SEC*, 926 F.2d 1197 (D.C. Cir. 1991) is instructive. There, the

---

[1] The second-hand nature of the vague and ambiguous assertions in the Lancey Supplemental declaration are particularly troubling, since they come in response to insufficiencies identified by Plaintiff in her 2 January 2026 letter brief. Here Mr. Lancey was not in charge of coordinating or performing any searches, there were no recovery efforts, and offers no details as to who provided the information and based on what inquires. Cf *Meeropol v. Meese,* 790 F.2d 942, 951 (D.C.Cir.1986) (approving reliance upon affidavit of agency employee responsible for supervising search, although he necessarily relied upon information provided by staff members who actually performed search); *Weisberg v. Department of Justice,* 627 F.2d 365 (addressing an FBI agent assertion that "he believed the [spectrographic] plate [relating to the assassination of President Kennedy] was discarded in one of the periodic house cleanings by the laboratory" without a showing that his belief was based upon his or anyone else's actual knowledge that the plate was in fact discarded).

5

D.C. Circuit found a search adequate where the agency actively looked for responsive records, investigated the accidental destruction of some records, and conducted an "unavailing room-to-room search for the box of missing documents" anyway. *Id*. at 1201. Here, HHS did not perform a similar hunt, raising "serious doubts as to the completeness of the agency's search." *Nat'l Day Laborer Org. Network*, 877 F. Supp. 2d at 96 (citation omitted).

Furthermore, HHS's affidavits provide an inadequate amount of detail. *See Gelb v. Fed. Reserve Bank of N.Y.,* No. 1:12-cv-4880-ALC, 2014 WL 4402205, at *4 (S.D.N.Y. Sept. 5, 2014) (explaining that an agency's affidavit "must describe in reasonable detail the scope of the search and the search terms or methods employed"). Specifically, here HHS provided the search terms used to search for "federal employees appointments", Supplemental Lancey Decl. at ¶ 10, yet provided no description of the search terms used for travel related records, Lancey Decl. ¶ 11. No search terms were provided for searching or even explaining effort to search for any work product of Underwood as requested in subpart 2 of the FOIA request.

1. **Position Announcements**: **HHS's Reliance on Retention Policies and System Transitions Is Conclusory and Does Not Establish That Responsive Records Never Existed or Were Properly Destroyed.**

HHS claims it conducted "additional outreach" to the Office of Human Resources, which then "searched the Department's Enterprise Human Capital Management system" and confirmed only that Underwood applied for positions in 2010 and 2014. DSOF ¶¶ 58-59. The office then asserted that HHS transitioned to a newer "USA Staffing" system around 2017-2018, that "historical records were not migrated," and that OPM retention rules require vacancy announcements to be kept for only three years. DSOF ¶ 60. On that basis, HHS "concluded" that the requested position announcements "are no longer maintained and do not exist within HHS's control." DSOF ¶ 61.These assertions raise more questions than they answer and preclude summary judgment. *First*, HHS offers no explanation why it did not search any other location where position announcements might reasonably be expected to still reside: archived USAJOBS postings, ASPR-specific recruiting files, email attachments, shared drives, or even backup tapes. *Second*, the agency provides zero detail on the actual search methodology used in the Enterprise

Human Capital Management system—search terms, date ranges, or custodians queried—rendering the Court unable to perform the required *de novo* assessment of reasonableness. *Oglesby*, 920 F.2d at 68. The agency's naked conclusion that records "do not exist" is the very definition of a self-serving assertion that cannot support summary judgment.

### 2. Travel Itineraries and Expense Reports: System Transitions and Retention Schedules Are Not a Substitute for an Actual Search

HHS's supplemental outreach to the Immediate Office of the Secretary, Office of Business Operations, yielded similarly conclusory explanations for the absence of travel itineraries (2010-2014), expense reports, vouchers, receipts, and government travel card transactions. DSOF ¶¶ 62-69. The office purportedly advised that records "would have originally been maintained" in official travel and financial systems, but that access was lost due to transitions from GovTrip to Concur Government Edition in 2015 and changes to the travel card program. DSOF ¶¶ 63, 67. HHS further invoked the NARA General Records Schedule requiring retention for only six years and three months after payment, and "accordingly determined" that responsive records "would not reasonably be expected to" exist or "do[ ] not" exist. DSOF ¶¶ 64-65, 68-69. Again, these statements are classic *post-hoc* rationalizations unsupported by concrete evidence. The declarations do not:

