UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JACQUELINE STEVENS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 22 C 5072 |
| v. | ) | |
| | ) | Hon. Matthew F. Kennelly |
| UNITED STATES DEPARTMENT OF | ) | |
| HEALTH AND HUMAN SERVICES, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT OF CBP AND HHS**

## Table of Contents

**I. Procedural History and Summary of Argument** ................................................................ 1

**II. Legal Standard** ................................................................................................................. 3

A. Agencies are Required to Make Reasonable Efforts to Search Agency Records ................... 3

B. General Judicial Deference to Agency Representations is Contrary to the Requirements of FOIA ................................................................................................................................ 4

**III. CBP's search was inadequate.** ........................................................................................ 5

A. CBP Has Not Established That Conducting the Search Stevens Proposes Would be Excessively Burdensome. ......................................................................................................... 5

1. There is no basis in the record for CBP's claim that a search for responsive records would be too burdensome. ................................................................................................................. 6

2. CBP Obstructed Stevens' Attempt to Limit the Scope of the Search Through an Informed, Iterative Process. ..................................................................................................... 7

B. CBP Does not Provide Non-Conclusory Explanations for its Refusal to Produce Documents From Component Offices of CBP other than the Office of Acquisitions. ................. 8

1. CBP Does not Provide a Coherent Explanation for its Refusal to Search the Office of the Assistant Commissioner of Congressional Affairs. ............................................................ 8

2. The Remaining Component Offices of CBP ................................................................... 10

**IV. CBP's Redactions and Withholdings are Inappropriate as a Matter of Law.** ............. 13

**V. Conclusion and Relief Requested** ................................................................................ 14

Table of Authorities

**<u>Cases</u>**  **<u>Page</u>**

*Matter of Wade,* 969 F.2d 241 (7th Cir. 1992) ....................................................................4

*White v. Dep't of Just.*, 460 F. Supp. 3d 725 (S.D. Ill. 2020), aff'd, 16 F.4th 539 (7th Cir. 2021) ......... 4-5

*Rubman v. U.S. Citizenship & Immigr. Servs.*, 800 F.3d 381 (7th Cir. 2015)....................................5

*Stevens v. U.S. Dep't of State,* 20 F.4th 337 (7th Cir. 2021) ..........................................6

*Henson v. Dep't of Health & Hum. Servs.,* 892 F.3d 868 (7th Cir. 2018) .......................................7

*City of Chicago v. Env't Def. Fund,* 511 U.S. 328 (1994) ..................................................9

*Bostock v. Clayton Cnty., Georgia*, 590 U.S. 644 (2020) .....................................................9

*Salve Regina Coll. v. Russell*, 499 U.S. 225, 226 (1991) ...................................................9

*Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024) ..................................................10

*Hall v. C.I.A.*, 881 F. Supp. 2d 38 (D.D.C. 2012) .......................................................10

*Gov't Accountability Project v. U.S. Dep't of Homeland Sec.*, 335 F. Supp. 3d 7 (D.D.C. 2018) ...................13

*Campbell v. U.S. Dep't of Just.*, 164 F.3d 20, 27 (D.C. Cir. 1998) *as                amended* (Mar. 3, 1999)

................................................................................................15

*Truitt v. Dep't of State*, 897 F.2d 540 (D.C. Cir. 1990) ..................................................16

*Enviro Tech Int'l, Inc. v. U.S. E.P.A.*, 371 F.3d 370 (7th Cir. 2004) ...........................................23

*Becker v. I.R.S.*, 34 F.3d 398 (7th Cir. 1994) ...........................................................23

*Solar Sources, Inc. v. United States*, 142 F.3d 1033 (7th Cir. 1998) ...............................................23

*Patterson v. I.R.S.*, 56 F.3d 832 (7th Cir. 1995)...........................................................23

**<u>Statutes</u>**

5 U.S.C. § 552(a)(3)(C), (D) ............................................................................3

5 U.S.C. § 552(a)(4)(B) ............................................................................ 3, 4, 13

5 U.S.C. § 552(b) ...............................................................................4, 14

**<u>Rules</u>**

Fed. R. Civ. P. 56(a) ............................................................................................................................3

U.S. Department of Justice, Procedural Requirements Proper FOIA Requests (1996) .....................3 6

