UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JACQUELINE STEVENS,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT, *et al.*,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 22 C 5072<br><br>Honorable Matthew F. Kennelly |

**Steven's Motion for Compliance with Court's Summary Judgment Order that ICE 1) Process Documents it Deemed Potentially Responsive and 2) Redo the Search for Records Relating to Silvestre**

The plaintiff, Jacqueline Stevens ("Stevens" or "Plaintiff"), respectfully requests that this Court order U.S. Immigration and Customs Enforcement ("ICE") to process documents it previously determined were responsive to Stevens's FOIA requests, and moves for an order requiring ICE to comply with this Court's previous direction that it "redo the search for responsive records for Silvestre." In support of these motions, Plaintiff states as follows:

## I. Introduction

This memorandum elaborates on Plaintiff's contentions in paragraphs 15 and 17 of the parties' August 27, 2026 Joint Status Report, as ordered by the Court during its August 28, 2026 status hearing. Dkt. No. 258 ¶¶ 15, 17; Dkt. No. 259. It addresses a disagreement between the parties about the current procedural status of the Court's rulings with respect to a) ICE's processing of a subset of documents that were at issue in the parties' cross-motions for summary judgment prior to the appeal, partial reversal, and remand of this matter and b) ICE's compliance with the Court's January 2025 order that ICE "redo the search for responsive records for Silvestre." First, as Stevens

demonstrates below, there are thousands of pages of documents that ICE determined were potentially responsive. This Court granted Stevens's motion for summary judgment as to whether these records were unlawfully withheld, and ICE never processed the documents. Second, following this Court's order that ICE redo the search for responsive records for Silvestre, Hoang, and Charpentier, ICE complied as to Hoang and Charpentier but not as to Miguel Silvestre.

## II. Argument

A. ICE has not processed more than 10,000 pages of documents that this Court ordered it must produce.

In its summary judgment filings, ICE reported that it located 13,703 pages of potentially responsive records and produced 2,802 pages of those records to Stevens (with redactions and withholdings). Dkt. 121 at p. 3; Dkt. 89 (Pineiro Decl.) at p. 29, ¶ 66. In her cross-motion for summary judgment, Stevens contended that she was entitled to summary judgment as to Count III, which alleged (in relevant part) that ICE unlawfully withheld agency records related to Miguel Guzman Silvestre, Toan Hoang, and Pascal Charpentier. Dkt. 1 (Compl.) ¶¶ 36-53, 108-116; Dkt. 96 at p. 6. Specifically, her summary judgment motion contended that ICE "failed to produce to Plaintiff all responsive records uncovered by the searches." Dkt. 96 at p. 6. She explained,

> Although the searches performed returned **13,703 pages** in total, Defendant ICE arbitrarily decided to produce **only 2,802 pages to Plaintiff**. ECF #89 at ¶¶69-70. Because Defendant has failed to produce over 10,000 pages of "potentially responsive records" and has provide no explanation for such colossal omission, summary judgment is warranted in favor of Plaintiff.

*Id.* (emphases in original).

This Court granted Stevens's motion for summary judgment as to whether ICE unlawfully withheld records and performed an inadequate search. Dkt. 121 at p. 25 ("In conclusion, the Court denies Stevens's motion for summary judgment [dkt. no. 96] on Count 1 but grants her motion on Count 3.") (emphasis added). The Court explained:

> In particular, Stevens contends that there are over 10,000 pages of documents that

> ICE identified as potentially responsive but that were withheld without a sufficient explanation or description of which program office they came from, or even to which request they relate. Based on the record, no reasonable factfinder could find that ICE performed its search reasonably and in good faith. This is not a question of whether ICE "*might* have additional, unidentified responsive documents in its possession." *Id.* Rather, ICE has affirmed that there *are* over 10,000 pages of potentially responsive documents found by the various program offices, yet it has not sufficiently explained how it determined which of these pages to produce "to allow the . . . court to determine if the search was adequate." *Oglesby*, 920 F.2d at 68.

Dkt. 121 at p. 16. In its Conclusion, the Court "order[ed] ICE to produce all responsive records, without redaction, to Stevens by January 30, 2025." Dkt. 121 at p. 25. Nothing in this order limited the instruction to the 2,802 pages that were produced in redacted form; the instruction was to "produce all responsive records." *Id.* ICE then appealed "from the order (Dkt. 121) entered in this action on January 16, 2025, directing ICE to produce certain records in response to a Freedom of Information Act request." Dkt. 134. On April 1, 2025, this Court then stayed the order to produce responsive records pending ICE's appeal. Dkt. 153; Dkt. 182 at p. 1. On January 2, 2026, this Court entered an injunction with the following instruction effectuating its summary judgment order: "For the reasons stated in this Court's January 16, 2025 order (Dkt. No. 121), this Court hereby enters an injunction, pursuant to Federal Rule of Procedure 65, requiring ICE to provide to Stevens all records identified as responsive to Plaintiff's FOIA requests in full without redactions." Dkt. 182 at pp. 1-2. ICE then appealed "the injunction dated January 2, 2026." Dkt. 183.