- identify which specific financial or travel systems were actually queried during the supplemental effort;
- explain why the agency did not restore or access archived data from the pre-2015 GovTrip or pre-transition systems;
- address whether any of the records at issue (particularly those from 2014-2017) would still fall within the six-year-three-month retention period as of 2019 – the date the FOIA request was made; or
- provide any documentation showing that the records were in fact destroyed pursuant to the schedule (as opposed to simply becoming inaccessible due to poor records management)

An agency cannot defeat a FOIA request by pointing to its own system migrations and

retention policies without first demonstrating that it conducted a search reasonably calculated to locate whatever responsive records actually still exist. *See Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885, 890-91 (D.C. Cir. 1995) (agency must search all systems "likely to turn up the information requested," even if it *believes* records may have been purged). The bare assertion that certain records "would have been" in now-inaccessible systems is insufficient as a matter of law to carry HHS's burden.

D. **The adequacy of the Search is further compromised by HHS Combining the Search Efforts for two separate FOIA requests.**

HHS chose to combine the request at issue in this lawsuit with another FOIA request that Plaintiff had separately submitted. (ECF # 214 at PAGE ID 1835; see also Dkt 200, also attached as Pl. Decl, Ex. C ¶¶ 4-11). As a result of HHS dysfunctional FOIA platform, (Pl. Decl, Ex. C at ¶¶12-14), Prof. Stevens submitted more than one request about Lauren Underwood.  This lawsuit involves a single request. Stevens alleged in her complaint that HHS had withheld records responsive to a request for records relating to Representative Lauren Underwood (D-IL), for which HHS provided tracking number 2020-00435-FOIA-OS on January 13, 2020.  Dkt. 15 (Answer) ¶¶ 20-22.

During more than 2 and a half years of litigation and repeated assertions that Defendant is purportedly acting diligently to conduct searches for the records requested and subject to this lawsuit, in December 2025 it became apparent that Defendant did not even search for records responsive to the Request underlying this lawsuit but "identified records that had been previously located in response to a substantially similar request submitted to the Department, assigned Request Number 2019-00656-FOIA-OS" and then allegedly conducted a search for both requests using some unidentified search terms and located "76,128 items, totaling approximately 14.63 gigabytes of data".

The Initial and Corrected Lancey Declarations conveniently omitted any details as to how many records were deemed responsive (after "deduplication") to the request underlying this lawsuit.

**E. Defendant HHS continues to withhold responsive records.**

The Supplemental Lancey Declaration concludes in paragraph 33 with the following statement made under penalty of perjury:

*the Department has reviewed a total of 18,824 pages of records across 32 separate productions, **of which 1,281 pages have been released to the plaintiff**.* (ECF # 214 PAGE ID 1843). The Declaration is silent as to what happened to the remaining 17,000 plus pages of records. Were they all deemed non-responsive and if so, why? Or were they withheld in full, but Defendants elected not to produce a Vaugn index, thereby thwarting this Court's de novo review? Or perhaps HHS stopped producing records? Whatever the answer may be, it is lacking from Defendant's declarations.

CONCLUSION

HHS's own Statement of Facts reveals that its initial search was unreasonably narrow and that its late-2025/early-2026 "supplemental" efforts amount to nothing more than self-serving, post-hoc justifications unsupported by the detailed, nonconclusory affidavits FOIA requires. Genuine issues of material fact remain as to whether HHS conducted a search "reasonably calculated to uncover **all** relevant documents." *Truitt v. Dep't of State*, 852 F.2d 1486, 1489 (D.C. Cir. 1988) (emphasis added). Defendant's motion for summary judgment should therefore be denied.

/s/ Nicolette Glazer
Nicolette Glazer
Attorney for Plaintiff
Law Office of Larry R. Glazer
2121 Avenue of the Stars #800
Century City, California 90067
(708) 435-0404
nicolette@glazerandglazer.com

9