Plaintiff Jacqueline Stevens ("Stevens"), through counsel, offers the following arguments in opposition to the Motion for Summary Judgment of defendant U.S. Customs and Border Protection's ("CBP") and the Department of Health and Human Services ("HHS") (jointly, "Defendants") and in support of her cross-motion for summary judgment on the same issues of law:

## I. Procedural History and Summary of Argument

On November 22, 2019, Stevens submitted a FOIA request to the Department of Homeland Security (DHS) for the following records:

> 1) all communications and related materials created, received, or maintained by the Department of Homeland Security to which Rep. Lauren Underwood (D-IL) or any member of her staff. This includes but is not limited to all email, text messages, notes, reports, memorandums, proposed bill texts, and bill evaluations. In a floor speech of 9/26/2019 Rep. Underwood stated she received information from the "Department of Homeland Security" indicating a request for an integrated Electronic Health Records System she referenced as "EHR." She refers to this in her remarks on HR 3525 as a "direct ask from medical officers at the Department of Homeland Security."

> 2) DHS communications and related materials created by or received from other components of DHS or the Department of Health and Human Services Office of Refugee Resettlement about the use of Electronic Health Records systems already in place as well as the establishment of an EHR for the use by offices of CBP.

> 3) Information on meetings and communications with private individuals, including but not limited to lobbyists or company officials related to past, current, or potential "enterprise" or other information technologies for collecting, coordinating, or maintaining health records data for those encountered or detained by DHS or any component of DHS. Technical reports, email, text messages, or other communications with the private sector tied to past, current, or potential contracts tied to EHR systems.

PSOF at ¶ 1. Stevens refers to these requests as parts 1, 2 and 3 of "the Underwood request."

On December 2, 2019, DHS sent Stevens an email notifying her that it was transferring her request for records tied to the creation of a CBP electronic health records system to CBP, and subsequently did transfer the request to CBP. PSOF ¶¶ 2, 3. On September 16, 2022, Stevens initiated this action to obtain responsive records. PSOF ¶ 3.

1

CBP produced no records until October 31, 2023, when it sent Stevens seven pages. PSOF ¶ 4. CBP originally refused to conduct a search for part two of the Underwood request because "CBP FOIA staff determined that this part of the request did not seek CBP records." PSOF ¶ 5. This Court found CBP failed to provide "any factual or logical support for its determination that a request for materials exchanged between CBP and DHS could only be fulfilled through a search of DHS records" and found CBP was "not entitled to summary judgment on part two of Stevens's Underwood request." *Id.* The Court also found CBP failed to explain why its refusal to search for records responsive to part 3 of Stevens's request was reasonable and found it was not entitled to summary judgment on part three of Stevens's Underwood request. PSOF ¶ 5.

Subsequent to this Court's August 2024 summary judgment order, the parties attended a February 28, 2025 settlement conference during which the parties conferred in order to establish a process for CBP to produce responsive records. PSOF 6. At that conference, CBP agreed to task a subject matter expert who could direct the FOIA office to custodians of records with communications with lobbyists and contractors, and to prioritize searches of email with no more than 100 pages. *Id.*

CBP's status reports since December of 2025 do not dispute Plaintiff's identification of discrepancies between the February 2025 agreement and how it performed its search. PSOF 12.

Relief in favor of Plaintiff is appropriate because there is no dispute that CBP failed to conduct a reasonable search for responsive records. Specifically, CBP failed to designate a subject matter expert to determine where to search and failed to search locations Stevens identified without providing adequate justifications. Summary judgment for Stevens is also appropriate because CBP is withholding responsive materials based on claimed exemptions without any justification, whether in a Vaughn index or a detailed affidavit.

2

## II.     Legal Standard

### A.  Agencies are Required to Make Reasonable Efforts to Search Agency Records

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

The Freedom of Information Act ("FOIA") requires agencies to "make reasonable efforts to search for the records in electronic form or format . . . for the purpose of locating those records which are responsive to a request." 5 U.S.C. § 552(a)(3)(C), (D). The statute does not make any mention of a requirement that courts accord agency representations about the reasonableness of its search a presumption of good faith. *Id.* In fact, the only portion of the statute that requires courts to defer to the agency is its affidavit determination as to technical feasibility under paragraph (2)(C) and subsection (b) and reproducibility under paragraph (3)(B)." *Id.* § 552(a)(4)(B). In all other respects, "the burden is on the agency to sustain its action." *Id.*

A search for records must be "reasonably calculated to uncover all relevant documents." *Matter of Wade*, 969 F.2d 241, 249 n.11 (7th Cir. 1992) (internal citation omitted). The agency "must search its record systems where responsive information is likely to be located." *White v. Dep't of Just.*, 460 F. Supp. 3d 725, 748–49 (S.D. Ill. 2020), aff'd, 16 F.4th 539 (7th Cir. 2021) (internal citation omitted). Courts judge the adequacy of a search under a reasonableness standard, irrespective of "good faith." *Rubman v. U.S. Citizenship & Immigr. Servs.*, 800 F.3d 381, 387 (7th Cir. 2015).