What seems to have led to a disconnect between the parties is ICE's conflation of the Court's order of production of the more than 10,000 pages of "potentially responsive" records with the Court's additional findings and ruling about a) the scope or adequacy of the search (a matter that was subsequently resolved as to Charpentier and Hoang), and b) its findings with respect to the propriety of redaction of the 2,802 pages of records produced. Those findings are unrelated to the issue of whether ICE improperly failed to process ~10,000 pages of documents it deemed to be

responsive.

ICE has not disputed that it has identified over 10,000 pages of potentially responsive records it did not produce, either before the district court or on appeal. It has not even explained why it has not processed and produced these records. In its appellate briefings, ICE did not challenge the Court's ruling that ICE failed to justify the withholding of 10,000 pages of additional records it had deemed potentially responsive. App. Doc. 4. In its June 22, 2026 ruling on the appeal, the Court of Appeals expressed uncertainty as to the scope of the injunction order's instruction that ICE produce "all records identified as responsive to Plaintiff's FOIA requests," vacated the injunction order as "not adequately detailed," and instructed that it be reissued. App. Doc. 46 at pp. 4, 8. The Court of Appeals issued its mandate on August 14, 2026. Dkt. 249.

B. ICE complied with the Court's order to redo the search for Charpentier and Hoang but not for Silvestre.

ICE has provided no new affidavits or records in compliance with the Court's order that ICE "redo the search for responsive records for Silvestre." Dkt. 121 at 25-26. To date, Stevens has only received four pages of database printouts in response to her request for records for Silvestre, a citizen who was subjected to multiple removal orders by ICE. See Dkt. 141 (Pl's Resp. to ICE's Supp. Affidavit) at p. 6, ¶ 7; App. Dkt. 28 at p. 44.

In its summary judgment order, the Court identified four matters at issue in Count III:

1) whether "ICE failed to adequately search for the portion of [Stevens's] FOIA request 'seeking prison grievances, commissary account data, and work program participation.'";
2) whether ICE's proffered affidavit contained a sufficient explanation of why ICE elected to search certain databases and not others for the requested records;
3) whether the search terms ICE used were adequate; and
4) whether the withholding of records based on FOIA exemptions was justified and whether

ICE failed to segregate exempted material.

Dkt. 121 at pp. 7-8. The Court granted Stevens's motion with respect to Count III, except that it rejected her contention that the search terms ICE used to search for Silvestre's records were inadequate. Dkt. 121 at pp. 18, 25-26. With respect to the scope of the search for the Silvestre records, in her motion for summary judgment Stevens identified specific locations and pointed out that there was no explanation for ICE having refrained from searching those locations:

> As [ICE's] Declaration makes clear the only ERO, HSI, and OPLA were tasked to search within their records. (ECF # 89 at 21-24). . . . With respect to Mr. Silvestre the Declaration states that "a Supervisory Detention and Deportation Officer conducted a search of *databases* using the subject's Alien Number ("ANumber")", ECF # 89 para 27, but does not state the name of the database searched. . . . Defendant does not explain why Defendant elected not to search EARM and RAILS for Mr. Silvestre . . . . OPLA in turn, conducted the following searches. For Mr. Silvestre OPLA in Phoenix searched their share drive databases, the PLAnet system, the ENFORCE component of EARM, and RAILS. However, OPLA in El Centro – the agency where the section 240 removal originated from – conducted no search for its records.

Dkt. 96 at pp. 8-9.

The Court agreed that ICE did not demonstrate it searched appropriate locations for the Silvestre records, writing:

1) "Pineiro's declaration . . . does not provide an explanation regarding why 'no other record system was likely to produce responsive documents' . . . ." Dkt. 121 at p. 14

2) "Pineiro's declaration . . . does not sufficiently explain which of the potentially responsive records found in each of the program offices for each of the individual requests were ultimately produced to Stevens." *Id.* at p. 15.

With respect to the latter point, the Court pointed out, "[I]t is possible that the entirety of the 2,802 pages that were released could have come entirely from OPLA's search for Charpentier's records. Dkt. 121 at p. 15. The Court then ordered ICE to "redo" the searches, explaining,

> [T]he Court grants Stevens's motion with regard to the insufficiency of the search for the portion of her FOIA requests seeking prison grievances, commissary account

> data, and work program participation. ICE must either redo the search or submit another declaration averring and *explaining* why no other program offices are likely to contain these specific responsive records, or both, by no later than January 30, 2025.

Dkt. 121 at p. 16; *see also Id.* at pp. 25-26 ("The Court also orders ICE to redo the search for responsive records for Silvestre, Hoang, and Charpentier and submit a new affidavit sufficiently explaining how it conducted its search such that it meets the parameters the Court has outlined above.").