An agency may meet its burden through "reasonably detailed, nonconclusory affidavits submitted in good faith," which describe the search terms used, the methods employed, and affirm that all files likely to contain responsive materials were searched. *Rubman*, 800 F.3d at 387; *Stevens v. U.S. Dep't of State*, 20 F.4th 337, 343 (7th Cir. 2021); *White*, 460 F. Supp. 3d at 748–49; *Henson v. Dep't of Health & Hum. Servs.*, 892 F.3d 868, 875 (7th Cir. 2018).

3

Plaintiffs can rebut agency affidavits about the adequacy of a search through "countervailing evidence as to the adequacy of the agency's search," particularly where there are "positive indications of overlooked materials" or failures to search locations likely to contain responsive records. *Rubman*, 800 F.3d at 387 (internal citation omitted); *White*, 460 F. Supp. 3d at 748–49.

B. General Judicial Deference to Agency Representations is Contrary to the Requirements of FOIA

A presumption of agency "good faith" across all issues in a FOIA matter is contrary to the text of the FOIA. The statute's instructions for district courts to defer to agency representations in the FOIA exemption context is limited. It provides, "In addition to any other matters to which a court accords substantial weight, a court shall accord substantial weight to an affidavit of an agency concerning the agency's determination as to technical feasibility under paragraph (2)(C) and subsection (b) and reproducibility under paragraph (3)(B)." 5 USC § 552(a)(4)(B). The reference to technical feasibility in subsection (b) relates to whether the agency is required to provide details regarding redactions. 5 USC § 552(b)(9).

There is no provision in FOIA saying that courts are generally required to accord substantial weight to agency representations. This omission should inform FOIA's interpretation by reviewing courts. See *City of Chicago v. Env't Def. Fund*, 511 U.S. 328, 338 (1994) (noting presumption that Congress acts intentionally when it includes particular language in one section of a statute but omits it in another); *Bostock v. Clayton Cnty., Georgia*, 590 U.S. 644, 673–74 (2020).

In fact, the language of FOIA's exemption provision is incompatible with general deference to agency representations. FOIA requires that in determining whether records were improperly withheld, "the court shall determine the matter de novo." 5 U.S.C. § 552(a)(4)(B). The requirement of de novo review is the opposite of deference. *Salve Regina Coll. v. Russell*, 499 U.S. 225, 226 (1991) ("When de novo review is compelled, no form of appellate deference is acceptable.").

4

Nor is deference appropriate simply because defendants in FOIA cases are government agencies. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 408–09 (2024) ("Once more, the basic nature and meaning of a statute does not change when an agency happens to be involved. . . The statute still has a best meaning, necessarily discernible by a court deploying its full interpretive toolkit.").

Deference to agency representations as to the reasonableness of its search and the validity of its claimed exemptions is therefore inappropriate, except with respect to the feasibility of indicating redactions within the production.

### III. CBP's search was inadequate.

In the course of the last five years and four months, CBP has failed to conduct a search reasonably likely to generate responsive documents. As explained in this section, it has refused to search locations Stevens identified as likely to contain relevant documents without providing an adequate explanation, failed to follow up on leads Stevens provided suggesting CBP possessed documents, and failed to respond to follow-up questions from Stevens that were designed to identify appropriate search locations and limit the scope of the search.

A. <u>CBP Has Not Established That Conducting the Search Stevens Proposes Would be Excessively Burdensome.</u>

CBP argues that the search Stevens proposes would be too burdensome. Dkt. 213 pp. 8-9. CBP cannot establish that it would be too burdensome to search the locations Stevens has proposed, because it provides no information about the efforts required to search those locations, especially in light of the limitations to which Stevens agreed subsequent to CBP's initial running of search terms. CBP has also failed to establish that the responsive records would be too voluminous to process.