Subsequently, ICE produced a supplemental declaration acknowledging that the Court ordered it to redo the searches for Hoang and Charpentier but saying nothing about Silvestre. Dkt. 139 at p. 5, ¶ 4. For Hoang and Charpentier, ICE explained a) why it did not search certain program offices and b) the nature of supplemental searches it initiated subsequent to the Court's order (accounting for misspelling of Toan Hoang's name and omission of the alias "Pascual Carpenter" from the previous search). Dkt. 139 at pp. 1-2. ICE then processed records that materialized as a result of this Court's order and produced them to Stevens on February 27, 2025. Dkt. 154 ¶¶ 9, 10. The declaration did not even mention Silvestre, did not explain which "databases" it searched for the Silvestre records sought, and did not explain why it was not appropriate to search the locations Stevens identified in her motion for summary judgment. Dkt. 139.

Although ICE is the party with the most information about where the responsive records for Silvestre are likely to be located, ICE not only failed to provide a description of likely locations but appears to have disregarded the locations Stevens suggested and has not explained why those locations are unlikely to contain responsive records. For example, there is no indication in the record as to whether ICE has searched facilities where Silvestre was held, including El Centro (which Stevens referenced in her motion for summary judgment) or Eloy Detention Facility, which was identified in the summary judgment briefing in the EOIR part of this case. Dkt. 96 at p. 9; Dkt. 91-1 at p. 7 ¶ 28, pp. 17-18. As Stevens pointed out in her motion for summary judgment, Plaintiff's

FOIA request itself "specifically noted that '*that components and officials that track detention facility compliance with ICE contracts are likely to have responsive records and will need to be queried.*'" Dkt. 96 at p. 8 (emphasis in original). To date, ICE has not explain why it refrained from searching detention facilities, field offices, or other locations where Silvestre was known to have been transferred.

The parties appear to have failed to notify the Court in their May 2025 status report whether or not ICE complied with the Silvestre part of the summary judgment order. Dkt. 154. On June 13, 2025, following ICE's second search, this Court found that ICE's declaration explaining the parameters of its second search was sufficient and that "the only remaining issues regarding the plaintiff's claims against ICE involve the matters that have been stayed pending appeal." Dkt. 161.

Stevens makes no further objections to the scope of the search for records relating to Charpentier and Hoang, but requests compliance with the Court's order that ICE redo the search for records for Silvestre.

**III. Conclusion**

Two matters seem to have gotten lost in the shuffle while this case was on appeal: a) the processing of the approximately 10,000 pages of documents that ICE already deemed responsive in its initial search and b) ICE's "redo" of the search for records relating to Silvestre.

Stevens therefore requests that the Court's revised injunction order reflect its prior ruling that ICE produce the remainder of what it described as the "13,601 pages of potentially responsive records that were sent to the ICE FOIA Office for review and processing." Dkt. 89 (Pineiro Decl.) at p. 29, ¶ 66. Stevens acknowledges that this production must comply with the Court of Appeals' instruction regarding recognition of privileges ICE is not "free to waive." App. Doc. 46 at p. 8.

Plaintiff requests prompt processing of the documents, in light of a) the fact that these documents that ICE deemed potentially responsive have now been withheld for more than four years, b) the fact that this Court ordered production of these documents in January of 2025, and c)

the fact that ICE did not submit any argument on appeal as to that portion of this Court's order. Plaintiff requests a processing rate of 5,000 pages per month, starting on November 1, 2026. This production schedule provides the agency some flexibility while recognizing the FOIA statute's requirement that agencies "make the records promptly available." 5 U.S.C. § 552(a)(3)(A). This rate of production is consistent with or slower than the rates of production ordered by several other courts. *Clemente v. Fed. Bureau of Investigation*, 71 F. Supp. 3d 262, 269 (D.D.C. 2014) (ordering the FBI to process 5,000 documents per month); *NRDC v. Dep't of Energy*, 191 F.Supp.2d 41, 43 (D.D.C. 2002) (ordering the "vast majority" of the processing of ~7500 pages to be completed within 32 days); *Open Soc'y Just. Initiative v. Cent. Intel. Agency*, 399 F. Supp. 3d 161, 169 (S.D.N.Y. 2019) (ordering a "5,000-page-per-month processing rate"); *Villanueva v. United States Dep't of Just.*, No. 19-23452-CIV, 2021 WL 5882995, at *4 (S.D. Fla. Dec. 13, 2021) (ordering production "a rate of 5,125 pages per month").

Stevens further proposes that if ICE claims any of these documents are exempted from production by the FOIA because they relate to the confidentiality rights of non-agent third parties of ICE, and this Court has not already ruled that the specific claimed exemptions are inapplicable, ICE produce to Stevens a *Vaughn* index identifying and justifying the withholdings.

Finally, Stevens requests that ICE "either redo the search or submit another declaration averring and *explaining* why no other program offices are likely to contain" records responsive to Stevens's FOIA request for records relating to Silvestre, as previously ordered. Dkt. 121 at p. 16.

Respectfully submitted,

s/ Rima Kapitan
Attorney for Plaintiff

Kapitan Gomaa Law, P.C.
Atty No. 6286541
P.O. Box 46503
Chicago, Illinois 60646
(312) 566-9590
rima@kapitangomaa.com

Daniel Melo
The Melo Law Firm
NC Bar # 48654
2920 Forestville Road, Ste 100
PMB 1192
Raleigh, NC 27616
Tel: (919) 348-9213
dan@themelolawfirm.com