Agencies bear the burden of establishing that a requested search is too burdensome for compliance, and courts "will not find a search unduly burdensome on conclusory statements alone."

*Hall v. C.I.A.*, 881 F. Supp. 2d 38, 53 (D.D.C. 2012); U.S. Department of Justice, Procedural Requirements Proper FOIA Requests (2025), 2025 WL 3150780, at *1, n. 118, 119 (collecting cases).

It is not the plaintiff's responsibility to design an appropriate search for the agency. *Gov't Accountability Project v. U.S. Dep't of Homeland Sec.*, 335 F. Supp. 3d 7, 12 (D.D.C. 2018) ("FOIA requests are not a game of Battleship. The requester should not have to score a direct hit on the records sought based on the precise phrasing of his request. Rather, the agency must liberally interpret the request and frame its search accordingly.")

1. There is no basis in the record for CBP's claim that a search for responsive records would be too burdensome.

CBP alludes to the existence of tens of millions of pages of potentially responsive records, but that is not the set of documents Stevens is asking CBP to process. That search relates to CBP's 2024 initial scan of records in the Office of the Commissioner, the Office of Field Operations, Operations Support's sub-office called the Office of the Chief Medical Officer, Public Affairs, and the Office of Acquisition. Dkt. 214 (DSOF[1]) ¶¶ 10-11, 25. The claim that tens of millions of pages are at issue ignores Stevens's agreement to limit the scope of the search to records generated in 2019 and to documents comprised of 100 pages or fewer. PSOF 6, 8. Indeed, when this limitation was applied to the claimed 2.3 million pages found in the Office of Acquisition, it resulted in reducing the volume of potentially responsive records by more than 92%. Dkt. 214 (DSOF) at ¶¶ 19-20.

CBP does not explain how many pages of responsive records are at issue in the search Stevens currently requests (limited to documents produced between 2017 and 2019 comprised of 100 pages or fewer, and discrete sub-offices of CBP), nor otherwise explain why a search of those records would be unduly burdensome. Dkt. 214 (DSOF); PSOF 14.

---

[1] DSOF refers to CBP's 56.1 Statement of Material Facts.

6

Despite the fact that it rebuffed Stevens' attempts to assist with designing parameters of a reasonable search, CBP contends, "Absent agreement from Stevens on search terms to narrow the enormous universe of potentially responsive records, her request is too burdensome to require CBP to produce anything further." Dkt. 213 at p. 8; PSOF 8, 12, 14-15. It cites to a case in which a court absolved the agency of processing 1.6 million pages of documents, contending that here Stevens is asking CBP to process "*tens* of millions of pages." *Id.* (emphasis in original). But again, CBP is talking about a different set of documents than the one at issue, in different locations and with the limitation of documents from the 2017-19 time period that are 100 pages long or fewer, and has provided suggested search terms. Pl's Resp. to DSOF 33; PSOF 8. CBP has not provided any specific information suggesting what efforts the search locations Stevens proposes would entail, has not tasked an expert with identifying locations most likely to contain responsive documents, and has not produced many responsive records, and has not come up with its own search terms.

CBP has not satisfied its burden of establishing it conducted a reasonable search.

2. CBP Obstructed Stevens' Attempt to Limit the Scope of the Search Through an Informed, Iterative Process.

The claim that tens of millions of pages are at issue further ignores the parties' agreement, and Stevens's efforts, to narrow the scope of the documents at issue. At the February 28, 2025, the parties agreed to specific parameters for conducting a more precise search designed to find responsive records. Specifically, CBP agreed to task someone with specific knowledge of locations likely to have records on CBP communications with lobbyists and Congress, and to elicit narrowing based on an iterative production of records. PSOF 6. CBP failed to provide records pursuant to this agreement that could have assisted the parties in arriving at the parameters of targeted, follow-up searches (if necessary), instead insisting that Stevens provide specific search terms without the benefit of the agreed iterative process. PSOF 7. CBP has contended in several filings that in its

judgment, the Operations Support's sub-office called the Office of the Chief Medical Officer is the "*most* likely office to have responsive records" (without explaining why that is the case). Dkt. 109 at ¶ 2; Dkt. 140 at ¶ 8; Dkt. 214 (DSOF) at ¶¶ 10, 14-16. It is not clear, however, whether it has produced documents from that office, and it is not clear how many pages are at issue in light of the limitations Stevens has proposed. PSOF 11.

> B. <u>CBP Does not Provide Non-Conclusory Explanations for its Refusal to Produce Documents From Component Offices of CBP other than the Office of Acquisitions</u>.

CBP does not provide adequate explanations for its assertions that certain components within CBP are unlikely to contain responsive records.

Summary judgment is improper if "the record leaves substantial doubt as to the sufficiency of the search." *Campbell v. U.S. Dep't of Just.*, 164 F.3d 20, 27 (D.C. Cir. 1998), *as amended* (Mar. 3, 1999) (internal citation omitted). Agencies cannot "limit [their] search to only one record system if there are others that are likely to turn up the information requested." *Oglesby*, 920 F.2d at 68. When presented with new information, the agency "must revise its assessment of what is "'reasonable'" in a particular case to account for leads that emerge during its inquiry." *Campbell*, 164 F.3d at 28 ("Here, the FBI started with the reasonable assumption that only a CRS review would be necessary, but that assumption became untenable once the FBI discovered information suggesting the existence of documents that it could not locate without expanding the scope of its search.").

When the scope of a search is challenged, the agency "must demonstrate 'beyond material doubt' that the search was reasonable." *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990) (internal citations omitted).

> 1. CBP Does not Provide a Coherent Explanation for its Refusal to Search the Office of the Assistant Commissioner of Congressional Affairs.

After having received documents from DHS indicating the existence of a $30 million congressional appropriation for a CBP EHR system, Plaintiff asked that CBP search the office of

8

the Assistant Commissioner of Congressional Affairs for documents responsive to Requests 2 and 3. PSOF 15. Plaintiff also sent Defendant a copy of the documents. PSOF 16. CBP responds that the need for a search of the Office of Congressional Affairs "was already satisfied in response to part *one* of the 'Underwood' request." Dkt. 213 at pp. 7-8.

CBP is mistaken that the Court made any ruling that was dispositive of whether it would be reasonable to search the Office of Congressional Affairs for information about lobbying and internal communications related to EHR systems. This Court's summary judgment decision of August 30, 2024, related to only part one of Stevens's Underwood requests, which the Court identifies as "materials 'to which Rep. Lauren Underwood (D-IL) or any member of her staff were a party.'" Dkt. 102 at pp. 2, 10. The Court held that CBP had demonstrated its search was reasonable as to that specific request. *Id.* at pp. 10-15.

That decision is not determinative of whether CBP should search the Office of Congressional Affairs for a different set of records pursuant to a different FOIA request. Whereas part 1 of the Underwood request sought communications to which Rep. Underwood was a party, parts 2 and 3 seek information (now limited to pre-2020) related to the use or establishment of EHR systems, as well as communications with lobbyists about the same. PSOF 1. The fact that the Court found CBP to have adequately searched for communications with Rep. Underwood for part 1 is not dispositive of the reasonableness of the search at issue. The office may be in possession of records about EHR systems *other* than communications with Rep. Underwood.

Stevens has attempted to obtain from CBP a coherent explanation as to the reasons for its contention that this Court has ruled on the appropriateness of its search of the Office of Congressional Affairs. Stevens asked, through counsel, "If you continue to believe that the requested search is duplicative, please identify the precise section of the summary judgment opinion you believe is dispositive of the current request." PSOF 14. CBP never responded to that request,

9

and even now fails to explain why CBP's compliance with a request about Rep. Underwood warrants summary judgment on a request for internal communications and communications with lobbyists. *Id.*; Dkt. 213 at p. 8.

According to the CBP website,

> The Office of Congressional Affairs (OCA) serves as the single point of contact within CBP for all communications between CBP and Congress. It is responsible for advising CBP managers on legislative and Congressional matters as well as helping members of Congress and their staff understand the many complex CBP programs and proposed programs.

PSOF 17. Since actual EHR programs are exactly what are at issue in Stevens's FOIA requests, and since there is evidence of a 2019 congressional appropriation for this purpose, it appears to Stevens that the OCA would be an appropriate office to search. If it is not, CBP has offered no explanation.

2. The Remaining Component Offices of CBP

The justifications CBP offers for refraining from searching or processing documents in the remaining offices are conclusory. In some cases, there is affirmative evidence of their unreliability.

CBP provides inadequate explanations for its refusal to search for responsive records in its component offices other than the Office of Acquisitions. Indeed, affirmative evidence calls into question the reliability of Howard's Declaration. Howard has declared that Air and Marine Border told him that division had no responsive records. Dkt 214 at ¶ 13 (citing Ex. B [2026 Howard Decl.] ¶ 10 and Dkt. 115 ¶ 3). Yet, CBP recently produced emails indicating that office's involvement in technology contracts. PSOF 18. The production includes emails from March 2, 2017, from someone with the title, "Contract Specialist" at the "Air & Marine Border Technologies Contracting Division Office." *Id.* Air & Marine Border Technologies Contracting Division Office is within Air & Marine Operations. *Id.*

Howard's reliance on inaccurate statements from unaccountable entities calls into question his other boilerplate statements about no records being located particular locations. Who exactly at Air

10

and Marine operations responded? Did this individual conduct a search? What about the other anonymous officials Howard references? Where is the evidence to support any of his statements are accurate, or even credible?

That said, the email to/from the Strategic Enterprise Programs Division Enterprise Services, Office of Acquisition suggests that many of the records Stevens flagged as unresponsive following the hearing on Feb. 28, 2025 are tied to an unrelated FOIA request on Remote Video Surveillance Systems, and have nothing to do with EHRs, the subject of Stevens's FOIA request. PSOF 11. In sum, affirmative evidence indicates that Howard's Declarations are unreliable and the search inept at best.

CBP seems to concede that it is worth exploring the Office of the Commissioner for records responsive to parts 2 and 3 of the Underwood requests. Following denial of summary judgment on those parts, it "tasked" the Office of the Commissioner to search for records "in case someone in that office had oversight of the relevant topic." Dkt. 214 (DSOF), Ex. B at ¶ 8. More than a year later, CBP has yet to produce any documents from that office, nor explain what kinds of records were found in that office, nor explain why follow-up searches would be infeasible, nor explain why records in that office are unlikely to be responsive.

CBP declined to search Enterprise Services, claiming that it "has no probable link to electronic health records." Dkt. 214 (DSOF) at ¶ 12. This Court has no reason to trust this representation. Not only is it conclusory, but there is affirmative evidence suggesting otherwise. CBP's website and the records it produced on March 20, 2026, suggest that Enterprise Services possesses records relating to EHS systems. First, CBP describes the Office of Information and Technology, which is within Enterprise Services, as being "responsible for implementation and support of information technology . . . . OIT personnel manage all computer and related resources . . . establish requirements for computer interfaces between U.S. Customs and Border Protection and various

trade groups and government agencies; and manage matters related to automated import processing and systems development." PSOF 19. It would seem, therefore, that if an EHS system were implemented in 2019, the Office of Information and Technology would be in possession of documents related to that implementation. Second, CBP's March 20, 2026, production reflects email messages from an "Executive Officer" of Enterprise Services and individuals representing the Office of Information and Technology. PSOF 20. CBP does not explain how it arrived at the conclusion that Enterprise Services has no probable link to electronic health records, and it appears that conclusion is factually inaccurate.

Similarly, CBP declined to search International Affairs, claiming that it "has no probable link to electronic health records." Dkt. 214 (DSOF) at ¶ 12. This claim is conclusory. Moreover, there is an international element to CBP's use of electronically stored biometric and biographical data from numerous sources. According to a U.S. Immigration and Customs Enforcement website, there is a program called BITMPAP used by CBP whose purpose is to "develop a high-impact global network of foreign law enforcement partners whose biometric collection and investigative missions are mutually beneficial . . . ." PSOF 21. Stevens flagged the existence of this program in a declaration filed in December of 2025. *Id.*

With respect to the Office of Policy and Planning, CBP writes that it "reached out to the Office of Policy and Planning," which responded "that it had no records regarding guidance or implementation of EHR systems." Dkt. 214 (DSOF) at ¶ 37.

CBP followed an identical process with the Executive Director of Public Policy and received an identical response. Dkt. 214 (DSOF) at ¶ 31.

CBP followed an identical process with the Office of Intergovernmental Public Liaison, which "responded in February 2026 that it had no records regarding EHR systems or any communications about them." Dkt. 214 (DSOF) at ¶ 38.

12

 Informal requests to unnamed employees with unknown positions and no information on their respective search protocols can elicit only conclusory statements that do not meet CBP's burden of demonstrating "beyond material doubt" that its search was reasonable. *Truitt*, 897 F.2d at 542.

Because Plaintiff has demonstrated that CBP's search was inadequate, she is entitled to summary judgment as to the adequacy of the search.

IV.     **CBP's Redactions and Withholdings are Inappropriate as a Matter of Law**.

This Court "has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld," a determination the Court makes de novo. 5 U.S.C. § 552(a)(4)(B). The "burden is on the agency" to establish the applicability of an exemption "by a preponderance of the evidence." *Enviro Tech Int'l, Inc. v. U.S. E.P.A.*, 371 F.3d 370, 374 (7th Cir. 2004).

Courts can determine that documents are exempt if they are provided "adequate factual basis" for the determination. *Becker v. I.R.S.*, 34 F.3d 398, 402 (7th Cir. 1994). Courts construe the exemptions "narrowly given the general policy favoring disclosure." *Solar Sources, Inc. v. United States*, 142 F.3d 1033, 1037 (7th Cir. 1998). Agencies typically meet their burden through *Vaughn* index, "a comprehensive listing of each withheld document cross-referenced with the FOIA exemption that the Government asserts is applicable." *Solar Sources*, 142 F.3d at 1037. Agencies can also meet this burden through agency affidavits that "describe the documents withheld and the justifications for nondisclosure in enough detail and with sufficient specificity to demonstrate that material withheld is logically within the domain of the exemption claimed." *Patterson v. I.R.S.*, 56 F.3d 832, 836 (7th Cir. 1995) (internal citation omitted). However, "an affidavit that contains merely a categorical description of redacted materials coupled with categorical indication of anticipated consequences of disclosure is clearly inadequate." *Id.*

13

CBP has produced no Vaughn index or any other particularized statements explaining redactions or withholdings following this Court's order denying CBP's motion for summary judgment for parts 2 and 3 of Stevens's requests. Dkt 102. Instead, it has simply redacted or withheld in full responsive records. Howard admits that its productions included redactions or withholdings. Dkt. 214 (DSOF), Ex. B at ¶ 34. Howard explains that "CBP FOIA has not had sufficient time to prepare a *Vaughn* index," and that consequently "I am aware that the court will not be considering the propriety of CBP's withholdings as a part of the motion for summary judgment." *Id.*

On March 20, 2026, CBP produced an additional 139 pages of highly redacted emails and other records, without a Vaughn Index or affidavit. PSOF 11. In the cover letter to that production, CBP writes that it withheld "209 pages . . . in full pursuant to FOIA Exemptions 4, 6, 7C, and 7E." *Id.* (citing Stevens Decl. Ex. A). The only explanation for that withholding that CBP provides is the following statement from the same cover letter: "The withheld files are personal alien material which contained a @gdit email address, or protected business information related to scope cameras." *Id.* This statement merely vaguely references exempt categories and violates the obligation to provide a rationale. Absent this, the opposing party and the Court have no opportunity to evaluate whether segregable information exists in these 209 pages. 5 U.S.C. § 552(b) ("Any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection.")

Because there is no question that CBP did not meet its burden in establishing the applicability of FOIA exemptions, Stevens is entitled to summary judgment as to whether its withholdings and redactions are permissible.

## V. Conclusion and Relief Requested

For these reasons, CBP failed to meet its burden to justify its searches, redactions, and withholdings. Accordingly, Stevens requests that this Court order CBP to:

14

1. Release all records identified in its production cover letters as responsive in full to Stevens within 7 days of this order.

2. Within 7 days of this order, provide Stevens contact information for CBP officials with knowledge of the CBP Electronic Health Record/Electronic Medical Record contracts referenced in the DHS memorandum of January 2020, for purposes of conferring as to the precise custodians and likely search terms for records responsive to Stevens's requests, part 2 and 3, and within 7 days of that, conduct any resulting agreed search, and produce the responsive documents to Stevens within 14 days. If no search is agreed, then within 7 days of the determination of a lack of agreement, CBP must provide Stevens dates for deposition of those subject matter experts and of CBP.

Respectfully submitted,

Jacqueline Stevens

By: s/ Rima Kapitan
Atty No. 6286541
Kapitan Gomaa Law, P.C.
P.O. Box 46503
Chicago, IL 60646
(312) 566-9590
rima@kapitangomaa.com

15